UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALLSTATE INSURANCE COMPANY,
an Illinois corporation; ALLSTATE FIRE
AND CASUALTY INSURANCE COMPANY,
an Illinois corporation; ALLSTATE INDEMNITY
COMPANY, an Illinois corporation; and
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, an Illinois
corporation,

      Plaintiffs,

v.                           Case No. _____

AUTO GLASS AMERICA, LLC,
a Florida limited liability company, and
CHARLES ISALY, a citizen of Arizona,

      Defendants.

_____/

## COMPLAINT

Plaintiffs, Allstate Insurance Company, an Illinois corporation ("Allstate Insurance"),

Allstate Fire and Casualty Insurance Company, an Illinois corporation ("Allstate Fire"),

Allstate Indemnity Company, an Illinois corporation ("Allstate Indemnity"), and Allstate

Property and Casualty Insurance Company, an Illinois corporation ("Allstate P&C") (all

Plaintiffs may be collectively referred to herein as "Plaintiffs" or "Allstate"), hereby sue

Defendants, Auto Glass America, LLC, a Florida limited liability company ("AGA"), and

Charles Isaly ("Isaly"), a citizen of Arizona, and allege:

I.   <u>INTRODUCTION</u>

1.    This action arises out of an extensive and complex scheme devised and executed by Defendants AGA and Isaly to pressure Allstate's insureds into hiring AGA for windshield replacements, obtain assignments of benefits from the insureds, submit invoices to Allstate for excessive and unreasonable amounts, and file over 1,400 lawsuits for recovery of the excessive and unreasonable amounts, all in an effort to unlawfully obtain payment for its excessive and unreasonable charges from Allstate.

2.    Specifically, and as more fully described herein, Defendants' scheme was aimed at obtaining payment from Allstate for windshield replacements that were performed by AGA as a result of inducing Allstate's insureds to authorize said windshield replacements through high pressure sales tactics, omissions, and misrepresentations, and in violation of Chapters 501 and 559 of the Florida Statutes and 16 C.F.R. §§429.0-429.3, with knowledge that AGA's charges for said windshield replacements would greatly exceed the competitive and prevailing market rates for same and that Allstate was not required under the terms of its automobile policies to pay such inflated amounts.  The owner and sole member of AGA is the scheme's mastermind, Isaly.

3.    AGA solicits customers in parking lots and businesses, and by going door-to-door in residential neighborhoods.  AGA uses high pressure sales tactics, omissions, and misrepresentations to solicit the customers, including Allstate's insureds, and convince them to hire AGA without first notifying their insurers.  This deprives Allstate's insureds of having the option to obtain warranties of workmanship from Allstate, which are available when

insureds use auto glass vendors who participate in and comply with the requirements of Allstate's network of vendors.

4.    AGA takes advantage of the fact that insureds with comprehensive coverage are entitled, under Florida law, to insurance coverage for damaged windshields with no deductible.  Thus, insureds with comprehensive coverage have no incentive to ensure that the prices offered by AGA are fair.  Indeed, AGA does not even disclose its prices to Allstate's insureds, choosing instead to submit invoices with arbitrary, inflated, and non-market rates only to Allstate after the work has been done.

5.    AGA obtains assignments of benefits from Allstate's insureds, often without informing the insureds what they are signing.  These assignments of benefits purport to allow AGA to seek payment for windshield replacements directly from Allstate and then file lawsuits against Allstate if full payments are not made.

6.    AGA is aware that Allstate's policies include the right to inspect and the option to itself repair or replace.  AGA is also aware of Allstate's payment rates, both for repairs and replacements, and that some windshield damage can be safely and appropriately repaired, not replaced.  Despite this knowledge, AGA as a matter of policy and practice does not inform Allstate that it is replacing windshields for Allstate's insureds, and AGA always replaces windshields instead of making repairs, no matter how minor the damage.  Often, the first time that Allstate learns that AGA has replaced an insured's windshield is when AGA submits an invoice to Allstate for payment, the amount of which is two or three times higher than Allstate would have paid if it had done the work itself.

7.     When Allstate pays to AGA amounts equal to or exceeding the competitive and prevailing market rates for windshield replacements, but less than the full amounts of AGA's invoices, AGA files lawsuits against Allstate in small claims courts to recover the remaining amounts of its exorbitant prices.   These lawsuits name Allstate's insureds as assignors without the insureds' knowledge or consent.   Under Florida law, when using an assignment of benefits to file a lawsuit against an insurer, a vendor plaintiff can recover its attorneys' fees if it prevails on any part of the claim, but the insurer cannot recover its attorneys' fees if it prevails.   Since January 1, 2015, AGA has filed over 1,400 lawsuits against Allstate as part of its greedy scheme to extract as much money as possible from Allstate for windshield replacements that were performed without notice to Allstate after inducing Allstate's insureds to hire AGA to perform windshield replacements through unlawful and inequitable conduct.

8.     The average amount of AGA's invoices to Allstate between January 1, 2015, and September 30, 2018, is approximately $900.00, whereas the average amount submitted during that time frame by all other glass vendors in Florida is $350.00.   Further, all of AGA's invoices are for windshield replacements, when at least some of the damaged windshields could have been properly and safely repaired at a much lower cost.

9.     Though the inflated amounts in each invoice submitted by AGA are not enormous numbers, as they are typically in the range of several hundred dollars, cumulatively they equal a shocking amount.   The current amount of overages that AGA is seeking from Allstate exceeds $200,000.   Further, because of AGA's scheme, Allstate has

incurred litigation costs and fees in 2017 and 2018 alone exceeding $400,000. Thus, the effect of AGA's unlawful and inequitable conduct is substantial.

II.     PARTIES

10.     Allstate Insurance is an Illinois corporation with its principal place of business in Northbrook, Illinois, and is authorized to do business in the State of Florida.

11.     Allstate Fire is an Illinois corporation with its principal place of business in Northbrook, Illinois, and is authorized to do business in the State of Florida.

12.     Allstate Indemnity is an Illinois corporation with its principal place of business in Northbrook, Illinois, and is authorized to do business in the State of Florida.

13.     Allstate P&C is an Illinois corporation with its principal place of business in Northbrook, Illinois, and is authorized to do business in the State of Florida.

14.     Allstate Insurance, Allstate Fire, Allstate Indemnity, and Allstate P&C are insurers and they each offer a wide range of types of insurance in Florida, including automobile insurance.

15.     AGA is a Florida limited liability company which does business in Orange County, Florida.

16.     As part of its business, AGA replaces windshields on automobiles in Florida and has and continues to replace windshields on vehicles owned by Allstate insureds, for which Allstate has paid and continues to pay insurance benefits.

17.     Isaly is the sole member and owner of AGA, and he is domiciled in and a citizen of Arizona.

18.     Isaly controls AGA and formulates and enforces the policies and practices of AGA, including those that are the subject of this Complaint.

19.     Isaly incorporated AGA in November 2012, and at all times since has been in control of the company.

20.     Isaly is in regular communication with and/or controls the acts and practices of AGA's managers, salespeople, windshield replacement technicians who perform replacements of windshields, and other AGA employees.

III.    JURISDICTION/VENUE

21.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1) because the matter in controversy for each Plaintiff exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

22.     In this action, Plaintiffs seek recovery of payments made to AGA in the past four (4) years.  The amounts of these payments exceed $75,000 for each of the Plaintiffs.

23.     Allstate also seeks declarations regarding its payment obligations for claims that exceed the amounts that Allstate pays to other non-network glass vendors, and/or which were induced by AGA's deceptive, unfair, and unconscionable conduct and by AGA's violation of Florida's Motor Vehicle Repair Act, the Home Solicitation Sales Act, and the FTC's rule Concerning Cooling-off Period for Sales Made at Homes or at Certain Other Locations.

24.     Recovery of payments and declaratory relief as requested herein will continue to accrue with regard to additional claims that will be made during the course of this action, which Allstate reasonably anticipates to accrue at the same pace.

25.     This court has personal jurisdiction over AGA under Rule 4 of the Federal Rules of Civil Procedure and the provisions of Fla. Stat. §48.193 because:

    a.      AGA is a citizen of Florida;

    b.      AGA operates, conducts, engages in, and carries on a business or business venue in this state, which business has at least one office in this state;

    c.      AGA has committed tortious acts in Florida, as further set forth below; and

    d.      AGA purports to offer lifetime warranties for the work it performs in Florida.

26.     This Court has personal jurisdiction over Isaly under Rule 4 of the Federal Rules of Civil Procedure and the provisions of Fla. Stat. § 48.193, because:

    a.      Isaly operates, conducts, engages in, and carries on a business or business venture in this state (AGA), which business has at least one office in this state;

    b.      Isaly has committed tortious acts within Florida, as further set forth below;

    c.      Isaly, through AGA, purports to offer lifetime warranties for the work AGA performs in Florida.

27.     Defendants have purposely availed themselves of the privilege of conducting business in this District and within the State of Florida, and are engaged in substantial and not isolated activity within this state.

28.     Under the direction and control of Isaly, AGA has filed thousands of lawsuits against Allstate and other insurers in Florida state courts.

29. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this dispute occurred within this District.

IV. COMPREHENSIVE COVERAGE FOR WINDSHIELD CLAIMS UNDER FLORIDA LAW

30. Florida law provides for both mandatory and optional automobile insurance coverages.

31. One of the optional coverages provided to Allstate insureds under automobile policies is comprehensive coverage.

32. In general, comprehensive coverage covers damage to vehicles insured under a policy where the damage is caused other than by a motor vehicle collision and regardless of fault, subject to specified exclusions and limits of liability as set forth in the applicable insurance policy.

33. A common claim arising under comprehensive coverage is a claim for windshield damage.

34. Florida Statute §627.7288 prohibits, as a matter of law, an insurer from collecting a deductible for windshield damage claims for comprehensive coverage:

> 627.7288 Comprehensive coverage; deductible not to apply to motor vehicle glass
>
> The deductible provision of any policy of motor vehicle insurance, delivered or issued in this state by an authorized insurer, providing comprehensive coverage or combined additional coverage shall not be applicable to damage to the windshield of any motor vehicle covered under such policy.

Fla. Stat. §627.7288 (1997).

35. AGA has improperly used this law as the basis for its scheme to improperly solicit Allstate insureds as customers, deprive Allstate of its policy rights, and to force

Allstate to pay inflated, arbitrary, and non-competitive rates for insurance claims of windshield damage.

V.     THE MARKET FOR WINDSHIELD REPLACEMENT AND REPAIR

36.     The need to repair or replace a windshield typically arises when a rock or other object causes damage to a windshield.  The extent of damage to the windshield dictates the type of work that is necessary to address the damage:  a small chip or crack can typically be repaired by use of a resin injected into the chip or crack, cured, and sealed in an entirely satisfactory manner for a charge that is in the range of $59-$65, while more extensive damage may require replacement of the windshield at a much higher charge.

37.     Generally, with regard to windshield claims submitted to Allstate in Florida, glass vendors perform repairs instead of replacements approximately 20% of the time.

38.     AGA, however, does not perform any repairs.  Instead, it elects to replace windshields at an average charge to Allstate of over $900.00 rather than make any repairs at a lower cost.

39.     Windshields in newer vehicles are equipped with safety features and sensors that require a vehicle's computer system to be recalibrated upon replacement of the windshield.

40.     Depending on the vehicle, the cost of this recalibration can range from $300 to $3,000.

41.     AGA does not have the equipment to recalibrate a vehicle's computer systems, and so its customers are required to obtain that service elsewhere, at a cost that is in

addition to AGA's charges for the windshield replacement.  These additional charges are also covered by Allstate's automobile policies if comprehensive coverage is chosen by an insured.

42.    AGA's refusal to make repairs where appropriate has resulted in excessive payments by Allstate for work that was not necessary, particularly when recalibration was required.

## VI.    ALLSTATE'S POLICY LANGUAGE REGARDING WINDSHIELD DAMAGE

43.    If selected by an insured, Allstate's automobile policies provide comprehensive coverage, which since 2013 has provided substantially as follows:

**Auto Comprehensive Insurance Coverage HH**

If a premium is shown on the Policy Declarations for **Auto Comprehensive Insurance**, **we** will pay for direct and accidental loss to the **insured auto** or a non-owned **auto** not caused by collision.  Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered.  Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.

The deductible amount will not be subtracted from the loss payment for loss to the windshield of the **insured auto** or a non-owned **auto**.

*    *    *

**Payment Of Loss By Us**
**We** may pay for the loss in money, or may repair or replace the damaged or stolen property.  **We** may, at any time before the loss is paid or the property is replaced, return at **our** own expense any stolen property, either to **you** or at **our** option to the address shown on the Policy Declarations, with payment for any resulting damage.  **We** may take all or part of the property at the agreed or appraised value.  **We** may settle any claim or loss either with **you** or the owner of the property.

**Right to Appraisal**
Both **you** and **we** have a right to demand an appraisal of the loss.  Each will appoint and pay a competent and disinterested appraiser and will equally share other appraisal expenses.  The appraisers, or a judge of a court of record, will select an umpire to decide any differences.  Each appraiser will state

separately the actual cash value and the amount of loss.  An award in writing by any two appraisers will determine the loss amount payable.

**Limits Of Liability**
**Our** limit of liability is the least of:
1. The actual cash value of the property at the time of the loss, which may include a deduction for depreciation;
2. The cost to repair or replace, as determined by **us**, the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations; or
3. $500, if the loss is to a covered trailer not described on the Policy Declarations.

\* \* \*

**What to Do If There Is A Loss**
1. If coverage is provided to any person under this policy and that person has an accident involving a motor vehicle, **we** or an authorized agent of **ours** must be informed as soon as possible of all details.  As soon as possible, any person making a claim must give **us** written proof of loss, including all details **we** may need to determine the amounts payable, if any.

\* \* \*

4. **You** must allow **us** to inspect the damaged property.

44.     Of particular relevance to this lawsuit, Allstate has the right under the terms of its automobile policies to inspect a damaged windshield, to demand an appraisal of the loss, and to exercise its option to pay windshield claims with money or itself repair or replace damaged windshields.

VII.   ALLSTATE'S NETWORK OF GLASS VENDORS

45.     As a service to its insureds and in an effort to control costs, Allstate has created a network of glass vendors that have agreed to certain requirements, including the performance of background checks on employees, superior workmanship, full compliance with all state and local laws and regulations, and the charging of reasonable market rates.

11

46.     Though insureds can use any glass vendor of their choosing, including those not participating in Allstate's network, if a network vendor is chosen Allstate provides a customer guarantee of workmanship for the work performed by the network vendor.

47.     Allstate's guarantee of workmanship is an important and meaningful benefit provided by Allstate to its insureds.

VIII.   ALLSTATE'S HANDLING OF WINDSHIELD CLAIMS

48.     In connection with a typical claim for windshield damage by an Allstate insured, the windshield repair or replacement process begins with the insured submitting a notice of loss to Allstate.

49.     An insured can submit a notice of loss to Allstate for windshield damage by telephone or via the internet.

50.     A notice of loss to Allstate prior to any windshield repair or replacement is necessary so that Allstate has an opportunity to exercise its right to inspect the damaged windshield to assess the extent of the damage and determine whether it can be properly and safely repaired or whether replacement is needed.

51.     A notice of loss to Allstate prior to any windshield repair or replacement is also necessary so that Allstate can determine whether to itself repair or replace a damaged windshield.

52.     Upon submission of a claim for windshield damage, an insured is given the option of using an auto glass company of his or her choice or one that participates in Allstate's network for which a guarantee of workmanship would be given.

53.     If the insured chooses to use an auto glass company that is within Allstate's participating network, Allstate makes arrangements for that company to make the necessary repair or replacement.

54.     If the insured chooses to use an auto glass company that is not within Allstate's participating network, Allstate contacts the chosen company to discuss the work to be completed and to notify the chosen company of the amounts that Allstate will pay, under the insured's automobile policy, for the work.  If the auto glass company is not willing to accept the amounts payable under the automobile policy, then Allstate conveys that information to the insured and notifies the insured that he or she may be responsible for any overage amounts charged by the chosen auto glass company.

55.     If Allstate is unable to reach agreement with the insured and/or the chosen auto glass company regarding payment to be made under Allstate's automobile policy, then Allstate has the right under the automobile policy to demand an appraisal.

56.     Under the appraisal process contractually set out in Allstate's automobile policy, both Allstate and the insured will appoint and pay a competent and disinterested appraiser and will equally share the appraisal expenses.  If the selected appraisers cannot agree on the actual cash value and the amount of loss, then the selected appraisers or a judge of a court of record will select an umpire to decide the difference.  An award in writing by any two of the three will determine the loss amount payable.

57.     In 2013, Allstate notified AGA of Allstate's rights under its automobile policies and its procedures for processing windshield claims.

58.     Also, as a result of the numerous (over 1,400) lawsuits filed against Allstate by AGA since January 1, 2015, AGA has become well-familiar with the terms of Allstate's automobile policies and Allstate's practices for processing windshield claims.

59.     As shown below, AGA has devised a scheme to deprive Allstate of its contractual rights to an inspection, to demand an appraisal, and to exercise its option to repair or replace.  This scheme is intended to force Allstate to pay AGA inflated, arbitrary, and non-competitive rates for insurance claims of windshield damage.

IX.     AGA'S SCHEME TO OBTAIN PAYMENT FOR NON-MARKET RATES

A.     AGA's Advertising and Solicitation of Business

60.     AGA maintains a website and runs advertisements which market its windshield replacement services.  These advertisements, in part, state that AGA will replace windshields for free, will buy back old windshields for up to $100, and will provide to customers two $50 discount cards from restaurant.com.  AGA has made similar representations directly to customers including Allstate's insureds.

61.     AGA has also offered other incentives to customers, such as a "Pick 5" card.

62.     However, the damaged windshields seldom, if ever, have any commercial value that exceed the cost of disposal, and in reality AGA rarely, if ever, pays more than $25 to a customer for a damaged windshield.

63.     AGA also has failed to provide all Allstate insureds with the two promised $50 discount cards to restaurant.com.  Even those that receive discount cards to restaurant.com are often disappointed with the cards, as their terms make them difficult to use.

64. Other discounts and incentives may also have been offered by AGA to customers.

65. AGA's website also advertises that it uses only Original Equipment Manufacturer ("OEM") glass, but this does not appear to be true because AGA's invoices to Allstate are generally for non-OEM glass.

66. In addition to its website and other advertisements, AGA solicits customers by using "harvesters" that approach potential customers in parking lots, at their places of employment, at other businesses, and by going door-to-door in neighborhoods.

67. The harvesters inform potential customers of windshield damage to their vehicles, and after confirming that the customers have comprehensive automobile insurance use high pressure sales tactics to convince the potential customers to hire AGA to replace their windshields.

68. The harvesters do not themselves replace windshields. Rather, AGA uses other independent contractors to do that work.

69. AGA does not do a significant amount of work for customers who do not have comprehensive coverage. But when AGA does do such work, it charges far less to those without insurance coverage than to those who have coverage.

B. AGA's Misrepresentations and Omissions to Allstate's Insureds

70. Having solicited customers through its advertising and promises of payment and other incentives, AGA proceeds to seal the deal by knowingly misleading and making misrepresentations and omissions to its potential customers including Allstate's insureds.

71.     AGA representatives tell Allstate insureds that AGA will submit its invoices for windshield replacement directly to Allstate and that the insureds will not be responsible for any of the cost.  Allstate's insureds are left with the false impression that AGA works closely with Allstate and that Allstate approves of and authorizes AGA's work and its pricing.

72.     Some Allstate insureds have been told by AGA representatives that repairs cannot safely and properly be made, even if the windshield damage is minor, and AGA has gone so far as to tell insureds that Allstate prefers replacement over repair for all windshield damages.  Both of those statements are blatantly untrue and are known to be false by the AGA representatives that made them.

73.     In addition to these affirmative misrepresentations, AGA fails to provide necessary information to Allstate's insureds, leaving Allstate's insureds with incorrect impressions, thus preventing Allstate's insureds from being able to make informed decisions as to whether and how to proceed with repair or replacement of their windshields.

74.     AGA does not inform Allstate's insureds that Allstate's automobile policies give Allstate the right to inspect the windshield damage, to demand an appraisal, or to exercise Allstate's option to repair or replace the damaged windshield.

75.     AGA does not tell Allstate's insureds what Allstate's claims processes are, even though it knows what they are, or the need for the insureds to submit claims prior to commencement of work.  Rather, AGA leads Allstate's insureds to believe that there is nothing they need to do to obtain insurance coverage for windshield replacements.

76.     AGA also does not tell Allstate's insureds that Allstate offers a guarantee of workmanship for work done by glass vendors participating in Allstate's network, and that the guarantee will not be available for work done by AGA since AGA has chosen not to participate in Allstate's network and comply with the requirements for same.

77.     With full knowledge of Allstate's calculation of benefits under its automobile policies for windshield replacements, AGA fails to inform Allstate's insureds that Allstate will not be agreeable to AGA's inflated charges.   In fact, AGA does not provide any information to Allstate's insureds regarding the prices it will charge Allstate, as such a disclosure might raise questions regarding insurance coverage for the clearly excessive amounts.

78.     AGA does not disclose to Allstate's insureds that its prices are much higher than the competitive and prevailing market rates.

79.     In fact, AGA knows that the market rates that Allstate is willing to pay are far lower than AGA's inflated rates, and AGA performs the work with the intention to coerce Allstate to pay those inflated claims by expensive lawsuits that cost far more to defend than the amounts at issue.

80.     AGA also does not inform Allstate's insureds that AGA intends to file a lawsuit against Allstate as assignee of the insureds to recover AGA's inflated charges.

81.     In addition, AGA also fails to mention to Allstate's insureds that it has filed thousands of lawsuits against Allstate and other insurers to recover payment of its exorbitant charges.

82.     Finally, AGA does not disclose to Allstate's insureds that Allstate is unaware of AGA's intention to replace insureds' windshields and would not discover the transactions until AGA submits invoices after completion of the work.

C.    AGA's Coercion of Assignments of Benefits from Insureds

83.     In connection with replacement of a windshield for an Allstate insured, AGA obtains a signature from the insured on a Work Order that has the following or similar language:

> I hereby assign any and all insurance rights, benefits, and proceeds under the above referenced policy to my repair facility Auto Glass America LLC.  I hereby authorize direct payment of any benefits be made to my repair facility Auto Glass America LLC, as consideration for the repair or replacement of glass on my automobile.  In this regard, I waive my privacy rights.  If glass coverage is included [in my] insurance policy I will not be responsible for any costs not covered by my policy.  PLEASE READ CAREFULLY, CHECK ONE OF THE STATEMENTS BELOW AND SIGN:



> I UNDERSTAND THAT, UNDER STATE LAW, I AM ENTITLED TO A WRITTEN ESTIMATE IF MY FINAL BILL WILL EXCEED $100.
> _____    I REQUEST A WRITTEN ESTIMATE.
> _____    I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEED $ The shop may not exceed this amount without my written or oral approval.
> **    I DO NOT REQUEST A WRITTEN ESTIMATE.   Unless otherwise indicated.

INSPECTED AND APPROVED.

84.     Many times, Allstate's insureds either are not told what their signatures are for, or are falsely led to believe that their signatures simply authorize the work or confirm that the work was completed.

85.     The above language includes an assignment of benefits, which purports to assign to AGA the insured's right to receive payment and to file lawsuits under the insured's insurance policy for windshield repair or replacement.

86.     The obtaining of an assignment of benefits without notice to Allstate and in connection with the performance of unnecessary or unnecessarily expensive work, with the plan to file a lawsuit for recovery of arbitrary, inflated, and non-market amounts, has been recognized as an abuse of assignments of benefits under Florida law by the Insurance Information Institute, which recently published a report titled "Florida's assignment of benefits crisis."

87.     Florida's Office of Insurance Regulation has also recognized this abuse of assignments of benefits.

88.     Many of Allstate's insureds are unaware that AGA considers an insured's signature on a Work Order to be an authorization for AGA to seek payment from Allstate for arbitrary, excessive, and non-market charges.

89.     Many of Allstate's insureds also do not know that AGA considers an insured's signature on a Work Order to be an authorization for AGA to file a lawsuit against Allstate for AGA's arbitrary, inflated, and non-market charges.

90.     The Work Orders signed by insureds do not designate the amounts to be charged for AGA's work, and AGA does not otherwise inform Allstate's insureds what it will seek to recover from Allstate.

91.     The asterisks in the "I DO NOT REQUEST A WRITTEN ESTIMATE" choice are inserted in advance of the insureds' signatures.  In other words, the insureds do not affirmatively and consciously choose that option.

92.     AGA does not advise Allstate's insureds and specifically conceals the fact that AGA enters into the transaction with the knowledge and intent to disregard Allstate's competitive and market payments and to attempt to impose on Allstate, through the purported assignments received from the insureds, a legal liability to pay substantial additional amounts for windshield replacements.

93.     Thus, AGA induces Allstate's insureds to authorize windshield replacements and obtains assignments from the insureds based on false and misleading omissions and statements.  AGA then files suit against Allstate, unbeknownst to the insureds, based on charges that neither Allstate nor the insureds authorized or agreed to.  AGA has not collected and does not seek to collect any payment from Allstate's insureds.

D.     AGA's Interference with Allstate's Contractual Relationship with its Insureds

94.     AGA does not ensure that notices of loss are submitted to Allstate by the insureds prior to replacing insureds' windshields.

95.     Prior to replacing insureds' windshields, AGA does not itself report windshield damage claims to Allstate.

96.     Although AGA has knowledge of Allstate's policy terms and processes, AGA does not give Allstate an opportunity to inspect windshield damage before replacement.

97.     Further, even though AGA is aware that its price for replacing a windshield will far exceed the market price for same, AGA does not give Allstate an opportunity to demand an appraisal prior to replacement, as provided for in Allstate's automobile policies.

98.     AGA also, with knowledge of the terms of Allstate's automobile policies, fails to allow Allstate to exercise its option to itself repair or replace damaged windshields.

99.     AGA's failure to ensure that Allstate is properly and timely notified of windshield damage claims prevents Allstate from assessing the damage and determining whether the damage can be repaired or whether windshield replacement is necessary.

100.    AGA's failure to ensure that Allstate is properly and timely notified of windshield damage claims also deprives Allstate of its ability to control costs because it prevents Allstate from negotiating and paying market rates for windshield repairs and replacements.

101.    AGA's lack of notification to Allstate is intentional, and is meant to prevent Allstate from inspecting the windshield damage, demanding an appraisal, or exercising its option to itself repair or replace damaged windshields.

102.    AGA does not want Allstate to inspect its insureds' damaged windshields, because such inspections may result in Allstate determining that damage could be properly and safely repaired at little cost.  AGA does not perform any repairs, choosing instead to replace all damaged windshields at a much higher cost that it passes on to Allstate, even those windshields with minor damage for which a repair would be appropriate.

103.    AGA does not want Allstate to invoke its right to an appraisal, because such appraisals result in determinations by the appraisers that AGA's pricing is far higher than the

actual cash values and amounts of loss required by Allstate to be paid under its automobile policies.

104.    AGA does not want Allstate to invoke its right to repair or replace damaged windshields, because that would prevent AGA from being able to pursue its scheme to make windshield replacements and collect payment for same at greatly inflated, arbitrary, and non-competitive prices.

105.    After completing a windshield replacement for an Allstate insured, AGA takes the damaged windshield and disposes of it, depriving Allstate again of the ability to assess the damage to the windshield and determine if replacement was appropriate.

106.    When work orders are submitted to Allstate, they are accompanied by invoices which designate AGA's charges for windshield replacements which have already been completed.

107.    These invoices and work orders are often submitted to incorrect Allstate offices, some of which are located out of state, even though AGA knows how and where to properly submit windshield claims to Allstate.

108.    Invoices submitted to Allstate by AGA include the following:  (1) a list price for the windshield itself, (2) labor hours for installation of the windshield, (3) charges for adhesive, moulding, and other materials used in the replacement, and (4) a mobile service fee if the replacement was made in a location other than the glass repair shop.

109.    The list prices shown on AGA's invoices are based on the list prices published by National Auto Glass Specifications ("NAGS").

110.    It is typical in the auto glass industry for auto glass shops to charge a percentage discount off NAGS list prices.

111.    AGA's invoices submitted to Allstate falsely reflect a 47% "discount," but the "discount" is actually a 47% upcharge.

112.    The amounts of the invoices submitted by AGA to Allstate are two to three times higher than other auto glass shops.  In fact, from January 1, 2015, through September 30, 2018, the average amount charged by AGA is more than $900, and the average amount charged by all other auto glass shops is approximately $350.

113.    The amounts charged by AGA for the replacement glass itself is more than double the average of what all other glass vendors charge for replacement glass.

114.    AGA is not consistent in its billing to other insurers.  Rather, AGA utilizes different pricing depending on which insurer will be billed for the work.  Isaly has testified that he arbitrarily decides how much AGA will charge based on factors that have nothing to do with a fair or market rate for the work.

115.    AGA's submission of invoices to Allstate is usually the first notice that Allstate receives of the claim for windshield damage.  At that point, the windshield has already been replaced, and Allstate is unable to inspect the windshield damage or exercise its option to repair or replace the windshield itself.

116.    Allstate pays AGA an amount equal to or in excess of the competitive, market rates paid to other auto glass shops in Florida, but that is less than the inflated amounts invoiced by AGA.

117.    Since January 1, 2015, AGA has filed more than 1,400 lawsuits against Allstate seeking to recover additional payment.

E.    AGA's Violation of Florida's Home Solicitation Sales Act

118.    As described above, AGA solicits business in parking lots, businesses, and in residential neighborhoods by going door-to-door to houses.

119.    These solicitations constitute home solicitation sales as defined in Florida Statute §501.021.

120.    Thus, these actions by AGA are governed by Florida's Home Solicitation Sales Act, Florida Statute §§501.021-501.055.

121.    AGA has violated the Home Solicitation Sales Act by:

a.    failing to obtain valid home solicitation sales permits as required by Florida Statute §501.022 and to display same to all prospective buyers, including Allstate's insureds, before initiating the solicitation of a sale;

b.    failing to provide required written statements to customers, including Allstate's insureds, as set forth in Florida Statute §501.031;

c.    failing to provide to customers, including Allstate's insureds, business cards, contracts, or receipts which contain the information set forth in Florida Statute §501.046(1)(b); and

d.    making misrepresentations and omissions to Allstate's insureds, which is prohibited by Florida Statute §501.047.

F.   AGA's Violation of the FTC's Rule Concerning Cooling-off Period for Sales Made at Homes or at Certain Other Locations

122.   AGA's solicitations also violate the Federal Trade Commission's Rule Concerning Cooling-off Period for Sales Made at Homes or at Certain Other Locations, 16 C.F.R.§§ 429.0-429.3 ("FTC Rule").

123.   The FTC Rule applies to sales of consumer goods or services in which the seller or his representative personally solicits the sale and the buyer's agreement to purchase is made at a place other than the place of business of the seller and which has a purchase price of $25 or more if the sale is made at the buyer's residence or a purchase price of $130 or more if the sale is made at locations other than the buyer's residence.  16 C.F.R. §429.0(a).

124.   AGA has violated the FTC Rule by:

a.   failing to furnish Allstate's insureds with a fully completed receipt or copy of any contract pertaining to such sale at the time of execution, with a statement regarding the buyer's right to cancel the transaction as set forth in 16 C.F.R. §429.1(a);

b.   failing to furnish Allstate's insureds with a Notice of Right to Cancel or Notice of Cancellation as required by 16 C.F.R. §429.1(b); and

c.   failing to inform Allstate's insureds orally, at the time they agree to use AGA's services, of the insureds' right to cancel as required by 16 C.F.R. §429.1(e);

G.   AGA's Violation of Florida's Motor Vehicle Repair Act

125.   The work orders that AGA's provides to Allstate's insureds do not comply with Florida's Motor Vehicle Repair Act, Florida Statute §§559.901-559.9221 ("Repair Act").

126.    The Repair Act applies to all motor vehicle repair shops, including "shops doing glass work" like AGA.  Florida Statute §559.903.

127.    The Repair Act requires motor vehicle repair shops to provide written repair estimates setting forth the estimated cost of repair work before doing any diagnostic work or repair.  Florida Statute §559.905.  The contents of the required estimate are enumerated under Florida Statute §559.905.  Included as a required element is disclosure of "[t]he estimated cost of repair which shall include any charge for shop supplies for hazardous or other waste removal."  Florida Statute §559.905(1)(h).  Likewise, this section requires the following disclosure "in capital letters of at least 12-point type:"

> PLEASE READ CAREFULLY, CHECK ONE OF THE STATEMENTS BELOW, AND SIGN:
>
> I UNDERSTAND THAT, UNDER STATE LAW, I AM ENTITLED TO A WRITTEN ESTIMATE IF MY FINAL BILL WILL EXCEED $100.
>
> _____ I REQUEST A WRITTEN ESTIMATE
>
> _____ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEED $_____.  THE SHOP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL APPROVAL.
>
> _____ I DO NOT REQUEST A WRITTEN ESTIMATE.

Section 559.905(2).

128.    The Repair Act declares it to be unlawful for a motor vehicle repair shop to require any person to waive his or her rights as a precondition to the repair of his or her vehicle by the shop.  Florida Statute §559.907(2).

129.    The Repair Act also declares it to be "unlawful for a motor vehicle repair shop to charge more than a written estimate plus $10 or 10 percent, whichever is greater, but not to

exceed $50, unless the motor vehicle repair shop has obtained authorization to exceed the written estimate in accordance with subsection (1)." Florida Statute §559.909(3).

130.   The Repair Act requires the motor vehicle repair shop to provide the customer with an invoice itemizing all work done as set forth in Florida Statute §559.911.

131.   The Repair Act further makes certain conduct by a Motor Vehicle Repair Shop unlawful, by providing that:

> It shall be a violation of this act for any motor vehicle repair shop or employee thereof to:
>
> *   *   *
>
> (4)   Misrepresent that certain parts and repairs are necessary to repair a vehicle;
>
> *   *   *
>
> (8) Make or authorize in any manner or by any means whatever any written or oral statement which is untrue, deceptive or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue, deceptive or misleading;
>
> (9) Make false promises of a character likely to influence, persuade, or induce a customer to authorize the repair, service, or maintenance of a motor vehicle;
>
> *   *   *
>
> (11)  Cause or allow a customer to sign any work order that does not state the repairs requested by the customer or the automobile's odometer reading at the time of repair;
>
> *   *   *
>
> (13) Willfully depart from or disregard accepted practices and professional standards;
>
> (14)  Have repair work subcontracted without the knowledge or consent of the customer unless the motor vehicle repair shop or employee thereof demonstrates that the customer could not reasonably have been notified;

\*   \*   \*

(17)  Perform any other act that is a violation of this part or that constitutes fraud or misrepresentation.

Florida Statute §559.920.

132.   AGA has repeatedly violated and continues to violate the Repair Act.  AGA's violations include but are not limited to:  (a) failing to provide the written estimate and disclosure required by Florida Statute §559.905 and pre-marking the selection for no estimate; (b) charging $10 or 10 percent, whichever is greater, but not to exceed $50, more than any written estimate prepared by AGA; (c) making untrue and deceptive statements and omissions inducing Allstate's insureds to authorize windshield replacements; (d) misrepresenting that windshield replacements are necessary when the windshield damage can be properly repaired; (e) causing or allowing insureds to sign work orders that do not state the repairs requested or the automobile's odometer reading at the time of repair; (f) having repair work contracted out without the knowledge or consent of Allstate's insureds with no demonstration that the insureds could not reasonably have been notified; (g) demanding payment from Allstate for unreasonable and arbitrary amounts that greatly exceed what AGA knows Allstate to be willing to pay; and (h) performing work prior to Allstate being informed about the work, its scope, or price.

133.   Florida law provides that when any provision of the Repair Act has been violated, the repair shop may not demand or retain payment for any portion of the subject work.

134.   As a result of AGA's conduct set forth above, AGA is precluded by law and equity from recovering more than it has already been paid by Allstate for windshield

replacements and is further precluded from retaining the amounts previously paid by Allstate for the windshield replacements.

135.    At the time it makes replacements, AGA would have already confirmed that coverage from an Allstate policy was available and knew what Allstate was willing to pay to AGA.  AGA intentionally and as a matter of policy and practice conceals its prices from both the insureds and Allstate until it sends invoices to Allstate after the work is completed.

136.    By virtue of Defendants' actions, it has become necessary for Allstate to retain the services of the law firm of Rumberger, Kirk & Caldwell, P.A., to prosecute this action.  Allstate has agreed and is obligated to pay its attorneys a reasonable fee and costs for the prosecution of this action.

137.    Allstate has incurred and will incur expenses in connection with the bringing of this action.

138.    All conditions precedent to the filing of this action and the relief demanded herein have been met, have occurred or have otherwise been waived.

<u>COUNT I – TORTIOUS INTERFERENCE</u>

139.    This is an action by Plaintiffs against AGA for tortious interference with contractual relationships.

140.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138 above.

141.    Plaintiffs currently have and have had contractual relationships, per their automobile policies, with insureds for whom AGA has replaced windshields.

142.    At all relevant times, AGA had knowledge of the terms of Plaintiffs' automobile policies.

143.    Under the terms of Plaintiffs' automobile policies, Plaintiffs have the contractual rights to inspect damaged property of their insureds, to invoke appraisal, and to exercise their option to repair or replace damaged property.

144.    Also, important to Plaintiffs' contractual relationships with their insureds is the ability for Plaintiffs and the insureds to communicate directly with one another regarding, among other things, policy terms, benefits available, property damage and repairs, and potential or actual claims.   This communication is necessary for both Plaintiffs and the insureds to make informed decisions regarding those things.

145.    AGA's actions have intentionally and unjustifiably interfered with Plaintiffs' contractual relationships with their insureds and have deprived Plaintiffs of their contractual rights to inspect damaged property of insureds, to invoke appraisal, and to exercise their option to repair or replace damaged windshields.

146.    AGA has also intentionally and unjustifiably interfered with Plaintiffs' contractual relationships with their insureds by preventing Plaintiffs from communicating directly with their insureds until after damaged windshields have already been replaced, thus depriving Plaintiffs and their insureds from making informed decisions regarding windshield repair or replacement.

147.    Plaintiffs have suffered damages as a result of AGA's tortious interference with Plaintiffs' contractual relationships with their insureds.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company, demand judgment against Defendant, Auto Glass America, LLC, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

## COUNT II – VIOLATION OF FDUTPA
## UNFAIR ACTS AND PRACTICES

148.    This is an action by Plaintiffs against AGA and Isaly for violation of Florida's Deceptive and Unfair Trade Practices Act.

149.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138 above.

150.    Each Plaintiff is a "person" under Florida Statute §501.211(2) and an "aggrieved person" under Florida Statute §501.211(1), and is entitled to seek injunctive and declaratory relief, along with actual damages.

151.    Florida Statute §501.202(2) provides that FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

152.    Additionally, Florida Statute §501.203(7) defines consumer to include a business, corporation, and any commercial entity, however denominated.  Thus, Allstate is a "consumer," as well.

153.    The Defendants' above-described conduct constitutes unfair methods of competition in the conduct of a trade and commerce.

31

154.    The Defendants' above-described conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

155.    The acts and practices alleged herein violate the FTC's 1984 policy statement on unfairness because AGA's actions cause substantial, not trivial consumer injury including not only effects on consumers that are parties to the litigation, but also the burdens of society in general.  Those costs are not outweighed by any countervailing benefits, and Allstate could not reasonably have avoided them.  *See* FTC Policy Statement on Unfairness (1984).

156.    Isaly actively and directly participated in or had substantial control over AGA's  unfair acts and practices.

157.    Defendants' actions constitute unfair acts and practices in violation of Florida Statute §501.204.

158.    As a result of Defendants' unfair practices, each Plaintiff has incurred actual damages.

159.    Plaintiffs, as the prevailing parties, are entitled to the recovery of their reasonable attorneys' fees and costs pursuant to Florida Statute §501.2105.

160.    By virtue of the foregoing, Plaintiffs seek a declaratory judgment declaring that the Defendants' acts and practices are unfair in violation of FDUTPA and that the assignments of benefits obtained in violation of FDUTPA are illegal and void, an order enjoining the Defendants from engaging in such unfair acts and practices, and recovery of damages, plus attorneys' fees, costs, interest, and such other and further relief the Court deems just and proper.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company, demand judgment against Defendants, Auto Glass America, LLC, and Charles Isaly, as follows:

(a) a declaration that Defendants' acts and practices are unfair in violation of FDUTPA and that the assignments of benefits obtained in violation of FDUTPA are illegal and void;

(b) imposition of an injunction enjoining the Defendants from continuing to engage in such unfair acts and practices;

(c) an award of Plaintiffs' actual damages, interest, costs, and attorneys' fees; and

(d) such other and further relief as this Court deems just and proper.

## COUNT III – VIOLATION OF FDUTPA
## DECEPTIVE ACTS AND PRACTICES

161.    This is an action by Plaintiffs against AGA and Isaly for violation of Florida's Deceptive and Unfair Trade Practices Act.

162.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138 above.

163.    Each Plaintiff is a "person" under Florida Statute §501.211(2) and an "aggrieved person" under Florida Statute §501.211(1), and is entitled to seek injunctive and declaratory relief, along with actual damages.

164.    Florida Statute §501.202(2) provides that FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair

methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

165.    Additionally, Florida Statute §501.203(7) defines consumer to include a business, corporation, and any commercial entity, however denominated. Thus, Allstate is a "consumer," as well.

166.    The Defendants' above-described conduct constitutes deceptive acts or practices in the conduct of a trade and commerce.

167.    The Defendants' above-described conduct is deceptive because it is based upon representations, omissions, and other acts and practices that are likely to mislead Allstate's insureds acting reasonably under the circumstances to Allstate's detriment.

168.    Isaly actively and directly participated in or had substantial control over AGA's deceptive acts and practices.

169.    Defendants' actions constitute deceptive acts and practices in violation of Florida Statute §501.204.

170.    As a result of Defendants' deceptive practices, each Plaintiff has incurred actual damages.

171.    Plaintiffs, as the prevailing parties, are entitled to the recovery of their reasonable attorneys' fees and costs pursuant to Florida Statute §501.2105.

172.    By virtue of the foregoing, Plaintiffs seek a declaratory judgment declaring that the Defendants' acts and practices are deceptive in violation of FDUTPA and that the assignments of benefits obtained in violation of FDUTPA are illegal and void, an order enjoining the Defendants from engaging in such deceptive acts and practices, and recovery of

damages, plus attorneys' fees, costs, interest, and such other and further relief the Court deems just and proper.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company, demand judgment against Defendants, Auto Glass America, LLC, and Charles Isaly, as follows:

(a) a declaration that Defendants' acts and practices are deceptive in violation of FDUTPA and that the assignments of benefits obtained in violation of FDUTPA are illegal and void;

(b) imposition of an injunction enjoining the Defendants from continuing to engage in such deceptive acts and practices;

(c) an award of Plaintiffs' actual damages, interest, costs, and attorneys' fees; and

(d) such other and further relief as this Court deems just and proper.

COUNT IV – VIOLATION OF FDUTPA
UNCONSCIONABLE AND UNFAIR ACTS AND PRACTICES

173.   This is an action by Plaintiffs against AGA and Isaly for violation of Florida's Deceptive and Unfair Trade Practices Act.

174.   Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138 above.

175.   Each Plaintiff is a "person" under Florida Statute §501.211(2) and an "aggrieved person" under Florida Statute §501.211(1), and is entitled to seek injunctive and declaratory relief, along with actual damages.

176.     Florida Statute §501.202(2) provides that FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

177.     Additionally, Florida Statute §501.203(7) defines consumer to include a business, corporation, and any commercial entity, however denominated.  Thus, Allstate is a "consumer," as well.

178.     The    Defendants'    above-described    conduct    constitutes    unfair    and unconscionable acts or practices in the conduct of a trade and commerce.

179.     The Defendants' above-described conduct is unfair and unconscionable because it offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

180.     Isaly actively and directly participated in or had substantial control over AGA's unconscionable and unfair acts and practices.

181.     Defendants' actions constitute unconscionable and unfair acts and practices in violation of Florida Statute §501.204.

182.     As a result of Defendants' unconscionable and unfair acts and practices, each Plaintiff has incurred actual damages.

183.     Plaintiffs, as the prevailing parties, are entitled to the recovery of their reasonable attorneys' fees and costs pursuant to Florida Statute §501.2105.

184.     By virtue of the foregoing, Plaintiffs seek a declaratory judgment declaring that the Defendants' acts and practices are unconscionable and unfair in violation of

FDUTPA and that the assignments of benefits obtained in violation of FDUTPA are illegal and void, an order enjoining the Defendants from engaging in such unconscionable and unfair acts and practices, and recovery of damages, plus attorneys' fees, costs, interest, and such other and further relief the Court deems just and proper.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company, demand judgment against Defendants, Auto Glass America, LLC, and Charles Isaly, as follows:

(a) a declaration that Defendants' acts and practices are deceptive in violation of FDUTPA and that the assignments of benefits obtained in violation of FDUTPA are illegal and void;

(b) imposition of an injunction enjoining the Defendants from continuing to engage in such deceptive acts and practices;

(c) an award of Plaintiffs' actual damages, interest, costs, and attorneys' fees; and

(d) such other and further relief as this Court deems just and proper.

### COUNT V – UNJUST ENRICHMENT BASED ON AGA'S VIOLATION OF FLORIDA'S HOME SOLICITATION SALES ACT AND FTC RULE

185.   This is an action by Plaintiffs against AGA for unjust enrichment based on AGA's violation of Florida's Home Solicitation Sales Act ("Sales Act") and the Federal Trade Commission's Rule Concerning Cooling-off Period for Sales Made at Homes or at Certain Other Locations ("FTC Rule").

186.   Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138 above.

187.    AGA has violated and continues to violate the Sales Act and FTC Rule in multiple ways, and is not in substantial compliance with the Sales Act or the FTC Rule with regard to its work for Allstate's insureds.

188.    AGA was not and is not entitled to the recovery of any amounts for work it has performed for Allstate insureds in violation of the Sales Act and/or the FTC Rule.

189.    Plaintiffs are without an adequate remedy at law with regard to payments that were made on windshield claims in which AGA was not in substantial compliance with the requirements of the Sales Act and the FTC Rule.

190.    Plaintiffs have conferred a benefit on AGA, in the form of payments on windshield claims, and AGA has accepted and retained those benefits under circumstances that make it inequitable for AGA to do so.

191.    AGA has been unjustly enriched by its repeated violations of the Sales Act and the FTC Rule in connection with its replacements of windshields for Allstate's insureds.

192.    Under equitable principals Plaintiffs are entitled to reimbursement of payments they have made to AGA for replacements of windshields for Allstate's insureds.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company, demand judgment against Defendant, Auto Glass America, LLC, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

<u>COUNT VI – UNJUST ENRICHMENT BASED ON AGA'S VIOLATION<br>OF FLORIDA'S MOTOR VEHICLE REPAIR ACT</u>

193.    This is an action by Plaintiffs against AGA for unjust enrichment based on AGA's violation of Florida's Motor Vehicle Repair Act ("Repair Act").

194.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138 above.

195.    Under the Repair Act, if there is no substantial compliance with the Repair Act, AGA is not entitled to recover any amounts for the value of the services provided.

196.    AGA has violated and continues to violate the Repair Act in multiple ways, and is not in substantial compliance with the Repair Act with regard to its work for Allstate's insureds.

197.    AGA was not and is not entitled to the recovery of any amounts for work it has performed for Allstate insureds in violation of the Repair Act.

198.    Plaintiffs are without an adequate remedy at law with regard to payments that were made on windshield claims in which AGA was not in substantial compliance with the requirements of the Repair Act.

199.    Plaintiffs have conferred a benefit on AGA, in the form of payments on windshield claims, and AGA has accepted and retained those benefits under circumstances that make it inequitable for AGA to do so.

200.    AGA has been unjustly enriched by its repeated violations of the Repair Act in connection with its replacements of windshields for Allstate's insureds.

201.    Under equitable principals Plaintiffs are entitled to reimbursement of payments they have made to AGA for replacements of windshields for Allstate's insureds.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty

Insurance Company, demand judgment against Defendant, Auto Glass America, LLC, for

damages, interest, costs, and such other and further relief as this Court deems just and proper.

<u>COUNT VII – VIOLATION OF FDUTPA BY AGA BASED ON ITS<br>VIOLATION OF FLORIDA'S HOME SOLICITATION SALES ACT AND FTC RULE</u>

202.    This is an action by Plaintiffs against AGA and Isaly for a per se violation of

Florida's Deceptive and Unfair Trade Practices Act based on AGA's violations of Florida's

Home Solicitation Sales Act ("Sales Act") and the Federal Trade Commission's Rule

Concerning Cooling-off Period for Sales Made at Homes or at Certain Other Locations

("FTC Rule").

203.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138

above.

204.    Each Plaintiff is a "person" under Florida Statute §501.211(2) and an

"aggrieved person" under Florida Statute §501.211(1), and is entitled to seek injunctive and

declaratory relief, along with actual damages.

205.    Florida Statute §501.202(2) provides that FDUTPA is intended to "protect the

consuming public and legitimate business enterprises from those who engage in unfair

methods of competition, or unconscionable, deceptive, or unfair acts or practices in the

conduct of any trade or commerce."

206.    Additionally, Florida Statute §501.203(7) defines consumer to include a

business, corporation, and any commercial entity, however denominated.  Thus, Allstate is a

"consumer," as well.

207. Section 501.203 of FDUTPA states in pertinent part:

(3) "Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2017:

(a) Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. §§41 et seq.

\* \* \*

(c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

208. The FTC Rule is a rule promulgated pursuant to the Federal Trade Commission Act.

209. The Sales Act is a statute which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

210. AGA has violated and continues to violate the Sales Act and FTC Rule in multiple ways as described herein with regard to its replacements of windshields for Allstate's insureds.

211. Isaly actively and directly participated in or had substantial control over AGA's violations of the Sales Act and FTC Rule.

212. Defendants' actions in violating the Sales Act and FTC Rule constitute per se violations of Florida Statute §501.204.

213. As a result of Defendants' per se violations of the Sales Act and FTC Rule, each Plaintiff has incurred actual damages.

214. Plaintiffs, as the prevailing parties, are entitled to the recovery of their reasonable attorneys' fees and costs pursuant to Florida Statute §501.2105.

215.    By virtue of the foregoing, Plaintiffs seek a declaratory judgment declaring that the Defendants' acts and practices are per se violations of FDUTPA and that the assignments of benefits obtained in violation of the Sales Act, the FTC Rule, and FDUTPA are illegal and void, an order enjoining the Defendants from engaging in such acts and practices, and recovery of damages, plus attorneys' fees, costs, interest, and such other and further relief the Court deems just and proper.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company, demand judgment against Defendants, Auto Glass America, LLC, and Charles Isaly, as follows:

(a) a declaration that Defendants' acts and practices are per se violations of FDUTPA and that the assignments of benefits obtained in violation of the Sales Act, the FTC Rule, and FDUTPA are illegal and void;

(b) imposition of an injunction enjoining the Defendants from continuing to engage in such acts and practices;

(c) an award of Plaintiffs' actual damages, interest, costs, and attorneys' fees; and

(d) such other and further relief as this Court deems just and proper.

COUNT VIII – VIOLATION OF FDUTPA BY AGA BASED
ON ITS VIOLATION OF FLORIDA'S MOTOR VEHICLE REPAIR ACT

216.    This is an action by Plaintiffs against AGA and Isaly for a per se violation of Florida's Deceptive and Unfair Trade Practices Act based on AGA's violations of Florida's Motor Vehicle Repair Act ("Repair Act").

217.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138 above.

218.    Each Plaintiff is a "person" under Florida Statute §501.211(2) and an "aggrieved person" under Florida Statute §501.211(1), and is entitled to seek injunctive and declaratory relief, along with actual damages.

219.    Florida Statute §501.202(2) provides that FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

220.    Additionally, Florida Statute §501.203(7) defines consumer to include a business, corporation, and any commercial entity, however denominated.  Thus, Allstate is a "consumer," as well.

221.    Section 501.203 of FDUTPA states in pertinent part:

(3)    "Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2017:

*    *    *

(c)    Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

222.    The Repair Act is a statute which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

223.    AGA has violated and continues to violate the Repair Act in multiple ways as described herein with regard to its replacements of windshields for Allstate's insureds.

224.    Isaly actively and directly participated in or had substantial control over AGA's violations of the Repair Act.

225.    Defendants' actions in violating the Repair Act constitute per se violations of Florida Statute §501.204.

226.    As a result of Defendants' per se violations of the Repair Act, each Plaintiff has incurred actual damages.

227.    Plaintiffs, as the prevailing parties, are entitled to the recovery of their reasonable attorneys' fees and costs pursuant to Florida Statute §501.2105.

228.    By virtue of the foregoing, Plaintiffs seek a declaratory judgment declaring that the Defendants' acts and practices are per se violations of FDUTPA and that the assignments of benefits obtained in violation of the Repair Act and FDUTPA are illegal and void, an order enjoining the Defendants from engaging in such acts and practices, and recovery of damages, plus attorneys' fees, costs, interest, and such other and further relief the Court deems just and proper.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company, demand judgment against Defendants, Auto Glass America, LLC, and Charles Isaly, as follows:

(a) a declaration that Defendants' acts and practices are per se violations of FDUTPA and that the assignments of benefits obtained in violation of the Repair Act and FDUTPA are illegal and void;

(b) imposition of an injunction enjoining the Defendants from continuing to engage in such acts and practices;

(c) an award of Plaintiffs' actual damages, interest, costs, and attorneys' fees; and

(d) such other and further relief as this Court deems just and proper.

<u>COUNT IX – DECLARATORY JUDGMENT</u>

229.    This is an action by Plaintiffs against AGA and Isaly for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201.

230.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138 above.

231.    There is an actual case and controversy between Plaintiffs and AGA as to all inflated claims and charges submitted by AGA to Plaintiffs.  To the extent that any such claims and charges are for windshield replacements that were improperly or fraudulently induced by misrepresentations or omissions made to Allstate's insureds, that are the result of unfair or deceptive conduct under the Florida Deceptive and Unfair Trade Practices Act, that are the result of conduct by AGA that tortiously interfered with Plaintiffs' insurance contracts with their insureds, that constitute a breach of Plaintiffs' insurance contracts, that violate the Sales Act, that violate the FTC Rule, or that violate the Repair Act, Plaintiffs contend that no such claims and charges are owed to AGA and that AGA owes a refund to Plaintiffs for any amounts previously paid.

232.    AGA contends that its conduct does not preclude it from recovering inflated amounts from Plaintiffs for windshield replacements performed on vehicles insured by Plaintiffs.

233.    AGA will continue its improper conduct absent a declaration by this Court that its activities are unlawful and that Plaintiffs have no obligation to pay the inflated charges submitted by AGA.

234.    For the foregoing reasons, there is a bona fide, present, and practical need for a declaration as to all such claims and charges.

235.    Accordingly, Plaintiffs seek a judgment declaring that all claims or charges submitted by AGA to Plaintiffs for windshield replacements are not owed by Plaintiffs, that Plaintiffs are owed a refund for any amounts previously paid; and that the assignments of benefits obtained in violation of the Sales Act, the FTC Rule, the Repair Act, and FDUTPA are illegal and void.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company, demand judgment as follows against AGA:

(a) a declaration that claims or charges submitted by AGA to Plaintiffs for windshield replacements were improperly or fraudulently induced by misrepresentations or omissions made to Allstate's insureds, are the result of unfair or deceptive conduct under the Florida Deceptive and Unfair Trade Practices Act, and are the result of conduct by AGA that tortiously interfered with Plaintiffs' insurance contracts with their insureds, constituted a breach of Plaintiffs' insurance contracts, violated the Sales Act, violated the FTC Rule, or violated the Repair Act;

(b) a declaration that Plaintiffs have no obligation to pay AGA's pending claims or charges for windshield replacements and that Plaintiffs are owed refunds for any amounts previously paid;

(c) a declaration that the assignments of benefits obtained in violation of the Sales Act, the FTC Rule, the Repair Act, and FDUTPA are illegal and void; and

(d) such other and further relief as this Court deems just and proper.

<u>COUNT X – UNJUST ENRICHMENT</u>

236.     This is an action by Plaintiffs against AGA for unjust enrichment.

237.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 138 above.

238.     Plaintiffs are without an adequate remedy at law with regard to payments that were made to AGA on windshield claims induced by AGA's inequitable conduct.

239.     Plaintiffs have conferred benefits on AGA, in the form of payments on windshield claims, and AGA has accepted and retained those benefits under circumstances that make it inequitable for AGA to do so.

240.     Plaintiffs have made payments to AGA for windshield replacements that were unnecessary because the windshield damage could have and should have been repaired.

241.     AGA has been unjustly enriched by its retention of Plaintiffs' payments.

242.     Under equitable principals Plaintiffs are entitled to reimbursement of payments they have made to AGA for replacements of windshields for Allstate's insureds.

WHEREFORE, Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty

Insurance Company, demand judgment against Defendant, Auto Glass America, LLC, for

damages, interest, costs, and such other and further relief as this Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Allstate hereby requests a trial by jury on all issues so triable.

Dated this <u>20th</u> day of December, 2018.

*s/ Lori J. Caldwell*
LORI J. CALDWELL
Florida Bar No. 0268674
SALLY R. CULLEY
Florida Bar No. 0095060
DOUGLAS B. BROWN
Florida Bar No. 0242527
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
*Attorneys for Plaintiffs*
