ALLSTATE INSURANCE COMPANY,
an Illinois corporation; ALLSTATE FIRE
AND CASUALTY INSURANCE COMPANY,
an Illinois corporation; ALLSTATE INDEMNITY
COMPANY, an Illinois corporation; and
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, an Illinois
corporation,

    Plaintiffs,

v.           CASE NO:  6:18-CV-2184-ORL-KRS

AUTO GLASS AMERICA, LLC,
a Florida limited liability company, and
CHARLES ISALY, a citizen of Arizona,

    Defendants.

_____/

## NOTICE OF FILING AFFIDAVIT OF CHARLES ISALY
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

   PLEASE TAKE NOTICE that Defendants Auto Glass America, LLC and Charles Isaly

hereby file the attached Affidavit of Charles Isaly in support of their Motion to Dismiss.

Respectfully submitted,      Respectfully submitted,

s/Mac S. Phillips        s/Chad A. Barr
Fla. Bar No. 195413       Fla. Bar No.: 55365
PHILLIPS TADROS, P.A.     LAW OFFICE OF CHAD A. BARR, P.A.
Trial Counsel for Defendants    Trial Counsel for Defendants
212 SE 8th Street, Suite 103    986 Douglas Avenue, Suite 100
Fort Lauderdale, Florida 33316   Altamonte Springs, Florida 32714
T.  954.642.8885      T.  407.599.9036
F.  954.252.4621      F.  407.960.6247
E.  service@phillipstadros.com  E.  service@chadbarrlaw.com
   mphillips@phillipstadros.com    chad@chadbarrlaw.com
                 paralegal@chadbarrlaw.com

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that on February 4, 2019, we electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide notice to counsel for the Plaintiffs, Lori J. Caldwell, Esquire, Sally R. Culley, Esquire and Douglas B. Brown, Esquire, Rumberger, Kirk & Caldwell, P.A., Lincoln Plaza, Suite 1400, 300 South Orange Drive, Post Office Box 1873, Orlando, Florida 32802-1873.

<u>s/Mac S. Phillips</u>

ALLSTATE INSURANCE COMPANY,
an Illinois corporation; ALLSTATE FIRE
AND CASUALTY INSURANCE COMPANY,
an Illinois corporation; ALLSTATE INDEMNITY
COMPANY, an Illinois corporation; and
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, an Illinois
corporation,

        Plaintiffs,

v.                                  CASE NO:    6:18-CV-2184-ORL-KRS

AUTO GLASS AMERICA, LLC,
a Florida limited liability company, and
CHARLES ISALY, a citizen of Arizona,

        Defendants.

_____/

## AFFIDAVIT OF CHARLES ISALY

BEFORE ME, the undersigned notary public, personally appeared Charles Isaly who, after being duly sworn, deposes and says:

1.      My name is Charles Isaly. I am over 18 years of age and am competent to testify about the matters described in this affidavit based on personal knowledge.

2.      I am the sole owner and managing member of Auto Glass America, LLC ("AGA").

3.      AGA is in the business of providing windshield replacements to our customers, most of whom are in Florida. Among the customers we service are those insured with Allstate.

4.      In Florida, there is a law that says there is no deductible charged to customers for windshield replacement jobs. This means that our insured customers will not have to go out of pocket at all for our work, and we tell them so.

5.      When an Allstate insured hires AGA to replace his or her windshield, AGA's

process begins with a phone call to Allstate with the customer on the line to determine whether the customer is currently insured and has comprehensive coverage. Once that is confirmed, we make arrangements with the customer to replace the windshield. In exchange for providing the windshield replacement services, the customer executes an assignment of benefits in favor of AGA, which assigns to us the customer's benefits under his or her automobile insurance policy. Pursuant to the assignments, AGA bills Allstate directly after the job is complete.

6. The vast majority of the time, Allstate sends us payment but in amounts less than the amounts we invoice.

7. Whenever Allstate pays less than the invoiced amount, we typically receive a letter telling us that Allstate invokes its right to appraisal to evaluate and estimate the cost to remedy the broken windshield. The letters are usually sent by a company called AGIS (Auto Glass Inspection Services). Allstate insists on using AGIS as its appraiser on all cases. A copy of a typical "appraisal letter" is attached as Exhibit 1.

8. AGA's position is that appraisal is not appropriate, and that Allstate's chosen appraiser is far from "disinterested." For example, AGIS's website as of April 28, 2015 specifically says that its "mission is to verify auto glass damage for the insurance industry" and AGIS "has no affiliation with any companies in the glass industry and only serves large insurance companies." A screenshot of the web page is attached as Exhibit 2. Attached as Exhibit 3 is a letter we received from AGIS's attorneys in 2013 threatening to sue us because they think the umpire we chose in the past is not disinterested. We do not think we will have a fair appraisal if AGIS is involved.

9. Rather than engage in what we think is a rigged appraisal process, we file lawsuits against Allstate to ultimately recover the difference between what we bill and/or for declarations

2

about the meaning of various provisions in the Allstate insurance policy, including the payment and appraisal provisions.

10. When Allstate receives the lawsuits we file, it typically files motions to dismiss and to compel appraisal. AGA has prevailed on these motions the overwhelming majority of the time.

11. In the past, after Allstate's dismissal/appraisal motions are denied, Allstate chose to settle whatever cases were then pending. On the vast majority of cases, Allstate made an additional payment to AGA. Sometimes, Allstate points out why they think payment is not due on a particular claim and if we agree, we dismiss.

12. Most recently, after the dismissal/appraisal motions were denied in 44 cases at the trial court level, Allstate petitioned the Broward County Circuit Court's Appellate Division for certiorari relief in late 2017 and early 2018 as reflected on the case numbers on the list attached as Exhibit 4. When AGA and Allstate entered into a full and final settlement of hundreds of cases in April and May 2018, Allstate dismissed the 44 appeals with prejudice and we dismissed our corresponding lawsuits.

13. An exemplar copy of AGA's state court complaint, Allstate's dismissal/appraisal motion, transcript of the hearing on the dismissal/appraisal motion, order denying the motion, Allstate's Petition for Writ of Certiorari and voluntary dismissal of same with prejudice are all attached as Composite Exhibit 5. Various other state court rulings on Allstate's dismissal/appraisal motions are attached as Composite Exhibit 6.

14. I read the Complaint Allstate filed in this federal case and see that Allstate says we sued them over 1,400 times. So far, AGA has identified over 1,000 lawsuits that it has filed against Allstate and is currently investigating to determine whether there are any more. The cases we identified so far are on the list attached as Exhibit 7 to this affidavit.

15.     Of the 1,185 cases identified so far, approximately 600 have been settled on terms that are favorable to AGA and the rest remain pending. All of them were filed before Allstate this federal case.

16.     Prior to the 2018 global settlement, Allstate and AGA negotiated and globally settled scores of additional cases in April 2016. All in, AGA is unaware of any case in which Allstate answered a complaint or countersued us. Instead, Allstate simply settled once defeated on its dismissal/appraisal motions Likewise, Allstate has not filed answers, defenses or counterclaims in the cases that remain pending, more than 150 of which involve the same short-pay scenario described above and the rest involve Allstate's failure to pay anything or failure to pay interest on appraisal awards on older claims on which AGA voluntarily submitted to the appraisal process

FURTHER AFFIANT SAYETH NAUGHT.

CHARLES ISALY

SWORN TO AND SUBSCRIBED before me on this **4th** day of **February**, 2019 by Charles Isaly, who is __X__ personally known to me or ___ produced a photo ID establishing that the affiant is Charles Isaly, and who did take an oath.

NOTARY PUBLIC,
State of Arizona



OFFICIAL SEAL
JESSICA R RICH
Notary Public - Arizona
MARICOPA COUNTY
My Commission Expires
JULY 4, 2021

4



EXHIBIT 1



AUTO GLASS INSPECTION SERVICES

1/8/19

AUTOGLASS AMERICA
INS: FERNANDO ACEVEDO
REF: 906578
Veh: 2011 CHEVROLET CRUZE

Re: Rights to appraisal

ALLSTATE has invoked their rights to appraisal in regards to the above captioned glass claim. ALLSTATE has hired our company as their appraiser. To facilitate this process, each party will appoint and compensate a qualified appraiser to evaluate and estimate the cost to repair said damages. All other appraisal expenses will be shared equally. Each appraiser will be required to provide written documentation to support their actual cash value and the amount of loss. If the appraisers cannot reach agreement, they'll submit their differences to the umpire. The two appraisers, or a judge of a court of record, will choose an umpire. A written decision that is agreed upon by any two of these three persons will determine the amount you and your assigned shop will be compensated in settlement of the loss.

Let me know if you have any further questions.

Regards,

Orlando Dominguez
Auto Glass Inspection Services
877-286-1942 EXT 424
Orlando.dominguez@autoglassinspectionservices.com



EXHIBIT 2



**Call Us Today** 877-289-1942

5510 W. Chandler Blvd. Ste. 4
Chandler, AZ 85226   Map It

AUTO GLASS INSPECTION SERVICES    **HOME**   COMPANY   SERVICE AREAS   AGIS INFO   CONTACT US

| Service Areas | Auto Glass Inspection | About AGIS |
|---|---|---|
|  |  |  |
| See what states AGIS covers and new areas to come | Learn more about the services that AGIS provides and FAQ's | Learn more about Leadership and Our Mission at AGIS. |
| View Areas | Click Here | Read More |

## CUSTOMER SERVICE SURVEY



Auto Glass Inspection Services, Inc. (AGIS) mission is to verify auto glass damage for the insurance industry. In recent years the auto glass industry has seen fraudulent claims increase dramatically. There is a serious lack of over sight in the auto glass industry which lends itself to improper installation and suspect claims being reported.

There are many untrained installation technicians in the auto glass industry. They are responsible for installing windshields, which serve as a vehicle's integral structural component. If these windshields are not properly installed, they may cause serious injury, death or improper air bag deployment during an accident.

AGIS sole purpose is to report back to the insurance industry what type of damage exists or lack thereof. Our inspection data shows many claims that are reported for replacement have no damage or can simply be repaired. The same data shows that many repair claims that are reported have no repairable damage.

During the inspection process, we explain to policyholders the benefits of repairing a chip or small crack versus replacing the entire windshield. We then educate them on proper repair or replacement techniques depending on their claims.

AGIS has no affiliation with any companies in the glass industry and only serves large insurance companies.

## CONSUMER FACTS

### Can a pit be repaired?

No this is normal wear and tear, and can be as large as 1/8" in diameter. Only chips which have a black or silvery grey appearance like stars, bullseyes and cracks need to be repaired.

## INDUSTRY NEWS

**Auto Glass Week 2013**
*08/27/2013 Read More »*

**Your opinion is important to us!**
*08/22/2013 Read More »*

Copyright © 2015 Auto Glass Inspection Services, Inc. All rights reserved.

# EXHIBIT 3

# ALVAREZ & GILBERT, PLLC

NORTHSIGHT FINANCIAL CENTER
14500 N. NORTHSIGHT BLVD. SUITE 216
SCOTTSDALE, ARIZONA 85260

WWW.ALVAREZ-GILBERT.COM
TEL: 602-263-0203
FAX: 480-686-8708

*John T. Gilbert*
*Donald R. Alvarez*
*Steven G. Ford*
*Thomas V. Rawles*

EMAIL: SFORD@ALVAREZ-GILBERT.COM

VIA EMAIL, FACSIMILE, AND U.S. MAIL (AS INDICATED)

June 21, 2013

Barrett R. Smith
Auto Damage Experts, Inc.
P.O. Box 460
Dover, FL 33527

Dan Angelillo

Don Munro

Charles Islay

Jason Fry

Mark Lusnia
Facsimile:

Re:    *Demand for Recusal and/or Removal of Umpire*

Gentlemen:

This firm represents Auto Glass Inspection Services, Inc. ("AGIS") in its capacity as an appraiser for Esurance Insurance Company, Allstate Insurance Company, and Progressive Casualty Insurance Company and/or their respective affiliates (collectively, the "Insurers"). This correspondence addresses the status of umpire Barrett R. Smith in relation to approximately 117 auto glass claims (the "Claims") made by or otherwise on behalf of certain of the Insurers' respective policyholders (the "Insureds"). As you are aware, presently the Claims are in the appraisal process.

As most of you also are aware, AGIS recently requested that Mr. Smith recuse himself as umpire in the Claims. Mr. Smith did not comply with AGIS's request. Additionally, it is AGIS's understanding that neither the other appointed appraisers nor the subject automobile glass shops (the "Providers") presently are willing to join AGIS in relieving Mr. Smith of his duties. Nonetheless, in a final, pre-litigation effort to resolve this matter, AGIS once again reiterates its demand that Mr. Smith either recuse himself, or that the Appraisers and Providers endorse the AGIS's demand that Mr. Smith no longer serve as the umpire.

The need to immediately end Mr. Smith's tenure as umpire is based on information recently discovered by AGIS regarding Mr. Smith's activities in the field of automobile insurance "short pay" disputes and litigation, as well as on applicable law and guidelines. As explained by AGIS earlier, and previously unbeknownst to AGIS and undisclosed by Mr. Smith, Mr. Smith has taken an active role in promoting litigation by repair shops against insurers based on alleged underpayment by various insurers.

Indeed, Mr. Smith is part of what appears to be a pro-provider, anti-carrier, automobile repair industry "team" that provides industry consulting and legal advice to various providers around the country in relation to disputes with insurers over reimbursement rates. Specifically, the group appears to include Mr. Smith, Florida attorney A. Brent Geohagan, and shop owner/serial litigator Raymond Gunder, among others. The coordinated activities of these individuals are described in Mr. Smith's "Collision Digest" Facebook page, wherein he gleefully chronicles dispute results adverse to insurers and even goes so far as to characterize at least one insurer as engaging in "less than ethical and often egregious activities" in the area of alleged short pays by insurers. Copies of certain of the materials posted on the Collision Digest page are attached collectively hereto as Exhibit 1.

Mr. Smith did not specifically disclose any the foregoing activities in his curriculum vitae ("CV"), a copy of which is attached hereto as Exhibit 2. Instead, in his CV, Mr. Smith generically describes his activities as including consulting services in various areas of automotive damage. Nowhere in the CV (or anything else provided by Mr. Smith to AGIS or the Insurers) is any mention of Mr. Smith being a champion of provider "rights" and causes and a vocal critic of automobile insurers. Had AGIS and/or the Insurers been aware of Mr. Smith's activist endeavors, his candidacy for the role of umpire would have been scrutinized far more intensely and likely would have failed.

Against the factual backdrop set forth above, and for several reasons, Mr. Smith can no longer serve as umpire with regards to the Claims.

First, Mr. Smith's service as umpire runs afoul of The Code of Ethics for Umpires in Insurance Appraisals (the "Code"), a copy of which is attached hereto as Exhibit 3. As an initial violation, before accepting appointment as umpire, Mr. Smith failed to disclose the above-described activities, which should have been disclosed as falling within "professional . . . relationships which might reasonably affect impartiality or lack of independence *in the eyes of any of the parties.*" Code, Cannon II(A)(2) (emphasis added).[1] Here, in the eyes of AGIS and

---

[1] The Code directs that "[a]ny doubt as to whether or not disclosure is to be made should be resolved in favor of disclosure." Code, Cannon II(D).

the Insurers, Mr. Smith's industry relationships undermine his impartiality. Thus, with regards to the omitted disclosures, it is immaterial that Mr. Smith now self-servingly claims that his professional contacts with pro-provider groups will not impact his ability to fairly administer the Claims.

Also, in light of at least one party's request that Mr. Smith withdraw, he cannot properly continue as umpire under the circumstances. *See* Code, Cannon II(G)(2). No reasonable analysis of these facts could lead to the conclusion that the challenge to Mr. Smith's service as umpire is "not substantial," or that he could "nevertheless act and decide the [Claims] impartially and fairly." *See id.*

Second, and consistent with the Code, applicable law required Mr. Smith to disclose his pro-provider activities prior to accepting the umpireship. In a setting such as this, an umpire "has an *affirmative duty* to disclose any dealings that *might* create an impression of possible bias." *Weinger v. State Farm Fire & Cas. Co.*, 620 So.2d 1298, 1299 (Fla. App. 1993) (emphasis added).[2] The underlying public policy concerns were summarized by the court as follows: "'[T]he appearance of neutrality can be as important as neutrality itself because of the former's impact upon confidence in the proceedings by the parties and the public.'" *Id.* at 1300 (quoting *International Ins. Co. v. Schrager*, 593 So.2d 1196, 1197 (Fla. App. 1992)). Thus, the proper inquiry is whether the present facts create an appearance of impropriety, not whether Mr. Smith believes and/or says that he can perform impartially.

Moreover, the present circumstances and disclosure failures, if not properly remedied by removing Mr. Smith, will result in any decision likely being vacated. *See Weinger*, 620 So.2d at 1299 (failure to disclose "undermines the appearance of propriety and the confidence of the fairness of the proceedings and requires the vacation of [an] award") (citing *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 149-50 (1968)); *see also* §682.13(1)(b), Fla. Stat. (grounds for vacating award).

Third, permitting Mr. Smith to continue to serve as umpire deprives the Insurers of their ability to receive the benefits of the underlying insurance policies, which contemplate an umpire who is "impartial." *See, e.g.*, Esurance Policy, p. 28.

Fourth, Mr. Smith's activities are contrary to the promises he made in the Umpire Appointment Agreement, which include his avowals that he will serve as "an unbiased umpire in all areas of loss pertaining to this subject claim," that he is "impartial," and that he "can render an accurate and fair decision." Plainly, given Mr. Smith's actions, comments, and overall attitudes, as evidenced by his own words, Mr. Smith cannot possibly fulfill these commitments.

---

[2] The notion that Mr. Smith's bias is no longer an issue and/or was somehow waived because AGIS and/or the Insurers did not discover the underlying facts before Mr. Smith was selected is meritless. Indeed, as noted, Mr. Smith had an affirmative duty to make the disclosures to AGIS and the Insurers.

In light of the foregoing, it is hereby demanded that Mr. Smith immediately recuse himself from the Claims and withdraw as umpire. Alternatively, if that is not done, it is hereby demanded that all parties request and direct that Mr. Smith withdraw as umpire.

Finally, in the event that Mr. Smith's removal as umpire is not timely completed, please be advised that the AGIS reserves all rights to compel that result through legal processes. Among other things, such rights include seeking judicial declaration that Mr. Smith cannot properly serve as umpire with regards to the claims. We are confident that a judge would agree that Mr. Smith's actions and omissions herein are contrary to the underlying policies, the Code, and Florida law.

Please govern yourselves accordingly.

Sincerely,

ALVAREZ & GILBERT, PLLC.

Steven G. Ford

SGF:
Enclosures

cc:     Auto Glass Inspection Services, Inc.

EXHIBIT 4

| CUSTOMER | LT CASE NO | APP CASE NO |
|---|---|---|
| Tonya Womack | coce17-005712(51) | CACE 18-5153 |
| Barbra Murray | coce17-005472(51) | CACE18-5155 |
| Gregory Ortiz | cowe17-018799(82) | CACE17-18799 |
| Gerald Gabardi | cowe17-016347(82) | CACE17-22796 |
| Kendall Pancotti | cowe17-016345(82) | CACE17-22798 |
| Matt Grzeslo | cowe17-014321(82) | CACE17-22781 |
| Eric Herrera-Fuentes | cowe17-014324(82) | CACE17-22831 |
| Jeff Knorr | cowe17-014320(82) | CACE17-22797 |
| Laurie Aubry | cowe17-014319(82) | CACE 17-22841 |
| Djanna Kaminsky | cowe17-014315(82) | CACE17-22795 |
| James Furman 2 | cowe17-010641(82) | CACE17-22758 |
| Illir Muhametaj | cowe17-010645(82) | CACE17-22498 |
| Gregory Williams | cowe17-010644(82) | CACE17-22757 |
| Cezar Smith | cowe17-010648(82) | CACE17-22762 |
| Tim Fitzpatrick | cowe17-010649(82) | CACE17-22770 |
| Katerina Yakimovich | cowe17-010652(82) | CACE17-22582 |
| Todd Timmons | cowe17-012814(82) | CACE17-22779 |
| Joe Gibson | cowe17-012813(82) | CACE17-22780 |
| Marian Donovan | cowe17-003260(82) | CACE17-22545 |
| Susan Lentz | cowe17-003261(82) | CACE17-22484 |
| Arlene Adams | cowe17-003267(82) | CACE17-22396 |
| Jeff Murphy | cowe17-003253(82) | CACE17-22754 |
| Charles Baldwin | cowe17-003255(82) | CACE17-22371 |
| Karen Rodriguez | cowe17-003259(82) | CACE17-22799 |
| Jeremiah White | cowe17-003262(82) | CACE17-22432 |
| Chad Latour | cowe17-003265(82) | CACE17-22529 |
| Steve Lyons 2 | cowe17-003263(82) | CACE17-22628 |
| Brian Moore | cowe17-003286(82) | CACE17-22637 |
| Shon Gilbert | cowe17-003288(82) | CACE17-22510 |
| Richard Allen | cowe17-003264(82) | CACE17-22390 |
| Brittney Rimes | cowe17-003241(82) | CACE 17-22546 |
| Billy Wood | cowe17-003242(82) | CACE17-22463 |
| Edward Schultz | cowe17-003243(82) | CAE17-22641 |
| Ted Kubisek | cowe17-003244(82) | CACE17-22491 |
| Beth Ann & Robert Hering | cowe17-003245(82) | CACE17-22394 |
| Daniel Nelson | cowe17-003248(82) | CACE17-22659 |
| Joe Johnson | cowe17-003282(82) | CACE17-22373 |
| Kenneth Woodson | cowe17-003285(82) | CACE17-22581 |
| Amy Trucano | cono17-003394(73) | CACE17-21782 |
| Angelina Davinport | cono17-001981(72) | CACE17-21947 |
| James Shank | cono17-002097(73) | CACE17-21872 |
| Diane Bloom | cono17-003385(73) | CACE17-21833 |

Erica Gantley   cono17-001041(72)   CACE 17-22883



EXHIBIT 5

IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA

AUTO GLASS AMERICA, LLC,
as assignee of TONYA WOMACK,

      Plaintiff,                        CASE NO.: 17-05712 COCE 51

vs.

ALLSTATE INSURANCE COMPANY,

      Defendant,

_____/

## PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, the Plaintiff AUTO GLASS AMERICA, LLC ("Plaintiff") as post-loss assignee of TONYA WOMACK by and through its Undersigned attorney, and complaining of Defendant(s) ALLSTATE INSURANCE COMPANY ("Defendant"), states as follows:

### INTRODUCTION

1. Plaintiff brings this action for declaratory relief against Defendant as a result of Defendant's application of ambiguous and unclear policy terms relative to the handling of the claim at issue.

### PARTIES, JURISDICTION AND VENUE

2. At all times material hereto, Plaintiff was and is a Florida corporation with its principal place of business in the State of Florida.

3. At all times material hereto, the insured TONYA WOMACK was insured by Defendant under Policy Number 961588980 (the "Policy").

4. At all times material hereto, Defendant was a foreign corporation authorized to conduct and was conducting business in Broward County, Florida.

5. At all times material hereto, Defendant maintained an agent or other representative in

1

Broward County, Florida. Venue is proper in Broward County, Florida.

## GENERAL ALLEGATIONS

6. On or about January 1, 2017 the insured's vehicle sustained windshield glass damage covered pursuant to the Policy of insurance issued by Defendant.

7. On or about March 20, 2017 the insured executed an assignment of benefits to AUTO GLASS AMERICA, LLC which assigned all of insured's rights, benefits and interests to AUTO GLASS AMERICA, LLC for the loss contemplated herein.

8. As a result of the windshield glass damage, AUTO GLASS AMERICA, LLC performed the necessary repair and replacements and provided Defendant with an invoice for payment.

9. Demand was made upon Defendant to pay said benefits pursuant to the Policy and Florida law, and Plaintiff and the assignor have otherwise complied with all contractual and statutory conditions precedent to recover, or same has been waived by Defendant.

10. Upon information and belief, after partial payment of the loss, Allstate demanded appraisal.


## DECLARATORY JUDGMENT

11. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs "1" through "10" above with the same force and effect as if set forth more fully herein.

12. Plaintiff is in doubt as to its rights under the policy of insurance.

13. Plaintiff has an interest averse to Defendant and the declaration requested deals with a present ascertainable state of facts as presented in the allegations set forth herein.

14. Florida Statute § 86.021 creates a right to declaratory judgment when a question of construction or validity arises under a contract.

2

15. The purpose of a declaratory judgment is to afford relief form a person's insecurity and uncertainty with respect to their rights, status, or other equitable or legal relations.

16. There is a bona fide, actual, present need for a declaratory judgment since to determine whether there is a disagreement as to the amount of loss it is necessary to determine whether the defendant's policy clearly and unambiguously informs insureds and its assignees how the amount is actually determined or whether the language used by the defendant to limit its liability is capable of more than one reasonable interpretation.

17. At all times material hereto, the policy of insurance contained the following language regarding *Auto Comprehensive Insurance Coverage:*

> **Allstate will pay for direct and accidental loss to the insured auto or a non-owned auto not caused by collision.**
>
> **Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.**

18. At all times material hereto, the applicable policy states as follows with respect to the limitation of Defendant's liability to pay for the loss of a covered windshield claim:

> *Our limit of liability is the least of:*
>
> 1. *The actual cash value of the property at the time of loss, which may include, which may include a deduction for depreciation; or*

2. *the cost to repair or replace, as determine by us, the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations.*

3. *$500, if the loss is to a covered trailer not described on the Policy Declarations.*

[Emphasis added].

<u>COUNT 1 – PETITION FOR DECLARATORY RELIEF</u>
<u>THE INTERPRETATION OF THE TERM "COST TO REPAIR OR REPLACE"</u>

19. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs "1" through "18" above with the same force and effect as if set forth more fully herein.

20. That the Limit of Liability provision limits Defendant's exposure to the *"cost to repair or replace."*

21. That the methodology utilized to determine the *"cost to repair or replace"* is neither identified nor is the term defined in the policy.

22. That the plain meaning of Defendant's *"cost to repair or replace the property or part"* policy language obligates Defendant to pay Plaintiff the cost to repair or replace the windshield at issue.

23. That Plaintiff's bill charged the "cost to repair or replace," in accordance with the insurance policy.

24. Instead, Defendant refuses to pay the *cost to repair or replace* the windshield and seeks

4

to limit reimbursement in accordance with an artificial and unilaterally created methodology, unknown to the insured or Plaintiff.

25. That Defendant's failure to define the term, *"cost to repair or replace"* in the definition section of the policy, renders the policy language susceptible to more than one reasonable interpretation.

26. That there is no impediment which would have prevented Allstate from providing the clear definition of the *"cost to repair or replace"* within the policy.

27. That Plaintiff has an interest adverse to Defendant and the declaration requested deals with a present ascertainable state of facts as presented in the allegations set forth above.

28. That the policy fails to provide any standard or measure against which an insured or its assignee can conjure the amount it may expect to be reimbursed.

29. At all times material hereto, the term *"cost to repair or replace"* is undefined, unclear, ambiguous and susceptible of more than one reasonable interpretation

30. At all times material hereto, the language: *using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers"* is vague, ambiguous and capable of more than one reasonable interpretation.

31. At all times material hereto, Florida law requires that ambiguous policy terms capable of more than one reasonable interpretation be resolved in favor of the insured or its assignee and provide the greatest coverage affordable consistent with the interpretation favored by the insured.

32. As a result of the uncertainty created by the language used in Defendant's policy of insurance, it has become necessary for Plaintiff to retain the services of the undersigned

5

attorneys pursuant to F.S. § 627.428.

33. The relief sought is not merely giving of legal advice by the Courts as Plaintiff has an equitable interest in resolving the issues raised.

34. Plaintiff is entitled to recover attorneys' fees and costs under F.S. § 627.428.

35. The Plaintiff is in doubt as to its rights under the policy of insurance.

WHEREFORE, Plaintiff AUTO GLASS AMERICA, LLC ("Plaintiff") as post-loss assignee of TONYA WOMACK respectfully requests that this Court grant Declaratory Judgment for the Plaintiff, declaring:

A) That the Policy term *"cost to repair or replace"* is vague, ambiguous and capable of more than one reasonable interpretation.

B) That the Policy language *"using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers"* is vague, ambiguous and capable of more than one reasonable interpretation.

C) That the Court reserves as to supplemental monetary relief.

### COUNT 2 – PETITION FOR DECLARATORY RELIEF
### APPRAISAL IS NOT APPLICABLE

36. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs "1" through "18" above with the same force and effect as if set forth more fully herein.

37. That the policy provisions regarding the right to appraisal and the limit of liability are inherently inconsistent and ambiguous and require judicial determination prior to the Plaintiff being required to engage in the appraisal process.

38. At all times material hereto, the applicable policy states as follows with respect to the limitation of Defendant's liability to pay for the loss of a covered windshield claim:

6

*Our limit of liability is the least of:*

1. *The **actual cash value of the property** at the time of loss, which may include, which may include a deduction for depreciation; or*

2. *the **cost to repair or replace**, as determine by us, the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations.*

3. *$500, if the loss is to a covered trailer not described on the Policy Declarations.*

[Emphasis added].

39. At all times material hereto the appraisal provision in the policy states:

*Both you and Allstate have a right to demand an appraisal of the loss. Each will appoint and pay a competent and disinterested appraiser and will equally share other appraisal expenses. The appraisers, or a judge of a court of record, will select an umpire to decide any differences. **Each appraiser will state separately the actual cash value** and the **amount of the loss**. An award in writing by any two appraisers will determine the loss payable.*

[Emphasis added]

40. That the actual cash value pertains only to the <u>property</u>, which includes the vehicle itself

and other types of property which may be covered under the policy, such as Sound System and Tape Coverage.

41. That the Limit of Liability provision requires a determination as to the **LEAST OF** the *actual cash value* and the *cost to repair or replace*.

42. In a windshield repair or replacement claim, the cost to repair or replace the part will always be LESS THAN the *actual cash value.*

43. Pursuant to the appraisal provision, appraisers are required to state separately both the *actual cash value* AND the *amount of the loss*, therefore; an appraisal to determine the cost to repair or replace a minor part, such as a windshield, was never contemplated by the policy.

44. In a windshield claim, when it is determined that a part can be repaired or replaced, there is never a need to determine the *actual cash value* of the property.

45. Because there is never a need to determine the *actual cash value* of the property, there is no basis for appraisal.

46. That Plaintiff has an interest adverse to Defendant and the declaration requested deals with a present ascertainable state of facts as presented in the allegations set forth above.

47. As a result of the uncertainty created by the language used in Defendant's policy of insurance, it has become necessary for Plaintiff to retain the services of the undersigned attorneys pursuant to F.S. § 627.428.

48. The relief sought is not merely giving of legal advice by the Courts as Plaintiff has an equitable interest in resolving the issues raised.

49. Plaintiff is entitled to recover attorneys' fees and costs under F.S. § 627.428.

50. The Plaintiff is in doubt as to its rights under the policy of insurance.

WHEREFORE, Plaintiff AUTO GLASS AMERICA, LLC ("Plaintiff") as post-loss assignee of TONYA WOMACK respectfully requests that this Court grant Declaratory Judgment for the Plaintiff, declaring:

(A) That the Defendant's policy provision regarding the right to appraisal is vague, ambiguous, and in conflict with the limit of liability provision.

(B) That the Defendant's policy provision regarding the right to appraisal does not apply to repair or replacement of which windshield of the vehicle, but to situations which require an actual cash value determination.

(C) That since the appraisers are required to state separately both the *actual cash value* and *the amount of the loss*, an appraisal to determine the *cost to repair or replace* a windshield was never contemplated by the policy.

(D) That, in the alternative, when it is determined that a windshield can be repaired or replaced, there is never a need to determine the *actual cash value* of the property, and thus; because there is never a need to determine the *actual cash value* of the property, there is no basis for appraisal.

(E) That the Court reserves as to supplemental monetary relief.


### COUNT 3 – PETITION FOR DECLARATORY RELIEF
### APPRAISAL VIOLATES THE PROHIBITIVE COST DOCTRINE
### *IN THE ALTERNATIVE*

51. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs "1" through "18" above with the same force and effect as if set forth more fully herein.

52. That the appraisal provision is unenforceable based on theories of unconscionability and the Prohibitive Cost Doctrine.

53. That the cost of enforcing the Policy's appraisal provision will approach or exceed the amount of

the claim, consequently prohibiting any benefits of bringing such claims in these types of windshield repair and/or replacement cases.

54. At all times material hereto the appraisal provision in the policy states:

> Both you and Allstate have a right to demand an appraisal of the loss. **_Each will_** appoint and **_pay_** a competent and disinterested **_appraiser and will equally share other appraisal expenses._** The appraisers, or a judge of a court of record, will select an umpire to decide any differences. Each appraiser will state separately the actual cash value and the amount of the loss. An award in writing by any two appraisers will determine the loss payable.
>
> [Emphasis added]

55. For an insured to claim windshield repair or replacement benefits once appraisal is demanded under the policy's appraisal provision, the insured must (1) pay to hire an appraiser; (2) pay half to hire an umpire; and (3) pay half of any other appraisal expenses.

56. Appraisal costs are substantially higher than litigation costs in that they are non-recoverable.

57. Enforcement of the appraisal provision in a windshield claim precludes the insured from effectively claiming comprehensive benefits as the appraisal participation costs exceed or approach the amount that is due and owing.

58. An appraisal to determine the cost to repair or replace a windshield would place the Plaintiff in a situation where it would be prohibitively costly and in violation of the Prohibitive Cost Doctrine.

59. That Plaintiff has an interest adverse to Defendant and the declaration requested deals with a present ascertainable state of facts as presented in the allegations set forth above.

60. Plaintiff is entitled to a declaratory judgment on the issues raised herein prior to requiring the plaintiff to decide whether there is an actual disagreement as to the amount of the payment.

61. As a result of the uncertainty created by the language used in Defendant's policy of insurance, it

has become necessary for Plaintiff to retain the services of the undersigned attorneys pursuant to F.S. § 627.428.

62. The relief sought is not merely giving of legal advice by the Courts as Plaintiff has an equitable interest in resolving the issues raised.

63. Plaintiff is entitled to recover attorneys' fees and costs under F.S. § 627.428 (2013).

64. The Plaintiff is in doubt as to its rights under the policy of insurance.

WHEREFORE, Plaintiff AUTO GLASS AMERICA, LLC ("Plaintiff") as post-loss assignee of TONYA WOMACK respectfully requests that this Court grant Declaratory Judgment for the Plaintiff, declaring:

(A) That the high cost of participating in appraisal in this type of claim, as provided by the policy, approaches or exceeds the amount of the claim, therefore rending it unenforceable.

(B) That the Court reserves as to supplemental monetary relief.

### COUNT 4 – PETITION FOR DECLARATORY RELIEF
### FAILURE TO SELECT DISINTERESTED APPRAISER
*IN THE ALTERNATIVE*

65. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs "1" through "18" above with the same force and effect as if set forth more fully herein.

66. That the policy expressed the parties' clear intention to restrict appraisers to individuals who are, in fact, "disinterested."

67. At all times material hereto the appraisal provision in the policy states:

*Both you and Allstate have a right to demand an appraisal of the loss. **Each will appoint and pay a competent and <u>disinterested</u> appraiser** and will equally share other appraisal expenses. The appraisers, or a judge of a court of record, will select an umpire to*

> decide any differences. Each appraiser will state separately the
> actual cash value and the amount of the loss. An award in writing
> by any two appraisers will determine the loss payable.

[Emphasis added]

68. Upon information and belief, Allstate has appointed an appraiser that is not disinterested as a result of a pre-existing financial relationship with Allstate.

69. That Defendant's chosen appraiser has no affiliation with any companies in the glass industry and only serves large insurance companies.

70. Defendant's chosen appraiser is a habitual appraiser for Defendant and large insurance companies.

71. Defendant's chosen appraiser has previously threatened legal action against windshield repair and replacement facilities.

72. Defendant has not complied with the policy's appraisal provision as the Defendant's chosen appraiser is not "disinterested."

73. Defendant contumaciously continues to select the chosen appraiser despite Plaintiff's many efforts to remove the appraiser for its failure to be disinterested.

74. The right to appraisal provision is further vague and ambiguous since it requires each party to appoint a "competent" and "disinterested" appraiser without defining those terms and creating no procedural mechanism to determine or challenge whether said appraiser is "competent" and/or "disinterested."

75. That Plaintiff has an interest adverse to Defendant and the declaration requested deals with a present ascertainable state of facts as presented in the allegations set forth above.

76. Plaintiff is entitled to a declaratory judgment on the issues raised herein prior to requiring the

plaintiff to decide whether there is an actual disagreement as to the amount of the payment.

77. As a result of the uncertainty created by the language used in Defendant's policy of insurance, it has become necessary for Plaintiff to retain the services of the undersigned attorneys pursuant to F.S. § 627.428.

78. The relief sought is not merely giving of legal advice by the Courts as Plaintiff has an equitable interest in resolving the issues raised.

79. Plaintiff is entitled to recover attorneys' fees and costs under F.S. § 627.428 (2013).

80. The Plaintiff is in doubt as to its rights under the policy of insurance.

WHEREFORE, Plaintiff AUTO GLASS AMERICA, LLC ("Plaintiff") as post-loss assignee of TONYA WOMACK respectfully requests that this Court grant Declaratory Judgment for the Plaintiff, declaring:

(A) That the appraisal provision is further vague and ambiguous by failing to define "competent" and "disinterested" appraisers and providing no mechanism for determining and challenging appointed appraisers.

(B) That the Defendant's chosen appraiser does not meet the policy requirements of a "disinterested" appraiser.

(C) That the Court reserves as to supplemental monetary relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was sent via eservice this 14 day of June 2017 to Counsel of Record.

**EMILIO STILLO, PA**
7320 Griffin Rd., Suite 203
Davie, FL 33314
Phone No.: (954) 584-2563
Facsimile No.: (954) 584-3932
eservices@emiliostillopa.com

_____
EMILIO STILLO
Bar No. 0158593

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CIVIL DIVISION

| | |
|---|---|
| AUTO GLASS AMERICA, LLC A/A/O TONYA WOMACK, | CASE NO. COCE-17-005712 DIV 51 |
| PLAINTIFF(S), | |
| VS. | |
| ALLSTATE INSURANCE COMPANY, | |
| DEFENDANT(S). | |

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT, DEMAND INTO APPRAISAL, MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY, AND MOTION TO DISMISS ANY CLAIM FOR ATTORNEY'S FEES

Defendant, ALLSTATE PROPERTY AND CASUALTY COMPANY, by and through the undersigned counsel, pursuant to Florida Rule of Civil Procedure 1.140 and 1.280, hereby file this Motion to Dismiss the Plaintiff's Complaint, Demand into Appraisal, Motion for Protective Order as to Plaintiff's Demand for Discovery, and Motion to Dismiss any Claim for Attorney's Fees in support thereof state as follows:

### FACTS AND ALLEGATIONS

1. The above captioned matter is a first party claim for comprehensive windshield insurance benefits sought by Plaintiff's as an alleged assignee.[1]

2. There is a dispute as to the ***total amount of loss only*** for the windshield of the subject vehicle.[2]

---

[1] Allstate does not stipulated to standing or to the validity of any purported assigned to file and maintain the subject action and reserves its right to challenge the same.
[2] Allstate further reserves its right to challenge coverage should future discovery/investigation reveal coverage does not exit.

3.     ALLSTATE received an invoice from Plaintiff seeking payment for alleged windshield repair work done to the subject vehicle on March 20, 2017.

4.     The receipt of Plaintiff's invoice, after the alleged repair/replacement was already completed, was the first notice to ALLSTATE of the purported windshield damage.

5.     ALLSTATE agreed to pay its determined amount of loss for the alleged repairs and a check for the same was issued by ALLSTATE and received/deposited by the Plaintiff on April 3, 2017, merely (8) business days after the invoice.

6.     The ALLSTATE policy issued to the alleged assignor, like most automobile policies, provides a method for the insured and insurance company to resolve disputes as to damages and values without the need for a lawsuit or litigation. The method is called Appraisal. The Appraisal clause is set forth in the subject Policy.

7.     Prior to this lawsuit being filed, ALLSTATE sent Plaintiff and its insured a letter which stated that Allstate was invoking their right to appraisal, immediately putting them on notice of the same. The letter listed Allstate's chosen appraiser.

8.     Plaintiff accepted ALLSTATE's aforementioned payment, and never contacted ALLSTATE or in any way noticed ALLSTATE that it disputed the amount of loss payment amount. Likewise, Plaintiff failed to respond to ALLSTATE's letter invoking appraisal in the event of a dispute, and made no attempts to participate in the appraisal process or comply with the conditions of the subject Policy's appraisal provision. Instead, without notice or warning, Plaintiff filed the subject action.

9.     The filing of the subject lawsuit was ALLSTATE's first notice that there was a **dispute** as to the amount of loss paid to Plaintiff for the subject claim.

10. The applicable insurance policy Insured does not provide a timeframe for payment of comprehensive coverage insurance benefits. But even if there were a timeframe, Plaintiff fails to allege in its Complaint how long it took for Allstate to issue payment. Plaintiff likely omitted when Allstate issued payment from its Complaint because it only took Allstate (8) business days from the date of the invoice to issue said payment. This is a clear indication of a race to the courthouse lawsuit.

11. ALLSTATE asserts that the Plaintiff's claim should be dismissed for failure to comply with the Policy's appraisal provision and all obligations under the contract, which is a condition precedent to filing/maintaining a lawsuit.

12. ALLSTATE asserts that Plaintiff's Complaint should also be dismissed for lack of standing, failure to state a cause of action/failure to comply with Florida Civil Rules of Procedure 1.130 or Small Claims Rules 7.050(a)(1).

## A) MOTION TO DISMISS COMPLAINT DUE TO LACK OF STANDING AND MEMORANDUM OF LAW IN ITS SUPPORT

13. Initially, the instant case should be dismissed as the Plaintiff does not have standing to maintain this cause of action. Specifically, Plaintiff has not demonstrated that it has received and /or attached a copy of the alleged assignment of the benefits from the insured in violation of Rule 1.130(a).

14. An assignment is defined as: "a transfer or setting over of property, or of some right or interest therein, from one person to another; the term denoting not only the act of transfer, but also the instrument by which it is effected". Black's Law Dictionary (7th ed. 1999).

15. Florida Rule of Civil Procedure 1.130(a) provides:

Instruments Attached. All bonds, notes, bills of exchange, contracts, accounts, or documents upon which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading. No papers shall be unnecessarily annexed as exhibits. The pleadings shall contain no unnecessary recitals of deeds, documents, contracts, or other instruments.

16.     In Florida, the black letter rule of assignment creation is: "Any instruction document or act that vests in one party the right to receive funds arguably due to another party operates as an equitable assignment." See McClure v. Century Estates, Inc., 96 Fla. 568, 120 So. 4 (Fla. 1928).

17.     It is well settled Florida law that under Progessive Express Insurance Company v. McGrath Community Chiropractic: "The assignment of personal injury protection (PIP) benefits is not merely a condition precedent to maintain an action on a claim held by the person or entity who filed the lawsuit; rather, it is the basis of the claimant's standing to invoke the processes of the court in the first place." 913 So. 2d 1281. The Progressive case makes it clear that once it has been proven that an assignment is invalid the case must be dismissed for lack of standing.

18.     In essence, Plaintiff's failure to attach a valid assignment cannot vest in the Plaintiff the right to assert this action. Plaintiff doesn't not have standing to bring the instant matter and Plaintiff failed to secure a valid assignment as a condition precedent to filing this action.

19.     Further, Plaintiff has failed to comply with Florida Rules of Procedure 1.130 and Small Claims Rules 7/050(a)(1), which both require that the written instrument a complaint is based on be attached thereto. See also Samuels v. King Motor Co. of Ft. Lauderdale, 782 So. 2d 489 (Fla. 4th DCA 2001); Safeco Insurance Co. of America v. Ware, 401 So. 2d. 1129 (Fla. 4th

DCA 1981). A pleading is subject to dismissal if the instrument that forms the basis for a cause of action therein is not attached to the same. See, e.g., Samuels, 782 So. 2d at 500; Jeff-Ray Corp. v. Jacobson, 566 So. 2d 885 (Fla. 4th DCA 1990).

20.     The object of these rules is simply—to fully apprise one's opponent of the nature and extent of the claims made against him so that he has a fair opportunity to respond in an intelligent manner and prepare his evidence. See, e.g., Sachse v. Tampa Music Co., 262 So 2d. 17 (Fla. 2d DCA 1980), U.S. Rubber Products v. Clark, 200 So. 385 (Fla. 1941)(same goal of previous version of rule). Accordingly, a pleading does not state a cause of action if it is based upon an illegible instrument. See e.g., Contractors Unlimited, Inc. v. Nortrax Equipment Co. Southeast, 833 So.2d 286 (Fla. 5th DCA 2002)(default judgment against guarantor set aside where copy of guaranty attached to complaint was substantially illegible)

21.     Plaintiff has failed to attach to its Complaint the alleged assignment of benefits or a copy of the invoice for the purported repair work. Likewise, Plaintiff has also failed to attach to its Complaint a copy of the subject insurance policy. Plaintiff even names the wrong Defendant in its complaint. Accordingly, Plaintiff's complaint should be dismissed as a matter of law.

22.     Even if a proper Assignment of Benefits was executed and attached it would not be sufficient to confer standing on the Plaintiff. An assignment is defined as a voluntary act of transferring a right or an interest. *Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co.*, 185 So. 3d 638, 641 (Fla. 2d DCA 2016). It is the transfer of a complete and present right from one person to another. *See Continental Cas. Co. v. Ryan Inc.*, 974 So. 2d 368, 376 (Fla. 2008); *Bioscience W.*, 185 So. 3d at 642 (contractor was permitted to step into the insured's shoes where there was a vested insurable interest). Further in this case, the Insured signed a clear screened

tablet that did not contain an assignment or any language to that effect. Therefore the assignment, is unenforceable as a whole. Defendant has affidavit from the insured and would provide a copy to the court upon request. This affidavit has been previously sent to Plaintiff in attempts to have the case dismissed.

23. "All contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment." *Kohl v. Blue Cross & Blue Shield of Fla., Inc.*, 988 So. 2d 654, 658 (Fla. 4th DCA 2008). Pursuant to Florida Statute Section 627.422, "A policy may be assignable, or not assignable, as provided by its terms." The statute, therefore, "expressly states that the terms of an insurance policy determine its assignability." *Lexington Ins. Co. v. Simkins Indus.*, 704 So. 2d 1384 (Fla. 1998).

24. The policy here contains an express non-assignment clause:

> **You** may not transfer this policy or assign any interest in this policy, other than benefits payable under **Part III, Personal Injury Protection**, to another person without **our** written consent. However, if **you** die this policy will provide coverage until the end of the premium period for **your** legal representative while acting as such and persons covered on the date of **your** death.

*See* applicable insurance policy.

25. Post-loss assignments are nevertheless upheld even if an insurance policy contains a specific provision precluding an insured's post-loss assignments of benefits without the insurer's consent. *See, e.g., One Call Prop. Servs. Inc.*, 165 So. 3d 749, 755 (Fla. 4th DCA 2015). Importantly, however, in order for a post loss assignment to be valid, the right to payment must have accrued under the policy and vested in the insured. *See, id.* (stating "as long as an insured complies with all policy conditions, a third-party assignee may recover benefits on a covered loss").

26. The Plaintiff's assignment is ineffective first because of the way it was obtained and second, because the right to additional payment[3] has not accrued and vested in the insured. There has been no determination that any additional payments are due and owing because the insured has not complied with the appraisal condition of the policy – the only way in which the amount of loss is to be decided. Unless and until any additional amounts are due and owing through the appraisal, there is no current and vested right to any payment. In short, until the appraisal is complete and the amount of further payment, if any, is determined, there is no vested right for the insured to assign.

27. Further, "[a]ssignment of a right to payment under a contract does not eliminate the duty of compliance with contract conditions." *Shaw v. State Farm Fire & Cas. Co.*, 37 So. 3d 329, 332 (Fla. 5th DCA 2010), *disapproved on other grounds*, *Nunez v. Geico Gen. Ins. Co.*, 117 So. 3d 388 (Fla. 2013). The Plaintiff, as a third-party assignee, however, is not liable for performance of any duty under a contract. *Id*. However, the duties and obligations under the contract is still owed and required by the assignor.

**B) MOTION TO DISMISS FOR FAILURE TO SATISFY A CONDITION PRECEDENT AND DEMAND FOR APPRAISAL**

28. Without waiving the Defendant's aforementioned Motion to Dismiss, the Defendant demands appraisal pursuant to the language of the applicable policy.

29. During the applicable policy period with ALLSTATE, the windshield of the Insured's vehicle was allegedly damaged such that it had to be replaced.

---

[3] Payment was already made for the amount of loss. Pursuant to the policy, any additional payment requires appraisal of the loss.

30.     The Insured purportedly retained the services of AUTO GLASS AMERICA, LLC, to effectuate the windshield repairs.

31.     Plaintiff submitted an invoice to ALLSTATE, and such invoice was in an amount in excess that which ALLSTATE is obligated to pay pursuant to the terms and conditions of the applicable policy of insurance.

32.     On or about April 3, 2017, the Defendant submitted payment to Plaintiff pre-suit, for the *amount of loss*, in compliance with the terms of the policy with ALLSTATE.

33.     On or about March 29, 2017, ALLSTATE demanded appraisal for the remaining billed amount pursuant to the terms and conditions of the applicable policy of insurance.

34.     Defendant and/or ALLSTATE are hereby invoking appraisal again in this case pursuant to the applicable policy provisions.

35.     Plaintiff prematurely filed this lawsuit on April 12, 2017, merely (16) business days after the invoice, seeking inflated payment of glass repairs. Previous to the filing, Plaintiff failed to make any efforts to resolve the dispute by contacting ALLSTATE and advising of any issues that prohibited them from complying with the obligations under the policy.

36.     In pertinent part, the applicable policy of insurance provides as follows:

**Right to Appraisal**

Both **you** and **we** have a right to demand an appraisal of the loss. Each will appoint and pay a competent and disinterested appraiser and will equally share other appraisal expenses. The appraisers, or a judge of a court of record, will select an umpire to decide any differences. Each appraiser will state separately the actual cash value and the amount of loss. An award in writing by any two appraisers will determine the loss amount payable.

See applicable insurance policy and declaration page.

37.     Compliance with the terms and conditions of the policy, namely participating in appraisal once demanded, is a *condition precedent* to filing suit:

> **Action Against Allstate**
> No one may sue **us** under this coverage unless.
> 1.  there is full compliance with all terms of this policy; and
> 2.  at least 30 days have passed since the required notice of accident and reasonable proof of claim were filed with **us**.

See applicable insurance policy and declaration page.

38.     ALLSTATE has not waived its right to appraisal, and has reached out to Plaintiff and the Insured on multiple occasions, in good faith, to have the issue resolved *pre litigation*. All attempts pre-suit were ignored by the Plaintiff.

39.     Per the policy, all conditions precedent must be complied with before suit can be filed. Under Florida law, a "no action" clause in an insurance contract may operate as a condition precedent barring suit against the insurer until the insured complies with relevant policy provisions. Langhorne v. Fireman's Fund Ins. Co., 432 F. Supp. 2d 1274 (N.D. Fla. 2006).

40.     Plaintiff failed to participate in appraisal and, instead, filed this lawsuit in non-compliance with the terms and conditions of the policy. This lawsuit should therefore be dismissed until Plaintiff has complied with the terms and conditions of the policy – namely the appraisal process.

41.     Florida courts have voiced a judicial preference for the resolution of conflicts through any extra-judicial means, such as appraisal, for which the parties have themselves contracted. See State Farm Fire & Cas. Co. v. Middleton, 648 So. 2d 1200, 1201-1202 (Fla. 3rd Dist. Ct. App. 1995).

42. It is also well settled that once the appraisal provision of an insurance policy has been properly invoked, further proceedings should be conducted in accordance with the appraisal provision, rather than by wholly different proceedings contemplated by the appraisal agreement. See Allstate Ins. Co. v. Suarez, 833 So. 2d 762, 766 (Fla. 2002).

## MEMORANDUM OF LAW APPRAISAL CLAUSE

43. There are three elements for the courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and, (3) whether the right to arbitration is waived. Heller v. Blue Aerospace, LLC., 112 So. 3d 635 (Fla. 4th DCA 2013).

44. Florida law is clear that a Court **must compel arbitration** when an arbitration agreement and arbitrable issues exist and the right to arbitrate has not been waived. Ballen Isles Country Club, Inc., v. Dexter Realty, 24 So. 3d 649, 652 (Fla. 4th DCA 2009). Any action or proceedings involving an issue subject to arbitration should be stayed if an application thereof has been made. Miller & Solomon General Contractors, Inc., v. Brennan's Glass Co., Inc., 824 So. 2d (Fla. 4th DCA 2002).

45. Appraisal clauses are similar to arbitration clauses, and as such they are considered a condition precedent to any recovery under an insurance policy. See Preferred Mut. Ins. Co. v. Martinez, 643 So. 2d 1101, 1102 (Fla. 3d DCA 1994)(citing Transamerica Ins. Co. v. Weed, 420 So. 2d 370 (Fla. 1st DCA 1982); see also Opar v. Allstate Ins. Co., 751 So. 2d 758, 759 (Fla. 1st DCA 2000); U.S. Fire Ins. Co. v. Franko, 443 So. 2d 170 (Fla. 1st DCA 1983); Fla. Farm Bureau Ca. Ins. Co. v. Sheaffer, 687 So.2d 1331, 1332 (Fla. 1st DCA 1997)(Appraisal provisions in insurance policies are construed in the same manner as arbitration provisions).

46.  Once arbitration clause is properly invoked, **arbitration becomes a condition precedent to right of insured to maintain an action on the policy.** U.S. Fire Ins. Co. v. Franko, 443 So. 2d 170, 172 (Fla. 1st DCA 1983). Courts should grant motions to compel arbitration (or appraisal) for **"permitting parties to litigate a dispute in court instead of proceed to arbitration, if there is a right of arbitration, constitutes a departure from essential requirements of law which cannot be remedied by appeal."** Id. Certiorari is appropriate remedy to review non-final order denying right to arbitration where such right exists. Id.

47.  An appraisal clause contained in an insurance contract acts as a condition precedent to bringing a claim under the contract. United Community Insurance Company v. Lewis, 642 So. 2d 59 (Fla. 3d DCA 1994). **If one party to the insurance contract demands appraisal under the contract the proper action is dismissal of the action until the condition precedent has been met.** Id. Like the subject policy's appraisal provision, the governing appraisal provision in United Community Insurance Company v. Lewis provides that demand for appraisal "may" be made by either party. However, the Court rejected the insured's argument that the appraisal provision is permissive finding that **once demand for appraisal was made by either party…neither party had the right to deny that demand.** Id.

48.  Arbitration is a remedial mechanism that is binding on an assignee of a contract containing an arbitration clause, and thus, even an assignment only of contract rights not entailing any duty of performance must be deemed to include the bargained-for remedial procedure. Kong v Allied Professional Inc. Co., 750 F. 3d 1295 (2014). A party cannot attempt to hold another party to the terms of an agreement while simultaneously trying to avoid the

agreement's arbitration clause…allowing such would "fly in the face of fairness." Marcus v. Florida Bagels, LLC, 112 So. 3d 631 (Fla. 4th DCA 2013)(citing Grigson v. Creative Artists Agency, LLC., 210 F.3d 524 (5th Cir. 2000).

49. The appraisal clause can also be invoked after a lawsuit if filed. Gonzalez v. State Farm Fire & Cas. Co., 805 So. 2d 814 (Fla. 3d DCA 2000); see also U.S. Fire Ins. Co. v. Franko, 443 So. 2d 170 (Fla. 1st DCA 1983)(Motion to Dismiss proper and appraisal request timely even when appraisal was not demanded prior to filing suit).

50. Pursuant to the aforementioned policy provisions and applicable Florida law, ALLSTATE demands appraisal regarding Plaintiff's claimed amount of loss. The appraisal provision of the policy at issue does not require that the appraisal provision of the policy be invoked prior to suit or, for that matter, at any particular time. See Bullard Bldg. Condo Ass'n., Inc. v. Travelers Property Casualty Co. of America, 2006 U.S. Dist. LEXIS 70674 *2-*3 (M.D. Fla. Sept. 25, 2006) (holding that Defendant made a prompt invocation of its appraisal rights under the terms of the policy when it demanded appraisal in its Motion to Dismiss or, Alternatively, to Abate and to Compel Appraisal). The appraisal demand was proper and timely pursuant to U.S. Fire Ins. Co. v. Franko, 443 So 2d 170 (Fla. 1st DCA 1983)(Defendant's motion to dismiss was held to be a proper and timely demand for appraisal even though appraisal was not demanded *prior* to suit).

51. A formal notice/formal demand for appraisal is not necessary to invoke the appraisal clause in an insurance policy. See Hirschfeld v Crescent Heights, X, Inc., 707 So. 2d 995 (Fla. 3d DCA 1998); U.S. Fire Ins. Co. v. Franko, 443 So. 2d 170 (Fla. 1st DCA 1983)(although trial court found that it was not clear whether an affirmative and formal demand

for arbitration was ever made by the insurer, insurer's motion to dismiss insured's action seeking recovery on the policy constituted such demand).

52.    A waiver of right to arbitrate occurs only when a party engages in conduct inconsistent with that right. Travelers of Florida v Stormont, 43 So.2d 3d 941 (Fla. 2010). Questions as to waiver of the right to arbitrate should be construed in favor of arbitration (or appraisal) rather than against it. King v Thompson & McKinnon, Auchincloss Kohlmeyer, Inc., 824 So.2d 1235 (Fla. 4th DCA 2002); Hill v. Ray Carter Auto Sales, Inc., 745 So.2d 1136, 1138 (Fla. 1st DCA 1999).

53.    The question of waiver of appraisal is not solely about the length of time the case is pending or the number of filings the appraisal rights. Florida Ins. Guar v Sill, 154 So. 3d 422 (Fla. 5th DCA 2014); Am. Capital Assur. Corp. v. Courtney Meadows Apartment, L.L.P., 36 So. 3d 704, 707 (Fla. 1st DCA 2010)(finding party did not waive right to appraisal as party had not acted with right from time of demand).

54.    Active participation is present in cases where the party seeking arbitration has defended by attacking the merits of the case as opposed to initially challenging to Plaintiff's right to judicial remedy in the first place. Miller & Solomon Gen. Contractors, Inc. v Brennan's Glass Co., 824 So. 2d 288, 290 (Fla. 4th DCA 2002).

55.    The filing of a motion to dismiss directed at technical deficiencies in the complaint, such as defendants' first motion, is not "active participation" amounting to a waiver. See Hirschfeld v Crescent Heights, X, Inc., 707 So. 2d 955 (Fla. 3d DCA 1998); Prudential-Bache Sec. v. Pauler, 448 So.2d 894 (Fla. 2d DCA 1986); Graham Contracting, Inc., v. Flagler County, 444 So. 2d 971 (Fla. 5th DCA 1983); Houchins v. King Motor Co. of Fort Lauderdale

Inc., 906 So. 2d (Fla. 4th DCA 2005)(filing of motion to dismiss for failure to state cause of action does not constitute "active participation" in lawsuit as would result in waiver of right to insist on right to arbitration).

56.     Asserting that the insured meet all other conditions precedent to claiming a loss is not inconsistent with demanding an appraisal; claiming that the loss is not covered is also not inconsistent with a demand for an appraisal. Florida Ins. Guaranty Association, Inc., v. Castilla, 18 So. 3d 703 (Fla. 4th DCA 2009)(insurance guaranty association, which took over liquidated property insurer, did not waive its right to an appraisal of insured homeowners' claim for hurricane damage to their residence by initially denying the claim and participating in homeowner's resulting lawsuit; association asserted the right to an appraisal in its original motion to dismiss the lawsuit and in all subsequent pleadings and hearings, and association never acted inconsistently with its rights to an appraisal).

57.     The right to appraisal cannot be waived by the appointment of a contested appraiser. Travelers of Florida v. Stormont, 43 So. 3d 941 (Fla. 2010). Even if insured is correct that the insurer appointed an appraiser who was not competent; appraiser's alleged lack of competence was not conduct which is inconsistent with the right to appraisal, and correct procedure that insured should have followed was to make a written demand that insurer replace the appraiser, and if the insurer declined to do so, then promptly file a complaint in circuit court seeking removal of the appraiser. Once the insurer demanded appraisal, the insured was required to comply with the appraisal clause. Proceeding to court was not justified. Id.

58.     The issue of waiver may, at times, require a hearing. Florida Ins. Guar v Sill, 154 So. 3d 422 (Fla. 5th DCA 2014); see also Doctor Assocs. v Thomas, 898 So. 2d 159, 162 (Fla.

4th DCA 2005)(holding question of waiver reviewable for competent, substantial evidence). However, when the underlying facts are undisputed, all that remains is to apply the law to the facts, and no evidentiary hearing is required. Florida Ins. Guar v Sill, 154 So. 3d 1015, 1017 (Fla. 3d DCA 2014); see also Truly Nolen of Am., Inc. v. King Cole Condo. Ass'n., 143 So. 3d 1015, 1017 (Fla. 3d DCA 2014)(reviewing issue of waiver de novo where facts undisputed); see also Bruce v. Reese, 431 Fed. Appx. 805, 806 (11th Cir. 2011)(holding, in context of preliminary injunction, "[a]n evidentiary hearing does not need to be held where the facts necessary to rule on the motions are undisputed").

59.     **State courts should resolve all doubts about scope of arbitration agreement, as well as any questions about waivers thereof, in favor of arbitration.** Ronbeck Const. Co., Inc. v Savanna Club Corp, 592 So.2d 344 (Fla. 4th DCA 1992). The appraisal provision is intended to act as a quicker, less expensive method of resolving factual disputes relating to property insurance.

60.     Appraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits. First Floridian Auto & Home Ins. Co., v Myrick, 969 So. 2d 1121, 1125 (Fla. 2d DCA 2007). "When the insurer admits that there **is** a covered loss, but there is a disagreement on the _**amount of loss**_, it is for the appraisers to arrive at the amount to be paid." Johnson v. Nationwide Mut. Ins. Co., 828 So. 2d 1021, 1025 (Fla. 2002)(quoting Gonzalez v. State Farm Fire & Cas. Co., 805 So. 2d 814, 816-817 (Fla. 3d DCA 2000).

61.     Because the subject policy contains an appraisal clause, once demanded, this is the way in which a determination is made for the loss amount payable.  Compliance with the

appraisal clause is a duty under the policy and a condition precedent to loss payment. *See* applicable insurance policy. Therefore the Plaintiff's assignment is illusory unless and until the amount of loss is determined through appraisal.

62. Plaintiff and its counsel are familiar with the appraisal clause, the appraisal process and the outcome of this Motion as Allstate and other companies such as Progressive with almost identical appraisal clauses, have argued this Motion successfully against the Plaintiff and other repairs shops. A copy of various court orders in favor the Insurer here will be provided upon request or at the hearing on this Motion.

63. In some of these cases, appraisal was requested for the first time after the lawsuit was filed. Plaintiff unsuccessfully made arguments that appraisal was not appropriate because the car was repaired. The Court rejected the Plaintiff's arguments and ordered the parties comply with the appraisal clause. Plaintiff did not comply with appraisal, ignoring the Court's order, and eventually dismissed the case.

64. Plaintiff is aware of two cases where a final order granting Writ of Certiorari was entered on May 25, 2017 and May 26, 2017, where the appellate court found that it was ***improper to deny Defendant's Motion to Dismiss on this same fact pattern***. The court held that Respondent ***improperly proceeded to bring a lawsuit against the Petitioner after the proper invocation of a valid appraisal provision and that proceeding to court was not justified***. citing Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n. Inc., 117 So. 3d 1226 1229 (Fla. 3d DCA 2013). The court further noted that the dispute in these cases ***is purely a question of "the amount of loss" which falls within the scope of the appraisal provision***. An appraisal results in a binding determination as to the amount of the loss which is in dispute, and could avoid a

parties' need to resort to litigation. The court also distinguished that "issues relating to coverage challenges are questions exclusively for the judiciary." <u>Florida Ins. Guar. Ass'n, Inc. v Olympus Ass'n Inc.</u>, 34 So. 3d 791, 794 (Fla. 4th DCA 2010). However, "***where the insurer admits that there is a covered loss, but there is a disagreement on the amount of the loss, it is for the appraiser to arrive at the amount to be paid***." <u>Id</u>. The plaintiff tried to have this matter reheard, and the court denied that request on July 11, 2017. These order are binding on all county court filings for glass claims. Defense provided this order to Plaintiff on July 24, 2017 via email and requested a dismissal—the case has yet to be dismissed. A copy of these orders will be provided upon request or at the hearing on this Motion. <u>See</u> <u>Progressive American Insurance Company v. Broward Insurance Recovery Center a/a/o Isabella Cardona</u> and <u>Progressive Select Insurance Company v. Cornerstone Network, Inc., a/a/o Dakota Sowell,</u> (a copy of this order has been filed with the court under a different cover)

65.    Plaintiff and multiple repair shops have started mass filing lawsuits over nominal sums of money. Appraisal is required because the real relief sought is monetary. <u>See</u> <u>Polk County v. Highlands in the Woods, LLC.</u>, 2017 WL 2199067 (Fla. 2d DCA 2017), which discusses the proper ruling when the "real issue at hand" is either damages or equitable relief.

66.    Further, the legislative intent behind the statute, specifically in regards to comprehensive coverage, is safety (a copy of the Senate Bill Action Report *with incorporated intent* has been filed with the court under a separate cover). The purpose of the statute is so that an ***insured*** is not required to come out of pocket in order to get a new windshield repaired. However, in our cases, the windshield is already repaired, without an out-of-pocket cost to the insured, therefore the legislative intent is not contravened.

67. As the Court said in <u>Nationwide Property & Casualty Insurance v. Bobinski</u>, "[w]e also find that it maintains the better policy of this state to encourage insurance companies to resolve conflicts and claims quickly and efficiently without judicial intervention. Arbitration and appraisal are alternative methods of dispute resolution that provide quick and less expensive resolution of conflicts. Hopefully both will serve to suppress the ever increasing costs of insurance protection." 776 So. 2d 1047, 1049 (Fla. 5th DCA 2001).

68. Permitting the parties to litigate this dispute in court instead of proceeding to appraisal constitutes a departure from the essential requirements of law which cannot be adequately remedied by appeal. See <u>U.S. Fire Ins. Co. v. Franko</u>, 443 So.2d 170, 172 (Fla. 1st Dis. Ct. App. 1983), reh'g denied (1984).

69. In the case at hand, it is undisputed that a valid appraisal agreement exists and that demand for appraisal has been made: that appraisal is the appropriate forum for the disputed issues; and that Defendant has not waived its right to appraisal. Accordingly, Plaintiff must be compelled to comply with the appraisal provision of the subject policy, and same is a condition precedent to the filing and maintaining of the subject lawsuit

### C) PLAINTIFF'S COMPLAINT VIOLATES FLORIDA STATUTE § 626.854

70. The assignment of benefits to PLAINTIFF also violates Florida Statute § 626.854, also known as the public adjusting statute. The assignment to PLAINTIFF impermissibly adjusted the insurance claim, which is contrary to the statute's mandate. Pursuant to that statute:

> A "public adjuster" is any person, except a duly licensed attorney at law as exempted under s. 626.860, who, for money, commission, or any other thing of value, prepares, completes, or files an insurance claim form for an insured or third-party claimant or who, for money, commission, or any other thing of value, acts on behalf of, or aids an insured or third-party claimant in negotiating for or effecting the settlement of a claim or claims

for loss or damage covered by an insurance contract or who advertises for employment as an adjuster of such claims. The term also includes any person who, for money, commission, or any other thing of value, solicits, investigates, or adjusts such claims on behalf of a public adjuster.

Fla. Stat. § 626.854(1).

71.     While the statute specifically carves out from that definition "licensed health care provider[s] or employee[s] thereof who prepares or files a health insurance claim form on behalf of a claimant," i.e., for purposes of PIP benefits, the statute *does not* carve out an exception for glass companies such as Plaintiff who are enticing insured policyholders to submit claims by offering monetary or other valuable inducement such as a $100 restaurant.com gift card or cash in blatant violation of the statute. *See, e.g.,* Fla. Stat. § 626.854(8)(a)(2.)(statements or representations that invite an insured policyholder to submit a claim by *offering monetary or other valuable inducement are considered deceptive or misleading*).  In the instant case, the insured received a voucher from the Plaintiff and was told to go online to redeem a free dinner or free cruise, whichever they chose. (Insured's affidavit can be provided to the court upon request. This affidavit was previously provided to the Plaintiff in attempts to have this case dismissed.)

### D) PLAINTIFF'S COMPLAINT IS ALSO DEFICIENT BECAUSE IT FAILS TO SUE THE CORRECT DEFENDANT

72.     Additionally, the named Defendant, ALLSTATE INSURANCE COMPANY, did not issue a personal automobile insurance policy to the purported Assignor; they are an improper party and the lawsuit should therefore be dismissed with prejudice.

73.     ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY (hereinafter referred to as, "ALLSTATE") issued a personal automobile insurance policy to the

purported Assignor, which provided comprehensive coverage subject to the terms and conditions of the applicable policy of insurance not ALLSTATE INSURANCE COMPANY.

### E) PLAINTIFF'S COMPLAINT BREACHES THE NO ACTION CLAUSE OF THE SUBJECT POLICY

74.     The lawsuit filed by the Plaintiff is a breach of the terms and obligations under the Assignor's policy. The policy contains a No Action Clause titled "Action Against Allstate" in the general provisions.  It states all conditions precedent must be complied with before suit can be filed.

75.     "A no action clause in an insurance contract operates as a condition precedent that bars suit against the insurer until the insured complies with the relevant policy provisions." Wright v. Life Ins. Co., 762 So. 2d 992, 993 (Fla. 5th DCA 2000).  Accord Harris v. N. British & Mercantile Ins. Co., 30 F.2d 94, 95 (5th Cir. 1929) ("If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss.").

76.     Under Florida law, a "no action" clause in an insurance contract may operate as a condition precedent barring suit against the insurer until the insured complies with relevant policy provisions. Langhorne v. Fireman's Fund Ins. Co., 432 F. Supp. 2d 1274 (N.D. Fla. 2006).

77.     Such provisions "preclude the insured from recovering upon the policy, where it provides that no suit can be maintained until after a compliance with such condition."  Southern Home Ins. Co.  v. Putnal, 49 So. 922 (Fla. 1909).  Cf. Swaebe v. Fed. Ins. Co., 374 F. App'x 855, 857-58 (11th Cir. 2010) ("The undisputed record shows that Swaebe filed this lawsuit prior to complying with the provisions of her policy and before any proof of loss had been filed. Swaebe thus breached the policy's 'no action' provision -- and because it is a condition precedent to recovery, under Florida law, Swaebe committed a material breach barring recovery."); McDonald

Indus., Inc. v. Ins. Co. of N. Am., 1995 U.S. App. LEXIS 4848 (8th Cir. Mar. 14 1995) (no

action provision barred suit by insured due to failure to comply with notice provisions)

### F) MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY

78.     Since the appraisal process will lead to a resolution of this lawsuit, ALLSTATE

asserts that judicial resources will be wasted if this case is not dismissed.

79.     Discovery is not appropriate as this matter must process under the subject policy's

appraisal clause which does not contemplate discovery. Agricultural Excess and Surplus Lines

Insurance Company v. Kendall Lakes Townhomes Developers, 884 So. 2d 975 (Fla. 3d DCA

2004)(There is no need or justification for a deposition regarding disagreement of appraiser or

umpire. The subject appraisal provision only provides that the parties may approach the court for

selection of an umpire and does not contemplate discovery regarding same).

80.     Moreover, it is well established that a trial court possesses broad discretion in

overseeing discovery and protecting parties that are subject to the same. See, e.g., Rojas v. Ryder

Truck Rental, Inc., 641 So. 2d 855, 857 (Fla. 1994); Gross v. Security Trust Company, 453 So.

2d 944, 945 (Fla. 4th DCA 1984)(whether depositions, or any other discovery, should be limited

is within broad discretion of the trial court); South Florida Blood Service, Inc., v. Rasmussen,

467 So. 2d 798, 801 (Fla. 3d DCA 1985)(courts have authority to control discovery in all

respects in order to prevent harassment and undue invasion of privacy).

81.     In particular, a trial court may postpone discovery pending the resolution of a

motion to dismiss. If the claims against the Defendant are dismissed, Plaintiff's discovery will,

for all intents and purposes, be rendered moot. In such a scenario, Defendant would no longer be

obligated to respond to Plaintiff's discovery Requests. As such, it clearly is a misuse of time,

money and effort to engage in discovery until the Motion to Dismiss is resolved. See, e.g., Deltona Corporation v. Bailey, 336 So. 2d 1163, 1169 (Fla. 1976)(trial court has discretion to postpone discovery by plaintiff pending determination of defendant's motion to dismiss complaint); Hollywood, Inc. v. Broward County, 90 So. 2d 47 (Fla. 1956)(trial court had discretion to prevent depositions pending resolution of potentially dispositive motion); Feigin v. Hospital Staffing Services, Inc., 569 So. 2d 941 (Fla. 4th DCA 1990)(trial court may stay depositions spending hearing on a motion to dismiss); Travelers Protective Association America v. Hackett, 438 So. 2d 1074, 1075 (Fla. 2d DCA 1983)(trial court improperly entered an order compelling a party to respond to discovery while motion to dismiss complaint was pending).

82.     If the case is not dismissed, Defendant, ALLSTATE moves for a protective order, staying discovery in this matter so that the appraisal process may be completed. See Agricultural Excess & Surplus Lines Ins. Co. v. Kendall Lakes Townhomes Developers, Inc., 884 So. 2d 975, 976 (Fla. 3rd DCA 2004) (per curium) ("The contract between the parties only provides that the parties may approach the court for a selection of an umpire. No discovery is contemplated in the provision of the contract under which the parties are now proceeding."). Since appraisal will likely settle these matters, there is no need for either party to propound or conduct discovery at this time, especially since there was no need for a lawsuit.

83.     Further, Plaintiff counsel has previously agreed to stay all discovery until this hearing is had.

## D) MOTION TO DISMISS ANY CLAIM FOR ATTORNEY'S FEES

84.     Plaintiff failed to plead any such applicable statutory or contractual basis and as such should be prohibited from claiming attorney's fees under this cause of action as they are not

entitled to attorney's fees. Plaintiff filed this lawsuit to collect attorney's fees when the policy has a specific, out of court means of resolution, the appraisal process, to resolve this fact pattern. Granting these fees would reward all the actions noted above and this race to the courthouse being brought by the Plaintiff.

WHEREFORE, Defendant ALLSTATE respectfully request that this Court: 1) dismiss Plaintiff's Complaint with prejudice as to the Defendant in favor of appraisal and appoint an umpire, if necessary; 2) enter a protective order, staying Plaintiff's discovery as to ALLSTATE in this matter and 3) prohibit the reward of attorney's fees under this cause of action.  Defendant further moves this Court for reasonable attorneys' fees and costs and any other relief this Court deems just and proper.

I HEREBY CERTIFY that on the _____24_____ day of _____July_____, 2017,

pursuant to Administrative Order No. AOSC13-49, a copy of the foregoing DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT, DEMAND INTO APPRAISAL, MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY, AND MOTION TO DISMISS ANY CLAIM FOR ATTORNEY'S FEES has been electronically filed and served using the Florida Courts E-Filing Portal to:

Attorney for Plaintiff
Andrew Davis-Henrichs, Esquire
Emilio Stillo, P.A.
7320 Griffin Rd Ste 203
Davie FL 33314-4105
eservices@emiliostillopa.com
eservices@stilloswartzlaw.com
scheduling@stillolawfirm.com
954-584-2563

LAW OFFICES OF ROBERT J. SMITH
150 West Flagler Street, Suite 1600
Miami, FL 33130-1518
Telephone:          (305) 536-6200
Toll Free:          (877) 536-5394
Attorney Direct::          (305) 319-9416
Fax:          (866) 863-3004

By: _____

**RAIZEL HERNANDEZ, ESQ.**
FL Bar No. 99451
Attorney for Defendant(s)
ALLSTATE INSURANCE COMPANY
PRINCIPAL E-MAIL ADDRESS:
MIAMILEGAL@ALLSTATE.COM
Personal E-mail Address
(NOT for Service of Pleadings and Documents):
Raizel.Hernandez@Allstate.com

```
1    IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
              IN AND FOR BROWARD COUNTY, FLORIDA
2

3    AUTO GLASS AMERICA, LLC
     a/a/o BARBRA MURRAY,
4
                              CASE NO.: COCE-17-005472
5         Plaintiff,

6    -vs-

7    ALLSTATE INSURANCE COMPANY,

8
              Defendant.
9    _____/

10   AUTO GLASS AMERICA, LLC
     a/a/o TONYA WOMACK,
11
                              CASE NO.: COCE-17-005712
12        Plaintiff,

13   -vs-

14   ALLSTATE INSURANCE COMPANY,

15
              Defendant.
16   _____/

17
                HEARING BEFORE THE HONORABLE
18                  KATHLEEN MCCARTHY

19             Thursday, January 25, 2018
                 1:56 p.m. - 3:01 p.m.
20             Broward County Courthouse
               201 Southeast 6th Street
21                   Room 11172
               Fort Lauderdale, Florida
22

23

24             Stenographically Reported By:
               LOIS L. MCINNIS-KELLEHER, FPR
25             Florida Professional Reporter
```

```
 1    APPEARANCES:

 2    On behalf of the Plaintiff:

 3         EMILIO R. STILLO, ESQUIRE
           Emilio Stillo, P.A.
 4         7320 Griffin Road
           Suite 203
 5         Davie, Florida  33314
           Phone: 954-584-2563
 6         emiliostillo@yahoo.com

 7         MAC S. PHILLIPS, ESQUIRE
           Phillips Tadros, P.A.
 8         212 Southeast 8th Street
           Suite 103
 9         Fort Lauderdale, Florida  33316
           Phone: 954-642-8885
10         mphillips@phillipstadros.com

11         LAWRENCE M. KOPELMAN, ESQUIRE
           Kopelman & Blankman P.A.
12         200 Southwest 1st Avenue
           Twelfth Floor
13         Fort Lauderdale, Florida  33301
           Phone:  954-462-6855
14         lmk@kopelblank.com

15

16    On behalf of the Defendant:

17         ALISON BRUCK, ESQUIRE
           Law Offices of Robert Smith
18         150 West Flagler Street
           Suite 1600
19         Miami, Florida  33130
           Phone: 305-536-6226
20         alison.haney@allstate.com

21         KANSAS R. GOODEN, ESQUIRE
           Boyd & Jenerette
22         201 North Hogan Street
           Suite 400
23         Jacksonville, Florida  32202
           Phone: 904-353-6241
24         kgooden@boydjen.com

25
```

 1              (Thereupon, the following proceedings were
 2    had:)
 3              THE CLERK:  Case number COCE17005712, Auto
 4    Glass America, LLC versus Allstate Insurance
 5    Company.
 6              Please state your name for the record.
 7              MS. BRUCK:  Thank you.
 8              Alison Haney Bruck, along with Kansas
 9    Gooden, on behalf of the defendant.
10              THE COURT:  Welcome.
11              MS. BRUCK:  Thank you.
12              MR. STILLO:  Good afternoon, Your Honor.
13    Emilio Stillo on behalf of the plaintiff.
14              MR. KOPELMAN:  Larry Kopelman on behalf of
15    the plaintiff.
16              MR. PHILLIPS:  Mac Phillips for the
17    plaintiff.
18              THE COURT:  Good afternoon, everybody.
19              MS. BRUCK:  Thank you, Your Honor.
20              We have a few motions before Your Honor
21    today.  The first one that we'd like to address
22    is the motion to transfer, on both of these
23    cases.
24              These cases are involving windshield
25    repair or replacement, and the windshield was

1    damaged or allegedly damaged in counties

2    outside of Broward County.  The repairs

3    happened outside of Broward County.  All of the

4    relevant witnesses would be outside of Broward

5    County.

6        As for the case of Auto Glass America, the

7    assignor being Tonya Womack, that occurred --

8    excuse me -- that occurred in Pinellas County,

9    and for the case of Auto Glass America, the

10   assignor being Barbra Murray, that case was in

11   Hernando County.

12       So we have received -- just my firm alone

13   has received 430 glass cases for this calendar

14   year.  I imagine the Broward docket is even

15   more congested with these types of cases.

16       We don't think it is, number one,

17   convenient for us, if we have to litigate these

18   cases, since the depositions and the discovery

19   would be regarding people in other counties.

20       We also don't think it's just to the

21   citizens of Broward County to have to

22   adjudicate facts that occurred outside of their

23   own county.  They have enough things to

24   adjudicate and spend their time on here in

25   Broward County alone.

1        So that's our first motion.

2        MR. PHILLIPS:  Hi, Judge.

3        THE COURT:  Hello.

4        MR. PHILLIPS:  On the transfer motion, I

5    think we are putting the cart before the horse,

6    because the other matters scheduled for today

7    are whether or not these cases should get

8    kicked out of the court system, in favor of

9    appraisal.  For a variety of reasons,

10   obviously, we've got very good reason why these

11   cases should remain in the court system.

12       But to talk about venue and transferring

13   first, I think we should actually focus on

14   whether or not court is appropriate, regardless

15   of what county it is.

16       But since they did bring it up, this is

17   not a fact-intensive case.  There aren't

18   issues, in this case, that -- or these cases

19   that are before the Court, involving a car

20   accident, or was the light red, or was the

21   light green, where, you know, things happened.

22   These cases are entirely matters of contract

23   interpretation.  Matters of contract

24   interpretation are matters of law, period.

25       And in terms of counsel's concern for the

1   Broward County jury pools, we obviously share

2   that concern; but, guess what, as a matter of

3   law, there are no juries that are going to be

4   burdened here.

5        As a matter of fact, the plaintiffs did

6   not demand a jury trial, nor have the

7   defendants.  In fact -- well, the defendants

8   haven't answered yet.  They've -- we're here on

9   a motion to dismiss and to transfer.  So

10  nobody's demanded a jury trial.

11       And in terms of judicial resources, and

12  that being a precious thing to protect, also,

13  we are well aware that there are 67 counties in

14  Florida, but Dade, Broward, and Palm Beach

15  have, by far, the biggest and craziest dockets.

16  In fact, it's so disproportionate that that's,

17  you know, incredible, you know, to me.

18       But at the same time, the case law does

19  say that if the only issue on a venue transfer

20  motion is conservation of judicial resources,

21  even in the face of jammed up dockets, that is

22  not the right ground to transfer venue.

23       I honestly didn't know that venue was

24  going to be an issue, so I don't have the

25  cases, but I can tell you off the top of my

1    head, because I did argue them recently.  The

2    first one that says that is a case called R.J.

3    Reynolds versus Mooney, M-O-O-N-E-Y.  It's a

4    Third District case from 2014.  And that cites

5    to a case called Ashland, A-S-H-L-A-N-D, from

6    the Second District, from 1977.

7         And the specific quote is -- I'm going to

8    paraphrase it, is that from Ashland, in '77,

9    nobody has ever presented to us any authority

10   for the proposition that judicial inconvenience

11   and clogged dockets is a basis to transfer

12   venue.  That was in 1977.

13        And so to 2014, I guess that's 37 years

14   later, the Third District cited that case, and

15   said nobody's brought to our attention anything

16   that says that's the proper grounds to transfer

17   venue.

18        So I'm more than happy to get copies of

19   those cases to the Court.  I just didn't have

20   them with me this afternoon.

21        THE COURT:  Okay.

22        MR. PHILLIPS:  I had them with me this

23   morning.

24        In any event, because there are no juries

25   to burden, because of the location of

1   witnesses, which is the most important

2   consideration on a convenience motion to

3   transfer, because we don't have that, then we

4   think, should the case -- cases stay within the

5   court system, they should stay within the

6   Broward court system because, one, the

7   plaintiff's choice of forum is something that

8   is given serious consideration.

9       Number two, the cause of action for breach

10  of contract against Allstate is well laid in

11  Broward, because Allstate has employees,

12  offices, agents, representatives all in

13  Broward.  In fact, the law offices of whoever

14  in-house counsel for Allstate is, I believe, is

15  right across the street, at 110 Tower.

16      So we sued in the residence -- in the

17  county where the defendant maintains their

18  residence.  And the fact is, also, that these

19  are declaratory judgment claims, which further

20  goes to we're dealing with matters of law as

21  opposed to fact.

22      THE COURT:  Okay.

23      MS. BRUCK:  Thank you.

24      The polices, the matters of law which

25  we're dealing with, were entered in the other

1  counties that I mentioned, not here.

2      THE COURT:  Okay.

3      MS. BRUCK:  And the two things that we

4  considered are the convenience of the witnesses

5  and interest of justice.  Here, all the

6  witnesses are in other county -- counties that

7  I mentioned.

8      And in the interest of justice, it is not

9  equitable that Broward County needs to foot the

10 bill or the resources for events that occurred

11 outside of Broward County.

12     There's also a case that I actually found

13 this afternoon on Florida Law Weekly.  It's one

14 page.  It is out of -- it's 13 Fla. L.

15 Weekly -- excuse me.  13 Fla. L. Weekly Supp.

16 1021A.  And that is 800 A1 Glass LLC, as

17 assignor of -- assignee of Melissa Henderson

18 versus Progressive Auto.

19     And the court found plaintiff's forum

20 choice is suspect when the only nexus to

21 Seminole County is the fact that the defendant

22 does business there, and substantially all

23 other aspects of the case, i.e., location where

24 glass damage occurred, residence of insured's

25 glass assignor, location of the windshield

1  repair, plaintiff's offices, and witnesses are

2  elsewhere.  Forum shopping is a viable concern,

3  since there's only one county court judge in

4  this particular county.

5      Additionally, Seminole County is devoting

6  substantial resources to address and resolve a

7  very large number of cases, whose only

8  connection is that the defendant's insurance

9  companies do business there, just like this

10 case.

11     I have a copy, if Your Honor would like to

12 see it.

13     THE COURT:  Yes.

14     MS. BRUCK:  May I approach, Your Honor?

15     THE COURT:  Yes.

16     MS. BRUCK:  Thank you.

17     MR. STILLO:  We have a few other

18 additional points, Your Honor, if I may.

19     THE COURT:  Sure.

20     MR. STILLO:  Paragraph six of their

21 motion -- they're talking about witnesses, and

22 things of that nature.  Paragraph six of their

23 motion says Allstate moves for protective order

24 staying discovery, because they want the court

25 to rule on the appraisal.

1      So they're talking out of both sides of

2  their mouth, because here we are asking the

3  Court to rule on the appraisals, pursuant to

4  your request -- their request.  No discovery

5  has been answered.  And now they're saying,

6  well, we want to do discovery.

7      Well, which is it?

8      I'd assert that their argument is

9  disingenuous to the extent that they are

10  talking about doing discovery and convenience

11  of witnesses, when their representations to the

12  Court -- their representation to the Court is

13  we don't want to do any discovery.  We want the

14  Court to rule on the appraisal.

15      Now they're not happy with the way the

16  courts have been ruling on the appraisal,

17  because Judge Halal, Judge DeLuca, Judge

18  Fishman, Judge Skolnik, the judges have ruled

19  against them on the appraisal issue, so now

20  they're manufacturing this idea that they want

21  to do discovery, contrary to their

22  representations.

23      So I would ask the Court to just reserve

24  as to that issue, proceed with what we prepared

25  for, what we're here for, the appraisal issue,

1   and we cross the witness issue at a later point

2   in time, because it's not ripe for right now,

3   based on what Allstate has told the Court.

4        THE COURT:  Okay.

5        Ma'am, I want to make sure I'm not missing

6   anything.

7        MS. BRUCK:  Sure.

8        THE COURT:  Did you have an affidavit with

9   what motion?

10       MS. BRUCK:  Yes.  We do.

11       THE COURT:  I'm looking -- I'm looking at

12   the --

13       MR. PHILLIPS:  I'm looking at the docket,

14   and I don't see it.

15       THE COURT:  I have the electronic one, and

16   I don't see that.  So I --

17       MS. BRUCK:  For one of them there is an

18   affidavit attached to it.

19       THE COURT:  I'm referring to Auto Glass

20   America.  The assignment of benefits is Tonya

21   Womack.

22       MS. BRUCK:  Okay.

23       MR. PHILLIPS:  Yeah.  5712.  I'm literally

24   looking at the same --

25       MS. BRUCK:  Yeah.  I think Barbra Murray

1  is the one with the affidavit.  Let me just

2  pull that up.  There's an affidavit from the

3  adjuster attached as Exhibit A to that motion.

4       I have it, Your Honor, just there's a lot

5  of paperwork here.  Okay.  I have it.

6       The motion to transfer venue on Auto Glass

7  America as assignee of Barbra Murray versus

8  Allstate, there's an affidavit attached as

9  Exhibit A.

10       If Your Honor would like to see it, I can

11  approach and --

12       THE COURT:  Okay.

13       MS. BRUCK:  -- provide it to you.

14       THE COURT:  But we're in agreement, you

15  don't have one with the other case, correct?

16       MS. BRUCK:  We do not have one with the

17  other case.  No.

18       THE COURT:  Okay.  All right.

19       MS. BRUCK:  And just to comment on what

20  was said about us manufacturing something, the

21  only thing that's being manufactured here is

22  the nexus to Broward.

23       Our motion to transfer was filed at the

24  same time as our motion to dismiss and compel

25  appraisal, and motion for protective order,

1    because, as case law is well decided, we must

2    do all of those things at the same time to

3    preserve our defenses, and to preserve our

4    right to appraisal, and to preserve the motion

5    to transfer argument.

6        THE COURT:  Okay.

7        So with regard to the motion to transfer,

8    the Court is going to take that under

9    advisement.

10       So let's move on to --

11       MS. BRUCK:  Okay.

12       MR. PHILLIPS:  The one without the

13   affidavit, Judge, the Womack case, it should be

14   denied.  There's no affidavit.

15       And if I may respond to the other one with

16   the affidavit, I'm reading this for the first

17   time.  And an affidavit in support of a motion

18   to transfer venue can't just list a bunch of

19   people and say they are outside of the county.

20       There has to be testimony, in this

21   affidavit, as to which witnesses are key, why

22   they are important, and that they live out of

23   the county.

24       We don't have that here.  We just

25   basically have Barbra Murray saying that she

1    lived -- Barbra Murray is the person, but the

2    adjuster, Chase Beaumont, looking at the claim

3    file, saying that Barbra Murray lives in Spring

4    Hill, Florida, that's Hernando County.  She

5    retained the services of plaintiff to

6    effectuate repairs on her vehicle, and she

7    assigned her rights to us, and the repair work

8    was done over there.  There's nothing -- and

9    that's the end of it.  The last paragraph is

10   Auto Glass America has its business in Seminole

11   County.

12       So the affidavit doesn't give any real

13   testimony as to why these people requested are

14   important for trial, number one.  Number two,

15   the affidavit mentions two different counties;

16   Hernando and Seminole.

17       Number three, they seem to make a big deal

18   about the fact that Auto Glass America's office

19   is somewhere else, but Auto Glass America has

20   to appear for deposition in Broward County.

21   Plaintiffs have to appear in the forum that

22   they chose.

23       And there's nothing, no key evidence in

24   this affidavit, that would suggest anything

25   important happened anywhere else.

1      THE COURT:  Okay.  Thanks, Mr. Phillips.

2      Anything else before we proceed?

3      MS. BRUCK:  Yeah.

4      There's no requirement, that I'm aware of,

5  that I need to file an affidavit.  Their

6  assignment of benefits, which they have

7  attached, shows where this repair happened, and

8  shows the people and the addresses.  So they're

9  well aware of that.

10     And to pretend that that's a fact that's

11 an issue is really disingenuous, and it flies

12 in the face of everything that they say with

13 regard to their assignment of benefits.

14     So if their assignment of benefits is

15 questionable, then that's an additional concern

16 that we basically have before this Court.

17     THE COURT:  Okay.  Thank you.

18     MS. BRUCK:  The next thing that we would

19 like to discuss, Your Honor, is the appraisal.

20 So we think that this entire suit is premature,

21 because this suit is about amount of loss.

22     Now, the policy states that if there's a

23 dispute as to the amount of loss, then

24 appraisal is the appropriate process to go

25 through, not clog the court or Broward court

1    with these issues, but adjudicate it elsewhere,

2    without the need of the court intervention.

3        We have sent, in both cases, appraisal

4    letters, on two different occasions, to the

5    plaintiff, with no response whatsoever.

6        Their argument is that our appraiser is

7    not disinterested and, therefore, the appraisal

8    clause is not valid, or at least that's one of

9    their bases.

10       Travelers versus Stormont, which is

11   43 So.3d 941, out of the Third DCA, in 2010,

12   says that there is a process that you have to

13   follow.  Travelers versus Stormont, just as a

14   quick background, involves a car, some type of

15   specialty Mustang car, that had work done to it

16   to make it, I'm not sure, fast or -- or

17   antique, or special in some way.

18       The appraiser that the insurance company

19   wanted to use readily said and admitted that he

20   had no knowledge about these types of cars, and

21   he's never done work with it, so he was not

22   qualified, as per the insured.  And so instead

23   of offering another appraiser or saying, hey, I

24   don't agree with your appraiser, they filed

25   suit in court.

1        And the Third DCA says that that's not the

2    appropriate way to handle such a situation.

3    That even if the appraiser is incompetent or

4    interested in the case somehow, what needs to

5    happen is, as soon as they find out about this

6    appraiser, and as soon as they find out the

7    issues surrounding it, that create concern for

8    them, they need to request an additional

9    appraiser from the insurance company.

10        Then, and only then, can the plaintiff --

11    well, let me back up.  If the insurance company

12    ignores that, or refuses to provide an

13    additional appraiser, then, and only then, can

14    the plaintiff file suit.

15        And, at that point, the plaintiff must

16    file suit in circuit court for the issue of the

17    appraiser only.  And so that the circuit court

18    can then adjudicate whether this appraiser is

19    competent or interested in the case, and move

20    along from there.

21        So we have jumped many steps ahead.  Not

22    only is this what we believe is not a proper

23    venue, but we have now not a compliance with

24    the policy.  And if there's not a compliance

25    with the policy, under the no action clause,

1   which is action against Allstate and our

2   policy, which has been provided and is

3   attached, we are entitled to 30 days before

4   suit is filed, and all the conditions of the

5   policy must be complied with before you can

6   follow -- file suit.

7        So, in this particular instance, the

8   appraisal has not been complied with.  They did

9   not follow the proper procedure in trying to

10  obtain an appraiser that they think would be

11  the -- a fair and competent appraiser.  They

12  raced to the courthouse.

13       And a waiver -- I know that they will say,

14  later on, that they believe our appraiser is

15  not -- is biased for us, and that there's

16  historically some other cases they dealt with.

17  None of them have been from my office.

18       We've had 430 cases from this attorney's

19  firm in the past calendar year, and not one

20  time have they ever followed the Third DCA's

21  procedure of telling us or our client that we

22  believe your appraiser is interested, or

23  biased, or not competent.  So they never give

24  us the opportunity to resolve that issue, which

25  they are required to do by the Third DCA.

1        And then there's also two cases out of

2    Broward County, out of this circuit court,

3    Progressive versus Cornerstone Network as

4    assignor of Dakota Sohol, and Progressive

5    Broward Insurance Recovery as assignor of

6    Isabella Cardona.

7        And those cases, which have been provided

8    to Your Honor, as well, they state when an

9    insurer admits that there is a covered loss,

10   but there is a disagreement on the amount of

11   loss, it is for the appraiser to arrive at the

12   amount to be paid, which is the situation we

13   have here.

14       There is a covered loss.  We're admitting

15   there's a covered loss.  We paid the -- they

16   submitted an invoice for one amount.  We paid a

17   different amount.  So that's the entire

18   dispute.

19       Which amount is correct?

20       Maybe none of them.  And that's what --

21   that's where the appraisal clause comes into

22   play.

23       So this is a premature suit, since the

24   conditions precedent have not been met.  And

25   for that reason, as well, they're not entitled

1   to attorney's fees, because this is not ripe

2   for suit yet.  And there's case law on point.

3   Travelers versus Stormont actually speaks about

4   that in their holding, as well.

5        So, for those reasons, we move to dismiss.

6        THE COURT:  Okay.

7        MR. KOPELMAN:  Thank you, Your Honor.  May

8   it please the Court.  Larry Kopelman on behalf

9   of the plaintiff.

10       May I stay seated, Judge?

11       THE COURT:  Yes.

12       MR. KOPELMAN:  Thank you.  I appreciate

13  it.

14       Just to bring a little context to what is

15  happening here, our client is a repair

16  company -- windshield repair and replacement

17  company.  What happened was, there a -- one of

18  Allstate's insureds was involved in an incident

19  and accident that occurred in a loss, which

20  resulted in the replacement of a windshield.

21       They came to our client under an

22  assignment of benefits that our client took.

23  They -- our client fixed the -- fixed the

24  windshield -- they actually replaced the

25  windshield, and then a bill was submitted to

1    Allstate for payment.
2         Pursuant to the policy, Judge, Allstate is
3    obligated to pay pretty much any loss.  It's --
4    this policy is akin to an all-risk type of
5    policy.  As long as you have a loss that's
6    covered under the policy, which it is -- I
7    don't think anybody disputes that it is a
8    covered loss here -- it has to be paid under
9    the terms and conditions of the policy.
10        The only thing governing the reimbursement
11   of this claim is the limit of liability
12   provision in the policy, which states, Judge,
13   that the limit of liability is -- do you have
14   the policy, by any chance?
15        THE COURT:  I have this stack here, so I'm
16   not sure where it is.
17        MR. KOPELMAN:  Yeah.
18        Actually, it's -- Your Honor, if you could
19   look at defendant's supplemental --
20        THE COURT:  I have it.  Just you can
21   direct me to the page.
22        MR. KOPELMAN:  Okay.
23        I believe it's page -- the pages aren't
24   numbered, but it's the page that starts -- on
25   the very top it says auto comprehensive

1    insurance coverage.  I think it's the third

2    page in.

3         THE COURT:  Okay.

4         MR. KOPELMAN:  Okay.

5         If we go to the bottom there, where it

6    says limits of liability, the limit of

7    liability is the least of the actual cash value

8    of the property at the time of the loss, which

9    may include a deduction for depreciation.

10        We don't have that scenario here because

11   we don't have a determination that needs to be

12   made with respect to the actual cash value of

13   the property.

14        What we have, Judge, is what falls into

15   number two here, category two, which is the

16   cost to repair or replace, as determined by us,

17   the property or part to its physical condition

18   at the time of loss, using parts produced by or

19   for the vehicles manufactured, and then it goes

20   on and on, and states some other things.

21        So really the only -- the only issue is

22   whether or not they have sufficiently limited

23   their exposure by use of the term "the cost to

24   repair or replace."  There's no definition in

25   the policy as to what constitutes the cost to

1    repair or replace.  Absolutely none.

2        We submitted our bill.  They paid less.

3    I'm not sure of the exact amount that they

4    reduced the reimbursement by, but they didn't

5    pay the full amount of the cost to repair.

6        Once that happened, we filed suit in the

7    case.  We said, you know what, if there's

8    another definition of the cost to repair, you

9    have to tell us what that is.

10       So we filed petitions, Judge, for

11   declaratory relief, claiming that their

12   policy -- we believe it's clear in that the

13   cost of repair means the cost of repair, the

14   actual invoice submitted by our provider.

15       If they have another definition, it's got

16   to be set forth clearly and unambiguously in

17   the policy.  That's why we filed this -- the

18   dec action the way we did.

19       There's a case, Judge, called Atencio

20   versus U.S. Security, and it's cited at 676

21   So.2d 489.

22       THE COURT:  Okay.

23       MR. PHILLIPS:  It's real short, two pages.

24       (Indicating.)

25       MR. KOPELMAN:  Your Honor, this goes right

1  to the heart of our argument.  Actually, it

2  goes right to the heart of part of our

3  argument.  And in that it says -- the court in

4  Atencio, the Third DCA, said that appraisal

5  could not be compelled as to whether -- as to

6  the question of whether the automobile insurer

7  was required, under the policy's collision

8  coverage, to pay for up to $200 for loss of use

9  of the vehicle only or for only for rental

10 reimbursement for $10 a day.

11      Since the question was not one of amount

12 of loss -- it goes on, Judge, to say -- the

13 court went on to say, questions of insurance

14 policy interpretation and coverage -- and it's

15 important to note, they use the terms

16 interpretation and coverage -- are ordinarily

17 for the court, rather than for arbitrators or

18 appraisers to decide.

19      And that's what we're asking Your Honor to

20 decide, is whether or not this policy is clear,

21 whether it's ambiguous or unambiguous.

22      In addition to that, Judge, I want to --

23 I'd like to bring your attention to the

24 appraisal provision, and show you why it's not

25 applicable in this situation.  If we go back to

1   their motion --

2        THE COURT:  All right.

3        MR. KOPELMAN:  -- and go back to that same

4   case --

5        (Brief interruption.)

6        THE COURT:  All right, sir.

7        MR. KOPELMAN:  Thank you, Your Honor.

8        If we go to the portion of that memo that

9   says right to appraisal, it says both you and

10  we have a right to demand an appraisal of loss.

11  Each will appoint and pay a competent and

12  disinterested appraiser, and will equally share

13  other appraisal expenses, okay, which is --

14  I'll talk about that part of it in a minute.

15       But going on it says, the appraisers or a

16  judge of a court of record will select an

17  umpire to decide any differences.  Each

18  appraiser will state separately the actual cash

19  value and the amount of the loss.

20       The case, Judge, of Heller versus Blue

21  Aerospace, LLC, cited at 112 So.3d 635, points

22  out that in either arbitration or appraisal

23  there are three requirements in order to

24  enforce an appraisal or arbitration provision.

25  One is whether there's a valid written

1  agreement to arbitrate.  Okay.

2      We don't dispute that there's a valid

3  written agreement here, but the important thing

4  is whether there is an appraisable issue.  This

5  issue isn't even right for appraisal because,

6  as we just noted, the right to appraisal

7  provision says that each appraiser will state

8  separately the cash value and the amount of

9  loss.

10      The actual cash value is completely

11  irrelevant here.  It's meaningless.  The only

12  issue that we have for consideration is the

13  cost to repair.  That's not addressed at all in

14  the appraisal provision.  So this is not an

15  issue.

16      What this was set up to do, Judge, is, in

17  reality, if you had a loss that was a big loss,

18  and you had to make a determination as to how

19  much the -- you know, how much the damages

20  were, and how much the cost to repair the

21  vehicle was, in order to assess whether or not

22  there's been a total loss, to make a

23  determination, that's why that appraisal

24  provision is there, not to determine cost of

25  repairs.

1        And really what -- what Allstate is trying

2    to do is take a scenario where you've got a

3    relatively minimal amount that's at dispute,

4    okay, and we believe needs to be clarified

5    pursuant to the policy, and force and push

6    claimants into an appraisal process that will

7    end up resulting in them receiving nowhere

8    close to what their actual reimbursement should

9    be.

10        Number one, it's -- like I said, it's not

11    an appraisable issue.  It's clearly not an

12    appraisal issue.  And number two, it's an

13    issue -- this issue, with respect to what

14    constitutes a cost of repair, the cost to

15    repair is one for the Court to determine.

16        We believe it -- we believe, like I said,

17    it's clear, cost to repair means the invoice

18    itself.  If they believe it's something else,

19    they're going to have to explain that to the

20    Court's satisfaction.  And that's where the

21    issue of policy comes into play.

22        For that reason, we don't believe that

23    this is an appraisable issue, and we believe

24    that their motion to invoke appraisal should be

25    denied.

1        THE COURT:  Okay.  Thank you.

2        Defense, anything else?

3        MS. BRUCK:  Yes, Your Honor.

4        MS. GOODEN:  If I may stay seated.

5        THE COURT:  Yes, I know.  Your toe.

6        MS. GOODEN:  Thank you.

7        THE COURT:  I have no problem.

8        MS. GOODEN:  We do not believe that there

9   is a genuine issue of policy interpretation

10  here.  And just to kind of backtrack a little.

11  Just the basic premise is an insurance contract

12  policy is a contract between the insured and

13  the insurance company.

14       And as the assignee, they kind of step

15  into the shoes of that insured, and have to

16  abide by it.  So we are not forcing anybody to

17  do anything.  This is something that was

18  expressly agreed to.

19       And we do not believe that the policy is

20  ambiguous in any manner.  So the plaintiff is

21  focusing on very isolated statements.  And if

22  you actually read the appraisal clause, it does

23  not mention the limit of liability section at

24  all, and it doesn't amend it, it doesn't alter

25  it, it doesn't do anything.  It's essentially

1    dealing with something else.

2         And so there's a case that interprets

3    this.

4         MS. BRUCK:  Can we approach, Your Honor?

5         THE COURT:  Yes.

6         MS. GOODEN:  And, for the record, it's

7    State Farm Fire & Casualty versus Middleton.

8    That's a Third DCA case.  648 So.2d 1200.  And

9    the Third DCA interpreted a similar appraisal

10   clause in respect to the limits of liability

11   clause.

12        And if you go to page three --

13   essentially, three and four is the pertinent

14   portions, but it starts on the right-hand

15   column.  We are influenced, too, by the fact

16   that the language of the appraisal clause

17   itself does not, as do others, limit itself to

18   determining the amount of loss under this

19   policy.

20        This was the decisive factor in LaCourse

21   versus Firemen's Insurance, in which an

22   automobile policy provided for arbitration when

23   the parties do not agree as to the amount of

24   damages, just as the present policy refers to a

25   failure to agree on the amount of loss.  And

1   that's the same here.

2        And the court went on to say, and holding

3   that this language did not restrict the damages

4   recoverable when the policy was stacked with

5   others, the court said the amount of damages is

6   not measured by or restricted in any way by the

7   policy limits.  It is a factual matter,

8   completely independent of the actual amount of

9   insurance provided by the policy.

10        For example, a jury verdict on the amount

11  of damages is generally determined without any

12  knowledge or reference to whether the defendant

13  is insured.  Here, the arbitration clause does

14  not restrict the words amount of damages to

15  policy limits or by any other fixed amount.

16        The disputed term is not modified by any

17  language, such as payable or for which it is

18  liable under the policy.  And exactly the same

19  here, our appraisal clause does not contain

20  that language.

21        And if you go to page four, the left-hand

22  column, it says, indeed, it has been

23  specifically held that binding appraisal

24  provisions are enforceable, even if the amount

25  involved may exceed the value of the policy.

1          And then just skipping down towards the

2     middle, the requirement of the submission to

3     arbitration does not, moreover, result in any

4     injustice to the insureds, whose recovery would

5     essentially dependent -- sorry, would be

6     essentially dependent upon the results of an

7     arbitration process in the -- in any case.

8          This is true, because any claim for

9     negligence or fraud depends on the showing that

10    conduct proximately resulted in damage to the

11    insured, that is, the amount of the loss as

12    determined by the appraisal process.

13         And so we believe that this reasoning is

14    equally applicable here.  Our appraisal clause

15    does not even reference this other provision.

16    It doesn't say limits of liability.  It doesn't

17    say cost to repair.  It just doesn't mention

18    it.

19         And so just basic contract interpretation,

20    this clause does not apply here.  It doesn't --

21    again, it doesn't alter, amend, or control the

22    appraisal clause.  And so we believe that

23    there's no bona fide need for this Court to

24    essentially issue an advisory opinion as to the

25    interpretation of this policy.

1        We believe this absolutely is an

2    appraisable issue.  And again, they've already

3    conceded this is not about a coverage dispute.

4    We've never denied coverage.  We have readily

5    admitted coverage, and we paid the amount it

6    believes is reasonable.

7        And we see this dec action as just as

8    essentially a unilateral escape valve to skirt

9    their responsibilities under the policy, to get

10   out from under appraisal, and to rack up

11   attorney's fees.

12       And again, this is solely about the amount

13   of loss.  How much does this windshield cost?

14       Is it the amount they think or is it the

15   amount that Allstate thinks?

16       And for that reason, Your Honor, we

17   believe that this is an appraisable issue.

18       THE COURT:  Okay.  Thank you.

19       MR. KOPELMAN:  May I respond, Your Honor?

20       THE COURT:  Yes.

21       MR. KOPELMAN:  Thank you.

22       First of all, the Atencio case out of the

23   Third DCA doesn't talk solely about coverage.

24   It talks about policy interpretation, in

25   addition to coverage.

1        Secondly, this case that they just cited

2    to Your Honor, the State Farm case, and

3    represented to the Court that the appraisal

4    provision in this policy was the same as the

5    appraisal provision in this case here, is

6    completely untrue.

7        The appraisal provision in this particular

8    policy, in the -- in the State Farm policy that

9    they gave you, this case, says if you and we

10   fail to agree on the amount of loss, either one

11   can demand that the amount of loss be set by

12   appraisal.

13       If either makes a written demand for

14   appraisal, each shall select a competent

15   independent appraiser.  Each shall notify the

16   other of the appraiser's identity within 20

17   days.  Two appraisers shall then select a

18   competent and impartial appraisers.

19       If the two appraisers are unable to agree

20   upon an umpire within 15 days, you or we can

21   ask a judge of record or state where the

22   resident's premises is located to select an

23   umpire.  The appraisers shall then set the

24   amount of loss.

25       That's the only issue in that appraisal

1    provision for them to consider.  That's why

2    it's an appraisable issue, under that

3    particular policy.  And in our policy, the

4    appraisers have to consider, separately, the

5    actual cash value and the amount of loss.

6    There's no way that this was ever contemplated

7    for appraisal.

8         And I would bring to the Court's

9    attention, when we -- we were lucky enough to

10   get an order from Judge Fishman.  It's the case

11   of Broward Insurance Recovery, LLC versus

12   Allstate, where the court said, since the

13   plaintiff is in doubt as to its rights under

14   the policy, which seeks to limit the

15   defendant's liability to the cost to repair or

16   replace the windshield, this creates a policy

17   interpretation, which falls within the sole

18   jurisdiction of the trial court rather than the

19   employment of the nonjudicial remedy of the

20   appraisal process.

21        It goes on, and then the court, in citing

22   Judge Lee, Your Honor, says in the instant

23   case, the operative issue is how the value of

24   the loss should be determined, and making this

25   determination is not within the purview of the

1  appraisal process.

2       Further, the policy language makes it

3  clear that appraisal was not intended to apply

4  where the cost to repair or replace is at issue

5  as opposed to the actual cash value of the

6  property or part, since the appraisers are

7  required by the policy to make a determination

8  as to the actual cash value.

9       It's very simple.  It's not an issue for

10  appraisal, period.  It just isn't.  We -- we

11  have a dispute, we have a doubt, with respect

12  to what that phrase "cost to repair" means.

13  When you submit your invoice, you're

14  expected -- if you read the policy, you expect

15  them to pay.  That is the cost to repair.

16  There's nothing else in the policy that

17  addresses that.

18       If they want to make a claim that there's

19  some other methodology that they can use,

20  Judge, that was not included in the policy,

21  well, that is a policy interpretation issue,

22  which must be decided by the Court.

23       MR. STILLO:  We have a few other issues,

24  Your Honor.  Can I briefly address them?  And

25  Mr. Phillips is going to address them, as well.

1        THE COURT:  Let me check with the defense.

2        Anything else before we move on?

3        MS. GOODEN:  Just briefly.

4        I never represented to the Court that it

5    was verbatim of the appraisal clause, and I

6    said that this reasoning equally applies here.

7        And then there has been some mention about

8    other judges, and how they rule.  Just for

9    Your Honor's benefit, right now there's

10   currently, I think, 47 petitions for writ of

11   cert up before the circuit court, here in

12   Broward, on this very issue between these

13   parties.

14       THE COURT:  Okay.  Thank you.

15       Okay.  Mr. Stillo.

16       MR. STILLO:  Another issue we have --

17   permission to approach, Your Honor?

18       THE COURT:  Yes.

19       MR. STILLO:  This is a case that sets out

20   one of the other issues.

21       MS. BRUCK:  Do I have it?

22       MR. STILLO:  It was provided in the

23   copies.

24       MS. BRUCK:  Okay.

25       MR. STILLO:  One of the -- there's

1    multiple declaratory counts at issue.  One of

2    the declaratory counts at issue concerns

3    whether defendants chose an appraiser, a

4    company known as AGIS, is a disinterested

5    appraiser.  The policy has a specific

6    requirement that each side select a

7    disinterested appraiser.

8         Now, the courts that have ruled on this

9    issue -- and this is on page three of the order

10   I just cited.  Plaintiff contends -- and this

11   is the case of Clear Vision Windshield Repair

12   as assignee of Jennifer Beckles versus

13   Progressive American Insurance Company, cited

14   as 23 Fla. L. Weekly Supp. 486A.

15        In that case, coincidentally enough, the

16   insurance company was also using this company

17   called AGIS as an appraiser.  And that was a

18   Progressive case.  And that policy had a

19   requirement that the appraiser be impartial.

20   Disinterested is an even higher standard than

21   impartial.

22        And what Judge Skolnik found, he said the

23   plaintiff contends that the defendant has

24   violated the policy of insurance by selecting

25   an appraiser who is not impartial.  In our

1  case, disinterested

2      In the Fifth District's opinion in the

3  case of Florida Insurance Guaranty versus

4  Branco, cited as 148 So.3d 488, the Fifth

5  District addressed whether an entity who was

6  clearly, quote unquote, interested in the

7  outcome, could serve as the parties' appraiser.

8      In Branco, the attorney for the

9  policyholder was selected by the policyholder

10 to serve as the parties' appraiser.  The court

11 held that it was impermissible to select one's

12 own lawyer to act in that capacity when the

13 contract of insurance called for a, quote

14 unquote, disinterested appraiser.

15     The policy called for each party to choose

16 a competent and disinterested appraiser.  And

17 Judge Orfinger, who authored the opinion,

18 stated that the court's research had revealed

19 no Florida case on point.  But they looked to

20 the Pennsylvania law, and ultimately determined

21 that that was not going to be allowed.

22     The court in Branco found the policy

23 provision, which requires a disinterested

24 appraiser, expressed the parties' clear

25 intention to restrict appraisers to individuals

1    who are, in fact, disinterested.

2         So now, what facts do we have in our case

3    that AGIS is disinterested, and why do we need

4    a declaration?

5         MS. BRUCK:  And, Judge, I would object.

6    I'm sorry.

7         MR. STILLO:  Judge, she can respond after

8    I'm done.  I don't know why she has to

9    interrupt.

10        THE COURT:  Okay.  Well, just let's see

11   what her objection, is Mr. Stillo.

12        MR. STILLO:  Okay.

13        THE COURT:  Go ahead.

14        MS. BRUCK:  Thank you.

15        I certainly don't mean to interrupt.  I

16   just want to object to any facts that it sounds

17   like Mr. Stillo is about to cite.  It's outside

18   the four corners of the motion to dismiss and

19   their complaint.  So we object to any

20   extraneous facts, hearsay, and things of that

21   nature.

22        THE COURT:  Okay.

23        Mr. Stillo, your response?

24        MR. STILLO:  Okay.

25        My response is, well, there's an

1  affidavit, so let's start with the affidavit.

2  The affidavit that was filed September 5th,

3  2017 -- and one of the purposes of the

4  declaratory action, one of the requirements of

5  the declaratory action, is it capable of

6  repetition?

7      And Allstate has never wavered from this

8  decision to use AGIS.  This goes back years and

9  years.

10      So is AGIS disinterested?

11      So this is where it gets interesting.  So

12  I have the affidavit that was filed with the

13  Court September 5th, 2017, of my client,

14  Charles Isaly.  Charles Isaly is the owner of

15  Auto Glass America.

16      Charles Isaly's affidavit goes on and

17  establishes the business of Auto Glass America,

18  that he has personal knowledge, that

19  authenticates all the records attached to the

20  affidavit.

21      And it says, and this is what happened,

22  there was a dispute back in 2013, with AGIS,

23  five years ago, with an issue in the appraisal

24  process.

25      And guess what happened?

1         AGIS -- there's letters attached.  AGIS

2    hired their own lawyers, and threatened to sue

3    Mr. Isaly.  So their supposedly disinterested

4    appraisers threatened to sue him, and they

5    still won't stop using him.

6         So the letter is attached there.  And the

7    letter says specifically, I'm in receipt of

8    correspondence -- this is paragraph seven of

9    Mr. Isaly's affidavit dated June 21st, 2013,

10   from attorneys retained by AGIS, which

11   threatened Auto Glass America with litigation.

12        He attaches the correspondence.  The

13   correspondence states the firm of Alvarez &

14   Gilbert, PLLC represents AGIS in its capacity

15   of appraiser -- as appraiser for Allstate.

16        AGIS, through the counsel, threatened

17   Allstate with litigation, which would include

18   seeking a judicial decree.  So AGIS is trying

19   to bring a declaratory action against any

20   client.  And it goes on to say, AGIS reserves

21   all rights.  Govern yourself accordingly.  So

22   that's step one.

23        Mr. Isaly also has visited AGIS's internet

24   homepage website, and attaches a copy of the

25   website from April 28th, 2015.  Again,

1   Allstate's relationship with AGIS, this goes

2   back four, five, six years, at least.

3        What's interesting about this is, on its

4   internet homepage, back in 2015, AGIS states,

5   in its first sentence, Auto Glass Inspection

6   Services' mission is to verify auto glass

7   damage for the insurance industry.

8        In the third paragraph AGIS states, AGIS's

9   sole purpose is to report back to the insurance

10  industry what type of damage exists or lack

11  thereof.

12       In the fifth paragraph of the website,

13  AGIS has no affiliation with any companies in

14  the glass industry, and only serves large

15  insurance companies.

16       Then he goes on to say Allstate has

17  previously selected AGIS, and we -- and

18  Mr. Isaly, we have -- correspondence has been

19  sent to Allstate, in hundreds of cases, saying

20  withdraw AGIS.  They refused to do so.  Courts

21  will not require a party to do a futile act.

22       Now, what's interesting is, there was a

23  case that came out recently, in July of 2017,

24  which I previously provided counsel, which is a

25  Third DCA case, cited as Heritage Property &

1    Casualty Insurance versus Romamach, cited as

2    224 So.3d 262.  That was an opinion from July

3    12th of this year -- of last year.

4         What that case was about was, the

5    insurance company brought a declaratory action

6    against a policyholder regarding whether their

7    umpire was, in fact, competent and impartial.

8    And the Third District held that the

9    homeowners -- the home insurer stated a cause

10   of action for declaratory relief, to the extent

11   that the insurer was seeking to determine

12   whether the appointed umpire was, in fact,

13   competent and impartial.

14        So there is DCA case law directly

15   supporting the plaintiff's declaratory action,

16   in this case, against AGIS.  This is not only

17   capable of repetition.  It has been rep -- and

18   I have a litany of orders here where I've

19   gotten discovery allowed by numerous judges,

20   including Judge Marks and other judges, against

21   AGIS.

22        And the second I filed a motion to appoint

23   a commissioner, they end up confessing

24   judgment, because there's even more to this

25   story than meets the eye, because AGIS is out

 1   in Arizona.
 2       But what happens is, if the client has --
 3   let's say they have the exact same damage, and
 4   you have three different insurance carriers
 5   using AGIS, AGIS has a representative for each
 6   carrier in the office, and they all come up
 7   with their own price, based on what insurance
 8   company it is.
 9       So what they don't want me to uncover is
10   that there is a prearranged deal where AGIS
11   will come in with a specific amount, no matter
12   what, based on the carrier.
13       So AGIS is -- this is -- they're -- this
14   is not at all what the policies contemplated.
15   They're not remotely disinterested.  There's a
16   prearranged deal, I believe, here.  And one of
17   our motions is to compel discovery, and I'd
18   like to go out to Arizona to take their
19   deposition.
20       But this is an issue that won't stop.  And
21   we have a motion to compel discovery.  We'll
22   get into that later.  But we believe we cite a
23   completely valid cause of action for
24   declaratory relief, as it relates to AGIS.
25       And we have other issues to address, too,

1   but I think if we just do them one at a time

2   it's a little easier.

3        THE COURT:  Okay.

4        MS. BRUCK:  Thank you, Your Honor.

5        Well, I move to strike almost the entire

6   argument.  It's something of an evidentiary

7   hearing, without any real evidence or

8   admissibility being established.

9        The filing of an affidavit doesn't

10  necessarily make it admissible or relevant.  So

11  we move to strike that in it's entirety.

12  That's -- all of it's outside of anything

13  that's happened within my firm.

14       And regardless of all of that, we're not

15  saying these facts can't be adjudicated in

16  court.  We're saying there's a procedure.  So

17  back to the procedure of the Third DCA, as soon

18  as the grounds are known, then the plaintiff

19  must make a demand that the insurer replace the

20  appraiser.

21       If the insurer declines, the insured must

22  properly file a complaint, in circuit court,

23  seeking removal of the appraiser.  And that's

24  page seven of eight of Travelers versus

25  Stormont.

1        The cases that the plaintiff's attorney

2    cited are not on point at all because Florida

3    Insurance versus Bronco, that case is a case

4    that was already in litigation over coverage.

5    Once coverage was determined, the insured

6    invoked the appraisal.  And they went to -- the

7    insurer refuted the appraiser the insured

8    selected, because the insured's selected

9    appraiser was the insured's attorney in the

10   instant case.

11       So they properly brought that particular

12   issue before the court, who they were already

13   in front of.  They didn't circumvent the

14   procedure that is put in place to avoid

15   litigation.  They were already in litigation.

16       And as to Heritage Property & Casualty,

17   that case is also not on point because those

18   two parties actually went to appraisal.  There

19   was an appraisal award, and then the umpire

20   came in, because they -- to determine which

21   appraiser was correct, because they couldn't

22   come to an agreement.

23       And they -- one of the parties thought

24   that the umpire was biased.  So the party

25   properly brought it before the court saying,

1  hey, we believe this umpire is biased, we can't

2  come to an agreement on that, and asked for the

3  court's intervention.  They properly filed the

4  dec relief, whether the appraiser was competent

5  and impartial, and they did that circuit court,

6  as well.

7       So we're not saying these issues can't be

8  adjudicated or they're not entitled to it.

9  We're just saying you're not going about it in

10  the correct way, as carved out by the law.

11       THE COURT:  Okay.  All right.

12       Ma'am, I'm going to overrule your ore

13  tenus motion to strike.

14       All right.  What's next?

15       MR. PHILLIPS:  Hi, Judge.

16       One of the other issues is what is called

17  the prohibitive cost doctrine.  And to -- as a

18  prelude to that, let me just back up a little

19  bit to make sure that we're all staying within

20  the context here.

21       What we have here is a four-count

22  complaint for declaratory relief.  And these

23  are not claims for breach of contract disguised

24  as declaratory relief.  Appraisers aren't the

25  folks that are authorized to award equitable

1  relief to a party.  That is solely within the

2  province of the court.

3      The four claims for declaratory relief

4  are, one, an interpretation of the cost to

5  repair or replace.  That's already been

6  discussed.  Atencio, in our view, establishes

7  that.

8      Number two is the interpretation that the

9  appraisal provision is not applicable.  Again,

10  already been discussed.  Cost to repair or

11  replace actual cash value.  I won't beat a dead

12  horse.

13      Number three is, the appraisal violates

14  the prohibitive cost doctrine.  And what the

15  prohibitive cost doctrine is, it's a judicially

16  created doctrine.  It first showed up, as far

17  as I'm able to tell, at the United States

18  Supreme Court, in a decision called Green Tree

19  Financial Corp. Alabama versus Randolph, 531

20  U.S. 79.

21      There the issue was arbitration, but I

22  think everybody here will agree that the case

23  law on appraisal and arbitration is the same

24  conceptually.

25      And what it basically means is, the law is

1    not going to require a party to spend a

2    substantial amount of money seeking relief that

3    they are looking for.  You don't spend $10 to

4    get back $5, in other words.

5        And the declaration that we're seeking

6    that the appraisal provision is unenforceable

7    and actually illusory, because the expense to

8    enter into appraisal is prohibitive on the

9    insured and the plaintiff.

10       The appraisal provision requires both

11   sides to bear the costs of their own appraiser,

12   and split the costs of an umpire, if the

13   appraisers are in conflict.

14       Those are not taxable costs that could be

15   recovered in an action in law or equity.  Those

16   are just costs that the insured or the assignee

17   can never get back, if the case goes to

18   appraisal.

19       Here, these are windshield replacement

20   cases where the average amount of dispute is 4,

21   5, $600, maybe a little less on some, maybe a

22   little more on some.  The appraisal process, to

23   pay for the appraiser, to split the umpire,

24   is -- I don't think anybody would disagree --

25   at least a couple of hundred dollars.

1      So we're spending money, and we're not

2   getting it back, in order to get what we're

3   entitled to, under the contract.  The best that

4   we're going to do is get only a percentage of

5   what we're ultimately entitled to, because

6   we've had to pay for the actual appraiser.

7      In insurance cases, Florida Statute

8   627.428 provides a one-way attorney fee

9   statute.  Costs are, you know, recovered by the

10  victor.

11     Well, if the case is brought in court, the

12  insured will get its costs back, if they

13  prevail.  That can't happen in appraisal.  The

14  most the insured or assignee can hope to get is

15  a percentage.

16     And there have been several cases that

17  have talked about this around the state.  One

18  that jumps out at me is actually the same case

19  that Mr. Kopelman referenced, the Broward

20  Insurance Recovery Center a/a/o Charlie Gari,

21  G-A-R-I, versus Allstate.

22     There Judge Fishman said that, well, we

23  ultimately don't need to even reach the

24  prevailing prohibitive cost doctrine, or

25  whether or not AGIS is disinterested or not,

1  because she ruled for the plaintiff on the

2  policy interpretation.

3      But she did go out of her way to point

4  out, although the court's finding renders moot

5  the issue of whether the invocation of

6  appraisal would violate the prohibitive cost

7  doctrine, which renders appraisal or

8  arbitration prohibitively costly, where the

9  cost of participating in that process

10  effectively prohibits a party from

11  participating, since any recovery would create

12  a loss, it should be noted that plaintiff

13  likely would have been required to spend more

14  on the appraisal process than it claims in the

15  dispute.  Judge Hilal said the same thing two

16  months ago.  What she said there was, we don't

17  need to reach the prevailing -- the cost

18  prohibitive doctrine.

19      But there is a citation to a variety of

20  cases that say that, well, the out-of-pocket

21  can't be recovered.  Every dime spent on

22  appraisal is a dime less than the plaintiff

23  would ultimately recover, so...

24      MR. STILLO:  Here, Your Honor.

25      MS. BRUCK:  What is that?

1      MR. STILLO:  Judge --

2      MR. PHILLIPS:  That is -- that's --

3      THE COURT:  I'm sorry, Mr. Phillips.  I

4  just want to make sure.

5      Did you need anything?

6      MS. BRUCK:  I was just wondering what the

7  document was.

8      THE COURT:  Oh, okay.

9      MR. STILLO:  That was the Judge Hilal case

10  I just --

11      MS. BRUCK:  Thank you.

12      MR. STILLO:  -- I just --

13      THE COURT:  Do you have a copy?

14      MS. BRUCK:  I do.  Thank you very much.

15      THE COURT:  Okay.  All right.

16      I'm sorry, Mr. Phillips.

17      MR. PHILLIPS:  Oh, no.  That's okay.

18      That is -- this prohibitive cost doctrine

19  is the point of count three for declaratory

20  relief.  And then count four is the AGIS issue,

21  and them not being disinterested.

22      So all in, we're asking the Court for a

23  determination here.  We're asking the Court to

24  interpret the contract.  And I don't think the

25  Court should have to even reach the prohibitive

1   cost doctrine.  Why spend $300 to recover 400?

2   The net effect to the plaintiff is $100.

3       We don't think the Court needs to reach

4   the issue of AGIS, and their litigation

5   tactics, and the fact that they are aligned

6   only with the insurance industry, because we

7   think that the motion to dismiss and to compel

8   appraisal should be denied, based on the policy

9   language.

10      The fact that we're asking this Court to

11  help us interpret this policy language, that's

12  something an appraiser just cannot do.

13      MS. GOODEN:  Yes, Your Honor.

14      You know, they cited the U.S. Supreme

15  Court.  This case has been interpreted by

16  Florida district courts.

17      Can you give a copy to them, and then the

18  Court?

19      MS. BRUCK:  Sure.

20      MS. GOODEN:  One in particular, it's a

21  Second District Court of Appeal case called

22  Zephyr Haven Health & Rehab Center versus

23  Hardin, at 122 So.3d 916.

24      And the Court explained that in order to

25  fall within this prohibitive cost doctrine,

1    which even the U.S. Supreme Court, in the Green

2    Tree case, found it didn't apply, that the

3    plaintiff has to prove both procedural and

4    substantive unconscionability.  And so the

5    procedural unconscionability is essentially the

6    manner in which the contract was entered.

7         And if you look at the complaint, there is

8    no allegation as to how this contract was

9    entered.  And so, as a matter of law, this

10   count fails.  It doesn't state a cause of

11   action.

12        Now, the substantive unconscionability, it

13   requires an assessment of the contract's terms

14   to determine whether they are so outrageously

15   fair as to shock the judicial conscience.

16        And so this Zephyr Haven case basically

17   says that where a party alleging this only

18   establishes one or two prongs, that claim

19   fails.  And that's what's going on here.

20        And I will note, I think the substantive

21   unconscionability claim fails, as well.  They

22   are, you know, focusing a lot on the amount in

23   dispute; you know, we're not going to get

24   money, we're not going to make money.  And

25   that's not truly what you're supposed to focus

1   on in this issue.

2       You're supposed to look at essentially the

3   amount that's likely to incur, and an inability

4   to pay that amount.  So if, in looking at the

5   appraisal, it's $100, $200, you know, it's

6   fairly minimal.  It's the ability to pay that.

7   And that has not been alleged here, either.

8       And so, and again, we've got to look at,

9   appraisal is meant to be quick, efficient,

10  cheap, to move the parties through these

11  claims, and not bog down in litigation for

12  years.  And so we don't think, as a matter of

13  law, they have even stated a claim here.

14      Thank you.

15      THE COURT:  Thank you.

16      MR. PHILLIPS:  Thank you, Judge.

17      I'm just reading this case for the first

18  time, but I don't even have to get all the way

19  through to distinguish it.

20      We are here on a windshield replacement.

21  We are certainly not here on a nursing home

22  case.  And I certainly don't want to misspeak

23  about the case, without having a chance to

24  fully digest it, but the -- what the court does

25  seem to say here is, on page six of the

1  opinion, that to the extent Hardin -- and I

2  think Hardin is the -- yeah, Edna Hardin,

3  that's the actual nursing home patient.

4      To the extent that Hardin has maintained

5  that the costs were prohibitively expensive,

6  she had to prove the likelihood of incurring

7  such costs.  And then they cite to Green Tree.

8      They -- the court doesn't say if something

9  is prohibitively -- it doesn't say that the

10 prohibitive cost doctrine doesn't apply here.

11 What it says is, it's up to the patient or, in

12 this case, it would be the provider, to prove

13 that -- what those costs are in relation to the

14 damages being sought.

15     Here, again, we're not seeking damages.

16 These are all claims for declaratory relief.

17 And we raise the issue because it requires the

18 plaintiff to go out-of-pocket a substantial

19 percentage of the amount they seek to recover.

20 We're not there yet.

21     We would ask that if the Court even

22 reaches that issue, that let's have an

23 evidentiary hearing on it to determine what

24 those actual costs are.  That should alleviate

25 any concerns raised in opposition to our

 1  argument there.

 2      But again, and respectfully, we don't

 3  think we even need to get there.  We think the

 4  counts for declaratory relief asking the Court

 5  to interpret the policy ought to end the

 6  inquiry, end of story.

 7      I will literally drop my mike and sit

 8  down.

 9      THE COURT:  Okay.

10      MR. STILLO:  Just one other thing,

11  briefly, Your Honor.

12      They had cited a 17th Circuit opinion, and

13  that was a straight breach of contract.  This

14  is a different policy of insurance, and these

15  are different causes of action.

16      And that's the same thing that was argued

17  to Judge Hilal, Judge Hurley, Judge DeLuca, and

18  they all -- they all still denied the appraisal

19  requests.  So I would distinguish that, and --

20      THE COURT:  Okay.  All right.  Thank you.

21      I don't know how it happened, but this was

22  only calendered for 15 minutes.

23      MS. BRUCK:  Wow.

24      MR. STILLO:  I apologize, Judge.

25      THE COURT:  So I don't want to keep the

1  party back there waiting.

2       MR. STILLO:  Is it permissible for both

3  sides to submit proposed orders, Your Honor?

4       THE COURT:  Absolutely.

5       I have my division 51 e-mail address in

6  that metal bin right next to you, if you want

7  to take a copy.  Okay.  And then my JA is going

8  to be out on maternity for another two months.

9  So if you need anything, the best way to reach

10  me is through that e-mail address, because I

11  can't accept calls in here.

12      Okay?

13      MS. BRUCK:  Okay.

14      MR. STILLO:  Should we do that by close of

15  business next Friday, Your Honor?

16      Is that agreeable?

17      THE COURT:  Is that enough time for

18  everyone?

19      That would be the 10th.

20      MR. STILLO:  Kansas, is that agreeable?

21      MS. GOODEN:  Can I have ten days?

22      I have an 11th Circuit argument.

23      THE COURT:  Of course.

24      MR. STILLO:  That's fine.  That's fine.

25      THE COURT:  Yes.

1        MS. GOODEN:  Thank you.

2        THE COURT:  Of course.  Okay.

3

4        (Thereupon, the hearing was

5   concluded at 3:01 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF REPORTER

2

3              I, Lois L. McInnis-Kelleher, FPR, do

4     hereby certify that I was authorized to and did

5     report the foregoing proceedings, and that the

6     transcript is a true and correct record of my

7     stenographic notes.

8              Dated this 5th day of February 2018 at

9     Fort Lauderdale, Broward County, Florida.

10

11

12

13          _____

14                    Lois L. McInnis, FPR

15

16

17

18

19

20

21

22

23

24

25

## $

**$10**   25:10
  50:3
**$100**   54:2
  56:5
**$200**   25:8
  56:5
**$300**   54:1
**$5**   50:4
**$600**   50:21

## 1

**1021A**   9:16
**10th**   59:19
**110**   8:15
**112**   26:21
**11th**   59:22
**1200**   30:8
**122**   54:23
**12th**   44:3
**13**   9:14,15
**148**   39:4
**15**   34:20
  58:22
**17th**   58:12
**1977**   7:6,12

## 2

**20**   34:16
**2010**   17:11
**2013**   41:22
  42:9
**2014**   7:4,13
**2015**   42:25
  43:4
**2017**   41:3,13
  43:23
**21st**   42:9
**224**   44:2
**23**   38:14
**262**   44:2

**28th**   42:25

## 3

**30**   19:3
**37**   7:13
**3:01**   60:5

## 4

**4**   50:20
**400**   54:1
**43**   17:11
**430**   4:13
  19:18
**47**   37:10
**486A**   38:14
**488**   39:4
**489**   24:21

## 5

**5**   50:21
**51**   59:5
**531**   49:19
**5712**   12:23
**5th**   41:2,13

## 6

**627.428**   51:8
**635**   26:21
**648**   30:8
**67**   6:13
**676**   24:20

## 7

**77**   7:8
**79**   49:20

## 8

**800**   9:16

## 9

**916**   54:23
**941**   17:11

## A

**A-S-H-L-A-N-D**
  7:5
**a/a/o**   51:20
**A1**   9:16
**abide**   29:16
**ability**   56:6
**able**   49:17
**about**   5:12
  10:21 11:10
  13:20 15:18
  16:21 17:20
  18:5 21:3
  26:14 33:3,
  12,23,24 37:7
  40:17 43:3
  44:4 48:9
  51:17 56:23
**absolutely**
  24:1 33:1
  59:4
**accept**   59:11
**accident**   5:20
  21:19
**accordingly**
  42:21
**across**   8:15
**act**   39:12
  43:21
**action**   8:9
  18:25 19:1
  24:18 33:7
  41:4,5 42:19
  44:5,10,15
  45:23 50:15
  55:11 58:15
**actual**   23:7,
  12 24:14
  26:18 27:10
  28:8 31:8

  35:5 36:5,8
  49:11 51:6
  57:3,24
**actually**   5:13
  9:12 21:3,24
  22:18 25:1
  29:22 47:18
  50:7 51:18
**addition**
  25:22 33:25
**additional**
  10:18 16:15
  18:8,13
**Additionally**
  10:5
**address**   3:21
  10:6 36:24,25
  45:25 59:5,10
**addressed**
  27:13 39:5
**addresses**
  16:8 36:17
**adjudicate**
  4:22,24 17:1
  18:18
**adjudicated**
  46:15 48:8
**adjuster**   13:3
  15:2
**admissibility**
  46:8
**admissible**
  46:10
**admits**   20:9
**admitted**
  17:19 33:5
**admitting**
  20:14
**advisement**
  14:9
**advisory**
  32:24
**Aerospace**
  26:21
**affidavit**
  12:8,18 13:1,
  2,8 14:13,14,

16,17,21
15:12,15,24
16:5 41:1,2,
12,16,20 42:9
46:9
**affiliation**
43:13
**after** 40:7
**afternoon**
3:12,18 7:20
9:13
**again** 32:21
33:2,12 42:25
49:9 56:8
57:15 58:2
**against** 8:10
11:19 19:1
42:19 44:6,
16,20
**agents** 8:12
**AGIS** 38:4,17
40:3 41:8,10,
22 42:1,10,
14,16,18,20
43:1,4,8,13,
17,20 44:16,
21,25 45:5,
10,13,24
51:25 53:20
54:4
**AGIS's** 42:23
43:8
**ago** 41:23
52:16
**agree** 17:24
30:23,25
34:10,19
49:22
**agreeable**
59:16,20
**agreed** 29:18
**agreement**
13:14 27:1,3
47:22 48:2
**ahead** 18:21
40:13
**akin** 22:4

**Alabama** 49:19
**aligned** 54:5
**Alison** 3:8
**all** 4:3 8:12
9:5,22 13:18
14:2 19:4
26:2,6 27:13
29:24 33:22
41:19 42:21
45:6,14
46:12,14 47:2
48:11,14,19
53:15,22
57:16 58:18,
20
**all-risk** 22:4
**allegation**
55:8
**alleged** 56:7
**allegedly** 4:1
**alleging**
55:17
**alleviate**
57:24
**allowed** 39:21
44:19
**Allstate** 3:4
8:10,11,14
10:23 12:3
13:8 19:1
22:1,2 28:1
33:15 35:12
41:7 42:15,17
43:16,19
51:21
**Allstate's**
21:18 43:1
**almost** 46:5
**alone** 4:12,25
**along** 3:8
18:20
**already** 33:2
47:4,12,15
49:5,10
**also** 4:20
6:12 8:18
9:12 20:1
38:16 42:23

47:17
**alter** 29:24
32:21
**although** 52:4
**Alvarez** 42:13
**ambiguous**
25:21 29:20
**amend** 29:24
32:21
**America** 3:4
4:6,9 12:20
13:7 15:10,19
41:15,17
42:11
**America's**
15:18
**American**
38:13
**amount** 16:21,
23 20:10,12,
16,17,19
24:3,5 25:11
26:19 27:8
28:3 30:18,
23,25 31:5,8,
10,14,15,24
32:11 33:5,
12,14,15
34:10,11,24
35:5 45:11
50:2,20 55:22
56:3,4 57:19
**and** 3:25 4:9,
18,24 5:12,25
6:9,11,14,15
7:4,7,11,13,
14 8:18 9:3,
5,8,16,19,22
10:1,6,21
11:5,10 12:1,
14,15 13:11,
19,24,25
14:3,4,15,17,
19,22 15:6,7,
8,16,23 16:7,
8,10,11 17:7,
8,10,11,22
19,20,22
18:1,6,10,13,

15,17,19,24
19:1,2,4,11,
13,15,19
20:1,4,7,20,
24 21:2,16,
19,25 22:9
23:19,20
24:16,20
25:3,14,16,
19,24 26:3,9,
11,12,19
27:8,18,20
28:1,4,5,12,
20,23 29:10,
12,14,15,19,
21,24 30:2,6,
8,12,13,25
31:2,18,21
32:1,13,19,22
33:2,5,7,10,
12,16 34:2,9,
18 35:3,5,8,
21,24 36:24
37:5,7,8
38:9,10,17,
18,22 39:16,
20 40:3,5,18,
20 41:3,7,8,
16,21,25
42:2,4,6,20,
24 43:14,17
44:7,8,13,17,
20,22 45:3,6,
16,17,20,25
46:14,23
47:6,16,19,23
48:2,5,17,22
49:14,23,25
50:5,7,9,12
51:1,16
53:20,21,24
54:4,5,7,17,
24 55:3,4,7,
9,16,19,20,24
56:3,7,8,11,
12,22 57:1,7,
17 58:2,7,12,
14,16,17,19
59:7

another  17:23
  24:8,15  37:16
  59:8
answered  6:8
  11:5
antique  17:17
any  7:9,24
  11:13  15:12
  22:3,14  26:17
  29:20  31:6,
  11,15,16
  32:3,7,8
  40:16,19
  42:19  43:13
  46:7  52:11
  57:25
anybody  22:7
  29:16  50:24
anything  7:15
  12:6  15:24
  16:2  29:2,17,
  25  37:2  46:12
  53:5  59:9
anywhere
  15:25
apologize
  58:24
Appeal  54:21
appear  15:20,
  21
applicable
  25:25  32:14
  49:9
applies  37:6
apply  32:20
  36:3  55:2
  57:10
appoint  26:11
  44:22
appointed
  44:12
appraisable
  27:4  28:11,23
  33:2,17  35:2
appraisal  5:9
  10:25  11:14,
  16,19,25
  13:25  14:4

16:19,24
17:3,7  19:8
20:21  25:4,24
26:9,10,13,
22,24  27:5,6,
14,23  28:6,
12,24  29:22
30:9,16
31:19,23
32:12,14,22
33:10  34:3,5,
7,12,14,25
35:7,20  36:1,
3,10  37:5
41:23  47:6,
18,19  49:9,
13,23  50:6,8,
10,18,22
51:13  52:6,7,
14,22  54:8
56:5,9  58:18
appraisals
  11:3
appraiser
  17:6,18,23,24
  18:3,6,9,13,
  17,18  19:10,
  11,14,22
  20:11  26:12,
  18  27:7  34:15
  38:3,5,7,17,
  19,25  39:7,
  10,14,16,24
  42:15  46:20,
  23  47:7,9,21
  48:4  50:11,23
  51:6  54:12
appraiser's
  34:16
appraisers
  25:18  26:15
  34:17,18,19,
  23  35:4  36:6
  39:25  42:4
  48:24  50:13
appreciate
  21:12
approach
  10:14  13:11

30:4  37:17
appropriate
  5:14  16:24
  18:2
April  42:25
arbitrate
  27:1
arbitration
  26:22,24
  30:22  31:13
  32:3,7  49:21,
  23  52:8
arbitrators
  25:17
are  3:24  5:5,
  7,19,22,24
  6:3,13  7:24
  8:19  9:4,6
  10:1  11:2,9
  14:19,21,22
  15:13  19:3,25
  25:16  26:23
  29:16  30:15
  31:24  34:19
  36:6  40:1
  46:18  47:2
  48:23,25  49:4
  50:3,13,14,
  16,19  51:9
  54:5  55:14,22
  56:20,21
  57:13,16,24
  58:15
aren't  5:17
  22:23  48:24
argue  7:1
argued  58:16
argument  11:8
  14:5  17:6
  25:1,3  46:6
  58:1  59:22
Arizona  45:1,
  18
around  51:17
arrive  20:11
as  4:6  6:2,5
  8:20  9:16
  11:24  13:3,7,

8,24  14:1,21
15:13  16:23
17:13,22
18:5,6  20:3,
5,8,25  21:4
22:5  23:16,25
25:5  27:6,18
29:14  30:17,
23,24  31:17
32:11,24  33:7
34:4  35:13
36:5,8,25
38:4,12,14,17
39:4,7,10
42:15  43:25
44:1  45:24
46:17,18
47:16  48:6,
10,17,24
49:16,17
55:8,9,15,21
56:12
Ashland  7:5,8
ask  11:23
  34:21  57:21
asked  48:2
asking  11:2
  25:19  53:22,
  23  54:10  58:4
aspects  9:23
assert  11:8
assess  27:21
assessment
  55:13
assigned  15:7
assignee  9:17
  13:7  29:14
  38:12  50:16
  51:14
assignment
  12:20  16:6,
  13,14  21:22
assignor  4:7,
  10  9:17,25
  20:4,5
at  6:18  8:15
  12:1,11,13,24
  13:23  14:2

15:2 17:8
18:15 20:11
22:19 23:8,18
24:20 26:21
27:13 28:3
29:23 36:4
38:1,2 43:2
45:14 46:1
47:2 49:17
50:25 51:18
54:23 55:7
56:2,4,8 60:5
**Atencio** 24:19
25:4 33:22
49:6
**attached**
12:18 13:3,8
16:7 19:3
41:19 42:1,6
**attaches**
42:12,24
**attention**
7:15 25:23
35:9
**attorney** 39:8
47:1,9 51:8
**attorney's**
19:18 21:1
33:11
**attorneys**
42:10
**authenticates**
41:19
**authored**
39:17
**authority** 7:9
**authorized**
48:25
**auto** 3:3 4:6,
9 9:18 12:19
13:6 15:10,
18,19 22:25
41:15,17
42:11 43:5,6
**automobile**
25:6 30:22
**average** 50:20

**B**

**avoid** 47:14
**award** 47:19
48:25
**aware** 6:13
16:4,9

---

**B**

**back** 18:11
25:25 26:3
41:8,22 43:2,
4,9 46:17
48:18 50:4,17
51:2,12 59:1
**background**
17:14
**backtrack**
29:10
**Barbra** 4:10
12:25 13:7
14:25 15:1,3
**based** 12:3
45:7,12 54:8
**bases** 17:9
**basic** 29:11
32:19
**basically**
14:25 16:16
49:25 55:16
**basis** 7:11
**Beach** 6:14
**bear** 50:11
**beat** 49:11
**Beaumont** 15:2
**because** 5:6
7:1,24,25
8:3,6,11
10:24 11:2,17
12:2 14:1
16:21 21:1
23:10 27:5
32:8 44:24,25
47:2,8,17,20,
21 50:7 51:5
52:1 54:6
57:17 59:10

**Beckles** 38:12
**been** 11:5,16
19:2,8,17
20:7,24 27:22
31:22 37:7
43:18 44:17
49:5,10 51:16
52:13 54:15
56:7
**before** 3:20
5:5,19 16:2,
16 19:3,5
37:2,11
47:12,25
**behalf** 3:9,
13,14 21:8
**being** 4:7,10
6:12 13:21
46:8 53:21
57:14
**believe** 8:14
18:22 19:14,
22 22:23
24:12 28:4,
16,18,22,23
29:8,19
32:13,22
33:1,17
45:16,22 48:1
**believes** 33:6
**benefit** 37:9
**benefits**
12:20 16:6,
13,14 21:22
**best** 51:3
59:9
**between** 29:12
37:12
**biased** 19:15,
23 47:24 48:1
**big** 15:17
27:17
**biggest** 6:15
**bill** 9:10
21:25 24:2
**bin** 59:6
**binding** 31:23

**bit** 48:19
**Blue** 26:20
**bog** 56:11
**bona** 32:23
**both** 3:22
11:1 17:3
26:9 50:10
55:3 59:2
**bottom** 23:5
**Branco** 39:4,
8,22
**breach** 8:9
48:23 58:13
**brief** 26:5
**briefly** 36:24
37:3 58:11
**bring** 5:16
21:14 25:23
35:8 42:19
**Bronco** 47:3
**brought** 7:15
44:5 47:11,25
51:11
**Broward** 4:2,
3,4,14,21,25
6:1,14 8:6,
11,13 9:9,11
13:22 15:20
16:25 20:2,5
35:11 37:12
51:19
**Bruck** 3:7,8,
11,19 8:23
9:3 10:14,16
12:7,10,17,
22,25 13:13,
16,19 14:11
16:3,18 29:3
30:4 37:21,24
40:5,14 46:4
52:25 53:6,
11,14 54:19
58:23 59:13
**bunch** 14:18
**burden** 7:25
**burdened** 6:4
**business** 9:22

10:9 15:10
41:17 59:15
**but** 5:12,16
6:2,14,18,25
13:14 15:1,19
17:1 18:23
20:10 22:24
24:4 26:15
27:3 30:14
39:19 45:2,
20,22 46:1
49:21 52:3,19
56:18,24
58:2,21
**by** 6:15 19:25
22:14 23:16,
18,23 24:4,14
29:16 30:15
31:6,9,15,16
32:12 34:11
36:7,22 38:24
39:9 42:10
44:19 48:10
51:9 54:15
59:14

---

**C**

**calendar** 4:13
19:19
**calendered**
58:22
**called** 7:2,5
24:19 38:17
39:13,15
48:16 49:18
54:21
**calls** 59:11
**came** 21:21
43:23 47:20
**can** 6:25
13:10 18:10,
13,18 19:5
22:20 30:4
34:11,20
36:19,24 40:7
50:17 51:14
54:17 59:21

**can't** 14:18
46:15 48:1,7
51:13 52:21
59:11
**cannot** 54:12
**capable** 41:5
44:17
**capacity**
39:12 42:14
**car** 5:19
17:14,15
**Cardona** 20:6
**carrier** 45:6,
12
**carriers** 45:4
**cars** 17:20
**cart** 5:5
**carved** 48:10
**case** 3:3 4:6,
9,10 5:17,18
6:18 7:2,4,5,
14 8:4 9:12,
23 10:10
13:15,17
14:1,13 18:4,
19 21:2 24:7,
19 26:4,20
30:2,8 32:7
33:22 34:1,2,
5,9 35:10,23
37:19 38:11,
15,18 39:1,3,
19 40:2
43:23,25
44:4,14,16
47:3,10,17
49:22 50:17
51:11,18 53:9
54:15,21
55:2,16
56:17,22,23
57:12
**cases** 3:23,24
4:13,15,18
5:7,11,18,22
6:25 7:19 8:4
10:7 17:3
19:16,18

20:1,7 43:19
47:1 50:20
51:7,16 52:20
**cash** 23:7,12
26:18 27:8,10
35:5 36:5,8
49:11
**Casualty** 30:7
44:1 47:16
**category**
23:15
**cause** 8:9
44:9 45:23
55:10
**causes** 58:15
**Center** 51:20
54:22
**cert** 37:11
**certainly**
40:15 56:21,
22
**chance** 22:14
56:23
**Charles**
41:14,16
**Charlie** 51:20
**Chase** 15:2
**cheap** 56:10
**check** 37:1
**choice** 8:7
9:20
**choose** 39:15
**chose** 15:22
38:3
**circuit**
18:16,17 20:2
37:11 46:22
48:5 58:12
59:22
**circumvent**
47:13
**citation**
52:19
**cite** 40:17
45:22 57:7
**cited** 7:14
24:20 26:21

34:1 38:10,13
39:4 43:25
44:1 47:2
54:14 58:12
**cites** 7:4
**citing** 35:21
**citizens** 4:21
**claim** 15:2
22:11 32:8
36:18 55:18,
21 56:13
**claimants**
28:6
**claiming**
24:11
**claims** 8:19
48:23 49:3
52:14 56:11
57:16
**clarified**
28:4
**clause** 17:8
18:25 20:21
29:22 30:10,
11,16 31:13,
19 32:14,20,
22 37:5
**clear** 24:12
25:20 28:17
36:3 38:11
39:24
**clearly** 24:16
28:11 39:6
**CLERK** 3:3
**client** 19:21
21:15,21,22,
23 41:13
42:20 45:2
**clog** 16:25
**clogged** 7:11
**close** 28:8
59:14
**COCE17005712**
3:3
**coincidentally**
38:15

collision
25:7
column 30:15
31:22
come 45:6,11
47:22 48:2
comes 20:21
28:21
comment 13:19
commissioner
44:23
companies
10:9 43:13,15
company 3:5
17:18 18:9,11
21:16,17
29:13 38:4,
13,16 44:5
45:8
compel 13:24
45:17,21 54:7
compelled
25:5
competent
18:19 19:11,
23 26:11
34:14,18
39:16 44:7,13
48:4
complaint
40:19 46:22
48:22 55:7
completely
27:10 31:8
34:6 45:23
compliance
18:23,24
complied
19:5,8
comprehensive
22:25
conceded 33:3
conceptually
49:24
concern 5:25
6:2 10:2
16:15 18:7

concerns 38:2
57:25
concluded
60:5
condition
23:17
conditions
19:4 20:24
22:9
conduct 32:10
confessing
44:23
conflict
50:13
congested
4:15
connection
10:8
conscience
55:15
conservation
6:20
consider
35:1,4
consideration
8:2,8 27:12
considered
9:4
constitutes
23:25 28:14
contain 31:19
contemplated
35:6 45:14
contends
38:10,23
context 21:14
48:20
contract
5:22,23 8:10
29:11,12
32:19 39:13
48:23 51:3
53:24 55:6,8
58:13
contract's
55:13

contrary
11:21
control 32:21
convenience
8:2 9:4 11:10
convenient
4:17
copies 7:18
37:23
copy 10:11
42:24 53:13
54:17 59:7
corners 40:18
Cornerstone
20:3
Corp 49:19
correct 13:15
20:19 47:21
48:10
correspondence
42:8,12,13
43:18
cost 23:16,
23,25 24:5,8,
13 27:13,20,
24 28:14,17
32:17 33:13
35:15 36:4,
12,15 48:17
49:4,10,14,15
51:24 52:6,9,
17 53:18
54:1,25 57:10
costly 52:8
costs 50:11,
12,14,16
51:9,12 57:5,
7,13,24
could 22:18
25:5 39:7
50:14
couldn't
47:21
counsel 8:14
42:16 43:24
counsel's
5:25

count 53:19,
20 55:10
counties 4:1,
19 6:13 9:1,6
15:15
counts 38:1,2
58:4
county 4:2,3,
5,8,11,21,23,
25 5:15 6:1
8:17 9:6,9,
11,21 10:3,4,
5 14:19,23
15:4,11,20
20:2
couple 50:25
course 59:23
60:2
court 3:10,18
5:3,8,11,14,
19 7:19,21
8:5,6,22 9:2,
19 10:3,13,
15,19,24
11:3,12,14,23
12:3,4,8,11,
15,19 13:12,
14,18 14:6,8
16:1,16,17,25
17:2,25
18:16,17 20:2
21:6,8,11
22:15,20 23:3
24:22 25:3,
13,17 26:2,6,
16 28:15
29:1,5,7 30:5
31:2,5 32:23
33:18,20 34:3
35:12,18,21
36:22 37:1,4,
11,14,18
39:10,22
40:10,13,22
41:13 46:3,
16,22 47:12,
25 48:5,11
49:2,18 51:11
53:3,8,13,15,

22,23,25
54:3,10,15,
18,21,24 55:1
56:15,24
57:8,21 58:4,
9,20,25 59:4,
17,23,25 60:2
**court's** 28:20
35:8 39:18
48:3 52:4
**courthouse**
19:12
**courts** 11:16
38:8 43:20
54:16
**coverage** 23:1
25:8,14,16
33:3,4,5,23,
25 47:4,5
**covered** 20:9,
14,15 22:6,8
**craziest** 6:15
**create** 18:7
52:11
**created** 49:16
**creates** 35:16
**cross** 12:1
**currently**
37:10

---

**D**

---

**Dade** 6:14
**Dakota** 20:4
**damage** 9:24
32:10 43:7,10
45:3
**damaged** 4:1
**damages** 27:19
30:24 31:3,5,
11,14 57:14,
15
**dated** 42:9
**day** 25:10
**days** 19:3
34:17,20
59:21

**DCA** 17:11
18:1 19:25
25:4 30:8,9
33:23 43:25
44:14 46:17
**DCA's** 19:20
**dead** 49:11
**deal** 15:17
45:10,16
**dealing** 8:20,
25 30:1
**dealt** 19:16
**dec** 24:18
33:7 48:4
**decide** 25:18,
20 26:17
**decided** 14:1
36:22
**decision** 41:8
49:18
**decisive**
30:20
**declaration**
40:4 50:5
**declaratory**
8:19 24:11
38:1,2 41:4,5
42:19 44:5,
10,15 45:24
48:22,24 49:3
53:19 57:16
58:4
**declines**
46:21
**decree** 42:18
**deduction**
23:9
**defendant** 3:9
8:17 9:21
31:12 38:23
**defendant's**
10:8 22:19
35:15
**defendants**
6:7 38:3
**defense** 29:2
37:1

**defenses** 14:3
**definition**
23:24 24:8,15
**Deluca** 11:17
58:17
**demand** 6:6
26:10 34:11,
13 46:19
**demanded** 6:10
**denied** 14:14
28:25 33:4
54:8 58:18
**dependent**
32:5,6
**depends** 32:9
**deposition**
15:20 45:19
**depositions**
4:18
**depreciation**
23:9
**determination**
23:11 27:18,
23 35:25 36:7
53:23
**determine**
27:24 28:15
44:11 47:20
55:14 57:23
**determined**
23:16 31:11
32:12 35:24
39:20 47:5
**determining**
30:18
**devoting** 10:5
**did** 5:16 6:5
7:1 12:8 19:8
24:18 31:3
48:5 52:3
53:5
**didn't** 6:23
7:19 24:4
47:13 55:2
**differences**
26:17

**different**
15:15 17:4
20:17 45:4
58:14,15
**digest** 56:24
**dime** 52:21,22
**direct** 22:21
**directly**
44:14
**disagree**
50:24
**disagreement**
20:10
**discovery**
4:18 10:24
11:4,6,10,13,
21 44:19
45:17,21
**discuss** 16:19
**discussed**
49:6,10
**disguised**
48:23
**disingenuous**
11:9 16:11
**disinterested**
17:7 26:12
38:4,7,20
39:1,14,16,23
40:1,3 41:10
42:3 45:15
51:25 53:21
**dismiss** 6:9
13:24 21:5
40:18 54:7
**disproportiona
te** 6:16
**dispute** 16:23
20:18 27:2
28:3 33:3
36:11 41:22
50:20 52:15
55:23
**disputed**
31:16
**disputes** 22:7
**distinguish**

56:19 58:19
**district** 7:4,
6,14 39:5
44:8 54:16,21
**District's**
39:2
**division** 59:5
**do** 10:9 11:6,
13,21 12:10
13:16 14:2
19:25 22:13
27:16 28:2
29:8,17,19,25
30:17,23
37:21 40:2,3
43:20,21 46:1
51:4 53:13,14
54:12 59:14
**docket** 4:14
12:13
**dockets** 6:15,
21 7:11
**doctrine**
48:17 49:14,
15,16 51:24
52:7,18 53:18
54:1,25 57:10
**document** 53:7
**does** 6:18
9:22 29:22
30:17 31:13,
19 32:3,15,20
33:13 56:24
**doesn't** 15:12
29:24,25
32:16,17,20,
21 33:23 46:9
55:10 57:8,9,
10
**doing** 11:10
**dollars** 50:25
**don't** 4:16,20
6:24 8:3
11:13 12:14,
16 13:15
14:24 17:24
22:7 23:10,11
27:2 28:22

40:8,15 45:9
50:3,24 51:23
52:16 53:24
54:3 56:12,
18,22 58:2,
21,25
**done** 15:8
17:15,21 40:8
**doubt** 35:13
36:11
**down** 32:1
56:11 58:8
**drop** 58:7

---

**E**

**e-mail** 59:5,
10
**each** 26:11,17
27:7 34:14,15
38:6 39:15
45:5
**easier** 46:2
**Edna** 57:2
**effect** 54:2
**effectively**
52:10
**effectuate**
15:6
**efficient**
56:9
**eight** 46:24
**either** 26:22
34:10,13 56:7
**electronic**
12:15
**else** 15:19,25
16:2 28:18
29:2 30:1
36:16 37:2
**elsewhere**
10:2 17:1
**Emilio** 3:13
**employees**
8:11
**employment**
35:19

**end** 15:9 28:7
44:23 58:5,6
**enforce** 26:24
**enforceable**
31:24
**enough** 4:23
35:9 38:15
59:17
**enter** 50:8
**entered** 8:25
55:6,9
**entire** 16:20
20:17 46:5
**entirely** 5:22
**entirety**
46:11
**entitled** 19:3
20:25 48:8
51:3,5
**entity** 39:5
**equally** 26:12
32:14 37:6
**equitable** 9:9
48:25
**equity** 50:15
**escape** 33:8
**essentially**
29:25 30:13
32:5,6,24
33:8 55:5
56:2
**established**
46:8
**establishes**
41:17 49:6
55:18
**even** 4:14
6:21 18:3
27:5 31:24
32:15 38:20
44:24 51:23
53:25 55:1
56:13,18
57:21 58:3
**event** 7:24
**events** 9:10

**ever** 7:9
19:20 35:6
**Every** 52:21
**everybody**
3:18 49:22
**everyone**
59:18
**everything**
16:12
**evidence**
15:23 46:7
**evidentiary**
46:6 57:23
**exact** 24:3
45:3
**exactly** 31:18
**example** 31:10
**exceed** 31:25
**excuse** 4:8
9:15
**Exhibit** 13:3,
9
**exists** 43:10
**expect** 36:14
**expected**
36:14
**expense** 50:7
**expenses**
26:13
**expensive**
57:5
**explain** 28:19
**explained**
54:24
**exposure**
23:23
**expressed**
39:24
**expressly**
29:18
**extent** 11:9
44:10 57:1,4
**extraneous**
40:20
**eye** 44:25

## F

face 6:21
  16:12
fact 6:5,7,16
  8:13,18,21
  9:21 15:18
  16:10 30:15
  40:1 44:7,12
  54:5,10
fact-intensive
  5:17
factor 30:20
facts 4:22
  40:2,16,20
  46:15
factual 31:7
fail 34:10
fails 55:10,
  19,21
failure 30:25
fair 19:11
  55:15
fairly 56:6
fall 54:25
falls 23:14
  35:17
far 6:15
  49:16
Farm 30:7
  34:2,8
fast 17:16
favor 5:8
fee 51:8
fees 21:1
  33:11
few 3:20
  10:17 36:23
fide 32:23
fifth 39:2,4
  43:12
file 15:3
  16:5 18:14,16
  19:6 46:22
filed 13:23
  17:24 19:4

24:6,10,17
  41:2,12 44:22
  48:3
filing 46:9
Financial
  49:19
find 18:5,6
finding 52:4
fine 59:24
Fire 30:7
Firemen's
  30:21
firm 4:12
  19:19 42:13
  46:13
first 3:21
  5:1,13 7:2
  14:16 33:22
  43:5 49:16
  56:17
Fishman 11:18
  35:10 51:22
five 41:23
  43:2
fixed 21:23
  31:15
Fla 9:14,15
  38:14
flies 16:11
Florida 6:14
  9:13 15:4
  39:3,19 47:2
  51:7 54:16
focus 5:13
  55:25
focusing
  29:21 55:22
folks 48:25
follow 17:13
  19:6,9
followed
  19:20
following 3:1
foot 9:9
for 3:6,16
  4:6,9,13,17
  5:6,9,25 7:10

8:9,14 9:10
  10:23 11:25
  12:2,17 13:25
  14:16 15:14,
  20 18:7,16
  19:15 20:11,
  16,25 21:2,5
  22:1 23:9,19
  24:10 25:8,9,
  10,17 27:5,12
  28:15,22
  30:6,22
  31:10,17
  32:8,23 33:16
  34:13 35:1,7
  36:9 37:8,10
  39:8,13,15
  42:15 43:7
  44:10 45:5,23
  48:2,22,23
  49:3 50:3,23
  51:6 52:1
  53:19,22
  56:11,17
  57:16 58:4,22
  59:2,8,17
force 28:5
forcing 29:16
forth 24:16
forum 8:7
  9:19 10:2
  15:21
found 9:12,19
  38:22 39:22
  55:2
four 30:13
  31:21 40:18
  43:2 49:3
  53:20
four-count
  48:21
fraud 32:9
Friday 59:15
from 7:4,5,6,
  8 13:2 18:9,
  20 19:17,18
  33:10 35:10
  41:7 42:10,25

44:2 52:10
front 47:13
full 24:5
fully 56:24
further 8:19
  36:2
futile 43:21

## G

G-A-R-I 51:21
Gari 51:20
gave 34:9
generally
  31:11
genuine 29:9
get 5:7 7:18
  33:9 35:10
  45:22 50:4,17
  51:2,4,12,14
  55:23 58:3
get all 56:18
gets 41:11
getting 51:2
Gilbert 42:14
give 15:12
  19:23 54:17
given 8:8
glass 3:4
  4:6,9,13
  9:16,24,25
  12:19 13:6
  15:10,18,19
  41:15,17
  42:11 43:5,6,
  14
go 16:24 23:5
  25:25 26:3,8
  30:12 31:21
  40:13 45:18
  52:3 57:18
goes 8:20
  23:19 24:25
  25:2,12 35:21
  41:8,16 42:20
  43:1,16 50:17

going 6:3,24
7:7 14:8
26:15 28:19
36:25 39:21
48:9,12 50:1
51:4 55:19,
23,24 59:7
good 3:12,18
5:10
Gooden 3:9
29:4,6,8 30:6
37:3 54:13,20
59:21 60:1
got 5:10
24:15 28:2
56:8
gotten 44:19
Govern 42:21
governing
22:10
green 5:21
49:18 55:1
57:7
ground 6:22
grounds 7:16
46:18
Guaranty 39:3
guess 6:2
7:13 41:25

**H**

had 3:2 7:22
17:15,20
19:18 27:17,
18 38:18
39:18 51:6
57:6 58:12
Halal 11:17
handle 18:2
Haney 3:8
happen 18:5
51:13
happened 4:3
5:21 15:25
16:7 21:17
24:6 41:21,25

46:13 58:21
happening
21:15
happens 45:2
happy 7:18
11:15
Hardin 54:23
57:1,2,4
has 4:13 7:9
8:11 11:5
12:3 14:20
15:10,19
19:2,8 22:8
31:22 37:7
38:5,23 40:8
41:7,18 42:23
43:13,16,18
44:17 45:2,5
54:15 55:3
56:7 57:4
have 3:20
4:12,17,21,23
6:6,15,24
7:19 8:3
10:11,17
11:16,18
12:8,15 13:4,
5,15,16
14:24,25
15:21 16:6,16
17:3,12
18:21,23
19:17,20
20:7,13,24
22:5,13,15,20
23:10,11,14,
22 24:9,15
26:10 27:12
28:19 29:7,15
33:4 35:4
36:11,23
37:16,21 38:8
40:2 41:12
43:18 44:18
45:3,4,21,25
48:21 51:16,
17 52:13
53:13,25
56:13,18

57:22 59:5,
21,22
Haven 54:22
55:16
haven't 6:8
having 56:23
he 17:19,21
38:22 41:18
42:12 43:16
he's 17:21
head 7:1
Health 54:22
hearing 46:7
57:23 60:4
hearsay 40:20
heart 25:1,2
held 31:23
39:11 44:8
Heller 26:20
Hello 5:3
help 54:11
Henderson
9:17
her 15:6,7
40:11 52:3
here 4:24
6:4,8 9:1,5
11:2,25 13:5,
21 14:24
20:13 21:15
22:8,15
23:10,15
27:3,11 29:10
31:1,13,19
32:14,20 34:5
37:6,11 44:18
45:16 48:20,
21 49:22
50:19 52:24
53:23 55:19
56:7,13,20,
21,25 57:10,
15 59:11
Heritage
43:25 47:16
Hernando 4:11
15:4,16

hey 17:23
48:1
Hi 5:2 48:15
higher 38:20
Hilal 52:15
53:9 58:17
Hill 15:4
him 42:4,5
hired 42:2
historically
19:16
holding 21:4
31:2
home 44:9
56:21 57:3
homeowners
44:9
homepage
42:24 43:4
honestly 6:23
Honor 3:12,
19,20 10:11,
14,18 13:4,10
16:19 20:8
21:7 22:18
24:25 25:19
26:7 29:3
30:4 33:16,19
34:2 35:22
36:24 37:17
46:4 52:24
54:13 58:11
59:3,15
Honor's 37:9
hope 51:14
horse 5:5
49:12
how 27:18,19,
20 33:13
35:23 37:8
55:8 58:21
hundred 50:25
hundreds
43:19
Hurley 58:17

---

**I**

---

**I'D** 11:8
25:23 45:17
**I'LL** 26:14
**I'M** 7:7,18
12:5,11,13,
19,23 14:16
16:4 17:16
22:15 24:3
40:6,8 42:7
48:12 49:17
53:3,16 56:17
**I'VE** 44:18
**i.e.** 9:23
**idea** 11:20
**identity**
34:16
**if** 4:17 6:19
10:11,18
13:10 14:15
16:14,22
18:3,11,24
22:18 23:5
24:7,15 25:25
26:8 27:17
28:18 29:4,21
30:12 31:21,
24 34:9,13,19
36:14,18 45:2
46:1,21
50:12,17
51:11,12 55:7
56:4 57:8,21
59:6,9
**ignores** 18:12
**illusory** 50:7
**imagine** 4:14
**impartial**
34:18 38:19,
21,25 44:7,13
48:5
**impermissible**
39:11
**important** 8:1
14:22 15:14,
25 25:15 27:3

**in** 4:1,8,10,
19,24 5:8,11,
18,25 6:7,11,
13,16,21 7:8,
12,24 8:10,
12,13,16,25
9:6,8 10:3
12:2 13:14
14:17,20
15:3,10,20,
21,23 16:12
17:3,11,17,25
18:4,16,19
19:7,9,19
21:4,18,19,20
22:12 23:2,24
24:6,12,16
25:3,22,25
26:14,22,23
27:13,16,21
28:7 29:20
30:10,20,21
31:6 32:3,7,
10 33:24
34:4,5,7,8,25
35:3,13,21,22
36:16,20
37:11,22
38:15,25
39:2,6,8,12,
22 40:1,2
41:22,23
42:7,14 43:4,
5,8,12,13,19,
23 44:7,12,16
45:1,6,11
46:11,15,22
47:4,9,13,14,
15,20 48:9
49:6,18 50:4,
13,15 51:2,7,
11,13 52:9,14
53:22 54:20,
24 55:1,6,22
56:1,4,11
57:11,13,25
59:5,11
**in-house** 8:14

**inability**
56:3
**incident**
21:18
**include** 23:9
42:17
**included**
36:20
**including**
44:20
**incompetent**
18:3
**inconvenience**
7:10
**incredible**
6:17
**incur** 56:3
**incurring**
57:6
**indeed** 31:22
**independent**
31:8 34:15
**Indicating**
24:24
**individuals**
39:25
**industry**
43:7,10,14
54:6
**influenced**
30:15
**injustice**
32:4
**inquiry** 58:6
**Inspection**
43:5
**instance** 19:7
**instant** 35:22
47:10
**instead** 17:22
**insurance** 3:4
10:8 17:18
18:9,11 20:5
23:1 25:13
29:11,13
30:21 31:9
35:11 38:13,

16,24 39:3,13
43:7,9,15
44:1,5 45:4,7
47:3 51:7,20
54:6 58:14
**insured** 17:22
29:12,15
31:13 32:11
46:21 47:5,7
50:9,16
51:12,14
**insured's**
9:24 47:8,9
**insureds**
21:18 32:4
**insurer** 20:9
25:6 44:9,11
46:19,21 47:7
**intended** 36:3
**intention**
39:25
**interest** 9:5,
8
**interested**
18:4,19 19:22
39:6
**interesting**
41:11 43:3,22
**internet**
42:23 43:4
**interpret**
53:24 54:11
58:5
**interpretation**
5:23,24
25:14,16 29:9
32:19,25
33:24 35:17
36:21 49:4,8
52:2
**interpreted**
30:9 54:15
**interprets**
30:2
**interrupt**
40:9,15
**interruption**
26:5

intervention
  17:2 48:3
into  20:21
  23:14 28:6,21
  29:15 45:22
  50:8
invocation
  52:5
invoice  20:16
  24:14 28:17
  36:13
invoke  28:24
invoked  47:6
involved
  21:18 31:25
involves
  17:14
involving
  3:24 5:19
irrelevant
  27:11
is  3:22 4:14,
  16 5:14,15,16
  6:20,21 7:2,
  7,8,11 8:1,7,
  8,10,14,18
  9:8,14,16,20,
  21 10:2,5,8
  11:7,8,12
  12:17,20
  13:1,21 14:1,
  8 15:1,9,19
  16:11,14,19,
  20,21,24
  17:6,8,10,12
  18:3,5,18,22
  19:1,2,4,14,
  15,22 20:9,
  10,11,12,14,
  19,23 21:1,
  14,15 22:2,4,
  6,7,11,13,16
  23:7,14,15,21
  24:9 25:20
  26:13,25
  27:4,10,12,
  14,16,24
  28:1,2,15,23

29:9,11,12,
  17,19,20
  30:13 31:5,7,
  11,13,16,17
  32:8,11,13
  33:1,3,6,12,
  14,17 34:5,22
  35:13,23,25
  36:4,15,21,25
  37:19 38:4,9,
  11,20,25
  40:3,11,17,25
  41:5,10,11,
  14,21 42:6,8,
  18 43:3,6,9,
  22,24 44:14,
  16,25 45:2,8,
  9,10,13,14,
  17,20 47:3,
  14,17 48:1,
  16,21 49:1,8,
  9,13,15,23,25
  50:6,8,20,24
  51:4,11,14,
  18,25 52:19,
  22,25 53:2,
  18,19,20 54:2
  55:5,7 56:9,
  25 57:2,9,11
  58:14 59:2,7,
  10,16,17,20
Isabella  20:6
Isaly  41:14
  42:3,23 43:18
Isaly's  41:16
  42:9
isn't  27:5
  36:10
isolated
  29:21
issue  6:19,24
  11:19,24,25
  12:1 16:11
  18:16 19:24
  23:21 27:4,5,
  12,15 28:11,
  12,13,21,23
  29:9 32:24
  33:2,17 34:25

35:2,23 36:4,
  9,21 37:12,16
  38:1,2,9
  41:23 45:20
  47:12 49:21
  52:5 53:20
  54:4 56:1
  57:17,22
issues  5:18
  17:1 18:7
  36:23 37:20
  45:25 48:7,16
it  4:16 5:15,
  16 7:8 9:8,14
  10:12 11:7
  12:14,18
  13:4,5,10,13
  14:13 15:9
  16:11 17:1,
  15,16,21 18:7
  20:11 21:8,13
  22:6,7,8,16,
  20,25 23:5,19
  25:1,3,12
  26:9,14,15
  28:16 29:16,
  22,24,25
  30:14 31:7,
  17,22 32:16,
  17,18,20,21
  33:5,14,24
  35:21 36:2,10
  37:4,21,22
  39:11 40:16
  41:5,11,21
  42:20 44:17
  45:8,24 46:10
  47:25 48:8,9
  49:16,25 51:2
  52:12,14
  55:2,10,12
  56:19,24
  57:9,11,12,
  17,23 58:21
  59:2
it's  4:20
  6:16 7:3
  9:13,14 12:2
  22:3,18,23,24

23:1 24:12,
  15,20,23
  25:14,21,24
  27:11 28:10,
  11,12,17,18
  29:25 30:6
  35:2,10 36:9
  40:17 46:2,6,
  11,12 49:15
  54:20 56:5,6
  57:11
its  15:10
  23:17 35:13
  42:14 43:3,5
  51:12
itself  28:18
  30:17

_____

                  J

JA  59:7
jammed  6:21
Jennifer
  38:12
judge  5:2
  10:3 11:17,18
  14:13 21:10
  22:2,12 23:14
  24:10,19
  25:12,22
  26:16,20
  27:16 34:21
  35:10,22
  36:20 38:22
  39:17 40:5,7
  44:20 48:15
  51:22 52:15
  53:1,9 56:16
  58:17,24
judges  11:18
  37:8 44:19,20
judgment  8:19
  44:24
judicial
  6:11,20 7:10
  42:18 55:15
judicially
  49:15

July 43:23
  44:2
jumped 18:21
jumps 51:18
June 42:9
juries 6:3
  7:24
jurisdiction
  35:18
jury 6:1,6,10
  31:10
just 4:12,20
  7:19 10:9
  11:23 13:1,4,
  19 14:18,24
  17:13 21:14
  22:20 27:6
  29:10,11
  30:24 32:1,
  17,19 33:7
  34:1 36:10
  37:3,8 38:10
  40:10,16 46:1
  48:9,18 50:16
  53:4,6,10,12
  54:12 56:17
  58:10
justice 9:5,8

**K**

Kansas 3:8
  59:20
keep 58:25
key 14:21
  15:23
kicked 5:8
kind 29:10,14
know 5:21
  6:17,23 19:13
  24:7 27:19
  29:5 40:8
  51:9 54:14
  55:22,23 56:5
  58:21
knowledge
  17:20 31:12
  41:18

known 38:4
  46:18
Kopelman 3:14
  21:7,8,12
  22:17,22 23:4
  24:25 26:3,7
  33:19,21
  51:19

**L**

lack 43:10
Lacourse
  30:20
laid 8:10
language
  30:16 31:3,
  17,20 36:2
  54:9,11
large 10:7
  43:14
Larry 3:14
  21:8
last 15:9
  44:3
later 7:14
  12:1 19:14
  45:22
law 5:24 6:3,
  18 8:13,20,24
  9:13 14:1
  21:2 39:20
  44:14 48:10
  49:23,25
  50:15 55:9
  56:13
lawyer 39:12
lawyers 42:2
least 17:8
  23:7 43:2
  50:25
Lee 35:22
left-hand
  31:21
less 24:2
  50:21 52:22

let 13:1
  18:11 37:1
  48:18
let's 14:10
  40:10 41:1
  45:3 57:22
letter 42:6,7
letters 17:4
  42:1
liability
  22:11,13
  23:6,7 29:23
  30:10 32:16
  35:15
liable 31:18
light 5:20,21
like 3:21
  10:9,11 13:10
  16:19 25:23
  28:10,16
  40:17 45:18
likelihood
  57:6
likely 52:13
  56:3
limit 22:11,
  13 23:6 29:23
  30:17 35:14
limited 23:22
limits 23:6
  30:10 31:7,15
  32:16
list 14:18
litany 44:18
literally
  12:23 58:7
litigate 4:17
litigation
  42:11,17
  47:4,15 54:4
  56:11
little 21:14
  29:10 46:2
  48:18 50:21,
  22
live 14:22

lived 15:1
lives 15:3
LLC 3:4 9:16
  26:21 35:11
located 34:22
location 7:25
  9:23,25
long 22:5
look 22:19
  55:7 56:2,8
looked 39:19
looking
  12:11,13,24
  15:2 50:3
  56:4
loss 16:21,23
  20:9,11,14,15
  21:19 22:3,5,
  8 23:8,18
  25:8,12
  26:10,19
  27:9,17,22
  30:18,25
  32:11 33:13
  34:10,11,24
  35:5,24 52:12
lot 13:4
  55:22
lucky 35:9

**M**

M-O-O-N-E-Y
  7:3
Ma'am 12:5
  48:12
Mac 3:16
made 23:12
maintained
  57:4
maintains
  8:17
make 12:5
  15:17 17:16
  27:18,22
  36:7,18
  46:10,19

48:19 53:4
55:24
**makes**  34:13
36:2
**making**  35:24
**manner**  29:20
55:6
**manufactured**
13:21 23:19
**manufacturing**
11:20 13:20
**many**  18:21
**Marks**  44:20
**maternity**
59:8
**matter**  6:2,5
31:7 45:11
55:9 56:12
**matters**  5:6,
22,23,24
8:20,24
**may**  10:14,18
14:15 21:7,10
23:9 29:4
31:25 33:19
**maybe**  20:20
50:21
**me**  4:8 6:17
7:20,22 9:15
13:1 18:11
22:17 37:1
45:9 48:18
51:18 59:10
**mean**  40:15
**meaningless**
27:11
**means**  24:13
28:17 36:12
49:25
**meant**  56:9
**measured**  31:6
**meets**  44:25
**Melissa**  9:17
**memo**  26:8
**mention**  29:23
32:17 37:7

**mentioned**
9:1,7
**mentions**
15:15
**met**  20:24
**metal**  59:6
**methodology**
36:19
**middle**  32:2
**Middleton**
30:7
**mike**  58:7
**minimal**  28:3
56:6
**minute**  26:14
**minutes**  58:22
**missing**  12:5
**mission**  43:6
**misspeak**
56:22
**modified**
31:16
**money**  50:2
51:1 55:24
**months**  52:16
59:8
**Mooney**  7:3
**moot**  52:4
**more**  4:15
7:18 44:24
50:22 52:13
**moreover**  32:3
**morning**  7:23
**most**  8:1
51:14
**motion**  3:22
5:1,4 6:9,20
8:2 10:21,23
12:9 13:3,6,
23,24,25
14:4,7,17
26:1 28:24
40:18 44:22
45:21 48:13
54:7
**motions**  3:20
45:17

**mouth**  11:2
**move**  14:10
18:19 21:5
37:2 46:5,11
56:10
**moves**  10:23
**Mr**  3:12,14,16
5:2,4 7:22
10:17,20
12:13,23
14:12 16:1
21:7,12
22:17,22 23:4
24:23,25
26:3,7 33:19,
21 36:23,25
37:15,16,19,
22,25 40:7,
11,12,17,23,
24 42:3,9,23
43:18 48:15
51:19 52:24
53:1,2,3,9,
12,16,17
56:16 58:10,
24 59:2,14,
20,24
**MS**  3:7,11,19
8:23 9:3
10:14,16
12:7,10,17,
22,25 13:13,
16,19 14:11
16:3,18 29:3,
4,6,8 30:4,6
37:3,21,24
40:5,14 46:4
52:25 53:6,
11,14 54:13,
19,20 58:23
59:13,21 60:1
**much**  22:3
27:19,20
33:13 53:14
**multiple**  38:1
**Murray**  4:10
12:25 13:7
14:25 15:1,3

**must**  14:1
18:15 19:5
36:22 46:19,
21
**Mustang**  17:15
**my**  4:12 6:25
19:17 40:25
41:13 46:13
58:7 59:5,7

---

**N**

**name**  3:6
**nature**  10:22
40:21
**necessarily**
46:10
**need**  16:5
17:2 18:8
32:23 40:3
51:23 52:17
53:5 58:3
59:9
**needs**  9:9
18:4 23:11
28:4 54:3
**negligence**
32:9
**net**  54:2
**Network**  20:3
**never**  17:21
19:23 33:4
37:4 41:7
50:17
**next**  16:18
48:14 59:6,15
**nexus**  9:20
13:22
**no**  6:3 7:24
11:4 13:17
14:14 15:23
16:4 17:5,20
18:25 23:24
29:7 32:23
35:6 39:19
43:13 45:11
53:17 55:8

nobody  7:9
nobody's  6:10
  7:15
none  19:17
  20:20 24:1
nonjudicial
  35:19
nor  6:6
not  5:7,14,17
  6:6,22 9:1,8
  11:15 12:2,5
  13:16 16:25
  17:7,8,16,21
  18:1,21,22,
  23,24 19:8,9,
  15,19,23
  20:24,25 21:1
  22:16 23:22
  24:3 25:5,11,
  20,24 27:13,
  14,21,24
  28:10,11
  29:8,16,19,23
  30:17,23
  31:3,6,14,16,
  19 32:3,15,20
  33:3 35:25
  36:3,9,20
  38:25 39:21
  43:21 44:16
  45:14,15
  46:14 47:2,17
  48:7,8,9,23
  49:9 50:1,14
  51:1,25 53:21
  55:23,24,25
  56:7,11,21
  57:15,20
note  25:15
  55:20
noted  27:6
  52:12
nothing  15:8,
  23 36:16
notify  34:15
now  11:5,15,
  19 12:2 16:22
  18:23 37:9

38:8 40:2
43:22 55:12
nowhere  28:7
number  3:3
  4:16 8:9 10:7
  15:14,17
  23:15 28:10,
  12 49:8,13
numbered
  22:24
numerous
  44:19
nursing  56:21
  57:3

---

### O

object  40:5,
  16,19
objection
  40:11
obligated
  22:3
obtain  19:10
obviously
  5:10 6:1
occasions
  17:4
occurred  4:7,
  8,22 9:10,24
  21:19
of  3:9,13,14,
  22 4:2,3,4,6,
  9,15,21,22
  5:8,9,15,22,
  23,24,25 6:2,
  5,11,20,21,25
  7:18,25 8:7,
  9,10,13,20,24
  9:4,5,8,11,
  14,17,23,24,
  25 10:7,20,22
  11:1,11
  12:17,20
  13:5,7 14:2,
  17,18,19,22
  15:5,9 16:4,
  6,9,12,13,14,

21,23 17:2,8,
11,14,20,23
18:16 19:4,
17,21 20:1,2,
4,5,10,20
21:9,17,20,22
22:4,9,11,13
23:6,7,8,12,
18,23 24:3,5,
8,13 25:1,2,
6,8,9,11,12,
13 26:8,10,
14,16,19,20
27:8,24
28:14,21
29:9,10,14,
15,23 30:10,
16,18,23,25
31:5,8,11,14,
25 32:2,6,11,
16,25 33:13,
22 34:10,11,
16,21,24
35:5,11,18,
19,23,25 36:5
37:5,10,20,25
38:1,9,11,12,
24 39:3,13
40:18,20
41:3,4,5,13,
14,17 42:7,8,
13,15,24
43:10,12,19,
23 44:3,10,
17,18 45:16,
23 46:6,9,12,
14,17,23,24
47:13,23
48:16,23
49:2,4 50:2,
11,12,20,25
51:4 52:3,5,
9,19 53:19
54:4,21 55:9,
10,13 56:12,
25 57:6,19
58:6,13,14,15
59:14,23 60:2

off  6:25
offering
  17:23
office  15:18
  19:17 45:6
offices  8:12,
  13 10:1
Oh  53:8,17
okay  7:21
  8:22 9:2
  12:4,22 13:5,
  12,18 14:6,11
  16:1,17 21:6
  22:22 23:3,4
  24:22 26:13
  27:1 28:4
  29:1 33:18
  37:14,15,24
  40:10,12,22,
  24 46:3 48:11
  53:8,15,17
  58:9,20 59:7,
  12,13 60:2
on  3:9,13,14,
  22 4:24 5:4,
  13 6:8,19 8:2
  9:13 10:25
  11:3,14,16,19
  12:3 13:6,19
  14:10 15:6
  17:4 19:14
  20:10 21:2,8
  22:24 23:20
  25:12,13
  26:15 29:21
  30:14,25
  31:2,10 32:9
  34:10 35:21
  37:2,12 38:8,
  9 39:19 41:16
  42:20 43:3,16
  45:7,12 47:2,
  17 48:2 49:23
  50:8,21,22
  52:1,14,21
  54:8 55:19,22
  56:1,20,21,25
  57:23 59:8

Once  24:6
  47:5
one  3:21 4:16
  7:2 8:6 9:13
  10:3 12:15,17
  13:1,15,16
  14:12,15
  15:14 17:8
  19:19 20:16
  21:17 25:11
  26:25 28:10,
  15 34:10
  37:20,25 38:1
  41:3,4 42:22
  45:16 46:1
  47:23 48:16
  49:4 51:17
  54:20 55:18
  58:10
one's  39:11
one-way  51:8
only  6:19
  9:20 10:3,7
  13:21 18:10,
  13,17,22
  22:10 23:21
  25:9 27:11
  34:25 43:14
  44:16 51:4
  54:6 55:17
  58:22
operative
  35:23
opinion  32:24
  39:2,17 44:2
  57:1 58:12
opportunity
  19:24
opposed  8:21
  36:5
opposition
  57:25
or  3:25 4:1
  5:7,14,18,20
  9:10 16:25
  17:8,16,17,23
  18:3,12,19
  19:21,22,23

23:16,17,18,
  22,24 24:1
  25:9,17,20,21
  26:15,22,24
  27:21 31:6,
  12,15,17
  32:9,21 33:14
  34:20,21
  35:15 36:4,6
  43:10 46:7,10
  48:8 49:5,10
  50:15,16
  51:14,24,25
  52:7 55:18
  57:11
order  10:23
  13:25 26:23
  27:21 35:10
  38:9 51:2
  54:24
orders  44:18
  59:3
ordinarily
  25:16
ore  48:12
Orfinger
  39:17
other  4:19
  5:6 8:25 9:6,
  23 10:17
  13:15,17
  14:15 19:16
  23:20 26:13
  31:15 32:15
  34:16 36:19,
  23 37:8,20
  44:20 45:25
  48:16 50:4
  58:10
others  30:17
  31:5
ought  58:5
our  5:1 7:15
  13:23,24 14:3
  17:6 19:1,14,
  21 21:15,21,
  22,23 24:2,14
  25:1,2 31:19

32:14 35:3
  38:25 40:2
  45:17 49:6
  57:25
out  5:8 9:14
  11:1 14:22
  17:11 18:5,6
  20:1,2 26:22
  33:10,22
  37:19 43:23
  44:25 45:18
  48:10 51:18
  52:3,4 59:8
out-of-pocket
  52:20 57:18
outcome  39:7
outrageously
  55:14
outside  4:2,
  3,4,22 9:11
  14:19 40:17
  46:12
over  15:8
  47:4
overrule
  48:12
own  4:23
  39:12 42:2
  45:7 50:11
owner  41:14

───────────

P

p.m.  60:5
page  9:14
  22:21,23,24
  23:2 30:12
  31:21 38:9
  46:24 56:25
pages  22:23
  24:23
paid  20:12,
  15,16 22:8
  24:2 33:5
Palm  6:14
paperwork
  13:5

paragraph
  10:20,22 15:9
  42:8 43:8,12
paraphrase
  7:8
part  23:17
  25:2 26:14
  36:6
participating
  52:9,11
particular
  10:4 19:7
  34:7 35:3
  47:11 54:20
parties  30:23
  37:13 47:18,
  23 56:10
parties'
  39:7,10,24
parts  23:18
party  39:15
  43:21 47:24
  49:1 50:1
  52:10 55:17
  59:1
past  19:19
patient  57:3,
  11
pay  22:3 24:5
  25:8 26:11
  36:15 50:23
  51:6 56:4,6
payable  31:17
payment  22:1
Pennsylvania
  39:20
people  4:19
  14:19 15:13
  16:8
per  17:22
percentage
  51:4,15 57:19
period  5:24
  36:10
permissible
  59:2

permission 37:17
person 15:1
personal 41:18
pertinent 30:13
petitions 24:10 37:10
Phillips 3:16
5:2,4 7:22
12:13,23
14:12 16:1
24:23 36:25
48:15 53:2,3,
16,17 56:16
phrase 36:12
physical 23:17
Pinellas 4:8
place 47:14
plaintiff
3:13,15,17
15:5 17:5
18:10,14,15
21:9 29:20
35:13 38:10,
23 46:18 50:9
52:1,12,22
54:2 55:3
57:18
plaintiff's
8:7 9:19 10:1
44:15 47:1
plaintiffs
6:5 15:21
play 20:22
28:21
please 3:6
21:8
PLLC 42:14
point 12:1
18:15 21:2
39:19 47:2,17
52:3 53:19
points 10:18
26:21

polices 8:24
policies 45:14
policy 16:22
18:24,25
19:2,5 22:2,
4,5,6,9,12,14
23:25 24:12,
17 25:14,20
28:5,21 29:9,
12,19 30:19,
22,24 31:4,7,
9,15,18,25
32:25 33:9,24
34:4,8 35:3,
14,16 36:2,7,
14,16,20,21
38:5,18,24
39:15,22 52:2
54:8,11 58:5,
14
policy's 25:7
policyholder
39:9 44:6
pools 6:1
portion 26:8
portions 30:14
prearranged
45:10,16
precedent 20:24
precious 6:12
prelude 48:18
premature
16:20 20:23
premise 29:11
premises 34:22
prepared 11:24
present 30:24
presented 7:9
preserve 14:3,4
pretend 16:10

pretty 22:3
prevail 51:13
prevailing
51:24 52:17
previously
43:17,24
price 45:7
problem 29:7
procedural 55:3,5
procedure
19:9,21
46:16,17
47:14
proceed 11:24
16:2
proceedings 3:1
process 16:24
17:12 28:6
32:7,12 35:20
36:1 41:24
50:22 52:9,14
produced 23:18
Progressive
9:18 20:3,4
38:13,18
prohibitive
48:17 49:14,
15 50:8 51:24
52:6,18
53:18,25
54:25 57:10
prohibitively
52:8 57:5,9
prohibits 52:10
prongs 55:18
proper 7:16
18:22 19:9
properly
46:22 47:11,
25 48:3
property
23:8,13,17
36:6 43:25

47:16
proposed 59:3
proposition 7:10
protect 6:12
protective
10:23 13:25
prove 55:3
57:6,12
provide 13:13
18:12
provided 19:2
20:7 30:22
31:9 37:22
43:24
provider
24:14 57:12
provides 51:8
province 49:2
provision
22:12 25:24
26:24 27:7,
14,24 32:15
34:4,5,7 35:1
39:23 49:9
50:6,10
provisions 31:24
proximately 32:10
pull 13:2
purpose 43:9
purposes 41:3
pursuant 11:3
22:2 28:5
purview 35:25
push 28:5
put 47:14
putting 5:5

Q

qualified 17:22
question 25:6,11

questionable 16:15
questions 25:13
quick 17:14 56:9
quote 7:7 39:6,13

---

**R**

R.J. 7:2
raced 19:12
rack 33:10
raise 57:17
raised 57:25
Randolph 49:19
rather 25:17 35:18
reach 51:23 52:17 53:25 54:3 59:9
reaches 57:22
read 29:22 36:14
readily 17:19 33:4
reading 14:16 56:17
real 15:12 24:23 46:7
reality 27:17
really 16:11 23:21 28:1
reason 5:10 20:25 28:22 33:16
reasonable 33:6
reasoning 32:13 37:6
reasons 5:9 21:5
receipt 42:7
received 4:12,13

receiving 28:7
recently 7:1 43:23
record 3:6 26:16 30:6 34:21
records 41:19
recover 52:23 54:1 57:19
recoverable 31:4
recovered 50:15 51:9 52:21
recovery 20:5 32:4 35:11 51:20 52:11
red 5:20
reduced 24:4
reference 31:12 32:15
referenced 51:19
referring 12:19
refers 30:24
refused 43:20
refuses 18:12
refuted 47:7
regard 14:7 16:13
regarding 4:19 44:6
regardless 5:14 46:14
Rehab 54:22
reimbursement 22:10 24:4 25:10 28:8
relates 45:24
relation 57:13
relationship 43:1
relatively 28:3

relevant 4:4 46:10
relief 24:11 44:10 45:24 48:4,22,24 49:1,3 50:2 53:20 57:16 58:4
remain 5:11
remedy 35:19
remotely 45:15
removal 46:23
renders 52:4, 7
rental 25:9
rep 44:17
repair 3:25 10:1 15:7 16:7 21:15,16 23:16,24 24:1,5,8,13 27:13,20 28:14,15,17 32:17 35:15 36:4,12,15 38:11 49:5,10
repairs 4:2 15:6 27:25
repetition 41:6 44:17
replace 23:16,24 24:1 35:16 36:4 46:19 49:5,11
replaced 21:24
replacement 3:25 21:16,20 50:19 56:20
report 43:9
representation 11:12
representations 11:11,22
representative 45:5

representatives 8:12
represented 34:3 37:4
represents 42:14
request 11:4 18:8
requested 15:13
requests 58:19
require 43:21 50:1
required 19:25 25:7 36:7 52:13
requirement 16:4 32:2 38:6,19
requirements 26:23 41:4
requires 39:23 50:10 55:13 57:17
research 39:18
reserve 11:23
reserves 42:20
residence 8:16,18 9:24
resident's 34:22
resolve 10:6 19:24
resources 6:11,20 9:10 10:6
respect 23:12 28:13 30:10 36:11
respectfully 58:2
respond 14:15 33:19 40:7

response 17:5
40:23,25
responsibiliti
es 33:9
restrict
31:3,14 39:25
restricted
31:6
result 32:3
resulted
21:20 32:10
resulting
28:7
results 32:6
retained 15:5
42:10
revealed
39:18
Reynolds 7:3
right 6:22
8:15 12:2
13:18 14:4
24:25 25:2
26:2,6,9,10
27:5,6 37:9
48:11,14
53:15 58:20
59:6
right-hand
30:14
rights 15:7
35:13 42:21
ripe 12:2
21:1
Romamach 44:1
rule 10:25
11:3,14 37:8
ruled 11:18
38:8 52:1
ruling 11:16

_____

S

_____

said 7:15
13:20 17:19
24:7 25:4
28:10,16 31:5

35:12 37:6
38:22 51:22
52:15,16
same 6:18
12:24 13:24
14:2 26:3
31:1,18 34:4
45:3 49:23
51:18 52:15
58:16
satisfaction
28:20
say 6:19
14:19 16:12
19:13 25:12,
13 31:2
32:16,17
42:20 43:16
45:3 52:20
56:25 57:8,9
saying 11:5
14:25 15:3
17:23 43:19
46:15,16
47:25 48:7,9
says 7:2,16
10:23 17:12
18:1 22:25
23:6 25:3
26:9,15 27:7
31:22 34:9
35:22 41:21
42:7 55:17
57:11
scenario
23:10 28:2
scheduled 5:6
seated 21:10
29:4
second 7:6
44:22 54:21
Secondly 34:1
section 29:23
Security
24:20
see 10:12
12:14,16
13:10 33:7

40:10
seek 57:19
seeking 42:18
44:11 46:23
50:2,5 57:15
seeks 35:14
seem 15:17
56:25
select 26:16
34:14,17,22
38:6 39:11
selected 39:9
43:17 47:8
selecting
38:24
Seminole 9:21
10:5 15:10,16
sent 17:3
43:19
sentence 43:5
separately
26:18 27:8
35:4
September
41:2,13
serious 8:8
serve 39:7,10
serves 43:14
services 15:5
Services'
43:6
set 24:16
27:16 34:11,
23
sets 37:19
seven 42:8
46:24
several 51:16
shall 34:14,
15,17,23
share 6:1
26:12
she 14:25
15:4,6 40:7,8
52:1,3,16
57:6

shock 55:15
shoes 29:15
shopping 10:2
short 24:23
should 5:7,
11,13 8:4,5
14:13 28:8,24
35:24 52:12
53:25 54:8
57:24 59:14
show 25:24
showed 49:16
showing 32:9
shows 16:7,8
side 38:6
sides 11:1
50:11 59:3
similar 30:9
simple 36:9
since 4:18
5:16 10:3
20:23 25:11
35:12 36:6
52:11
sir 26:6
sit 58:7
situation
18:2 20:12
25:25
six 10:20,22
43:2 56:25
skipping 32:1
skirt 33:8
Skolnik 11:18
38:22
so 4:12 5:1
6:9,16,24
7:13,18 8:16
11:1,19,23
12:16 14:7,10
15:12 16:8,
14,20 17:21,
22 18:17,21
19:7,23
20:17,23 21:5
22:15 23:21
24:10 27:14

29:16,20 30:2
32:13,19,22
40:2,19 41:1,
10,11 42:3,6,
18,21 43:20
44:14 45:9,13
46:10,16
47:11,24 48:7
51:1 52:23
53:22 55:4,9,
14,16 56:4,8,
12 58:19,25
59:9

**So.2d** 24:21
30:8

**So.3d** 17:11
26:21 39:4
44:2 54:23

**Sohol** 20:4

**sole** 35:17
43:9

**solely** 33:12,
23 49:1

**some** 17:14,17
19:16 23:20
36:19 37:7
50:21,22

**somehow** 18:4

**something** 8:7
13:20 28:18
29:17 30:1
46:6 54:12
57:8

**somewhere**
15:19

**soon** 18:5,6
46:17

**sorry** 32:5
40:6 53:3,16

**sought** 57:14

**sounds** 40:16

**speaks** 21:3

**special** 17:17

**specialty**
17:15

**specific** 7:7
38:5 45:11

**specifically**
31:23 42:7

**spend** 4:24
50:1,3 52:13
54:1

**spending** 51:1

**spent** 52:21

**split** 50:12,
23

**Spring** 15:3

**stack** 22:15

**stacked** 31:4

**standard**
38:20

**start** 41:1

**starts** 22:24
30:14

**state** 3:6
20:8 26:18
27:7 30:7
34:2,8,21
51:17 55:10

**stated** 39:18
44:9 56:13

**statements**
29:21

**states** 16:22
22:12 23:20
42:13 43:4,8
49:17

**statute** 51:7,
9

**stay** 8:4,5
21:10 29:4

**staying** 10:24
48:19

**step** 29:14
42:22

**steps** 18:21

**still** 42:5
58:18

**Stillo** 3:12,
13 10:17,20
36:23 37:15,
16,19,22,25
40:7,11,12,
17,23,24

**specifically**
52:24 53:1,9,
12 58:10,24
59:2,14,20,24

**stop** 42:5
45:20

**Stormont**
17:10,13 21:3
46:25

**story** 44:25
58:6

**straight**
58:13

**street** 8:15

**strike** 46:5,
11 48:13

**submission**
32:2

**submit** 36:13
59:3

**submitted**
20:16 21:25
24:2,14

**substantial**
10:6 50:2
57:18

**substantially**
9:22

**substantive**
55:4,12,20

**such** 18:2
31:17 57:7

**sue** 42:2,4

**sued** 8:16

**sufficiently**
23:22

**suggest** 15:24

**suit** 16:20,21
17:25 18:14,
16 19:4,6
20:23 21:2
24:6

**Supp** 9:15
38:14

**supplemental**
22:19

**support** 14:17

**supporting**
44:15

**supposed**
55:25 56:2

**supposedly**
42:3

**Supreme** 49:18
54:14 55:1

**sure** 10:19
12:5,7 17:16
22:16 24:3
48:19 53:4
54:19

**surrounding**
18:7

**suspect** 9:20

**system** 5:8,11
8:5,6

---

### T

**tactics** 54:5

**take** 14:8
28:2 45:18
59:7

**talk** 5:12
26:14 33:23

**talked** 51:17

**talking** 10:21
11:1,10

**talks** 33:24

**taxable** 50:14

**tell** 6:25
24:9 49:17

**telling** 19:21

**ten** 59:21

**tenus** 48:13

**term** 23:23
31:16

**terms** 5:25
6:11 22:9
25:15 55:13

**testimony**
14:20 15:13

**than** 7:18
25:17 35:18
38:20 44:25

52:14,22

**Thank**   3:7,11,
  19 8:23 10:16
  16:17 21:7,12
  26:7 29:1,6
  33:18,21
  37:14 40:14
  46:4 53:11,14
  56:14,15,16
  58:20 60:1

**Thanks**   16:1

**that**   3:21
  4:7,8,10,22
  5:18,19 6:2,
  3,12,13,16,
  19,21,23 7:2,
  4,8,10,12,14,
  16 8:3,7,18
  9:1,3,6,9,10,
  12,16,21
  10:8,22 11:8,
  9,20,24 12:16
  13:2,3 14:8,
  22,24,25
  15:3,18,21,24
  16:4,5,9,10,
  12,16,18,20,
  22 17:6,12,
  15,18,19
  18:1,3,7,12,
  15,17 19:10,
  13,14,15,21,
  24 20:9,25
  21:4,19,22
  22:7,13,24
  23:10,11
  24:3,6,9,11,
  12 25:3,4,22
  26:3,8,14,22
  27:2,7,12,17,
  23 28:6,19,
  22,24 29:8,
  15,17,19
  30:2,16 31:3,
  20,23 32:9,
  11,13,22
  33:15,16,17
  34:1,3,8,11,
  25 35:2,6

**that's**   5:1
  6:16 7:13,16
  13:21 15:4,9
  16:10,15 17:8
  18:1 20:17,
  20,21 22:5
  24:17 25:19
  27:13,23
  28:3,20 30:8
  31:1 34:25
  35:1 42:22
  46:12,13,23
  49:5 53:2,17
  54:11 55:19,
  25 56:3 57:3
  58:16 59:24

**their**   4:22,24
  8:17 10:20,22
  11:2,4,8,11,
  12,21 16:5,
  13,14 17:6,9

36:3,12,15,
  16,17,18,19,
  20,21 37:4,6,
  19 38:6,8,15,
  17,18,19,23
  39:11,12,18,
  21 40:3,16,20
  41:2,12,18
  43:23 44:2,4,
  8,11 45:10,
  20,22 46:11,
  14,19 47:1,3,
  4,11,14,17,24
  48:2,5,18,19,
  25 49:1,7,8,
  22 50:2,5,6,
  14,16 51:3,
  13,16,18,19,
  22 52:9,12,
  20,25 53:2,9,
  18 54:5,7,10,
  24 55:2,17,18
  56:4,6,7
  57:1,4,5,9,
  13,21,22,24
  58:13,16,19
  59:6,10,14,
  16,17,19,20

21:4 23:23
  24:11 26:1
  28:8,24 33:9
  40:19 42:2,3
  44:6 45:7,18
  50:11 54:4

**them**   7:1,20,
  22 11:19
  12:17 18:8
  19:17 20:20
  28:7 35:1
  36:15,24,25
  46:1 53:21
  54:17

**then**   8:3
  16:15,23
  18:10,13,18
  20:1 21:25
  23:19 32:1
  34:17,23
  35:21 37:7
  43:16 46:18
  47:19 53:20
  54:17 57:7
  59:7

**there**   5:17
  6:3,13 7:24
  9:22 10:9
  12:17 14:20
  15:8 17:12
  18:20 20:9,
  10,14 21:17
  23:5 26:23
  27:4,24 29:8
  37:7 41:22
  42:6 43:22
  44:14 45:10
  47:18 49:21
  51:16,22
  52:16,19 55:7
  57:20 58:1,3
  59:1

**there's**   9:12
  10:3 13:2,4,8
  14:14 15:8,23
  16:4,22 18:24
  19:15 20:1,15
  21:2 23:24
  24:7,19 26:25

27:2,22 30:2
  32:23 35:6
  36:16,18
  37:9,25 40:25
  42:1 44:24
  45:15 46:16

**therefore**
  17:7

**thereof**   43:11

**thereupon**   3:1
  60:4

**these**   3:22,24
  4:15,17 5:7,
  10,18,22 8:18
  15:13 17:1,20
  37:12 46:15
  48:7,22 50:19
  56:10 57:16
  58:14

**they**   4:23
  5:16 8:5
  10:24 11:9,20
  14:19,22
  15:17,22
  16:6,12 17:24
  18:5,6,8
  19:8,10,11,
  13,14,16,20,
  23,25 20:8,15
  21:21,23,24
  23:22 24:2,3,
  4,15 25:15
  28:18 29:14
  33:14 34:1,9
  36:18,19 37:8
  39:19 42:4
  43:20 44:23
  45:3,6,9
  47:6,11,12,
  13,15,20,21,
  23 48:3,5
  50:3 51:12
  54:5,14
  55:14,21
  56:13 57:7,8,
  19 58:12,18

**they're**   10:21
  11:1,5,15,20
  16:8 20:25

28:19 45:13,
15 48:8
**they've** 6:8
33:2
**thing** 6:12
13:21 16:18
22:10 27:3
52:15 58:10,
16
**things** 4:23
5:21 9:3
10:22 14:2
23:20 40:20
**think** 4:16,20
5:5,13 8:4
12:25 16:20
19:10 22:7
23:1 33:14
37:10 46:1
49:22 50:24
53:24 54:3,7
55:20 56:12
57:2 58:3
**thinks** 33:15
**third** 7:4,14
17:11 18:1
19:20,25 23:1
25:4 30:8,9
33:23 43:8,25
44:8 46:17
**this** 4:13
5:16,18 7:20,
22 9:13 10:4,
9 11:20
14:16,20
15:24 16:7,
16,20,21
18:5,18,22
19:7,18 20:2,
23 21:1 22:4,
11,15 24:17,
25 25:20,25
27:4,14,16
28:13,23
29:17 30:3,
18,20 31:3
32:8,13,15,
20,23,25
33:1,3,7,12,

13,17 34:1,4,
5,7,9 35:6,
16,24 37:6,
12,19 38:8,9,
10,16 41:7,8,
11,21 42:8
43:1,3 44:3,
16,24 45:13,
20 48:1 51:17
53:18 54:10,
11,15,25
55:8,9,16,17
56:1,17 57:12
58:13,21
**those** 7:19
14:2 20:7
21:5 47:17
50:14,15
57:13,24
**thought** 47:23
**threatened**
42:2,4,11,16
**three** 15:17
26:23 30:12,
13 38:9 45:4
49:13 53:19
**through** 16:25
42:16 56:10,
19 59:10
**time** 4:24
6:18 12:2
13:24 14:2,17
19:20 23:8,18
46:1 56:18
59:17
**to** 3:21,22
4:17,20,21,23
5:12 6:3,9,
12,17,22,24
7:5,7,9,11,
13,15,16,18,
19,25 8:2,20,
21 9:9,20
10:6,11,25
11:3,6,9,11,
12,13,14,21,
23,24 12:5,
18,19 13:3,6,
10,13,19,22,

23,24 14:2,3,
4,5,7,8,10,
15,18,20,21
15:5,7,13,17,
20,21 16:5,
10,13,19,23,
24 17:4,12,
15,16,19
18:2,4,8,12
19:3,9,12,24,
25 20:8,11,12
21:1,5,14,21,
25 22:2,3,4,
8,21 23:5,11,
12,16,17,23,
25 24:5,8,9,
16 25:1,2,5,
8,12,13,15,
18,19,22,23,
25 26:3,8,9,
10,17,23
27:1,6,13,16,
18,20,21,22,
24 28:2,4,5,
8,13,14,15,
17,19,24
29:10,15,16,
18 30:10,12,
17,23,24,25
31:2,12,14,21
32:2,4,10,17,
23,24 33:8,9,
10,25 34:2,3,
10,19,22
35:1,4,8,9,
13,14,15
36:3,4,5,7,8,
12,15,18,25
37:4,17
39:10,11,12,
15,19,21,25
40:8,15,16,
17,18,19
41:8,19 42:2,
4,19,20 43:6,
9,16,19,20,21
44:10,11,22,
24 45:9,17,
18,21,24,25

46:5,11,17
47:6,14,16,
18,20,22
48:2,8,12,13,
17,18,19,25
49:1,4,10,17
50:1,3,7,11,
17,22,23
51:2,3,4,5,6,
14,23 52:3,
13,17,19
53:4,23,25
54:1,2,3,7,
10,17,24
55:3,8,14,15,
23,24,25
56:2,3,4,6,8,
9,10,18,19,
22,23,25
57:1,4,6,7,
11,12,13,18,
19,23,25
58:3,5,17,25
59:3,6,7,8,9
**today** 3:21
5:6
**toe** 29:5
**told** 12:3
**Tonya** 4:7
12:20
**too** 30:15
45:25
**took** 21:22
**top** 6:25
22:25
**total** 27:22
**towards** 32:1
**Tower** 8:15
**transfer** 3:22
5:4 6:9,19,22
7:11,16 8:3
13:6,23 14:5,
7,18
**transferring**
5:12
**Travelers**
17:10,13 21:3
46:24

Tree 49:18
  55:2 57:7
trial 6:6,10
  15:14 35:18
true 32:8
truly 55:25
trying 19:9
  28:1 42:18
two 8:9 9:3
  15:14,15 17:4
  20:1 23:15
  24:23 28:12
  34:17,19
  47:18 49:8
  52:15 55:18
  59:8
type 17:14
  22:4 43:10
types 4:15
  17:20

## U

U.S. 24:20
  49:20 54:14
  55:1
ultimately
  39:20 51:5,23
  52:23
umpire 26:17
  34:20,23
  44:7,12
  47:19,24 48:1
  50:12,23
unable 34:19
unambiguous
  25:21
unambiguously
  24:16
unconscionabil
  ity 55:4,5,
  12,21
uncover 45:9
under 14:8
  18:25 21:21
  22:6,8 25:7
  30:18 31:18

33:9,10 35:2,
  13 51:3
unenforceable
  50:6
unilateral
  33:8
United 49:17
unquote 39:6,
  14
untrue 34:6
up 5:16 6:21
  13:2 18:11
  25:8 27:16
  28:7 33:10
  37:11 44:23
  45:6 48:18
  49:16 57:11
upon 32:6
  34:20
us 4:17 7:9
  13:20 15:7
  19:15,21,24
  23:16 24:9
  54:11
use 17:19
  23:23 25:8,15
  36:19 41:8
using 23:18
  38:16 42:5
  45:5

## V

valid 17:8
  26:25 27:2
  45:23
value 23:7,12
  26:19 27:8,10
  31:25 35:5,23
  36:5,8 49:11
valve 33:8
variety 5:9
  52:19
vehicle 15:6
  25:9 27:21
vehicles
  23:19

venue 5:12
  6:19,22,23
  7:12,17 13:6
  14:18 18:23
verbatim 37:5
verdict 31:10
verify 43:6
versus 3:4
  7:3 9:18 13:7
  17:10,13 20:3
  21:3 24:20
  26:20 30:7,21
  35:11 38:12
  39:3 44:1
  46:24 47:3
  49:19 51:21
  54:22
very 5:10
  10:7 22:25
  29:21 36:9
  37:12 53:14
viable 10:2
victor 51:10
view 49:6
violate 52:6
violated
  38:24
violates
  49:13
Vision 38:11
visited 42:23

## W

waiting 59:1
waiver 19:13
want 10:24
  11:6,13,20
  12:5 25:22
  36:18 40:16
  45:9 53:4
  56:22 58:25
  59:6
wanted 17:19
was 3:25 4:10
  5:20 6:23
  7:12 13:20,23

15:8 17:21
  21:17,18,25
  25:7,11
  27:16,17,21
  29:17 30:20
  31:4 34:4
  35:6 36:3,20
  37:5,22
  38:16,17
  39:5,9,11,21
  41:2,12,22
  43:22 44:2,4,
  7,11,12 47:4,
  5,9,19,21,24
  48:4 49:21
  52:16 53:6,7,
  9 55:6,8
  58:13,16,21
  60:4
wavered 41:7
way 11:15
  17:17 18:2
  24:18 31:6
  35:6 48:10
  52:3 56:18
  59:9
we 3:20 4:12,
  16,17,20 5:5,
  13 6:1,13
  8:3,16 9:3
  10:17 11:2,6,
  13,24 12:1,10
  13:16 14:1,24
  16:2,16,18,20
  17:3 18:21,
  22,23 19:3,21
  20:12,15,16
  21:5 23:5,10,
  11,14 24:2,6,
  7,10,12,17,18
  25:25 26:8,10
  27:2,6,12
  28:4,16,22,23
  29:8,16,19
  30:4,15
  32:13,22
  33:1,4,5,7,16
  34:9,20 35:9
  36:10,11,23

37:2,16 40:2,
3,19 43:17,18
45:21,22,25
46:1,11 48:1,
21 51:22
52:16 54:3,6
56:12,20,21
57:17,21
58:2,3 59:14
**we'd** 3:21
**We'll** 45:21
**we're** 6:8
8:20,25 11:25
13:14 20:14
25:19 46:14,
16 48:7,9,19
50:5 51:1,2,
4,5 53:22,23
54:10 55:23,
24 57:15,20
**we've** 5:10
19:18 33:4
51:6 56:8
**website**
42:24,25
43:12
**Weekly** 9:13,
15 38:14
**Welcome** 3:10
**well** 6:7,13
8:10 11:6,7
14:1 16:9
18:11 20:8,25
21:4 36:21,25
40:10,25 46:5
48:6 51:11,22
52:20 55:21
**went** 25:13
31:2 47:6,18
**were** 3:1 8:25
27:20 35:9
47:12,15 57:5
**what** 5:15 6:2
11:24,25
12:3,9 13:19
18:4,22 20:20
21:14,17
23:14,25

24:7,9 25:19
27:16 28:1,8,
13 36:12
38:22 40:2,11
41:21,25
43:10 44:4
45:2,7,9,12,
14 48:16,21
49:14,25
51:2,5 52:16,
25 53:6 55:25
56:24 57:11,
13,23
**what's** 43:3,
22 48:14
55:19
**whatsoever**
17:5
**when** 9:20
11:11 20:8
30:22 31:4
35:9 36:13
39:12
**where** 5:21
8:17 9:23
16:7 20:21
22:16 23:5
28:2,20 34:21
35:12 36:4
41:11 44:18
45:10 50:20
52:8 55:17
**whether** 5:7,
14 18:18
23:22 25:5,6,
20,21 26:25
27:4,21 31:12
38:3 39:5
44:6,12 48:4
51:25 52:5
55:14
**which** 8:1,19,
24 11:7 14:21
16:6 17:10
19:1,2,24
20:7,12,19
21:19 22:6,12
23:8,15 26:13
30:21 31:17

35:14,17
36:22 39:23
42:10,17
43:24 47:20
52:7 55:1,6
**who** 38:25
39:5,17 40:1
47:12
**whoever** 8:13
**whose** 10:7
32:4
**why** 5:10
14:21 15:13
24:17 25:24
27:23 35:1
40:3,8 54:1
**will** 19:13
26:11,12,16,
18 27:7 28:6
43:21 45:11
49:22 51:12
55:20 58:7
**windshield**
3:24,25 9:25
21:16,20,24,
25 33:13
35:16 38:11
50:19 56:20
**with** 3:8 4:15
7:20,22 8:20,
25 11:15,24
12:8 13:1,15,
16 14:7,15
16:12 17:1,5,
21,24 18:23,
25 19:5,8,16
23:12 28:13
30:1 31:4
36:11 37:1
41:1,12,22,23
42:11,17
43:1,13 45:7,
11 54:6
**withdraw**
43:20
**within** 8:4,5
34:16,20
35:17,25

46:13 48:19
49:1 54:25
**without** 14:12
17:2 31:11
46:7 56:23
**witness** 12:1
**witnesses** 4:4
8:1 9:4,6
10:1,21 11:11
14:21
**Womack** 4:7
12:21 14:13
**won't** 42:5
45:20 49:11
**wondering**
53:6
**words** 31:14
50:4
**work** 15:7
17:15,21
**would** 4:4,19
10:11 11:23
13:10 15:24
16:18 19:10
32:4,5 35:8
40:5 42:17
50:24 52:6,
11,13,23
57:12,21
58:19 59:19
**Wow** 58:23
**writ** 37:10
**written** 26:25
27:3 34:13

---

## Y

**yeah** 12:23,25
16:3 22:17
57:2
**year** 4:14
19:19 44:3
**years** 7:13
41:8,9,23
43:2 56:12
**Yes** 10:13,15
12:10 21:11

29:3,5 30:5
33:20 37:18
54:13 59:25
**yet**  6:8 21:2
57:20
**you**  3:7,11,19
5:21 6:17,25
8:23 10:16
12:8 13:13,14
16:17 17:12
19:5 21:7,12
22:5,13,18,20
24:7,8 25:24
26:7,9 27:17,
18,19 29:1,6,
22 30:12
31:21 33:18,
21 34:9,20
36:13,14
37:14 40:14
45:4 46:4
50:3 51:9
53:5,11,13,14
54:14,17
55:7,22,23
56:5,14,15,16
58:20 59:6,9
60:1
**you're**  36:13
48:9 55:25
56:2
**you've**  28:2
**your**  3:6,12,
19,20 10:11,
14,18 11:4
13:4,10 16:19
17:24 19:22
20:8 21:7
22:18 24:25
25:19,23 26:7
29:3,5 30:4
33:16,19 34:2
35:22 36:13,
24 37:9,17
40:23 46:4
48:12 52:24
54:13 58:11
59:3,15

**yourself**
42:21

---

## Z

**Zephyr**  54:22
55:16

IN THE COUNTY COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: 17-005712 COCE 51


AUTO GLASS AMERICA, LLC (a/a/o TONYA WOMACK)

vs.


ALLSTATE INSURANCE COMPANY

_____/


### ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, DEMAND INTO APPRAISAL, MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY, AND MOTION TO DISMISS ANY CLAIM FOR ATTORNEYS' FEES


THIS CAUSE came before the Court on January 25, 2018 for hearing on Defendant's Motion to Dismiss Plaintiff's Complaint, Demand into Appraisal, Motion for Protective Order Regarding Discovery, and Motion to Dismiss any Claim for Attorneys' Fees (the "Motion"), and the Court, having reviewed the Motion and entire court file; having reviewed the relevant legal authorities; having heard argument of counsel; and having been sufficiently advised in the premises,

**ORDERS AND ADJUDGES** that the Motion is **DENIED** in all respects for the reasons set forth below.

#### Background

In this case regarding the replacement of Allstate's insured's windshield performed by Auto Glass America, LLC, the Amended Complaint asserts four counts for declaratory relief:

1.      Count 1 seeks a judicial declaration interpreting the term "cost to repair or replace" contained in the Limit of Liability provision under the comprehensive portion the Allstate policy;

2.      Count 2 seeks a judicial declaration that the appraisal provision in the property damage portion of the Allstate policy is not applicable to the instant claim;

3.      Count 3 seeks a judicial declaration that appraisal in the context of the subject claim violates the prohibitive cost doctrine; and

4.      Count 4 seeks a judicial declaration that Allstate failed to select a disinterested appraiser (this count was pled in the alternative).

In response, Allstate filed the Motion in an effort to dismiss the case and compel appraisal with its chosen appraiser, Auto Glass Inspection Services ("AGIS").    In its response Allstate also challenged whether the Plaintiff has standing.  The Defendant contends that the assignment of benefits violates Florida Statute § 626.854 in that the assignment violated the "public adjusting statute".

The Allstate insurance policy provides for appraisal when there is only a dispute as to the specific dollar amount of the loss, and states:

> [W]e will pay for direct and accidental loss to the insured auto or a non-owned auto    not caused by collision.
>
> Glass breakage, whether or not caused by collision, and collision with a bird or animal.
>
> *       *       *
>
> Our limit of liability is the least of:

1. The **actual cash value** of the **property** at the time
   of the loss, which may include a deduction for depreciation;

2. The **cost to repair or replace** as determined by us, the property or part to
   its physical condition at the time of loss using parts produced by or for the
   vehicle's manufacturer, or parts from other sources, including, but not
   limited to, non-original equipment manufacturers, subject to applicable
   state laws and regulations.

> *    *       *
>
> Right to Appraisal
>
> Both you and we have a right to demand an appraisal of the loss.  Each
> will appoint         and pay a competent and disinterested appraiser and
> will equally share other appraisal expenses.  The appraisers, or a judge of
> a court of record, will select an umpire to decide any differences.  Each
> appraiser will state separately the actual cash value and the amount of loss.
> An award in writing by any two appraisers will determine the loss amount
> payable.

The Plaintiff opposes the Motion on several grounds, including: (1) appraisal is an inappropriate process to resolve such equitable claims as declaratory relief regarding the interpretation of the insurance policy; (2) Allstate's appraisal provision does not apply to repair and replacement of windshields; (3) Allstate's chosen appraiser, AGIS, is not "disinterested" as required by the policy in the event appraisal was appropriate; and (4) the cost of the appraisal likely exceeds the amount of damages and that expense is not a taxable cost at the conclusion of the process, such that Plaintiff could recoup the cost of the appraisal even if it were the prevailing party.

Plaintiff contends that the primary issue in this case is one of insurance policy interpretation, for which appraisal is not an appropriate method of dispute resolution because appraisal is only proper when the sole issue is the amount of the loss or the actual cash value of the entire vehicle (as opposed to a part thereof, like the windshield). When the insurer determines that the part can be repaired or replaced, the actual cash value of the property (i.e., the entire vehicle) is no longer at issue and the only determination required is the cost to repair or replace the part which is not the subject of appraisal. The only valuation to be made is the cost to repair or replace the part or property. Therefore, the court must determine whether the term "cost to repair or replace" is either ambiguous or can reasonably be interpreted in more than one manner as alleged by the plaintiff in the complaint. The Court believes that not only does this policy term require judicial interpretation, but that the "cost to repair or replace" windshield glass is not an issue for which appraisal exists as evidenced by the terms of the appraisal provision itself.

Additionally, Plaintiff seeks a declaration that Defendant's appointed appraiser, AGIS, is not "disinterested" as is required by the policy of insurance. See *Heritage Prop. and Cas. Ins. Co. v. Romanach*, 224 So.3d 262 (Fla. 3d DCA 2017); *Florida Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488 ( Fla.5[th] DCA 2014). The Plaintiff presented the Court with correspondence dated June 21, 2013 from attorneys retained by AGIS which threatened various repair shops with litigation.[1] The correspondence states the Alvarez & Gilbert, PLLC law firm represents AGIS in its capacity as appraiser for Allstate's various entities. Further, the letter contains threats of litigation against these shops by AGIS relating to disputes at issue in the appraisal process. The firm, on behalf of AGIS further warns repair shops to "govern [themselves] accordingly."

The Plaintiff also presented the Court with a print-out of the AGIS website on which AGIS states its mission is "to verify glass damage for the insurance industry." The website also represents that "AGIS sole purpose is to report back to the insurance industry what type of damage exists or lack thereof." It further indicates that "AGIS has no affiliation with any companies in the glass industry and only serves large insurance companies."

The Plaintiff also presented correspondence sent between Plaintiff and Allstate in numerous claims requesting AGIS be removed as appraiser because AGIS is not disinterested

---

[1] Plaintiff contends it is of vital import that AGIS has retained their own attorneys in the past to threaten repair facilities – including Auto Glass America, LLC – with litigation about the appraisal process.

and that Allstate appoint a disinterested appraiser. In response, Allstate issued numerous letters retaining the position that AGIS is disinterested. Allstate continues to retain this position as stated in Defendant's motion. Plaintiff argues that despite making a good faith effort to remove AGIS and to obtain a disinterested appraiser Allstate's position remains, thus; creating a basis to believe that sending additional letters requesting the removal of AGIS would be futile. See *Waksman Enterprises, Inc. v. Oregon Properties, Inc.*, 862 So.2d 35 (Fla. 2d DCA 2007).

Plaintiff also seeks a declaration that the appraisal provision is unenforceable and illusory because the expense to enter appraisal is prohibitive upon both the insured and Plaintiff. The appraisal provision at issue requires that each party bears the costs of its own appraiser and split the costs for the umpire if the appraisers do not agree on the amount of the loss. Plaintiff relies on various county court decisions that have considered whether appraisal provisions may be illusory in the context of the small monetary amounts of windshield damage cases. See *Broward Ins. Recovery Cntr., LLC (a/a/o Charlie Gari) v. Allstate Fire and Cas. Ins. Co.,* 25 Fla. L. Weekly Supp. 293a (Fla. Broward County Ct. May 8, 2017)(Fishman, J.); *Broward Ins. Recovery Cntr., LLC (a/a/o Shane Bushman) v. Progressive Select Ins. Co.,* 24 Fla. L. Weekly Supp. 761a (Broward County Ct. Nov. 3, 2016)(Lee, J.); *Clear Vision Windshield Repair LLC (a/a/o Frances Soto) v. Progressive Amer. Ins. Co.*, 23 Fla. L. Weekly Supp. 862a (Fla. Broward County Ct. December 14, 2015)(Skolnik, J.).

## Conclusions of Law

To be entitled to declaratory relief, a party must demonstrate that "there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertain or ascertainable state of facts or present controversy as to a state of facts; that some impurity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest [sic] are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity." *Bartsch v. Costell,* 170 So.3d 83, 88 (Fla. 4th DCA 2015)(quoting *Olive v. Mass,* 811 So.2d 644, 657-58 (Fla. 2002). Declaratory relief in the insurance context is rendered by the trial court after determining the state of facts giving rise to the application of the policy provisions. *See Northwest Center for Integrative Medicine & Rehabilitation, Inc. v. State Farm Mutual Automobile Ins. Co.,* 214 So.3d 679 (Fla. 4th DCA 2017). Plaintiff has sufficiently stated causes of action for declaratory relief in each of the counts asserted in the Amended Complaint.

There are three elements for the courts to consider in ruling on a motion to compel arbitration or appraisal of a given dispute: (1) whether a valid written agreement to appraisal exists; (2) whether an issue for appraisal exists; and, (3) whether the right to appraisal is waived. *Heller v. Blue Aerospace LLC*, 112 So. 3d 635(Fla. 4th DCA 2013). In this case, Plaintiff seeks the Court's interpretation and construction of insurance policy language, including the appraisal provision itself. As a threshold matter, it has yet to be determined whether there exists a valid

written agreement that calls for appraisal. In fact, the very declarations the Plaintiff seeks in this case involve the validity of the appraisal and limit-of-liability provisions in the policy[2].

If the Court interprets and construes the agreement to appraise as valid, the next step is to determine whether an issue for appraisal exists. While appraisal is a preferred non-judicial method of dispute resolution, it is only appropriate when the sole issue to be decided is a determination of the amount of damages sustained by the insured. *See Citizens Prop. Ins. Corp. v. Demetrescu,* 137 So.3d 500 (Fla. 4th DCA 2014); *Citizens Prop. Ins. Corp. v. Michigan Condominium Ass'n,* 46 So.3d 177 (Fla. 4th DCA 2010). In other words, an appraisable issue only exists when there is a dispute over money. In this case the Defendant does not even agree that the Plaintiff has standing. Appraisal is not appropriate when a case presents only issues of contract interpretation or coverage. *Antencio v. U.S. Sec. Ins. Co.*, 676 So.2d 489 (Fla. 3d DCA 1996)("Questions of policy interpretation and coverage are ordinarily for the court, rather than arbitrators or appraisers to decide."); *Broward Ins. Recovery Cntr., LLC (a/a/o Shane Bushman) v. Progressive Select Ins. Co.,* 24 Fla. L. Weekly Supp. 761a (Broward County Ct. Nov. 3, 2016)(Hon. Robert W. Lee)("In the instant case, the operative issue is how the value of the loss should be determined, and making this determination is not within the purview of the appraisal process."). This case presents issues of contract interpretation or coverage to be determined by the Court as a matter of law. Specifically, the Court must determine whether the term "cost to repair or replace" is ambiguous or capable of more than one reasonable interpretation. It is not an action for damages.

Further, appraisal for windshield glass repair or replacement is not contemplated by the appraisal provision in the policy. The provision requires the appraisers to determine the actual cash value and the amount of the loss. Neither of those determinations are necessary or even relevant when the issue is the meaning of the term "cost to repair" windshield glass. If appraisal was intended to determine the cost to repair or replace a windshield, the appraisal provision would say so. It does not. This Court is not at liberty to "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intention of the parties." *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So.3d 494, 497 (Fla. 2014), quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So.2d 1245, 1248 (Fla. 1986).

Defendant relies upon *Progressive Select Ins. Co. v. Cornerstone Network, Inc. (a/a/o Dakota Sowell),* Case No.: CACE 16-021830 (AW), FLWSUPP 2503SOWE, (Broward County, Circuit Court)(Appellate Capacity)(May 25, 2017) and *Progressive American Ins. Co. v. Broward Insurance Recovery Center, LLC (Isabella Cardona),* Case No.: CACE 16-021757 (AW) (Broward County, Circuit Court)(Appellate Capacity)(May 26, 2017 )(unpublished) for the proposition that appraisal is proper for windshield repairs, and should be employed instead of the judicial process. Those cases are distinguishable from the instant matter as they were

---

[2] Curiously, Allstate maintains Plaintiff lacks standing for two reasons. First, Allstate argues Plaintiff lacks standing because the insured did not comply with the appraisal provision; therefore, according to Allstate, the right to additional payment did not vest in the insured so the insured had no rights or benefits to assign. Second, Allstate argues that the assignment of benefits constitutes a violation of Fla. Stat. § 626.854, which provides a definition of "public adjuster." The Court makes no finding as to standing at this time.

lawsuits for breach of contract seeking only damages. They were not claims for declaratory relief like those raised by the Plaintiff in this case. Further, the *Progressive* damages cases involve different policies and provisions than the Allstate policy at issue here. In contrast to the Progressive cases the issues set forth in the Plaintiff's complaint require judicial interpretation and declaratory relief involving terms in both the limit of liability and appraisal provisions in the policy.

The simple fact is that without a judicial interpretation as to the meaning and/or possible ambiguity of the term "cost to repair or replace" the Plaintiff faces the potential of being forced into an appraisal process without knowing whether the Defendant has complied with the limit of liability provision in its policy. While alternative dispute resolutions are favored by the courts they cannot be used as vehicles by either party to avoid the terms, conditions and construction of the contract which is subject of the suit.


Although not binding, this Court is also persuaded by the other county court decisions in favor of Plaintiff's position. *See e.g., Auto Glass America, LLC (a/a/o Joe Johnson) v. Allstate Ins. Co., 25 Fla. L. Weekly Supp. 833a* (Fla. Broward County Ct. November 21, 2017) (Hilal, J.); *Auto Glass America LLC (a/a/o Marian Donovan) v. Allstate Ins. Co.*, Case No. 17-3260 COWE (82) (Fla. Broward County Ct. November 21, 2017) (Hilal, J.); *Broward Insurance Recovery Center, LLC (a/a/o Harry Drangsland) v. Allstate Ins. Co.,* 25 Fla. L. Weekly Supp. 294 (Fla. Broward County Ct. May 8, 2017)(Hilal, J.); *Broward Insurance Recovery Center, LLC (a/a/o Charlie Gari) v. Allstate Fire and Casualty Ins. Co.,* 25 Fla. L. Weekly Supp. 293a (Fla. Broward County CT. May 8, 2017) (Fishman, J.); *Broward Insurance Recovery Center, LLC (a/a/o Jason Kemps) v. Allstate Ins. Co.,* Case No.: 16-012906 COWE (81) (Fla. Broward County Ct. May 8, 2017) (Fishman, J.); *Auto Glass Wizards, Inc. (a/a/o Noel Ramos) v. Allstate Ins. Co.*, Case No.: 16-11775 COCE (54) (Fla. Broward County Ct. January 12, 2018) (Barner, J.); *Auto Glass Wizards, Inc. (a/a/o William Diaz) v. Allstate Ins. Co.*, Case No.: 16-11461 COCE (54) (Barner, J.); *Auto Glass America, LLC (a/a/o Erica Gantley) v. Allstate Fire and Casualty Ins. Co.*, Case No.: 17-1041 CONO (72) (Fla. Broward County Ct. December 8, 2017) (Hurley, J.); *Auto Glass America, LLC (a/a/o Angelina Davinport) v. Allstate Fire and Casualty Ins. Co.,* Case No.: 17-1981 CONO (72) (Fla. Broward County Ct. November 16, 2017) (Hurley, J.); *Auto Glass America, LLC (a/a/o Diane Bloom) v. Allstate Ins. Co.,* Case No.: 17-3385 CONO (73) (Fla. Broward County Ct. November 3, 2017) (Deluca, J.); *Auto Glass America, LLC (a/a/o Amy Trucano) v. Allstate Ins. Co.,* Case No.: 17-3394 CONO (73) (November 3, 2017) (Deluca, J.); *Broward Insurance Recovery Center, LLC (a/a/o Ken Baker) v. Allstate Ins. Co.,* Case No.: 16-22873 COCE (56) (Fla. Broward County Ct. April 25, 2017); *Clear Vision Windshield Repair, LLC (Harold Becker) v. Allstate Prop. and Casualty Ins. Co.,* 25 Fla. L. Weekly Supp. 291b (Fla. Broward County Ct. April 21, 2016) (Marks, J.); *Broward Insurance Recovery Center, LLC (Shane Bushman) v. Progressive Select Ins. Co.,* 24 Fla. L. Weekly Supp. 761a (Fla. Broward County Ct. November 2, 2016) (Lee, J.); *Clear Vision Windshield Repair, LLC (a/a/o Jennifer Beckles) v. Progressive Amer. Ins. Co.,* 23 Fla. L. Weekly Supp. 486a (Fla. Broward County Ct. September 2, 2015)(Skolnik, J.).

For these reasons, Defendant's Motion is hereby **DENIED**.

Since the Court finds appraisal to be inappropriate in this case, it does not need to reach the issues of Allstate's compliance (or lack thereof) with the appraisal provision by selecting AGIS, an appraiser whose disinterest is questioned by the Plaintiff, or whether appraisal should be precluded under the prohibitive cost doctrine. Those issues are moot.

**DONE** and **ORDERED** at Plantation, Broward County, Florida on this 6th day of February, 2018.

_____
HONORABLE KATHLEEN MCCARTHY
COUNTY COURT JUDGE

Copies furnished to:

Emilio R. Stillo, Esq., Andrew Davis-Henrichs, Esq., Lawrence Kopelman Esq., and Mac Phillips, Esq., for the Plaintiff

Christie Quintero, Esq., and Kansas R. Gooden, Esq., for the Defendant.

Copies Furnished to:
MiamiLegal@Allstate.com
dperalta@boydjen.com
Alison.Haney@Allstate.com
rhernandez@insurancelawadvocate.com
mphillips@thephillipslawgroup.com
erspleadings@yahoo.com
miamilegal@allstate.com
kfranz@boydjen.com
service@phillipstadros.com
jtorres@insurancelawadvocate.com
Ansley.Peacock@allstate.com
bacevedo@insurancelawadvocate.com
efilingpleadings@gmail.com
DIV51@17TH.FLCOURTS.ORG
mphillips@phillipstadros.com
eservices@emiliostillopa.com
kgooden@boydjen.com

IN THE SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA
APPELLATE DIVISION

CASE NO. _____
L.T. NO.: COCE-17-005712 Div. 51

ALLSTATE INSURANCE COMPANY,

       Petitioner,                        FROM THE COUNTY COURT

vs.                                       OF BROWARD COUNTY

AUTO GLASS AMERICA LLC
A/A/O TONYA WOMACK,
          Respondent.
_____/

## **<u>PETITION FOR WRIT OF CERTIORARI FILED PURSUANT TO FLORIDA RULE OF APPELLATE PROCEDURE 9.100(F)</u>**

**BOYD & JENERETTE, PA**
**KANSAS R. GOODEN**
Florida Bar No.: 058707
kgooden@boydjen.com
201 North Hogan Street, Suite 400
Jacksonville, Florida 32202
Tel: (904) 353-6241
Fax: (904) 493-5658
And
**KEVIN D. FRANZ**
Florida Bar No. 15243
kfranz@boydjen.com
1001 Yamato Road, Suite 102
Boca Raton, FL 33431
Tel:   (954) 622-0093
Fax:   (954) 622-0095
*Attorneys for Allstate Insurance Company*

1

## INTRODUCTION

Petitioner ALLSTATE INSURANCE COMPANY[1] respectfully requests this Court to issue a writ of certiorari quashing the County Court's February 6, 2018 order denying its Motion to Dismiss, Demand for Appraisal and Motion for Protective Order. The Respondents' compliance with the policy's appraisal provision is a condition precedent to filing and maintaining a lawsuit against Allstate.

All references to the Appendix will be by the symbol "App." followed by the corresponding volume and page number.

## BASIS FOR INVOKING JURISDICTION OF THE COURT

Jurisdiction of this Court is appropriate pursuant to Florida Rules of Appellate Procedure 9.030(c)(2), (3) and 9.100, and Article V, Section 5(b) of the Florida Constitution.

## FACTS UPON WHICH PETITIONER RELIES

This case concerns the cost to repair of an automobile windshield. (App. 004-013). Allstate Property and Casualty Insurance Company issued a personal automobile insurance policy to Tonya Womack. (App. 187). The policy contains

---

[1] The parties have agreed to amend the caption to reflect the correct insurance company – Allstate Property and Casualty Insurance Company. (App. 033-041). An order has not been entered at this time.

comprehensive coverage. (App. 188). The following are the pertinent terms and conditions of the policy:

**GENERAL PROVISIONS**
The coverages of this policy apply only when a specific premium is indicated for them ton on the Policy Declarations. If more than one **auto** is insured, a coverage premium will be shown for each **auto**. **Allstate**, relying upon the declarations, subject to all the terms of the policy and subject to **your** payment of the premiums, makes the following agreements with **you**.

\* \* \*

**Definitions Used Throughout the Policy**
The following definitions apply throughout the policy unless otherwise indicated. Defined terms are printed in bold face type.

1.  **Allstate, we, us** or **ours** means the company shown on the Policy Declarations.
2.  **Auto** means a land motor vehicle designed for use principally upon public roads.

\* \* \*

5.  **You** or **your** means the policyholder named on the Policy Declarations and that [policyholder's **resident** spouse.

The following provisions apply throughout the policy unless a different provision regarding the same subject matter is provided under a particular coverage or it is otherwise indicated.

\* \* \*

**Transfer**
You may not transfer this policy or assign any interest in this policy, other than benefits payable under **Part III, Personal Injury**

3

**Protection**, to another person without our written consent. However, if **you** die this policy will provide coverage until the end of the policy period for **your** legal representative while acting as such and persons covered on the date of **your** death.

* * *

**Action Against Allstate**
No insured person or injured person, as those terms are defined in Parts I, II, III, and IV of the policy, may sue use for any matter related to this policy unless there is full compliance with all the terms of the policy. No one other than such as insured may bring suit against us prior to first obtaining a judgement against an insured for damages covered under the policy.

If liability has been determined by judgement after trial, or by written agreement among the insured, the other person, and us, then a person other than an insured who obtains this judgement or agreement against an insured person may sue **us** up to the limits of this policy.

The bankruptcy or insolvency of a person inured will not relieve **us** of any obligation.

* * * * * * *

**Part V – Protection Against Loss To The Auto**
The following coverages apply when indicated on the Policy Declarations.

* * *

**Auto Comprehensive Insurance Coverage**
**HH**
If a premium is shown on the Policy Declarations for **Auto Comprehensive Insurance, we** will pay for direct and accidental loss to the **insured auto** or a non-owned **auto** not caused by collision. Loss caused by missiles, falling objects, fire, theft, or larceny,

explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered. Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.

* * *

**Payment of Loss By Us**
**Allstate** may pay for the loss in money, or may repair or replace the damaged or stolen property. **We** may, at any time before the loss is paid or the property is replaced, return at our own expense any stolen property, either to **you** or at **our** option to the address shown on the Policy Declarations, with payment for any resulting damage. **We** may take all or part of the property at the agreed or appraised value. **We** may settle any claim or loss with **you** or the owner of the property.

**Right to Appraisal**
Both **you** and **Allstate** have a right to demand an appraisal of the loss. Each will appoint and pay a competent and disinterested appraiser and will equally share other appraisal expenses. The appraisers, or a judge of a court of record, will select an umpire to decide any differences. Each appraiser will state separately the actual cash value and the amount of loss. An award in writing by any two appraisers will determine the loss amount payable.

**Limits of Liability**
**Allstate's** limit of liability is the least of:

1.    the actual cash value of the property at the time of the loss, which may include a deduction for depreciation; or

2.    the cost to repair or replace, as determined by **us**, the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to application state laws and regulations; or

3.  $500, if the loss is to a covered trailer not described on the
    Policy Declarations.

* * *

**Assistance and Cooperation**
**We** will require any person making a claim to cooperate with **us** in the
investigation, settlement or defense of any claim or suit.  This
includes, but is not limited to, giving **us** a recorded statement, a
written statement, and/or a video-recorded statement, when requested
by **us**, as often as we reasonably require.

(App. 196, 198, 200, 215, 219, 220).    The policy also has an amendatory

endorsement which provides:

I.    In the **General Provisions** section of the policy the following
      changes are made:

* * *

**Transfer**
**You** may not transfer this policy or assign any interest in this policy,
other than benefits payable after a loss, to another person without **our**
written consent.    However, if **you** die this policy will provide
coverage until the end of the premium period for your legal
representative while acting as such and persons covered on the date of
your death.

* * *

**Action Against Allstate**
No one may sue **us** for any matter related to this policy unless there is
full compliance with all terms of the policy.

If liability has been determined by judgment after trial, or by written

agreement among the insured, a person other than the insured, and **us**, and then the person other than an insured who obtains this judgment or agreement against an insured person may sue **us** up to the limits of this policy.

The bankruptcy or insolvency of a person insured will not relieve **us** of any obligation.

**Assistance and Cooperation**
**We** will require any person making a claim to cooperate with **us** in the investigation, settlement or defense of any claim or suit.

* * *

VI.    **Part V – Protection Against Loss To The Auto** is amended as follows:

* * *

B.    The **Right to Appraisal** provision is replaced by the following:

**Right to Appraisal**
Both **you** and **we** have a right to demand an appraisal of the loss. Each will appoint and pay a competent and disinterested appraiser and will equally share other appraisal expenses.  Each appraiser will state separately the actual case value and the amount of loss.  If they disagree, they will submit their differences to the umpire.  The umpire will be selected by the appraisers or a judge of a court of record.  A written decision by any two of these three persons will determine the amount of the loss.  The amount of loss determined under this provision will be binding on **you** and **us.**

C.    The **Limits Of Liability** provision is replaced by the following:

**Limits of Liability**
**Allstate's** limit of liability is the least of:
1.    the actual cash value of the property at the time of the loss,

which may include a deduction for depreciation;

2. the cost to repair or replace, as determined by **us**, the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to application state laws and regulations;

3. the limit shown on the Policy Declarations applicable to the damaged property; or

4. $500, if the loss is to a covered trailer not described on the Policy Declarations.

(App. 224, 227, 240, 241).

On or about March 20, 2017, Auto Glass repaired the windshield of Tonya Womack in St. Petersburg, Pinellas County. (App. 078; 281-283). Auto Glass sent Allstate an invoice for the repair; this was Allstate's first notice of the claim. (App. 078; 281).

On or about April 3, 2017, Allstate agreed to pay an amount it believed to be reasonable for the work performed, which was below the inflated amount Auto Glass had requested, and issued a check for that amount. (App. 078). Auto Glass cashed this check. (App. 078).

Several days later, Allstate sent letters to Respondent and its insured stating that Allstate was invoking its right to appraisal for the remaining billed amount pursuant to the terms and conditions of its policy. (App. 284-285). The selected

appraiser also sent several letters to the Respondents requesting the name of their appraiser. (R. 286-288).

Instead of submitting to appraisal, Respondent Auto Glass America filed suit against Allstate on April 12, 2017 – less than one month from the date the windshield was repaired. (App. 004-013). The complaint purportedly asserted a one-count declaratory judgment action claiming that Allstate's insurance policy was ambiguous. (App. 004-013). Auto Glass sought attorney's fees and costs. (App. 011). Auto Glass served extensive discovery. (App. 062-065; 066-069; 070-076).

Allstate demanded appraisal and moved to dismiss the action arguing: 1) Auto Glass does not have standing to maintain the cause of action because the assignment of benefits was not provided, was not attached to the complaint, and was not otherwise proper; 2) Auto Glass failed to satisfy a condition precedent to filing suit as it refused to submit to appraisal; 3) the assignment of benefits violates Florida Statute § 626.854; 4) Auto Glass breached the no action clause by filing suit and not complying with all conditions precedent; 5) Auto Glass named the wrong Allstate entity in the complaint; 6) Auto Glass is not entitled attorney's fees because it raced to the courthouse to file suit instead of complying with the terms of the policy. (App. 014-020; 025-032). Allstate also moved to transfer venue to Pinellas County. (App. 021-024).

Without leave of Court, Auto Glass filed an Amended Complaint requesting declaratory judgment. (App. 048-061). Auto Glass alleged that the term "cost to repair or replace" in the Limit of Liability provision was ambiguous and rendered the appraisal clause unenforceable. (App. 048-061). In the alternative, Auto Glass further claimed that appraisal violated the Prohibitive Cost Doctrine and the selected appraiser AGIS was not disinterested. (App. 048-061). Again, Auto Glass requested attorney's fees and costs. (App. 048-061).

Allstate filed a supplemental memorandum of law in support of its motion to dismiss and demand for appraisal addressing the issues raised in the Amended Complaint. (App. 158-178).

The trial court conducted a hearing and heard argument from the parties. (App. 0321-406). First, Allstate argued that the matters should be transferred because all events occurred, and all witnesses reside outside of Broward County. (App. 323-325). Auto Glass countered the case involves a matter of contract interpretation, which is a matter of law, and Allstate has offices in Broward County. (App. 325-328). The Court took the motion to transfer under advisement. (App. 334).

Next, Allstate argued that the lawsuit is premature, and appraisal should be compelled as this case is about the amount of loss. (App. 336; 340). Allstate

admitted that this is a covered loss. (App. 340). Allstate requested and invoked appraisal. (App. 337). Allstate also explained that Auto Glass failed to follow the proper procedure for challenging their appraiser as set forth by the Court in Travelers of Fla. v. Stormont, 43 So. 3d 941 (Fla. 3d DCA 2010). (App. 337-339).

Auto Glass noted that no one disputes that this is a covered loss. (App. 342). Instead, it asserted that reimbursement is governed by the Limit of Liability provision of the policy and it is unclear what the term "cost to repair or replace" means. (App. 342-345). It also argued that appraisal does not apply to this situation. (App. 345-348).

Allstate explained that the appraisal clause does not reference or mention the Limit of Liability provision; as a result, it does not amend or alter it in any manner. (App. 349). Relying on State Farm Fire & Cas. Co. v. Middleton, 648 So. 2d 1200 (Fla. 3d DCA 1995), Allstate noted that the appraisal clause does not limit itself to determining the amount of loss under the Limit of Liability provision and therefore, the parties would be bound by an award in excess of the provision. (App. 350-353). As a result, there is no bona fide need for this Court to issue an advisory opinion as to the interpretation of the policy. (App. 352). This is an appraisable issue. (App. 353).

Next, Auto Glass, citing an affidavit it filed, argued that Allstate's appraiser is not a disinterested appraiser. (App., 358-364). It noted it wants to discover whether Allstate has a prearranged deal with the appraisal company. (App. 365). Allstate objected to any use of the affidavit and moved to strike. (App. 360-366-368). It, again, responded that the Auto Glass did not following the proper procedure under Stormont. (App. 360; 366-368). The trial court overruled Allstate's *ore tenus* motion to strike. (App. 368).

Auto Glass then asserted that the prohibitive cost doctrine applies. (App. 368-371). It compared the cost of appraisal to the amount at issue. (App. 370-371). It further noted that the trial court does not need to reach the last two issues, if it rules on the policy interpretation. (App. 373-374).

In response, Allstate explained that in order to fall within the prohibitive cost doctrine, the plaintiff must allege both substantive and procedurally unconscionability. (App. 374-376). The amended complaint does not sufficiently set forth either and improperly focuses on the amount at issue. (App. 375-376).

On February 6, 2018, the trial court entered an order denying the motion. (App. 311-318). The Court found that this case presents "issues of contract interpretation or coverage to be determined by the Court as a matter of law" and that appraisal is not contemplated by the policy. (App. 315). The Court found the issues

concerning the disinterested appraiser and the prohibitive cost doctrine moot. (App. 317). This petition timely followed.

## NATURE OF THE RELIEF SOUGHT

Petitioner ALLSTATE INSURANCE COMPANY respectfully requests this Court to issue a writ of certiorari quashing the February 6, 2018 order denying Allstate's Motion to Dismiss, Demand for Appraisal and Motion for Protective Order.

## ARGUMENT IN SUPPORT OF RELIEF REQUESTED

**THIS COURT SHOULD ACCEPT JURISDICTION AND ISSUE A WRIT QUASHING THE ORDER BELOW BECAUSE THE TRIAL COURT'S ORDER DEPARTS FROM THE ESSENTIAL REQUIREMENTS OF THE LAW, THEREBY CAUSING IRREPARABLE INJURY WHICH CANNOT BE ADEQUATELY REMEDIED ON APPEAL.**

"To grant a writ of certiorari to quash a non-final order, the petitioner must show (1) the order will cause material and irreparable injury that cannot be corrected on final appeal and (2) the order departed from the essential requirements of law." Favalora v. Sidaway, 996 So. 2d 895, 897 (Fla. 4th DCA 2008). See also Bared & Co. v. McGuire, 670 So. 2d 153, 156 (Fla. 4th DCA 1996).

A departure occurs where "there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." Combs v. State, 436 So. 2d 93,

96 (Fla. 1983). "A 'clearly established principle of law' can derive from a number of legal sources, including the constitution, statutes, rules of court, and controlling case law." Progressive Express Ins. Co. v. Physician's Injury Care Ctr., Inc., 906 So. 2d 1125, 1126-27 (Fla. 5th DCA 2005). Accord Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 890 (Fla. 2003). "A failure to observe the essential requirements of the law has been held synonymous with a failure to apply 'the correct law.'" Fassy v. Crowley, 884 So. 2d 359, 364 (Fla. 2d DCA 2004) (citing Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 530 (Fla. 1995)).

> Permitting parties to litigate a dispute in court instead of proceeding to [appraisal], if there is a right of [appraisal], constitutes a departure from the essential requirements of the law which cannot be adequately remedied by appeal. Certiorari is the appropriate remedy to review a nonfinal order denying the right to [appraisal] where such right exists.

U.S. Fire Ins. Co. v. Franko, 443 So. 2d 170, 172-73 (Fla. 1st DCA 1983) (citing Lapidus v. Arlen Beach Condo. Ass'n, Inc., 394 So. 2d 1102 (Fla. 3d DCA 1981)). Accord Progressive Am. Ins. Co. v. Collision Concepts of Delray, 23 Fla. L. Weekly Supp. 400a, *2-3 (Fla. 15th Cir. Ct., Sept. 18, 2015). See also Palms W. Hosp. Ltd. P'ship v. Burns, 83 So. 3d 785, 788 (Fla. 4th DCA 2011) (holding that "irreparable harm can be shown where a court incorrectly denies a motion to dismiss for failure to follow pre-suit requirements, as doing so would eliminate the cost-saving features the Act was intended to create.").

On numerous occasions, this Court has granted certiorari relief where the lower court has denied an insurance company's motion to dismiss and demand appraisal. See, e.g., Progressive Am. Ins. Co. v. Broward Ins. Recovery Center a/a/o Maria Puntiel, Case No. CACE 17-000838 (AW) (Fla. 17th Jud. Cir. July 31, 2017); Progressive Select Ins. Co. v. Broward Ins. Recovery Center a/a/o Nicole Boursiquot, Case No. CACE 17-000882 (AW) (Fla. 17th Jud. Cir. July 31, 2017); Progressive Am. Ins. Co. v. Broward Ins. Recovery Center a/a/o Roberto Vilau, Case No. CACE 17-000884 (AW) (Fla. 17th Jud. Cir. July 31, 2017); Progressive Am. Ins. Co. v. Cornerstone Network LLC. a/a/o Lori Carter Moffatt, Case No. CACE 17-000883 (AW) (Fla. 17th Jud. Cir. July 31, 2017); Progressive Select Insurance Company v. Broward Insurance Recovery, a/a/o Esteban Gomez, Case No. CACE 16-022581 (AW) (Fla. 17th Jud. Cir. July 31, 2017); Progressive Am. Insurance Company v. Cornerstone Network, Inc. a/a/o Isabella Cardona, Case No. CACE 16-021727 (Fla. 17th Jud. Cir. May 26, 2017); Progressive Select Insurance Company v. Cornerstone Network, Inc. a/a/o Dakota Sowell, Case No. CACE 16-021830 (Fla. 17th Jud. Cir. May 25, 2017). This Court should similarly grant that relief here.

# I. THE TRIAL COURT'S ORDER CAUSES IRREPARABLE HARM TO THE PETITIONER WHICH CANNOT BE REMEDIED ON APPEAL.

The trial court's order causes irreparable harm to Allstate that cannot be remedied on plenary appeal. "Permitting parties to litigate a dispute in court instead of proceeding to [appraisal], if there is a right of [appraisal], constitutes a departure from the essential requirements of the law which cannot be adequately remedied by appeal." U.S. Fire Ins. Co., 443 So. 2d at 172-73.

The trial court's order deprives Allstate of a contractual right and process to which it is entitled. The order eliminates the quick, efficient, and cost-saving method Allstate and its insured contracted for and expressly agreed to. See Palms W. Hosp. Ltd. P'ship, 83 So. 3d at 788. Indeed, the entire purpose of appraisal is to avoid litigation. Allstate should not be forced to expend resources, which cannot be recouped after plenary appeal, litigating a dispute which it has a clear contractual right to resolve through the appraisal process.

While the cost of litigation usually is not considered irreparable harm, the Fifth District has explained:

> But, this general principle presupposes the existence of otherwise proper litigation. If the purpose of [appraisal] is to avoid litigation, permitting the parties to litigate at all where there is a right to [appraisal] completely frustrates that right. Where the right to [appraisal] exists, compelling a party whose application has been denied to wait until a final judgment is entered so that he can appeal

the order denying [appraisal], may be a remedy in name, but it is not an adequate remedy in fact. Thus, we agree with the other district courts that an order denying the right to [appraisal] where such right exists is a departure from the essential requirements of law which cannot be adequately remedied by appeal. Certiorari is thus the appropriate remedy to review such order.[2]

Paine, Webber, Jackson & Curtis v. Lucas, 411 So. 2d 1369, 1370-71 (Fla. 5th DCA 1982).  Accord Riverfront Props., Ltd. v. Max Factor III, 460 So. 2d 948, 951 (Fla. 2d DCA 1984).  See also Graham Contracting, Inc. v. Flagler Cty., 444 So. 2d 971, 972 n.1 (Fla. 5th DCA 1983); U.S. Fire Ins. Co. v. Franko, 443 So. 2d 170, 172 (Fla. 1st DCA 1983); R.W. Roberts Constr. Co. v. St. Johns River Water Mgmt. Dist., 423 So. 2d 630, 631 (Fla. 5th DCA 1982); Lapidus v. Arlen Beach Condo. Ass'n, 394 So. 2d 1102, 1103 (Fla. 3d DCA 1981); Vic Potamkin Chevrolet v. Bloom, 386 So. 2d 286, 287 (Fla. 3d DCA 1980).  To allow this case to move forward would completely undermine the express language of the insurance policy and render it meaningless.

## II.    THE TRIAL COURT'S ORDER DEPARTS FROM THE ESSENTIAL REQUIREMENTS OF THE LAW.

An insurance policy is a contract which governs the rights and obligations of the parties.  Fabricant v. Kemper Indep. Ins. Co., 474 F. Supp. 2d 1328, 1330 (S.D.

---

[2] The Florida Rules of Appellate Procedure were subsequently amended to allow for immediate review of such non-final orders in appeals to District Courts.  See Fla. R. App. Pro. 9.130(a)(3)(C)(iv).  However, Rule 9.130 does not apply to appeals from County to Circuit Courts.  As a result, certiorari is still the proper method to review these orders in this Court.

Fla. 2007). As an assignee of the insured, Respondent Auto Glass America is bound by all the terms and conditions of the policy – including the appraisal provision. <u>See</u> <u>Ind. Lumbermens Mut. Ins. Co. v. Pa. Lumbermens Mut. Ins. Co.</u>, 125 So. 3d 263, 266 (Fla. 4th DCA 2013) ("An assignee of an insurance claim stands to all intents and purposes in the shoes of the insured[.]"); <u>Allstate Ins. Co. v. Regar</u>, 942 So. 2d 969, 973 (Fla. 2d DCA 2006).

Florida law is clear that appraisal provisions within an insurance policy are valid and enforceable upon the parties. Such clauses are conditions precedent for the insured, and its assignees, to file a lawsuit. <u>See</u> <u>New Amsterdam Cas. Co. v. J. H.</u> <u>Blackshear, Inc.</u>, 156 So. 695, 696 (Fla. 1934) ("Appraisals, as provided for in such covenants, are conditions precedent to the right of the insured to maintain an action on the policy."); <u>Preferred Mut. Ins. Co. v. Martinez</u>, 643 So. 2d 1101, 1103 (Fla. 3d DCA 1994) ("As with arbitration clauses, appraisal provisions are deemed to be conditions precedent to recovery under the insurance policies); <u>Transamerica Ins. Co.</u> <u>v. Weed</u>, 420 So. 2d 370, 371 (Fla. 1st DCA 1982); <u>J&E Invs., LLC v. Scottsdale Ins.</u> <u>Co.</u>, No. 16-61688-CIV, 2016 U.S. Dist. LEXIS 122370, at *4 (S.D. Fla. Aug. 18, 2016) ("[I]n Florida, as is the case with arbitration clauses, appraisal provisions contained within an insurance contract are treated as conditions precedent to recovery under the policy.").

"Appraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits. Fla. Ins. Guar. Ass'n v. Olympus Ass'n, 34 So. 3d 791, 794 (Fla. 4th DCA 2010). An appraisal is an "alternative method[] of dispute resolution that provide[s] quick and less expensive resolution of conflicts." Nationwide Prop. & Cas. Ins. v. Bobinski, 776 So. 2d 1047, 1049 (Fla. 5th DCA 2001). The entire purpose of appraisal is to avoid litigation. Accord Cammarata v. State Farm Fla. Ins. Co., 152 So. 3d 606, 614 (Fla. 4th DCA 2014) (Gerber, J., concurring); First Floridian Auto & Home Ins. Co. v. Myrick, 969 So. 2d 1121, 1125 (Fla. 2d DCA 2007).

Thus, "[m]otions to compel [appraisal] should be granted whenever the parties have agreed to [appraisal] and the court entertains no doubts that such an agreement was made." Preferred Mut. Ins. Co. v. Martinez, 643 So. 2d 1101, 1103 (Fla. 3d DCA 1994). Accord Fla. Ins. Guar. Ass'n v. Castilla, 18 So. 3d 703, 705 (Fla. 4th DCA 2009). Any doubts should be resolved in favor of appraisal. Bos. Bank of Com. v. Morejon, 786 So. 2d 1245, 1247 (Fla. 3d DCA 2001).

When confronted with a motion to compel, the trial court is limited to determining: "(1) whether a valid written agreement exists containing an [appraisal] clause, (2) whether an [appraisable] issue exists, and (3) whether the right to [appraisal] was waived." Phillips v. Gen. Accident Ins. Co. of Am., 685 So. 2d 27,

29 (Fla. 3d DCA 1996). See generally Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc., 162 So. 3d 140, 143 (Fla. 2d DCA 2014) ("While the trial court did not expound on the reasoning behind its decision, it could not have found the appraisal clause to be unenforceable unless the clause violated either statutory law or public policy."). Because there is no dispute that this was a valid insurance policy and that Allstate did not waive appraisal, the only issue the trial court could have decided was whether this is an issue for appraisal.

The record unequivocally shows this was an issue for appraisal and Allstate properly invoked its appraisal clause. "Where the right to [appraisal] is properly asserted, proceeding with the dispute in the courts instead of submitting the matter to [appraisal] constitutes a departure from the essential of law." Grillo v. Raymond James & Assocs., Inc., 524 So. 2d 1121, 1122 (Fla. 2d DCA 1988). Accord Lapidus, 394 So. 2d at 1103.

A.     **The trial court's refusal to enforce the appraisal clause constitutes a departure from the essential requirements of the law.**

To skirt their obligations under the insurance policy, the Respondent filed a declaratory judgment action purportedly seeking an interpretation of the insurance policy. Respondent asserted that the appraisal provision does not apply to the repair and replacements of windshields. They claim that this is a coverage or policy

interpretation issue for the trial court to decide. The trial court accepted their arguments wholesale. (App. 311-317).

Nevertheless, there is no coverage issue or need to interpret the policy. It is undeniable that Allstate **never** denied coverage for this claim. Allstate readily, and repeatedly, admitted that the policy provided coverage and even paid a reasonable amount for the windshield claim. The <u>only genuine</u> dispute between the parties is the amount of that loss. In other words, what is the reasonable cost of that windshield.

"When the disagreement concerns the **amount of loss**, not coverage, it is for the appraisers to arrive at the amount to be paid." <u>Fla. Ins. Guar. Ass'n v. Branco</u>, 148 So. 3d 488, 491 (Fla. 5th DCA 2014). <u>See also</u> <u>Johnson v. Nationwide Mut. Ins. Co.</u>, 828 So. 2d 1021, 1025 (Fla. 2002) ("[W]hen the insurer admits that there is a covered loss, but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid."); <u>Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n</u>, 117 So. 3d 1226, 1229 (Fla. 3d DCA 2013) ("[A]n agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and 'amount of loss.'"); <u>First Protective Ins. Co. v. Hess</u>, 81 So. 3d 482, 485 (Fla. 1st DCA 2011) ("While issues concerning coverage challenges are exclusively for the courts, where an insurer admits there is a covered loss and there is a disagreement regarding the amount of the loss, the appraisers are charged with determining the

loss."); <u>Fla. Ins. Guar. Ass'n v. Olympus Ass'n</u>, 34 So. 3d 791, 794 (Fla. 4th DCA 2010).

Determining the method or extent of the necessary repairs falls wholly within the appraisal clause. <u>Fla. Ins. Guar. Ass'n v. Branco</u>, 148 So. 3d 488, 491 (Fla. 5th DCA 2014). In <u>Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.</u>, 162 So. 3d 140, (Fla. 2d DCA 2014), the Second District explained that:

> [T]he question of what repairs are needed to restore a piece of covered property is a question relating to the amount of 'loss' and not coverage. Ipso facto, the scope of damage to a property would necessarily dictate the amount and type of repairs needed to return the property to its original state, and an estimate on the value to be paid for those repairs would depend on the repair methods to be utilized. The method of repair required to return the covered property to its original state is thus an integral part of the appraisal, separate and apart from any *coverage* question. Because there is no dispute between the parties that the cause of the damage to Cannon Ranch's property is covered under the insurance policy, the remaining dispute concerning the scope of the necessary repairs is not exclusively a judicial decision. Instead, this dispute falls squarely within the scope of the appraisal process-a function of the insurance policy and not of the judicial system.

<u>Id.</u> at 143.

This is exactly what is occurring here. There is no dispute between the parties that the cause of the damage to the automobile is covered under Allstate's policy. The parties simply disagree as to the **amount of loss**. There is no issue as to whether the windshield is covered under the policy. Again, Allstate has readily admitted that

this is a covered loss. Thus, the appraisal clause applies and was adequately invoked by Allstate.

Once it was invoked, appraisal was mandatory. <u>United Cmty. Ins. Co. v. Lewis</u>, 642 So. 2d 59, 59-60 (Fla. 3d DCA 1994). "Once the insurer demanded appraisal, the insured was required to comply with the appraisal clause. Proceeding to court was not justified." <u>Travelers of Fla. v. Stormont</u>, 43 So. 3d 941, 945 (Fla. 3d DCA 2010). "[F]urther proceedings should be conducted in accord with those provisions. . . ." <u>Allstate Ins. Co. v. Suarez</u>, 833 So. 2d 762, 765 (Fla. 2002)

Moreover, the Respondent's filing of a declaratory judgment action does not take this case out of the appraisal arena. Again, there is <u>no genuine</u> dispute as to the plain meaning of the policy language. The Respondent simply filed the action to avoid complying with the appraisal clause and to recover attorney's fees.

Indeed, the Respondent's argument as to "cost to repair or replace," and the trial court's wholesale acceptance thereof, is lacking.[3] The Allstate appraisal clause provides that the appraisers are to determine the amount of loss *in its entirety* - not to determine the amount of loss based on the separate limit of liability provision (i.e. "cost to replace or repair"). The appraisal provision provides:

---

[3] Notably, the Florida Supreme Court have found that the terms repair and replace "are utterly unambiguous." <u>Siegle v. Progressive Consumers Ins. Co.</u>, 819 So. 2d 732, 735 (Fla. 2002).

**Right to Appraisal**
Both **you** and **we** have a right to demand an appraisal of the loss. Each will appoint and pay a competent and disinterested appraiser and will equally share other appraisal expenses. Each appraiser will state separately the actual case value and the amount of loss. If they disagree, they will submit their differences to the umpire. The umpire will be selected by the appraisers or a judge of a court of record. A written decision by any two of these three persons will determine the amount of the loss. The amount of loss determined under this provision will be binding on **you** and **us.**

(App. 240).

As demonstrated, there is no limitation in the appraisal clause. It does not even reference the Limit of Liability provision. It is an unrelated provision in the policy. The appraisal clause does not even contain the terms "cost to repair or replace." See LaCourse ex rel. LaCourse v. Firemen's Ins. Co., 756 F.2d 10, 14 (3d Cir. 1985).

The Third District has rejected a similar argument and explained:

We are influenced, too, by the fact that the language of the appraisal clause itself does not, as do others, limit itself to determining the amount of the loss *under this policy*. This was the decisive factor in LaCourse v. Fireman's Ins. Co., 756 F.2d 10, 12 (3d Cir. 1985), in which an automobile policy provided for arbitration when the parties "do not agree as to the amount of the damages," just as the present policy refers to a failure "to agree on the amount of the loss." In holding that this language did not restrict the damages recoverable when the policy was "stacked" with others, the court said:

[the] amount [of damages] is not measured by or restricted in any way by the policy limits. It is a factual matter completely independent of the actual amount of insurance provided by the policy. For example, a jury

verdict on the amount of damages is generally determined without any knowledge of or reference to whether the defendant is insured.

[Here,] the arbitration clause does not restrict the words, "amount of damages" to policy limits, or by any other fixed amount. The disputed term is not modified by any language such as "payable" or "for which it is liable under the policy."

Indeed, it has been specifically held that binding appraisal provisions are enforceable even if the amount involved may exceed the value of the policy.

\* \* \*

The requirement of the submission to arbitration does not, moreover, result in any injustice to the insureds, whose recovery would be essentially dependent upon the results of an arbitration process in any case. This is true because any claim for negligence or fraud depends on a showing that that conduct had proximately resulted in damage to the insured, that is, that the amount of the loss *as determined by the appraisal process* was more than the limits of the HO-3 policy. Putting the same thing in another legal way, any reformation of the policy, as sought by the plaintiffs, would affect only the limits of the recoverable loss. The putatively reformed policy would still contain the appraisal clause. Thus, all of Middletons' roads lead directly to appraisal.

State Farm Fire & Cas. Co. v. Middleton, 648 So. 2d 1200, 1202-03 (Fla. 3d DCA 1995) (internal citations omitted).

This reasoning equally applies here. There is no limiting language contained within Allstate's appraisal clause. The unrelated Limit of Liability clause does not

restrict the appraisal clause in any way. It does not even refer to it. Under the clear terms of the policy, the appraiser's job is simply to assess the amount of loss. In other words, even if appraisal resulted in an amount that exceeds the policy limit, Allstate would be bound by that determination.

Common sense and a basic understanding of the English language must control here. This Court should reject the Respondent's strained and illogical argument that is made simply to circumvent the appraisal clause. The trial court departed from the essential requirements of the law by finding that appraisal is not contemplated by the policy.

While the trial court stated it cannot rewrite contracts, that is exactly what it did. It ignored the plain wording of the policy and inserted meaning that is simply not there. It relied on an unrelated provision in the policy and ignored basic contract principles.

Indeed, if this Court accepts Respondent's argument and the trial court's ruling, it would mean that an insurance company would be prohibited from enforcing its policy any time a windshield vendor files a declaratory judgment action or asserts that a wholly unrelated term in its policy is ambiguous. It amounts to a unilateral escape valve or a get-out-jail-free card. The effect would force an insurance company to always accept a repair shop's outrageous and inflated invoice or risk being held

liable for attorney's fees for the unwarranted litigation. This is against public policy, the terms of the insurance policy, and the quick and efficient intent of appraisal.

In any event, Respondent's declaratory judgment action cannot be used to absolve it of the policy's condition precedent of appraisal. "Thus, all of [Auto Glass'] roads lead directly to appraisal." <u>Middleton</u>, 648 So. 2d at 1203.

Requiring parties to litigate a case instead of proceeding to appraisal is a departure from the essential requirements of the law. <u>U.S. Fire Ins. Co.</u>, 443 So. 2d at 172-73 (Fla. 1st DCA 1983). <u>Accord</u> <u>Broward Ins. Recovery Center a/a/o Maria Puntiel</u>, Case No. CACE 17-000838 (AW); <u>Broward Ins. Recovery Center a/a/o Nicole Boursiquot</u>, Case No. CACE 17-000882 (AW); <u>Broward Ins. Recovery Center a/a/o Roberto Vilau</u>, Case No. CACE 17-000884 (AW); <u>Cornerstone Network LLC. a/a/o Lori Carter Moffatt</u>, Case No. CACE 17-000883 (AW); <u>Broward Insurance Recovery, a/a/o Esteban Gomez</u>, Case No. CACE 16-022581 (AW); <u>Cornerstone Network, Inc. a/a/o Isabella Cardona</u>, Case No. CACE 16-021727; <u>Cornerstone Network, Inc. a/a/o Dakota Sowell</u>, Case No. CACE 16-021830; <u>Collision Concepts of Delray</u>, 23 Fla. L. Weekly Supp. 400a. Accordingly, certiorari should be issued.

**B.     Respondent violated the no action clause in the Allstate policy by refusing to submit to appraisal – a condition precedent.**

Once Allstate invoked appraisal under the policy, it was a mandatory condition precedent to filing suit.  United Cmty. Ins. Co. v. Lewis, 642 So. 2d 59, 60 (Fla. 3d DCA 1994) ("A full reading of the clause makes clear that neither party has the right to deny that demand once it is made.").  Refusal to submit to appraisal violates the no action clause of the Allstate policy.  See generally New Amsterdam Casualty Co. v. J. H. Blackshear, Inc., 116 Fla. 289, 291 (Fla. 1934).

"A no action clause in an insurance contract operates as a condition precedent that bars suit against the insurer until the insured complies with the relevant policy provisions."  Wright v. Life Ins. Co., 762 So. 2d 992, 993 (Fla. 5th DCA 2000).  Such provisions "preclude the insured from recovering upon the policy, where it provides that no suit can be maintained until after a compliance with such condition."  Southern Home Ins. Co. v. Putnal, 49 So. 922, 932 (Fla. 1909).

By failing to comply with the mandatory condition precedent of appraisal, Auto Glass materially breached the policy's no action clause by filing suit against Allstate.  Cf. Swaebe v. Fed. Ins. Co., 374 F. App'x 855, 857-58 (11th Cir. 2010) ("The undisputed record shows that Swaebe filed this lawsuit prior to complying with the provisions of her policy and before any proof of loss had been filed. Swaebe thus

breached the policy's 'no action' provision — and because it is a condition precedent to recovery, under Florida law, Swaebe committed a material breach barring recovery."). See also Edwards v. State Farm Fla. Ins. Co., 64 So. 3d 730, 732 (Fla. 3d DCA 2011) ("Failure to comply with a condition precedent to payment relieves the insurer of its duty to make payment."); Haiman v. Fed. Ins. Co., 798 So. 2d 811, 812 (Fla. 4th DCA 2001) ("A total failure to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law.").

The filing of the instant suit was improper and unjustifiable. See Travelers of Fla. v. Stormont, 43 So. 3d 941, 945 (Fla. 3d DCA 2010) ("Once the insurer demanded appraisal, the insured was required to comply with the appraisal clause. Proceeding to court was not justified."). The trial court departed from the essential requirements of the law by allowing it to go forward.

C.  **The trial court ignored clear case law from this Court mandating appraisal in these circumstances**.

The trial court departed from the essential requirements of the law by failing to apply the correct law. Fassy, 884 So. 2d at 364. Specifically, the trial court ignored clear and binding case law from this Court mandating appraisal. See Progressive Am. Ins. Co. v. Broward Ins. Recovery Center a/a/o Maria Puntiel, Case No. CACE

17-000838 (AW) (Fla. 17th Jud. Cir. July 31, 2017); <u>Progressive Select Ins. Co. v.</u> <u>Broward Ins. Recovery Center a/a/o Nicole Boursiquot</u>, Case No. CACE 17-000882 (AW) (Fla. 17th Jud. Cir. July 31, 2017); <u>Progressive Am. Ins. Co. v. Broward Ins.</u> <u>Recovery Center a/a/o Roberto Vilau</u>, Case No. CACE 17-000884 (AW) (Fla. 17th Jud. Cir. July 31, 2017); <u>Progressive Am. Ins. Co. v. Cornerstone Network LLC.</u> <u>a/a/o Lori Carter Moffatt</u>, Case No. CACE 17-000883 (AW) (Fla. 17th Jud. Cir. July 31, 2017); <u>Progressive Select Insurance Company v. Broward Insurance Recovery,</u> <u>a/a/o Esteban Gomez</u>, Case No. CACE 16-022581 (AW) (Fla. 17th Jud. Cir. July 31, 2017); <u>Progressive Am. Insurance Company v. Cornerstone Network, Inc. a/a/o</u> <u>Isabella Cardona</u>, Case No. CACE 16-021727 (Fla. 17th Jud. Cir. May 26, 2017); <u>Progressive Select Insurance Company v. Cornerstone Network, Inc. a/a/o Dakota</u> <u>Sowell</u>, Case No. CACE 16-021830 (Fla. 17th Jud. Cir. May 25, 2017).

These cases involve many of the same assertions that the Respondent is making here. For instance, in <u>Progressive Select Insurance Company v. Broward</u> <u>Insurance Recovery, a/a/o Esteban Gomez</u>, Case No. CACE 16-022581 (AW) (Fla. 17th Jud. Cir. July 31, 2017), Auto Glass asserted that there was a coverage issue because of Defendant's ambiguous policy language concerning cost of repair and/or replacement. (App. 249). This Court rejected that argument then, and should similarly do so here.

In any event, these cases were provided to the trial court via a notice of supplemental authority. (App. 242-278; 289-308). The trial court ignored these opinions from this Court, failed to apply the correct law and departed from the essential requirements of the law.

### D. The trial court improperly considered an affidavit filed by the Respondent and matters outside of the complaint in making its decision.

The Respondent filed an affidavit and argued matters set forth in the affidavit at the hearing. Allstate objected and moved to strike. The trial court overruled this request. In its order, the trial court references the matters set forth in the affidavit.

Florida law is clear that the trial court is confined to the four-corners of the complaint and any exhibits thereto. Posigian v. Am. Reliance Ins. Co., 549 So. 2d 751, 753 (Fla. 3d DCA 1989) ("In considering a motion to dismiss, 'the trial court and this court are confined exclusively to an examination of the complaint and any attached documents incorporated therein.'") (citing Hopke v. O'Byrne, 148 So. 2d 755 (Fla. 1st DCA 1963)). The trial court erred when it considered the affidavit at the hearing and referenced matters therein in its order.

## CONCLUSION

This Court should issue a writ of certiorari quashing the order denying Allstate's Motion to Dismiss, Demand for Appraisal and Motion for Protective Order and order the parties to appraisal. As demonstrated above, the order causes irreparable harm to Allstate which cannot be remedied on plenary appeal. It deprives Allstate of a contractual right and process to which it is entitled. Allstate will expend numerous fees and costs litigating a claim which should not be filed in the judicial system. The trial court departed from the essential requirements of the law by failing to apply the correct law and requiring the parties to litigate a claim that is subject to mandatory appraisal. This Court should correct this miscarriage of justice.

WHEREFORE, Petitioner ALLSTATE INSURANCE COMPANY respectfully requests this Court to issue a writ of certiorari quashing the trial court's order denying Allstate's Motion to Dismiss, Demand for Appraisal and Motion for Protective Order.

**BOYD & JENERETTE, P.A.**

*/s/ Kansas R. Gooden*
**KANSAS R. GOODEN**
Florida Bar No. 58707
kgooden@boydjen.com
201 N. Hogan St., Suite 400
Jacksonville, FL 32202
Tel:   (904) 353-6241
Fax:   (904) 493-5658
And
**KEVIN D. FRANZ**
Florida Bar No. 15243
kfranz@boydjen.com
1001 Yamato Road, Suite 102
Boca Raton, FL 33431
Tel:   (954) 622-0093
Fax:   (954) 622-0095
*Counsel for Petitioner Allstate*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was **uploaded and served via the eportal and U.S. Mail** to: **Andrew Davis-Henrichs, Esquire** Emilio Stillo, P.A., 7320 Griffin Road, Suite 203, Davie, FL 33314, efilingpleadings@gmail.com; eservices@emiliostillopa.com; **Lawrence M. Kopelman, P.A.,** One West Las Olas Blvd., Suite 500, Fort Lauderdale, FL 33301, LMKGlass@kopelblank.com; **Mac S. Phillips, Esquire,** Phillips Tadros, P.A., 212 SE 8th Street, Suite 103, Fort Lauderdale, FL 33316; **Alison Haney Bruck, Esquire,** Law Offices of Robert J. Smith, 150 West Flagler Street, Suite 1600, Miami, FL 33130, miamilegal@allstate.com; **Broward County Circuit Court Appellate Division**, (via email only) appeals@17th.flcourts.org; this 5th day of March, 2018.

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail to: **Honorable Kathleen McCarthy**, 201 SE 6th St, Fort Lauderdale, FL 33301; this 5th day of March, 2018.

*/s/ Kansas R. Gooden*
KANSAS R. GOODEN

## CERTIFICATE OF COMPLIANCE

In accordance with Florida Rules of Appellate Procedure 9.100(l) and 9.210(a)(2), the undersigned counsel hereby certifies that this Petition for Writ of Certiorari complies with the font requirements of the Rules: Times New Roman 14-point font.

*/s/ Kansas R. Gooden*
KANSAS R. GOODEN

IN THE SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA
APPELLATE DIVISION

CASE NO. CACE-18-005153
L.T. NO.: COCE-17-005712 Div. 51

ALLSTATE INSURANCE COMPANY,
        Petitioner,

vs.                                      FROM THE COUNTY COURT
                                      OF BROWARD COUNTY

AUTO GLASS AMERICA LLC
A/A/O TONYA WOMACK,
        Respondent.

_____

## **JOINT STIPULATION OF DISMISSAL WITH PREJUDICE**

Pursuant to Florida Rule of Appellate Procedure 9.350(a), Petitioner ALLSTATE INSURANCE COMPANY and Respondent AUTO GLASS AMERICA, LLC A/A/O TONYA WOMACK hereby jointly stipulate that the above-captioned action has been amicably resolved and is dismissed with prejudice with each party to bear its own costs and attorney's fees, except as otherwise agreed as part of the underlying settlement.

Dated this 26th day of June, 2018.

| PHILLIPS TADROS, P.A. | BOYD & JENERETTE, P.A. |
|---|---|
| /s/ Mac S. Phillips | /s/ Kansas R. Gooden |
| Mac S. Phillips | Kansas R. Gooden |
| Florida Bar No.: 195413 | Florida Bar No.: 58707 |
| 212 S.E. 8th Street Suite 103 | 201 N. Hogan Street, Suite 400 |
| Fort Lauderdale, FL 33316 | Jacksonville, FL 33606 |
| (954) 642-8885 | (904) 353-6241 |
| (954) 252-4621 – Fax | (904) 493-5658 – Fax |
| mphillips@phillipstadros.com | kgooden@boydjen.com |
| Attorney for Respondent | Attorney for Petitioner |

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was **uploaded and served via the eportal** to: **Andrew Davis-Henrichs, Esquire** Emilio Stillo, P.A., 7320 Griffin Road, Suite 203, Davie, FL 33314, efilingpleadings@gmail.com; eservices@emiliostillopa.com; **Lawrence M. Kopelman, P.A.,** One West Las Olas Blvd., Suite 500, Fort Lauderdale, FL 33301, LMKGlass@kopelblank.com; **Mac S. Phillips, Esquire,** Phillips Tadros, P.A., 212 SE 8th Street, Suite 103, Fort Lauderdale, FL 33316, service@phillipstadros.com, mphillips@phillipstadros.com; **Alison Haney Bruck, Esquire,** Law Offices of Robert J. Smith, 150 West Flagler Street, Suite 1850, Miami, FL 33130, miamilegal@allstate.com; this 26th day of June, 2018.

**BOYD & JENERETTE, P.A.**

*/s/ Kansas R. Gooden*
**KANSAS R. GOODEN**
Florida Bar No.  58707
kgooden@boydjen.com
201 North Hogan Street, Suite 400
Jacksonville, Florida 32202
Tel: (904) 353-6241
Fax: (904) 493-5658
And
**KEVIN D. FRANZ**
Florida Bar No. 15243
kfranz@boydjen.com
1001 Yamato Road, Suite 102
Boca Raton, FL 33431
Tel: (561) 208-0708
Fax: (954) 622-0095
**Attorneys for Petitioner Allstate**

IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA

AUTO GLASS AMERICA, LLC.
a/a/o TONYA WOMACK,

       Plaintiff,                    CASE NO.: COCE 17-005712 (51)

Vs.

ALLSTATE INSURANCE COMPANY,

       Defendant,
_____ /

## **VOLUNTARY DISMISSAL WITH PREJUDICE-CASE SETTLED**

COMES NOW, the Plaintiff, AUTO GLASS AMERICA, LLC. a/a/o TONYA WOMACK, and files this Voluntary Dismissal with Prejudice.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via electronic mail on the date filed in the E-filing Portal to Counsel of Record as listed on the E-Filing Portal.

**EMILIO STILLO, P.A.**
7320 Griffin Road, Suite 203
Davie, FL 33314
Telephone: (954) 584-2563
Facsimile: (954) 584-3932
Primary: eservices@emiliostillo.com

*/s/ Andrew Davis-Henrichs*
_____
ANDREW DAVIS-HENRICHS, ESQ.
Florida Bar No.: 112442



EXHIBIT 6

IN THE COUNTY COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: 17-005472 COCE 51

AUTO GLASS AMERICA, LLC (a/a/o BARBRA MURRAY)

vs.

ALLSTATE INSURANCE COMPANY

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, DEMAND INTO APPRAISAL, MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY, AND MOTION TO DISMISS ANY CLAIM FOR ATTORNEYS' FEES

THIS CAUSE came before the Court on January 25, 2018 for hearing on Defendant's Motion to Dismiss Plaintiff's Complaint, Demand into Appraisal, Motion for Protective Order Regarding Discovery, and Motion to Dismiss any Claim for Attorneys' Fees (the "Motion"), and the Court, having reviewed the Motion and entire court file; having reviewed the relevant legal authorities; having heard argument of counsel; and having been sufficiently advised in the premises,

**ORDERS AND ADJUDGES** that the Motion is **DENIED** in all respects for the reasons set forth below.

### Background

In this case regarding the replacement of Allstate's insured's windshield performed by Auto Glass America, LLC, the Amended Complaint asserts four counts for declaratory relief:

1.     Count 1 seeks a judicial declaration interpreting the term "cost to repair or replace" contained in the Limit of Liability provision under the comprehensive portion the Allstate policy;

2.     Count 2 seeks a judicial declaration that the appraisal provision in the property damage portion of the Allstate policy is not applicable to the instant claim;

3.      Count 3 seeks a judicial declaration that appraisal in the context of the subject claim violates the prohibitive cost doctrine; and

4.      Count 4 seeks a judicial declaration that Allstate failed to select a disinterested appraiser (this count was pled in the alternative).

In response, Allstate filed the Motion in an effort to dismiss the case and compel appraisal with its chosen appraiser, Auto Glass Inspection Services ("AGIS").    In its response Allstate also challenged whether the Plaintiff has standing.  The Defendant contends that the assignment of benefits violates Florida Statute § 626.854 in that the assignment violated the "public adjusting statute".

The Allstate insurance policy provides for appraisal when there is only a dispute as to the specific dollar amount of the loss, and states:

> [W]e will pay for direct and accidental loss to the insured auto or a non-owned auto    not caused by collision.
>
> Glass breakage, whether or not caused by collision, and collision with a bird or animal.
>
> *      *      *
>
> Our limit of liability is the least of:

1. The **actual cash value** of the **__property__** at the time
     of the loss, which may include a deduction for depreciation;

2. The **__cost to repair or replace__** as determined by us, the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations.

> *    *      *
>
> Right to Appraisal
>
> Both you and we have a right to demand an appraisal of the loss.  Each will appoint        and pay a competent and disinterested appraiser and will equally share other appraisal expenses.  The appraisers, or a judge of a court of record, will select an umpire to decide any differences.  Each appraiser will state separately the actual cash value and the amount of loss. An award in writing by any two appraisers will determine the loss amount payable.

The Plaintiff opposes the Motion on several grounds, including: (1) appraisal is an inappropriate process to resolve such equitable claims as declaratory relief regarding the interpretation of the insurance policy; (2) Allstate's appraisal provision does not apply to repair and replacement of windshields; (3) Allstate's chosen appraiser, AGIS, is not "disinterested" as required by the policy in the event appraisal was appropriate; and (4) the cost of the appraisal likely exceeds the amount of damages and that expense is not a taxable cost at the conclusion of the process, such that Plaintiff could recoup the cost of the appraisal even if it were the prevailing party.

Plaintiff contends that the primary issue in this case is one of insurance policy interpretation, for which appraisal is not an appropriate method of dispute resolution because appraisal is only proper when the sole issue is the amount of the loss or the actual cash value of the entire vehicle (as opposed to a part thereof, like the windshield). When the insurer determines that the part can be repaired or replaced, the actual cash value of the property (i.e., the entire vehicle) is no longer at issue and the only determination required is the cost to repair or replace the part which is not the subject of appraisal. The only valuation to be made is the cost to repair or replace the part or property. Therefore, the court must determine whether the term "cost to repair or replace" is either ambiguous or can reasonably be interpreted in more than one manner as alleged by the plaintiff in the complaint. The Court believes that not only does this policy term require judicial interpretation, but that the "cost to repair or replace" windshield glass is not an issue for which appraisal exists as evidenced by the terms of the appraisal provision itself.

Additionally, Plaintiff seeks a declaration that Defendant's appointed appraiser, AGIS, is not "disinterested" as is required by the policy of insurance. See *Heritage Prop. and Cas. Ins. Co. v. Romanach*, 224 So.3d 262 (Fla. 3d DCA 2017); *Florida Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488 ( Fla.5th DCA 2014). The Plaintiff presented the Court with correspondence dated June 21, 2013 from attorneys retained by AGIS which threatened various repair shops with litigation.[1] The correspondence states the Alvarez & Gilbert, PLLC law firm represents AGIS in its capacity as appraiser for Allstate's various entities. Further, the letter contains threats of litigation against these shops by AGIS relating to disputes at issue in the appraisal process. The firm, on behalf of AGIS further warns repair shops to "govern [themselves] accordingly."

The Plaintiff also presented the Court with a print-out of the AGIS website on which AGIS states its mission is "to verify glass damage for the insurance industry." The website also represents that "AGIS sole purpose is to report back to the insurance industry what type of damage exists or lack thereof." It further indicates that "AGIS has no affiliation with any companies in the glass industry and only serves large insurance companies."

The Plaintiff also presented correspondence sent between Plaintiff and Allstate in numerous claims requesting AGIS be removed as appraiser because AGIS is not disinterested

---

[1] Plaintiff contends it is of vital import that AGIS has retained their own attorneys in the past to threaten repair facilities – including Auto Glass America, LLC – with litigation about the appraisal process.

and that Allstate appoint a disinterested appraiser. In response, Allstate issued numerous letters retaining the position that AGIS is disinterested. Allstate continues to retain this position as stated in Defendant's motion. Plaintiff argues that despite making a good faith effort to remove AGIS and to obtain a disinterested appraiser Allstate's position remains, thus; creating a basis to believe that sending additional letters requesting the removal of AGIS would be futile. See *Waksman Enterprises, Inc. v. Oregon Properties, Inc.*, 862 So.2d 35 (Fla. 2d DCA 2007).

Plaintiff also seeks a declaration that the appraisal provision is unenforceable and illusory because the expense to enter appraisal is prohibitive upon both the insured and Plaintiff. The appraisal provision at issue requires that each party bears the costs of its own appraiser and split the costs for the umpire if the appraisers do not agree on the amount of the loss. Plaintiff relies on various county court decisions that have considered whether appraisal provisions may be illusory in the context of the small monetary amounts of windshield damage cases. See *Broward Ins. Recovery Cntr., LLC (a/a/o Charlie Gari) v. Allstate Fire and Cas. Ins. Co.,* 25 Fla. L. Weekly Supp. 293a (Fla. Broward County Ct. May 8, 2017)(Fishman, J.); *Broward Ins. Recovery Cntr., LLC (a/a/o Shane Bushman) v. Progressive Select Ins. Co.,* 24 Fla. L. Weekly Supp. 761a (Broward County Ct. Nov. 3, 2016)(Lee, J.); *Clear Vision Windshield Repair LLC (a/a/o Frances Soto) v. Progressive Amer. Ins. Co.*, 23 Fla. L. Weekly Supp. 862a (Fla. Broward County Ct. December 14, 2015)(Skolnik, J.).

### Conclusions of Law

To be entitled to declaratory relief, a party must demonstrate that "there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertain or ascertainable state of facts or present controversy as to a state of facts; that some impurity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest [sic] are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity." *Bartsch v. Costell,* 170 So.3d 83, 88 (Fla. 4th DCA 2015)(quoting *Olive v. Mass,* 811 So.2d 644, 657-58 (Fla. 2002). Declaratory relief in the insurance context is rendered by the trial court after determining the state of facts giving rise to the application of the policy provisions. *See Northwest Center for Integrative Medicine & Rehabilitation, Inc. v. State Farm Mutual Automobile Ins. Co.,* 214 So.3d 679 (Fla. 4th DCA 2017). Plaintiff has sufficiently stated causes of action for declaratory relief in each of the counts asserted in the Amended Complaint.

There are three elements for the courts to consider in ruling on a motion to compel arbitration or appraisal of a given dispute: (1) whether a valid written agreement to appraisal exists; (2) whether an issue for appraisal exists; and, (3) whether the right to appraisal is waived. *Heller v. Blue Aerospace LLC*, 112 So. 3d 635(Fla. 4th DCA 2013). In this case, Plaintiff seeks the Court's interpretation and construction of insurance policy language, including the appraisal provision itself. As a threshold matter, it has yet to be determined whether there exists a valid

written agreement that calls for appraisal. In fact, the very declarations the Plaintiff seeks in this case involve the validity of the appraisal and limit-of-liability provisions in the policy[2].

If the Court interprets and construes the agreement to appraise as valid, the next step is to determine whether an issue for appraisal exists. While appraisal is a preferred non-judicial method of dispute resolution, it is only appropriate when the sole issue to be decided is a determination of the amount of damages sustained by the insured. *See Citizens Prop. Ins. Corp. v. Demetrescu,* 137 So.3d 500 (Fla. 4th DCA 2014); *Citizens Prop. Ins. Corp. v. Michigan Condominium Ass'n,* 46 So.3d 177 (Fla. 4th DCA 2010). In other words, an appraisable issue only exists when there is a dispute over money. In this case the Defendant does not even agree that the Plaintiff has standing. Appraisal is not appropriate when a case presents only issues of contract interpretation or coverage. *Antencio v. U.S. Sec. Ins. Co.*, 676 So.2d 489 (Fla. 3d DCA 1996)("Questions of policy interpretation and coverage are ordinarily for the court, rather than arbitrators or appraisers to decide."); *Broward Ins. Recovery Cntr., LLC (a/a/o Shane Bushman) v. Progressive Select Ins. Co.,* 24 Fla. L. Weekly Supp. 761a (Broward County Ct. Nov. 3, 2016)(Hon. Robert W. Lee)("In the instant case, the operative issue is how the value of the loss should be determined, and making this determination is not within the purview of the appraisal process."). This case presents issues of contract interpretation or coverage to be determined by the Court as a matter of law. Specifically, the Court must determine whether the term "cost to repair or replace" is ambiguous or capable of more than one reasonable interpretation. It is not an action for damages.

Further, appraisal for windshield glass repair or replacement is not contemplated by the appraisal provision in the policy. The provision requires the appraisers to determine the actual cash value and the amount of the loss. Neither of those determinations are necessary or even relevant when the issue is the meaning of the term "cost to repair" windshield glass. If appraisal was intended to determine the cost to repair or replace a windshield, the appraisal provision would say so. It does not. This Court is not at liberty to "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intention of the parties." *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So.3d 494, 497 (Fla. 2014), quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So.2d 1245, 1248 (Fla. 1986).

Defendant relies upon *Progressive Select Ins. Co. v. Cornerstone Network, Inc. (a/a/o Dakota Sowell),* Case No.: CACE 16-021830 (AW), FLWSUPP 2503SOWE, (Broward County, Circuit Court)(Appellate Capacity)(May 25, 2017) and *Progressive American Ins. Co. v. Broward Insurance Recovery Center, LLC (Isabella Cardona),* Case No.: CACE 16-021757 (AW) (Broward County, Circuit Court)(Appellate Capacity)(May 26, 2017 )(unpublished) for the proposition that appraisal is proper for windshield repairs, and should be employed instead of the judicial process. Those cases are distinguishable from the instant matter as they were

---

[2] Curiously, Allstate maintains Plaintiff lacks standing for two reasons. First, Allstate argues Plaintiff lacks standing because the insured did not comply with the appraisal provision; therefore, according to Allstate, the right to additional payment did not vest in the insured so the insured had no rights or benefits to assign. Second, Allstate argues that the assignment of benefits constitutes a violation of Fla. Stat. § 626.854, which provides a definition of "public adjuster." The Court makes no finding as to standing at this time.

lawsuits for breach of contract seeking only damages. They were not claims for declaratory relief like those raised by the Plaintiff in this case. Further, the *Progressive* damages cases involve different policies and provisions than the Allstate policy at issue here. In contrast to the Progressive cases the issues set forth in the Plaintiff's complaint require judicial interpretation and declaratory relief involving terms in both the limit of liability and appraisal provisions in the policy.

The simple fact is that without a judicial interpretation as to the meaning and/or possible ambiguity of the term "cost to repair or replace" the Plaintiff faces the potential of being forced into an appraisal process without knowing whether the Defendant has complied with the limit of liability provision in its policy. While alternative dispute resolutions are favored by the courts they cannot be used as vehicles by either party to avoid the terms, conditions and construction of the contract which is subject of the suit.

Although not binding, this Court is also persuaded by the other county court decisions in favor of Plaintiff's position. *See e.g., Auto Glass America, LLC (a/a/o Joe Johnson) v. Allstate Ins. Co., 25 Fla. L. Weekly Supp. 833a* (Fla. Broward County Ct. November 21, 2017) (Hilal, J.); *Auto Glass America LLC (a/a/o Marian Donovan) v. Allstate Ins. Co.*, Case No. 17-3260 COWE (82) (Fla. Broward County Ct. November 21, 2017) (Hilal, J.); *Broward Insurance Recovery Center, LLC (a/a/o Harry Drangsland) v. Allstate Ins. Co.,* 25 Fla. L. Weekly Supp. 294 (Fla. Broward County Ct. May 8, 2017)(Hilal, J.); *Broward Insurance Recovery Center, LLC (a/a/o Charlie Gari) v. Allstate Fire and Casualty Ins. Co.,* 25 Fla. L. Weekly Supp. 293a (Fla. Broward County CT. May 8, 2017) (Fishman, J.); *Broward Insurance Recovery Center, LLC (a/a/o Jason Kemps) v. Allstate Ins. Co.,* Case No.: 16-012906 COWE (81) (Fla. Broward County Ct. May 8, 2017) (Fishman, J.); *Auto Glass Wizards, Inc. (a/a/o Noel Ramos) v. Allstate Ins. Co.*, Case No.: 16-11775 COCE (54) (Fla. Broward County Ct. January 12, 2018) (Barner, J.); *Auto Glass Wizards, Inc. (a/a/o William Diaz) v. Allstate Ins. Co.*, Case No.: 16-11461 COCE (54) (Barner, J.); *Auto Glass America, LLC (a/a/o Erica Gantley) v. Allstate Fire and Casualty Ins. Co.*, Case No.: 17-1041 CONO (72) (Fla. Broward County Ct. December 8, 2017) (Hurley, J.); *Auto Glass America, LLC (a/a/o Angelina Davinport) v. Allstate Fire and Casualty Ins. Co.,* Case No.: 17-1981 CONO (72) (Fla. Broward County Ct. November 16, 2017) (Hurley, J.); *Auto Glass America, LLC (a/a/o Diane Bloom) v. Allstate Ins. Co.,* Case No.: 17-3385 CONO (73) (Fla. Broward County Ct. November 3, 2017) (Deluca, J.); *Auto Glass America, LLC (a/a/o Amy Trucano) v. Allstate Ins. Co.,* Case No.: 17-3394 CONO (73) (November 3, 2017) (Deluca, J.); *Broward Insurance Recovery Center, LLC (a/a/o Ken Baker) v. Allstate Ins. Co.,* Case No.: 16-22873 COCE (56) (Fla. Broward County Ct. April 25, 2017); *Clear Vision Windshield Repair, LLC (Harold Becker) v. Allstate Prop. and Casualty Ins. Co.,* 25 Fla. L. Weekly Supp. 291b (Fla. Broward County Ct. April 21, 2016) (Marks, J.); *Broward Insurance Recovery Center, LLC (Shane Bushman) v. Progressive Select Ins. Co.,* 24 Fla. L. Weekly Supp. 761a (Fla. Broward County Ct. November 2, 2016) (Lee, J.); *Clear Vision Windshield Repair, LLC (a/a/o Jennifer Beckles) v. Progressive Amer. Ins. Co.,* 23 Fla. L. Weekly Supp. 486a (Fla. Broward County Ct. September 2, 2015)(Skolnik, J.).

For these reasons, Defendant's Motion is hereby **DENIED**.

Since the Court finds appraisal to be inappropriate in this case, it does not need to reach the issues of Allstate's compliance (or lack thereof) with the appraisal provision by selecting AGIS, an appraiser whose disinterest is questioned by the Plaintiff, or whether appraisal should be precluded under the prohibitive cost doctrine. Those issues are moot.

**DONE** and **ORDERED** at Plantation, Broward County, Florida on this 6th day of February, 2018.

_____
HONORABLE KATHLEEN MCCARTHY
COUNTY COURT JUDGE

Copies furnished to:

Emilio R. Stillo, Esq., Andrew Davis-Henrichs, Esq., Lawrence Kopelman Esq., and Mac Phillips, Esq., for the Plaintiff

Christie Quintero, Esq., and Kansas R. Gooden, Esq., for the Defendant.

Copies Furnished to:
dperalta@boydjen.com
MiamiLegal@Allstate.com
efilingpleadings@gmail.com
mphillips@thephillipslawgroup.com
erspleadings@yahoo.com
kfranz@boydjen.com
div51@17th.flcourts.org
service@phillipstadros.com
Christie.Quintero@Allstate.com
mphillips@phillipstadros.com
eservices@emiliostillopa.com
kgooden@boydjen.com

25 Fla. L. Weekly Supp. 833a

Online Reference: FLWSUPP 2509JJOH

**Insurance -- Automobile -- Windshield repair -- Declaratory judgments -- Plaintiff has stated cause of action for declaratory relief in complaint seeking interpretation of term "cost to repair or replace" in policy and declarations that appraisal provision in policy is not applicable to claim for windshield repair, that appraisal in context of claim violates prohibitive cost doctrine, and that insurer failed to select disinterested appraiser -- Motion to dismiss and compel appraisal denied, as case presents issues of contract interpretation, coverage, and standing that are beyond determination of damages -- Windshield replacement and repair is not contemplated by appraisal provision of policy requiring appraiser to determine actual cash value and amount of loss, which are not relevant to cost to repair windshield**

AUTO GLASS AMERICA, LLC (a/a/o Joe Johnson), Plaintiff, vs. ALLSTATE INSURANCE COMPANY, Defendant. County Court, 17th Judicial Circuit in and for Broward County. Case No. 17-003282 COWE (82). November 21, 2017. Jennifer W. Hilal, Judge. Counsel: Emilio R. Stillo and Andrew Davis-Henrichs, Emilo-Stillo P.A.; Lawrence Kopelman, Lawrence M. Kopelman, P.A.; and Mac Phillips, The Phillips Law Group, for Plaintiff. Alison Haney Bruck, Law Offices of Robert J. Smith, and Kansas R. Gooden, Boyd & Jenerette, P.A., for Defendant.

## ORDER DENYING DEFENDANT'S AMENDED MOTION

## TO DISMISS PLAINTIFF'S AMENDED COMPLAINT,

## DEMAND FOR APPRAISAL, AND MOTION FOR

## PROTECTIVE ORDER REGARDING DISCOVERY

THIS CAUSE came before the Court on October 27, 2017 for hearing on Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Demand into Appraisal and Motion for Protective Order Regarding Discovery (the "Motion"), and the Court, having reviewed the Motion and entire court file; having reviewed the relevant legal authorities; having heard argument of counsel; and having been sufficiently advised in the premises,

**ORDERS AND ADJUDGES** that the Motion is **DENIED** in all respects for the reasons set forth below.

### Background

In this case regarding the replacement of Allstate's insured's windshield performed by Auto Glass America, LLC, the Amended Complaint asserts four counts for declaratory relief:

1. Count 1 seeks a judicial declaration interpreting the term "cost to repair or replace" contained in the Limit of Liability provision under the comprehensive portion the Allstate policy;

2. Count 2 seeks a judicial declaration that the appraisal provision in the property damage portion of the Allstate policy is not applicable to the instant claim;

3. Count 3 seeks a judicial declaration that appraisal in the context of the subject claim violates the prohibitive cost doctrine; and

4. Count 4 seeks a judicial declaration that Allstate failed to select a disinterested appraiser (this count was pled in the alternative).

In response, Allstate filed the Motion in an effort to dismiss the case and compel appraisal with its chosen appraiser, Auto Glass Inspection Services ("AGIS"). In its response Allstate also challenged whether the Plaintiff has standing. The Defendant contends that the assignment of benefits violates Florida Statute § 626.854 in that the assignment violated the "public adjusting statute".

The Allstate insurance policy provides for appraisal when there is only a dispute as to the specific dollar amount of the loss, and states:

> [W]e will pay for direct and accidental loss to the insured auto or a non-owned auto not caused by collision.

> Glass breakage, whether or not caused by collision, and collision with a bird or animal.

> * * *

> Our limit of liability is the least of:

> 1. The **actual cash value** of the ***property*** at the time of the loss, which may include a deduction for depreciation;

> 2. The ***cost to repair or replace*** as determined by us, the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations.

> * * *

> Right to Appraisal

> Both you and we have a right to demand an appraisal of the loss. Each will appoint and pay a competent and disinterested appraiser and will equally share other appraisal expenses. The appraisers, or a judge of a court of record, will select an umpire to decide any differences. Each appraiser will state separately the actual cash value and the amount of loss. An award in writing by any two appraisers will determine the loss amount payable.

The Plaintiff opposes the Motion on several grounds, including: (1) appraisal is an inappropriate process to resolve such equitable claims as declaratory relief regarding the interpretation of the insurance policy; (2) Allstate's appraisal provision does not apply to repair and replacement of windshields; (3) Allstate's chosen appraiser, AGIS, is not "disinterested" as required by the policy in the event appraisal was appropriate; and (4) the cost of the appraisal likely exceeds the amount of damages and that expense is not a taxable cost at the conclusion of the process, such that Plaintiff could recoup the cost of the appraisal even if it were the prevailing party.

Plaintiff contends that the primary issue in this case is one of insurance policy interpretation, for which appraisal is not an appropriate method of dispute resolution because appraisal is only proper when the sole issue is the amount of the loss or the actual cash value of the entire vehicle (as opposed to a part thereof, like the windshield). When the insurer determines that the part can be repaired or replaced, the actual cash value of the property (i.e., the entire vehicle) is no longer at issue and the only determination required is the cost to repair or replace the part which is not the subject of appraisal. The only valuation to be made is the cost to repair or replace the part or property. Therefore, the court must determine whether the term "cost to repair or replace" is either ambiguous or can reasonably be interpreted in more than one manner as alleged by the Plaintiff in the complaint. The Court believes that not only does this policy term require judicial interpretation, but that the "cost to repair or replace" windshield glass is not an issue for which appraisal exists as evidenced by the terms of the appraisal provision itself.

Additionally, Plaintiff seeks a declaration that Defendant's appointed appraiser, AGIS, is not "disinterested" as is required by the policy of insurance. See *Heritage Prop. and Cas. Ins. Co. v. Romanach*, 224 So.3d 262 (Fla. 3d DCA 2017) [42 Fla. L. Weekly D1563a]; *Florida Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488 (Fla. 5th DCA 2014) [39 Fla. L. Weekly D2020a]. The Plaintiff presented the Court with correspondence dated June 21, 2013 from attorneys retained by AGIS which threatened various repair shops with litigation.[1] The correspondence states the Alvarez & Gilbert, PLLC law firm represents AGIS in its capacity as appraiser for Allstate's various entities. Further, the letter contains threats of litigation against these shops by AGIS relating to disputes at issue in the appraisal process. The firm, on behalf of AGIS further warns repair shops to "govern [themselves] accordingly."

The Plaintiff also presented the Court with a print-out of the AGIS website on which AGIS states its mission is "to verify glass damage for the insurance industry." The website also represents that "AG1S sole purpose is to report back to the insurance industry what type of damage exists or lack thereof." It further indicates that "AGIS has no affiliation with any companies in the glass industry and only serves large insurance companies."

The Plaintiff also presented correspondence sent between Plaintiff and Allstate in numerous claims requesting AGIS be removed as appraiser because AGIS is not disinterested and that Allstate appoint a disinterested appraiser. In response, Allstate issued numerous letters retaining the position that AGIS is disinterested. Allstate continues to retain this position as stated in Defendant's motion. Plaintiff argues that despite making a good faith effort to remove AGIS and to obtain a disinterested appraiser Allstate's position remains, thus: creating a basis to believe that sending additional letters requesting the removal of AGIS would be futile. See *Waksman Enterprises, Inc. v. Oregon Properties, Inc.*, 862 So.2d 35 (Fla. 2d DCA 2007) [28 Fla. L. Weekly D2229d].

Plaintiff also seeks a declaration that the appraisal provision is unenforceable and illusory because the expense to enter appraisal is prohibitive upon both the insured and Plaintiff. The appraisal provision at issue requires that each party bears the costs of its own appraiser and split the costs for the umpire if the appraisers do not agree on the amount of the loss. Plaintiff relies on various county court decisions that have considered whether appraisal provisions may be illusory in the context of the small monetary amounts of windshield damage cases. See *Broward Ins. Recovery Cntr., LLC (a/a/o Charlie Gari) v. Allstate Fire and Cas. Ins. Co.*, 25 Fla. L. Weekly Supp. 293a (Fla. Broward County Ct. May 8, 2017) (Fishman, J.); *Broward Ins. Recovery Cntr., LLC (a/a/o Shane Bushman) v. Progressive Select Ins. Co.*, 24 Fla. L. Weekly Supp. 761a (Broward County Ct. Nov. 3, 2016)(Lee, J.); *Clear*

*Vision Windshield Repair LLC (a/a/o Frances Soto) v. Progressive Amer. Ins. Co.*, 23 Fla. L. Weekly Supp. 862a (Fla. Broward County Ct. December 14, 2015) (Skolnik, J.).

## Conclusions of Law

To be entitled to declaratory relief, a party must demonstrate that "there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertain or ascertainable state of facts or present controversy as to a state of facts; that some impurity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest [sic] are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity." *Bartsch v. Costello*, 170 So.3d 83, 88 (Fla. 4th DCA 2015) [40 Fla. L. Weekly D1414a] (quoting *Olive v. Maas*, 811 So.2d 644, 657-58 (Fla. 2002) [27 Fla. L. Weekly S139a]. Declaratory relief in the insurance context is rendered by the trial court after determining the state of facts giving rise to the application of the policy provisions. *See Northwest Center for Integrative Medicine & Rehabilitation, Inc. v. State Farm Mutual Automobile Ins. Co.*, 214 So.3d 679 (Fla. 4th DCA 2017) [42 Fla. L. Weekly D446b]. Plaintiff has sufficiently stated causes of action for declaratory relief in each of the counts asserted in the Amended Complaint.

There are three elements for the courts to consider in ruling on a motion to compel arbitration or appraisal of a given dispute: (1) whether a valid written agreement to appraisal exists; (2) whether an issue for appraisal exists; and, (3) whether the right to appraisal is waived. *Heller v. Blue Aerospace LLC*, 112 So. 3d 635(Fla. 4th DCA 2013) [38 Fla. L. Weekly D930a]. In this case, Plaintiff seeks the Court's interpretation and construction of insurance policy language, including the appraisal provision itself. As a threshold matter, it has yet to be determined whether there exists a valid written agreement that calls for appraisal. In fact, the very declarations the Plaintiff seeks in this case involve the validity of the appraisal and limit-of-liability provisions in the policy[2].

If the Court interprets and construes the agreement to appraise as valid, the next step is to determine whether an issue for appraisal exists. While appraisal is a preferred non-judicial method of dispute resolution, it is only appropriate when the sole issue to be decided is a determination of the amount of damages sustained by the insured. *See Citizens Prop. Ins. Corp. v. Demetrescu*, 137 So.3d 500 (Fla. 4th DCA 2014) [39 Fla. L. Weekly D629a]; *Citizens Prop. Ins. Corp. v. Michigan Condominium Ass'n*, 46 So.3d 177 (Fla. 4th DCA 2010) [35 Fla. L. Weekly D2369a]. In other words, an appraisable issue only exists when there is a dispute over money. In this case the Defendant does not even agree that the Plaintiff has standing. Appraisal is not appropriate when a case presents only issues of contract interpretation or coverage. *Antencio v. U.S. Sec. Ins. Co.*, 676 So.2d 489 (Fla. 3d DCA 1996) [21 Fla. L. Weekly D1472a] ("Questions of policy interpretation and coverage are ordinarily for the court, rather than arbitrators or appraisers to decide."); *Broward Ins. Recovery Cntr., LLC (a/a/o Shane Bushman) v. Progressive Select Ins. Co.*, 24 Fla. L. Weekly Supp. 761a (Broward County Ct. Nov. 3, 2016) (Hon. Robert W. Lee) ("In the instant case, the operative issue is how the value of the loss should be determined, and making this determination is not within the purview of the appraisal process."). This case presents issues of contract interpretation or coverage to be determined by the Court as a matter of law. Specifically, the Court must determine whether the term "cost to repair or replace" is ambiguous or capable of more than one reasonable interpretation. It is not an action for damages.

Further, appraisal for windshield glass repair or replacement is not contemplated by the appraisal provision in the policy. The provision requires the appraisers to determine the actual cash value and the amount of the loss. Neither of those determinations are necessary or even relevant when the issue is the meaning of the term "cost to repair" windshield glass. If appraisal was intended to determine the cost to repair or replace a windshield, the appraisal provision would say so. It does not. This Court is not at liberty to "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intention of the parties." *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.,* 133 So.3d 494, 497 (Fla. 2014) [39 Fla. L. Weekly S75a], quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So.2d 1245, 1248 (Fla. 1986).

Defendant relies upon *Progressive Select Ins. Co. v. Cornerstone Network, Inc. (a/a/o Dakota Sowell),* Case No.: CACE 16-021830 (AW), FLWSUPP 2503SOWE, (Broward County, Circuit Court) (Appellate Capacity) (May 25, 2017) [25 Fla. L. Weekly Supp. 229b] and *Progressive American Ins. Co. v. Broward Insurance Recovery Center, LLC (Isabella Cardona),* Case No.: CACE 16-021757 (AW) (Broward County, Circuit Court) (Appellate Capacity) (May 26, 2017) (unpublished) for the proposition that appraisal is proper for windshield repairs, and should be employed instead of the judicial process. Those cases are distinguishable from the instant matter as they were lawsuits for breach of contract seeking only damages. They were not claims for declaratory relief like those raised by the Plaintiff in this case. Further, the *Progressive* damages cases involve different policies and provisions than the Allstate policy at issue here. In contrast to the Progressive cases the issues set forth in the Plaintiff's complaint require judicial interpretation and declaratory relief involving terms in both the limit of liability and appraisal provisions in the policy.

The simple fact is that without a judicial interpretation as to the meaning and/or possible ambiguity of the term "cost to repair or replace" the Plaintiff faces the potential of being forced into an appraisal process without knowing whether the Defendant has complied with the limit of liability provision in its policy. While alternative dispute resolutions are favored by the courts they cannot be used as vehicles by either party to avoid the terms, conditions and construction of the contract which is subject of the suit.

For these reasons, Defendant's Motion is hereby **DENIED**.

Since the Court is denying the Defendant's Motion to Dismiss, it does not need to reach the issues of Allstate's compliance (or lack thereof) with the appraisal provision by selecting AGIS, an appraiser whose disinterest is questioned by the Plaintiff, or whether appraisal should be precluded under the prohibitive cost doctrine. Those issues are moot.

---

[1]Plaintiff contends it is of vital import that AGIS has retained their own attorneys in the past to threaten repair facilities -- including Auto Glass America, LLC -- with litigation about the appraisal process.

[2]Curiously, Allstate maintains Plaintiff lacks standing for two reasons. First, Allstate argues Plaintiff lacks standing because the insured did not comply with the appraisal provision; therefore, according to Allstate, the right to additional payment did not vest in the insured so the insured had no rights or benefits to assign. Second, Allstate argues that the assignment of benefits constitutes a violation of Fla. Stat. § 626.854, which provides a definition of "public adjuster." The Court makes no finding as to standing at this time.

* * *

IN THE COUNTY COURT OF
BROWARD COUNTY, FLORIDA

AUTO GLASS AMERICA LLC AS ASSIGNEE
OF DIANE BLOOM,

     Plaintiff,

vs.

ALLSTATE INSURANCE COMPANY,

     Defendant.

CASE NO.
CONO-17-003385 Division 73

_____/

### ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, DEMAND INTO APPRAISAL AND MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY

THIS CAUSE came to be heard on October 18, 2017 on Defendant Allstate Insurance Company's Motion to Dismiss Plaintiff's Complaint, Demand into Appraisal, and Motion for Protective Order Regarding Discovery. The Court, after having reviewed the pleadings, heard the arguments of counsel, and being otherwise fully advised on the premises, it is hereby:

**ORDERED AND ADJUDGED:**

1.    That Defendant's Motion to Dismiss Plaintiff's Complaint, Demand into Appraisal, and Motion for Protective Order Regarding Discovery is DENIED. Defendant shall have 30 days from the date of this order to respond to discovery.

**DONE** and **ORDERED** in Chambers in Deerfield Beach, Broward County, Florida, this 3 day of November, 2017.

_____
HONORABLE STEVEN DELUCA

Copies to:    Andrew Davis- Henrichs, Esq., 7320 Griffin Road, Suite 203, Davie, FL 33314
Lawrence M. Kopelam, P.A., One West Las Olas Blvd., Suite 500, Fort Lauderdale, FL 33301
Mac Phillips, Esq., 212 S.E. 8th Street, Suite 103, Fort Lauderdale, FL 33316
Kansas R. Gooden, Esq., 201 N. Hogan St., Ste 400, Jacksonville, FL 32202
Kevin D. Franz, Esq., 4443 Lyons Road, Suite 209, Coconut Creek, FL 33073
Alison Haney Bruck, Esq., 110 SE 6th Street, Suite 1800, Fort Lauderdale, FL 33301

IN THE COUNTY COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: 17-005712 COCE 51


AUTO GLASS AMERICA, LLC (a/a/o TONYA WOMACK)

vs.


ALLSTATE INSURANCE COMPANY

_____/

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, DEMAND INTO APPRAISAL, MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY, AND MOTION TO DISMISS ANY CLAIM FOR ATTORNEYS' FEES

THIS CAUSE came before the Court on January 25, 2018 for hearing on Defendant's Motion to Dismiss Plaintiff's Complaint, Demand into Appraisal, Motion for Protective Order Regarding Discovery, and Motion to Dismiss any Claim for Attorneys' Fees (the "Motion"), and the Court, having reviewed the Motion and entire court file; having reviewed the relevant legal authorities; having heard argument of counsel; and having been sufficiently advised in the premises,

**ORDERS AND ADJUDGES** that the Motion is **DENIED** in all respects for the reasons set forth below.

### Background

In this case regarding the replacement of Allstate's insured's windshield performed by Auto Glass America, LLC, the Amended Complaint asserts four counts for declaratory relief:

1.      Count 1 seeks a judicial declaration interpreting the term "cost to repair or replace" contained in the Limit of Liability provision under the comprehensive portion the Allstate policy;

2.      Count 2 seeks a judicial declaration that the appraisal provision in the property damage portion of the Allstate policy is not applicable to the instant claim;

3. Count 3 seeks a judicial declaration that appraisal in the context of the subject claim violates the prohibitive cost doctrine; and

4. Count 4 seeks a judicial declaration that Allstate failed to select a disinterested appraiser (this count was pled in the alternative).

In response, Allstate filed the Motion in an effort to dismiss the case and compel appraisal with its chosen appraiser, Auto Glass Inspection Services ("AGIS"). In its response Allstate also challenged whether the Plaintiff has standing. The Defendant contends that the assignment of benefits violates Florida Statute § 626.854 in that the assignment violated the "public adjusting statute".

The Allstate insurance policy provides for appraisal when there is only a dispute as to the specific dollar amount of the loss, and states:

> [W]e will pay for direct and accidental loss to the insured auto or a non-owned auto   not caused by collision.
>
> Glass breakage, whether or not caused by collision, and collision with a bird or animal.

*     *     *

> Our limit of liability is the least of:

1. The **actual cash value** of the **<u>property</u>** at the time
     of the loss, which may include a deduction for depreciation;

2. The **<u>cost to repair or replace</u>** as determined by us, the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations.

*   *     *

> Right to Appraisal

> Both you and we have a right to demand an appraisal of the loss. Each will appoint      and pay a competent and disinterested appraiser and will equally share other appraisal expenses. The appraisers, or a judge of a court of record, will select an umpire to decide any differences. Each appraiser will state separately the actual cash value and the amount of loss. An award in writing by any two appraisers will determine the loss amount payable.

The Plaintiff opposes the Motion on several grounds, including: (1) appraisal is an inappropriate process to resolve such equitable claims as declaratory relief regarding the interpretation of the insurance policy; (2) Allstate's appraisal provision does not apply to repair and replacement of windshields; (3) Allstate's chosen appraiser, AGIS, is not "disinterested" as required by the policy in the event appraisal was appropriate; and (4) the cost of the appraisal likely exceeds the amount of damages and that expense is not a taxable cost at the conclusion of the process, such that Plaintiff could recoup the cost of the appraisal even if it were the prevailing party.

Plaintiff contends that the primary issue in this case is one of insurance policy interpretation, for which appraisal is not an appropriate method of dispute resolution because appraisal is only proper when the sole issue is the amount of the loss or the actual cash value of the entire vehicle (as opposed to a part thereof, like the windshield). When the insurer determines that the part can be repaired or replaced, the actual cash value of the property (i.e., the entire vehicle) is no longer at issue and the only determination required is the cost to repair or replace the part which is not the subject of appraisal. The only valuation to be made is the cost to repair or replace the part or property. Therefore, the court must determine whether the term "cost to repair or replace" is either ambiguous or can reasonably be interpreted in more than one manner as alleged by the plaintiff in the complaint. The Court believes that not only does this policy term require judicial interpretation, but that the "cost to repair or replace" windshield glass is not an issue for which appraisal exists as evidenced by the terms of the appraisal provision itself.

Additionally, Plaintiff seeks a declaration that Defendant's appointed appraiser, AGIS, is not "disinterested" as is required by the policy of insurance. See *Heritage Prop. and Cas. Ins. Co. v. Romanach*, 224 So.3d 262 (Fla. 3d DCA 2017); *Florida Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488 ( Fla.5th DCA 2014). The Plaintiff presented the Court with correspondence dated June 21, 2013 from attorneys retained by AGIS which threatened various repair shops with litigation.[1] The correspondence states the Alvarez & Gilbert, PLLC law firm represents AGIS in its capacity as appraiser for Allstate's various entities. Further, the letter contains threats of litigation against these shops by AGIS relating to disputes at issue in the appraisal process. The firm, on behalf of AGIS further warns repair shops to "govern [themselves] accordingly."

The Plaintiff also presented the Court with a print-out of the AGIS website on which AGIS states its mission is "to verify glass damage for the insurance industry." The website also represents that "AGIS sole purpose is to report back to the insurance industry what type of damage exists or lack thereof." It further indicates that "AGIS has no affiliation with any companies in the glass industry and only serves large insurance companies."

The Plaintiff also presented correspondence sent between Plaintiff and Allstate in numerous claims requesting AGIS be removed as appraiser because AGIS is not disinterested

---

[1] Plaintiff contends it is of vital import that AGIS has retained their own attorneys in the past to threaten repair facilities – including Auto Glass America, LLC – with litigation about the appraisal process.

and that Allstate appoint a disinterested appraiser. In response, Allstate issued numerous letters retaining the position that AGIS is disinterested. Allstate continues to retain this position as stated in Defendant's motion. Plaintiff argues that despite making a good faith effort to remove AGIS and to obtain a disinterested appraiser Allstate's position remains, thus; creating a basis to believe that sending additional letters requesting the removal of AGIS would be futile. See *Waksman Enterprises, Inc. v. Oregon Properties, Inc.*, 862 So.2d 35 (Fla. 2d DCA 2007).

Plaintiff also seeks a declaration that the appraisal provision is unenforceable and illusory because the expense to enter appraisal is prohibitive upon both the insured and Plaintiff. The appraisal provision at issue requires that each party bears the costs of its own appraiser and split the costs for the umpire if the appraisers do not agree on the amount of the loss. Plaintiff relies on various county court decisions that have considered whether appraisal provisions may be illusory in the context of the small monetary amounts of windshield damage cases. See *Broward Ins. Recovery Cntr., LLC (a/a/o Charlie Gari) v. Allstate Fire and Cas. Ins. Co.,* 25 Fla. L. Weekly Supp. 293a (Fla. Broward County Ct. May 8, 2017)(Fishman, J.); *Broward Ins. Recovery Cntr., LLC (a/a/o Shane Bushman) v. Progressive Select Ins. Co.,* 24 Fla. L. Weekly Supp. 761a (Broward County Ct. Nov. 3, 2016)(Lee, J.); *Clear Vision Windshield Repair LLC (a/a/o Frances Soto) v. Progressive Amer. Ins. Co.*, 23 Fla. L. Weekly Supp. 862a (Fla. Broward County Ct. December 14, 2015)(Skolnik, J.).

### Conclusions of Law

To be entitled to declaratory relief, a party must demonstrate that "there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertain or ascertainable state of facts or present controversy as to a state of facts; that some impurity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest [sic] are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity." *Bartsch v. Costell,* 170 So.3d 83, 88 (Fla. 4th DCA 2015)(quoting *Olive v. Mass,* 811 So.2d 644, 657-58 (Fla. 2002). Declaratory relief in the insurance context is rendered by the trial court after determining the state of facts giving rise to the application of the policy provisions. *See Northwest Center for Integrative Medicine & Rehabilitation, Inc. v. State Farm Mutual Automobile Ins. Co.,* 214 So.3d 679 (Fla. 4th DCA 2017). Plaintiff has sufficiently stated causes of action for declaratory relief in each of the counts asserted in the Amended Complaint.

There are three elements for the courts to consider in ruling on a motion to compel arbitration or appraisal of a given dispute: (1) whether a valid written agreement to appraisal exists; (2) whether an issue for appraisal exists; and, (3) whether the right to appraisal is waived. *Heller v. Blue Aerospace LLC*, 112 So. 3d 635(Fla. 4th DCA 2013). In this case, Plaintiff seeks the Court's interpretation and construction of insurance policy language, including the appraisal provision itself. As a threshold matter, it has yet to be determined whether there exists a valid

written agreement that calls for appraisal. In fact, the very declarations the Plaintiff seeks in this case involve the validity of the appraisal and limit-of-liability provisions in the policy[2].

If the Court interprets and construes the agreement to appraise as valid, the next step is to determine whether an issue for appraisal exists. While appraisal is a preferred non-judicial method of dispute resolution, it is only appropriate when the sole issue to be decided is a determination of the amount of damages sustained by the insured. *See Citizens Prop. Ins. Corp. v. Demetrescu,* 137 So.3d 500 (Fla. 4th DCA 2014); *Citizens Prop. Ins. Corp. v. Michigan Condominium Ass'n,* 46 So.3d 177 (Fla. 4th DCA 2010). In other words, an appraisable issue only exists when there is a dispute over money. In this case the Defendant does not even agree that the Plaintiff has standing. Appraisal is not appropriate when a case presents only issues of contract interpretation or coverage. *Antencio v. U.S. Sec. Ins. Co.*, 676 So.2d 489 (Fla. 3d DCA 1996)("Questions of policy interpretation and coverage are ordinarily for the court, rather than arbitrators or appraisers to decide."); *Broward Ins. Recovery Cntr., LLC (a/a/o Shane Bushman) v. Progressive Select Ins. Co.,* 24 Fla. L. Weekly Supp. 761a (Broward County Ct. Nov. 3, 2016)(Hon. Robert W. Lee)("In the instant case, the operative issue is how the value of the loss should be determined, and making this determination is not within the purview of the appraisal process."). This case presents issues of contract interpretation or coverage to be determined by the Court as a matter of law. Specifically, the Court must determine whether the term "cost to repair or replace" is ambiguous or capable of more than one reasonable interpretation. It is not an action for damages.

Further, appraisal for windshield glass repair or replacement is not contemplated by the appraisal provision in the policy. The provision requires the appraisers to determine the actual cash value and the amount of the loss. Neither of those determinations are necessary or even relevant when the issue is the meaning of the term "cost to repair" windshield glass. If appraisal was intended to determine the cost to repair or replace a windshield, the appraisal provision would say so. It does not. This Court is not at liberty to "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intention of the parties." *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So.3d 494, 497 (Fla. 2014), quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So.2d 1245, 1248 (Fla. 1986).

Defendant relies upon *Progressive Select Ins. Co. v. Cornerstone Network, Inc. (a/a/o Dakota Sowell),* Case No.: CACE 16-021830 (AW), FLWSUPP 2503SOWE, (Broward County, Circuit Court)(Appellate Capacity)(May 25, 2017) and *Progressive American Ins. Co. v. Broward Insurance Recovery Center, LLC (Isabella Cardona),* Case No.: CACE 16-021757 (AW) (Broward County, Circuit Court)(Appellate Capacity)(May 26, 2017 )(unpublished) for the proposition that appraisal is proper for windshield repairs, and should be employed instead of the judicial process. Those cases are distinguishable from the instant matter as they were

---

[2]     Curiously, Allstate maintains Plaintiff lacks standing for two reasons. First, Allstate argues Plaintiff lacks standing because the insured did not comply with the appraisal provision; therefore, according to Allstate, the right to additional payment did not vest in the insured so the insured had no rights or benefits to assign. Second, Allstate argues that the assignment of benefits constitutes a violation of Fla. Stat. § 626.854, which provides a definition of "public adjuster."    The Court makes no finding as to standing at this time.

lawsuits for breach of contract seeking only damages. They were not claims for declaratory relief like those raised by the Plaintiff in this case. Further, the *Progressive* damages cases involve different policies and provisions than the Allstate policy at issue here. In contrast to the Progressive cases the issues set forth in the Plaintiff's complaint require judicial interpretation and declaratory relief involving terms in both the limit of liability and appraisal provisions in the policy.

The simple fact is that without a judicial interpretation as to the meaning and/or possible ambiguity of the term "cost to repair or replace" the Plaintiff faces the potential of being forced into an appraisal process without knowing whether the Defendant has complied with the limit of liability provision in its policy. While alternative dispute resolutions are favored by the courts they cannot be used as vehicles by either party to avoid the terms, conditions and construction of the contract which is subject of the suit.

Although not binding, this Court is also persuaded by the other county court decisions in favor of Plaintiff's position. *See e.g., Auto Glass America, LLC (a/a/o Joe Johnson) v. Allstate Ins. Co., 25 Fla. L. Weekly Supp. 833a* (Fla. Broward County Ct. November 21, 2017) (Hilal, J.); *Auto Glass America LLC (a/a/o Marian Donovan) v. Allstate Ins. Co.*, Case No. 17-3260 COWE (82) (Fla. Broward County Ct. November 21, 2017) (Hilal, J.); *Broward Insurance Recovery Center, LLC (a/a/o Harry Drangsland) v. Allstate Ins. Co.,* 25 Fla. L. Weekly Supp. 294 (Fla. Broward County Ct. May 8, 2017)(Hilal, J.); *Broward Insurance Recovery Center, LLC (a/a/o Charlie Gari) v. Allstate Fire and Casualty Ins. Co.,* 25 Fla. L. Weekly Supp. 293a (Fla. Broward County CT. May 8, 2017) (Fishman, J.); *Broward Insurance Recovery Center, LLC (a/a/o Jason Kemps) v. Allstate Ins. Co.,* Case No.: 16-012906 COWE (81) (Fla. Broward County Ct. May 8, 2017) (Fishman, J.); *Auto Glass Wizards, Inc. (a/a/o Noel Ramos) v. Allstate Ins. Co.*, Case No.: 16-11775 COCE (54) (Fla. Broward County Ct. January 12, 2018) (Barner, J.); *Auto Glass Wizards, Inc. (a/a/o William Diaz) v. Allstate Ins. Co.*, Case No.: 16-11461 COCE (54) (Barner, J.); *Auto Glass America, LLC (a/a/o Erica Gantley) v. Allstate Fire and Casualty Ins. Co.*, Case No.: 17-1041 CONO (72) (Fla. Broward County Ct. December 8, 2017) (Hurley, J.); *Auto Glass America, LLC (a/a/o Angelina Davinport) v. Allstate Fire and Casualty Ins. Co.,* Case No.: 17-1981 CONO (72) (Fla. Broward County Ct. November 16, 2017) (Hurley, J.); *Auto Glass America, LLC (a/a/o Diane Bloom) v. Allstate Ins. Co.,* Case No.: 17-3385 CONO (73) (Fla. Broward County Ct. November 3, 2017) (Deluca, J.); *Auto Glass America, LLC (a/a/o Amy Trucano) v. Allstate Ins. Co.,* Case No.: 17-3394 CONO (73) (November 3, 2017) (Deluca, J.); *Broward Insurance Recovery Center, LLC (a/a/o Ken Baker) v. Allstate Ins. Co.,* Case No.: 16-22873 COCE (56) (Fla. Broward County Ct. April 25, 2017); *Clear Vision Windshield Repair, LLC (Harold Becker) v. Allstate Prop. and Casualty Ins. Co.,* 25 Fla. L. Weekly Supp. 291b (Fla. Broward County Ct. April 21, 2016) (Marks, J.); *Broward Insurance Recovery Center, LLC (Shane Bushman) v. Progressive Select Ins. Co.,* 24 Fla. L. Weekly Supp. 761a (Fla. Broward County Ct. November 2, 2016) (Lee, J.); *Clear Vision Windshield Repair, LLC (a/a/o Jennifer Beckles) v. Progressive Amer. Ins. Co.,* 23 Fla. L. Weekly Supp. 486a (Fla. Broward County Ct. September 2, 2015)(Skolnik, J.).

For these reasons, Defendant's Motion is hereby **DENIED**.

Since the Court finds appraisal to be inappropriate in this case, it does not need to reach the issues of Allstate's compliance (or lack thereof) with the appraisal provision by selecting AGIS, an appraiser whose disinterest is questioned by the Plaintiff, or whether appraisal should be precluded under the prohibitive cost doctrine. Those issues are moot.

**DONE** and **ORDERED** at Plantation, Broward County, Florida on this 6th day of February, 2018.

_____
HONORABLE KATHLEEN MCCARTHY
COUNTY COURT JUDGE

Copies furnished to:

Emilio R. Stillo, Esq., Andrew Davis-Henrichs, Esq., Lawrence Kopelman Esq., and Mac Phillips, Esq., for the Plaintiff

Christie Quintero, Esq., and Kansas R. Gooden, Esq., for the Defendant.

Copies Furnished to:
MiamiLegal@Allstate.com
dperalta@boydjen.com
Alison.Haney@Allstate.com
rhernandez@insurancelawadvocate.com
mphillips@thephillipslawgroup.com
erspleadings@yahoo.com
miamilegal@allstate.com
kfranz@boydjen.com
service@phillipstadros.com
jtorres@insurancelawadvocate.com
Ansley.Peacock@allstate.com
bacevedo@insurancelawadvocate.com
efilingpleadings@gmail.com
DIV51@17TH.FLCOURTS.ORG
mphillips@phillipstadros.com
eservices@emiliostillopa.com
kgooden@boydjen.com



EXHIBIT 7

| Line | Plaintiff | Insured | Defendant | Case No. | County |
|------|-----------|---------|-----------|----------|--------|
| 1 | **Auto Glass America, LLC ("AGA")** | **Derek Covel** | **Allstate** | **18-cc-038267(I)** | **Hillsborough** |
| 2 | **AGA** | **Chad & Karen Lumley** | **Allstate** | **18-cc-038270(I)** | **Hillsborough** |
| 3 | **AGA** | **Kathleen Dehavean** | **Allstate** | **18-cc-038317(M)** | **Hillsborough** |
| 4 | **AGA** | **Jesse Cookson** | **Allstate** | **18-cc-038318(I)** | **Hillsborough** |
| 5 | **AGA** | **Daniel Schreiber** | **Allstate** | **18-cc-038319(I)** | **Hillsborough** |
| 6 | **AGA** | **Celeste Hall** | **Allstate** | **18-cc-038320(I)** | **Hillsborough** |
| 7 | **AGA** | **Kathy Delia Costa** | **Allstate** | **18-cc-038321(M)** | **Hillsborough** |
| 8 | **AGA** | **Mary King** | **Allstate** | **18-cc-038352(M)** | **Hillsborough** |
| 9 | **AGA** | **Devin Rockey** | **Allstate** | **18-cc-038353(M)** | **Hillsborough** |
| 10 | **AGA** | **Jeffrey Lamphier** | **Allstate** | **18-cc-038354(J)** | **Hillsborough** |
| 11 | **AGA** | **Ted Galloway** | **Allstate** | **18-cc-038355(J)** | **Hillsborough** |
| 12 | **AGA** | **Rick Ladd** | **Allstate** | **18-cc-038515(L)** | **Hillsborough** |
| 13 | **AGA** | **Harold Johnson** | **Allstate** | **18-cc-038516(M)** | **Hillsborough** |
| 14 | **AGA** | **Denis Ottinwalder** | **Allstate** | **18-cc-038517(L)** | **Hillsborough** |
| 15 | **AGA** | **Mary Klaus** | **Allstate** | **18-cc-038518(I)** | **Hillsborough** |
| 16 | **AGA** | **Joseph Ograin** | **Allstate** | **18-cc-038523(M)** | **Hillsborough** |
| 17 | **AGA** | **Erin Crume** | **Allstate** | **18-cc-038524(M)** | **Hillsborough** |
| 18 | **AGA** | **Randy Lawrence** | **Allstate** | **18-cc-038525(L)** | **Hillsborough** |
| 19 | **AGA** | **Jeff Schnell** | **Allstate** | **18-cc-038526(I)** | **Hillsborough** |
| 20 | **AGA** | **Edward Youssef** | **Allstate** | **18-cc-038527(J)** | **Hillsborough** |
| 21 | **AGA** | **Jason Koczenasz** | **Allstate** | **18-cc-038528(I)** | **Hillsborough** |
| 22 | **AGA** | **Josue Laboree** | **Allstate** | **18-cc-038529(L)** | **Hillsborough** |
| 23 | **AGA** | **Coy & Olga Reavis** | **Allstate** | **18-cc-038530(M)** | **Hillsborough** |
| 24 | **AGA** | **Rachael Blevins** | **Allstate** | **18-cc-038531(I)** | **Hillsborough** |
| 25 | **AGA** | **Carolin Tasillo** | **Allstate** | **18-cc-038543(I)** | **Hillsborough** |
| 26 | **AGA** | **Kathleen Linter** | **Allstate** | **18-cc-038552(K)** | **Hillsborough** |
| 27 | **AGA** | **John Moore 2** | **Allstate** | **18-cc-038555(M)** | **Hillsborough** |
| 28 | **AGA** | **Steve Mcdonald** | **Allstate** | **18-cc-038556(I)** | **Hillsborough** |
| 29 | **AGA** | **Penny Stinson** | **Allstate** | **18-cc-038557(M)** | **Hillsborough** |
| 30 | **AGA** | **Kandice Eulo** | **Allstate** | **18-cc-038553(H)** | **Hillsborough** |
| 31 | **AGA** | **Sue & Dudley Campbell** | **Allstate** | **18-cc-057784(H)** | **Hillsborough** |
| 32 | **AGA** | **Corey Hill** | **Allstate** | **18-cc-057783(L)** | **Hillsborough** |
| 33 | **AGA** | **Rubin Lopez** | **Allstate** | **18-cc-057817(I)** | **Hillsborough** |

| 34 | AGA | Mathew Poinsett | Allstate | 18-cc-057782(K) | Hillsborough |
|----|-----|-----------------|----------|-----------------|--------------|
| 35 | AGA | Nancy Price | Allstate | 18-cc-057781(M) | Hillsborough |
| 36 | AGA | Rubin Lopez 2 | Allstate | 18-cc-057816(L) | Hillsborough |
| 37 | AGA | Karla Wright | Allstate | 18-cc-057780(J) | Hillsborough |
| 38 | AGA | Amy Frederick | Allstate | 18-cc-057779(M) | Hillsborough |
| 39 | AGA | Kay Gundle | Allstate | 18-cc-057815(L) | Hillsborough |
| 40 | AGA | James Rutledge | Allstate | 18-cc-057778(M) | Hillsborough |
| 41 | AGA | Ashante Diltz | Allstate | 18-cc-057777(K) | Hillsborough |
| 42 | AGA | Mamie Slayton | Allstate | 18-cc-057814(I) | Hillsborough |
| 43 | AGA | Demetrious Jacobs | Allstate | 18-cc-057774(I) | Hillsborough |
| 44 | AGA | Josh Dubin | Allstate | 18-cc-057813(I) | Hillsborough |
| 45 | AGA | Jose Castillo | Allstate | 18-cc-057812(I) | Hillsborough |
| 46 | AGA | Heidi Matthew | Allstate | 18-cc-057811(H) | Hillsborough |
| 47 | AGA | James Clark 2 | Allstate | 18-cc-057809(M) | Hillsborough |
| 48 | AGA | Francisco Galup | Allstate | 18-cc-057772(I) | Hillsborough |
| 49 | AGA | Denise Reiter | Allstate | 18-cc-057771(I) | Hillsborough |
| 50 | AGA | Nancy Cartwright | Allstate | 18-cc-057770(I) | Hillsborough |
| 51 | AGA | Elena Padilla | Allstate | 18-cc-057769(M) | Hillsborough |
| 52 | AGA | Samantha Hill | Allstate | 18-cc-057768(L) | Hillsborough |
| 53 | AGA | Josh Dubin 2 | Allstate | 18-cc-057810(M) | Hillsborough |
| 54 | AGA | Alina Moore | Allstate | 18-cc-057767(M) | Hillsborough |
| 55 | AGA | Mario Da Silva | Allstate | 18-cc-057766(I) | Hillsborough |
| 56 | AGA | Jeremy Lund | Allstate | 18-cc-057808(M) | Hillsborough |
| 57 | AGA | Maria Orlando | Allstate | 18-cc-057765(M) | Hillsborough |
| 58 | AGA | James Clark 2 | Allstate | 18-cc-057807(I) | Hillsborough |
| 59 | AGA | David Garabedia | Allstate | 18-cc-057764(M) | Hillsborough |
| 60 | AGA | Ronald Raines | Allstate | 18-cc-057806(L) | Hillsborough |
| 61 | AGA | Bill Lai | Allstate | 18-cc-057763(I) | Hillsborough |
| 62 | AGA | Penny Rose | Allstate | 18-cc-057762(M) | Hillsborough |
| 63 | AGA | Tina Hill | Allstate | 18-cc-057805(I) | Hillsborough |
| 64 | AGA | Lawrence      Cynthia Panka | Allstate | 18-cc-057761(L) | Hillsborough |
| 65 | AGA | Sheila Sartori | Allstate | 18-cc-057802(J) | Hillsborough |
| 66 | AGA | Hung Nguyen | Allstate | 18-cc-057803(U) | Hillsborough |
| 67 | AGA | Maurine Ball | Allstate | 18-cc-057760(I) | Hillsborough |
| 68 | AGA | Cindy Shaun | Allstate | 18-cc-057759(I) | Hillsborough |
| 69 | AGA | Howard Kramer | Allstate | 18-cc-057804(U) | Hillsborough |
| 70 | AGA | Rosemary Lowenkron | Allstate | 18-cc-057758(L) | Hillsborough |
| 71 | AGA | Darren Wilson | Allstate | 18-cc-057757(J) | Hillsborough |
| 72 | AGA | William Maze | Allstate | 18-cc-057756(M) | Hillsborough |

| 73 | AGA | Suad Hanna | Allstate | 18-cc-057801(M) | Hillsborough |
|-----|-----|-----|-----|-----|-----|
| 74 | AGA | Evelyn Demps | Allstate | 18-cc-057800(L) | Hillsborough |
| 75 | AGA | Mike Everheart | Allstate | 18-cc-057798(H) | Hillsborough |
| 76 | AGA | Blaise Ellis | Allstate | 18-cc-057797(L) | Hillsborough |
| 77 | AGA | Patrick Madden | Allstate | 18-cc-057785(M) | Hillsborough |
| 78 | AGA | James Fulvi | Allstate | 18-cc-057786(K) | Hillsborough |
| 79 | AGA | Lotta Irenhem | Allstate | 18-cc-057787(J) | Hillsborough |
| 80 | AGA | Josh Fulford | Allstate | 18-cc-057818(I) | Hillsborough |
| 81 | AGA | Paula Graves | Allstate | 18-cc-057788(I) | Hillsborough |
| 82 | AGA | Peter Ciampa | Allstate | 18-cc-057789(J) | Hillsborough |
| 83 | AGA | Royce Chandler | Allstate | 18-cc-057790(M) | Hillsborough |
| 84 | AGA | Liz Constanzo | Allstate | 18-cc-057819(L) | Hillsborough |
| 85 | AGA | Helen & Scott Hurlbert | Allstate | 18-cc-057862(M) | Hillsborough |
| 86 | AGA | Mike Fisher | Allstate | 18-cc-057791(J) | Hillsborough |
| 87 | AGA | Lori Cheek | Allstate | 18-cc-057792(U) | Hillsborough |
| 88 | AGA | Taylor O'Brien | Allstate | 18-cc-057793(J) | Hillsborough |
| 89 | AGA | Morgan Weber | Allstate | 18-cc-057794(I) | Hillsborough |
| 90 | AGA | Johanna Herrera | Allstate | 18-cc-057820(I) | Hillsborough |
| 91 | AGA | Jesus Alvarez | Allstate | 18-cc-057795(L) | Hillsborough |
| 92 | AGA | John Ellis | Allstate | 18-cc-057796(M) | Hillsborough |
| 93 | AGA | Rick Sharp | Allstate | 18-cc-057821(K) | Hillsborough |
| 94 | AGA | Clayton Carter | Allstate | 18-cc-057822(U) | Hillsborough |
| 95 | AGA | Orlando Bravo | Allstate | 18-cc-057823(L) | Hillsborough |
| 96 | AGA | Louis De Vico | Allstate | 18-cc-057824(U) | Hillsborough |
| 97 | AGA | Rose Bennett | Allstate | 18-cc-057825(I) | Hillsborough |
| 98 | AGA | James Shepherd | Allstate | 18-cc-057826(L) | Hillsborough |
| 99 | AGA | Brendan Doty | Allstate | 18-cc-057828(L) | Hillsborough |
| 100 | AGA | Cardi Mccrae 2 | Allstate | 18-cc-057829(J) | Hillsborough |
| 101 | AGA | Julius Accardi | Allstate | 18-cc-057832(J) | Hillsborough |
| 102 | AGA | Scott Woodstuff | Allstate | 18-cc-057834(K) | Hillsborough |
| 103 | AGA | Anissa Diriendo | Allstate | 18-cc-057835(L) | Hillsborough |
| 104 | AGA | Penny Abbruzese | Allstate | 18-cc-057838(I) | Hillsborough |
| 105 | AGA | Robert Rodriguez | Allstate | 18-cc-057839(L) | Hillsborough |
| 106 | AGA | Jon Cook | Allstate | 18-cc-057840(L) | Hillsborough |
| 107 | AGA | Charles Dupre | Allstate | 18-cc-057841(L) | Hillsborough |
| 108 | AGA | Severyn Cool Services LLC | Allstate | 18-cc-057843(J) | Hillsborough |
| 109 | AGA | Deborah Phillips | Allstate | 18-cc-057842(I) | Hillsborough |
| 110 | AGA | Jaime Castaneda | Allstate | 18-cc-057845(J) | Hillsborough |

| 111 | AGA | Patti & Mark Himmelreich | Allstate | 18-cc-057846(H) | Hillsborough |
|---|---|---|---|---|---|
| 112 | AGA | Yaqueline Ventosa | Allstate | 18-cc-057847(I) | Hillsborough |
| 113 | AGA | Alex Michel | Allstate | 18-cc-057848(K) | Hillsborough |
| 114 | AGA | Christa Schmitz 2. | Allstate | 18-cc-057852(L) | Hillsborough |
| 115 | AGA | Juan & Zulma Rojas | Allstate | 18-cc-057853(I) | Hillsborough |
| 116 | AGA | Juan & Zulma Rojas 2 | Allstate | 18-cc-057855(I) | Hillsborough |
| 117 | AGA | Scott Fisher | Allstate | 18-cc-057844(J) | Hillsborough |
| 118 | AGA | Jordan Seth Lewis | Allstate | 18-cc-059403(K) | Hillsborough |
| 119 | AGA | Nathaniel Williams | Allstate | 18-cc-059401(I) | Hillsborough |
| 120 | AGA | Doug Mitchem | Allstate | 18-cc-059402(J) | Hillsborough |
| 121 | AGA | Deborah Ludwig | Allstate | 18-cc-059404(H) | Hillsborough |
| 122 | AGA | Michael Deemer | Allstate | 18-cc-060416(L) | Hillsborough |
| 123 | AGA | Randall Welsh | Allstate | 18-cc-060417(L) | Hillsborough |
| 124 | AGA | Yolonda Phillips | Allstate | 18-cc-057837(M) | Hillsborough |
| 125 | AGA | Kristine Smith | Allstate | 18-cc-057830(M) | Hillsborough |
| 126 | AGA | Cardi Mccrae | Allstate | 18-cc-057831(M) | Hillsborough |
| 127 | AGA | Jaime Castaneda | Allstate | 18-cc-057849(M) | Hillsborough |
| 128 | AGA | Roger Hill | Allstate | 18-cc-057851(M) | Hillsborough |
| 129 | AGA | Angela Write | Allstate | 18-cc-059400(M) | Hillsborough |
| 130 | AGA | Frances Keltos | Allstate | 18-cc-061673(J) | Hillsborough |
| 131 | AGA | Debbie Harrison | Allstate | 18-cc-061674(U) | Hillsborough |
| 132 | AGA | Helen & Scott Hurlbert 2 | Allstate | 18-cc-057857(M) | Hillsborough |
| 133 | AGA | Charles King 2 | Allstate | 18-cc-057827(M) | Hillsborough |
| 134 | AGA | Allen Levy | Allstate | 18-cc-062655(I) | Hillsborough |
| 135 | AGA | Brande Cobb | Allstate | 18-cc-062598(I) | Hillsborough |
| 136 | AGA | Zachary & Timothy Hill | Allstate | 18-cc-062600(I) | Hillsborough |
| 137 | AGA | Anthony Camacho | Allstate | 18-cc-062601(I) | Hillsborough |
| 138 | AGA | Mark Homnick | Allstate | 18-cc-062602(U) | Hillsborough |
| 139 | AGA | Victor Zayas | Allstate | 18-cc-062603(U) | Hillsborough |
| 140 | AGA | Ryan Chamblee | Allstate | 18-cc-062756(J) | Hillsborough |
| 141 | AGA | Andrea Bourdan | Allstate | 18-cc-060356(I) | Hillsborough |
| 142 | AGA | Milton Kaufman | Allstate | 18-cc-060359(H) | Hillsborough |
| 143 | AGA | Heather Urquides | Allstate | 18-cc-060361(J) | Hillsborough |
| 144 | AGA | Mary Compian | Allstate | 18-cc-060362(U) | Hillsborough |
| 145 | AGA | Claudette Knight | Allstate | 18-cc-060363(I) | Hillsborough |
| 146 | AGA | Luisa Homnick | Allstate | 18-cc-060364(M) | Hillsborough |
| 147 | AGA | Rita Bennett | Allstate | 18-cc-060365(J) | Hillsborough |
| 148 | AGA | Marquis Samuel | Allstate | 18-cc-063828(L) | Hillsborough |

| 149 | AGA | Melody Simpson | Allstate | 18-cc-063783(H) | Hillsborough |
|-----|-----|----------------|----------|-----------------|--------------|
| 150 | AGA | Kimberly Stuber | Allstate | 18-cc-063789(H) | Hillsborough |
| 151 | AGA | Allen Hearn | Allstate | 18-cc-063790(I) | Hillsborough |
| 152 | AGA | Michael Smith | Allstate | 18-cc-063791(M) | Hillsborough |
| 153 | AGA | Guilaine Destrat | Allstate | 18-cc-063792(M) | Hillsborough |
| 154 | AGA | Catherine Mazyck | Allstate | 18-cc-063793(M) | Hillsborough |
| 155 | AGA | Craig Larson | Allstate | 18-cc-063794(I) | Hillsborough |
| 156 | AGA | Chris Brooks | Allstate | 18-cc-063795(M) | Hillsborough |
| 157 | AGA | Aaron Hopkins | Allstate | 2018-SC-011072-O | Orange |
| 158 | AGA | Adam Ramon | Allstate | 2018-SC-011170-O | Orange |
| 159 | AGA | Adolph Ramirez | Allstate | 2018-SC-011044-O | Orange |
| 160 | AGA | Albio Andrez | Allstate | 2018-SC-011254-O | Orange |
| 161 | AGA | Alesha Cummings | Allstate | 2018-SC-011165-O | Orange |
| 162 | AGA | Alex Hasiyeve | Allstate | 2018-SC-011479-O | Orange |
| 163 | AGA | Alex Lyons | Allstate | 2018-SC-011678-O | Orange |
| 164 | AGA | Alex Pogrebniak | Allstate | 2018-SC-011466-O | Orange |
| 165 | AGA | Alma Lane | Allstate | 2018-SC-011559-O | Orange |
| 166 | AGA | Alton Tobler | Allstate | 2018-SC-011493-O | Orange |
| 167 | AGA | Alvardo Arrozal | Allstate | 2018-SC-011272-O | Orange |
| 168 | AGA | Amanda Carnes | Allstate | 2018-SC-011052-O | Orange |
| 169 | AGA | Amanda Watson | Allstate | 2018-SC-011050-O | Orange |
| 170 | AGA | Amber Rector | Allstate | 2018-SC-011017-O | Orange |
| 171 | AGA | Amber Tyer | Allstate | 2018-SC-011405-O | Orange |
| 172 | AGA | Amy Clement | Allstate | 2018-SC-011562-O | Orange |
| 173 | AGA | Andrea Jaralillo | Allstate | 2018-SC-011681-O | Orange |
| 174 | AGA | Andrea O'Neal | Allstate | 2018-SC-011138-O | Orange |

| 175 | AGA | Andrea Skirbat | Allstate | 2018-SC-011437-O | Orange |
|-----|-----|----------------|----------|------------------|--------|
| 176 | AGA | Andrew Rouleau | Allstate | 2018-SC-011506-O | Orange |
| 177 | AGA | Andy Gailey | Allstate | 2018-SC-011634-O | Orange |
| 178 | AGA | Angel Marerro | Allstate | 2018-SC-011275-O | Orange |
| 179 | AGA | Angel Torres | Allstate | 2018-SC-011179-O | Orange |
| 180 | AGA | Angela Mjellell | Allstate | 2018-SC-011491-O | Orange |
| 181 | AGA | Anita Quills | Allstate | 2018-SC-011289-O | Orange |
| 182 | AGA | Anita Schrack | Allstate | 2018-SC-011385-O | Orange |
| 183 | AGA | Anthony Peoseta | Allstate | 2018-SC-011107-O | Orange |
| 184 | AGA | Anthony Zammit | Allstate | 2018-SC-011411-O | Orange |
| 185 | AGA | Ash Tripathi | Allstate | 2018-SC-011439-O | Orange |
| 186 | AGA | Ashley Deneau | Allstate | 2018-SC-011029-O | Orange |
| 187 | AGA | Authur Rosen | Allstate | 2018-SC-011615-O | Orange |
| 188 | AGA | Bemice Simons | Allstate | 2018-SC-011067-O | Orange |
| 189 | AGA | Bill Short | Allstate | 2018-SC-011399-O | Orange |
| 190 | AGA | Billy O'Brien | Allstate | 2018-SC-011587-O | Orange |
| 191 | AGA | Bobby Davis | Allstate | 2018-SC-011539-O | Orange |
| 192 | AGA | Bobby Reiter | Allstate | 2018-SC-011240-O | Orange |
| 193 | AGA | Brad Costley | Allstate | 2018-SC-011563-O | Orange |
| 194 | AGA | Brandy Moody | Allstate | 2018-SC-011084-O | Orange |
| 195 | AGA | Brenda Lopez | Allstate | 2018-SC-011661-O | Orange |
| 196 | AGA | Brenda Nealy | Allstate | 2018-SC-011208-O | Orange |
| 197 | AGA | Brian Kesler | Allstate | 2018-SC-011494-O | Orange |

| 198 | AGA | Brian Loscalzo | Allstate | 2018-SC-011123-O | Orange |
|-----|-----|----------------|----------|------------------|--------|
| 199 | AGA | Briton Parker | Allstate | 2018-SC-011476-O | Orange |
| 200 | AGA | Bruce Robins | Allstate | 2018-SC-011247-O | Orange |
| 201 | AGA | Bryce Lynch | Allstate | 2018-SC-011326-O | Orange |
| 202 | AGA | Carina Orren | Allstate | 2018-SC-011164-O | Orange |
| 203 | AGA | Carlos Marreo | Allstate | 2018-SC-011345-O | Orange |
| 204 | AGA | Carlos Rivias | Allstate | 2018-SC-011248-O | Orange |
| 205 | AGA | Carol Sipel | Allstate | 2018-SC-011402-O | Orange |
| 206 | AGA | Casey Martin | Allstate | 2018-SC-011624-O | Orange |
| 207 | AGA | Cassandra Smith | Allstate | 2018-SC-011477-O | Orange |
| 208 | AGA | Cassandra Turner | Allstate | 2018-SC-010976-O | Orange |
| 209 | AGA | Catherine Sampson | Allstate | 2018-SC-011547-O | Orange |
| 210 | AGA | Cathy Smith | Allstate | 2018-SC-011508-O | Orange |
| 211 | AGA | Celia Post | Allstate | 2018-SC-011620-O | Orange |
| 212 | AGA | Chad Cox | Allstate | 2018-SC-011510-O | Orange |
| 213 | AGA | Charles Long | Allstate | 2018-SC-011088-O | Orange |
| 214 | AGA | Charles Parson | Allstate | 2018-SC-011156-O | Orange |
| 215 | AGA | Charles Rivers | Allstate | 2018-SC-011250-O | Orange |
| 216 | AGA | Chaz Richard | Allstate | 2018-SC-011667-O | Orange |
| 217 | AGA | Chelse Mangine | Allstate | 2018-SC-011626-O | Orange |
| 218 | AGA | Cheryl White | Allstate | 2018-SC-011441-O | Orange |
| 219 | AGA | Chris Casdorph | Allstate | 2018-SC-011565-O | Orange |
| 220 | AGA | Chris Gruwell | Allstate | 2018-SC-011008-O | Orange |

| 221 | AGA | Chris Paynic | Allstate | 2018-SC-011200-O | Orange |
|-----|-----|--------------|----------|------------------|--------|
| 222 | AGA | Chris Schipper | Allstate | 2018-SC-011668-O | Orange |
| 223 | AGA | Christi Campos | Allstate | 2018-SC-011580-O | Orange |
| 224 | AGA | Christina Leedy | Allstate | 2018-SC-011586-O | Orange |
| 225 | AGA | Christina Meloche | Allstate | 2018-SC-011511-O | Orange |
| 226 | AGA | Christina-Fredd Scott | Allstate | 2018-SC-011404-O | Orange |
| 227 | AGA | Cindy Henning | Allstate | 2018-SC-011035-O | Orange |
| 228 | AGA | Claudia Smith | Allstate | 2018-SC-011141-O | Orange |
| 229 | AGA | Connie Haun | Allstate | 2018-SC-011016-O | Orange |
| 230 | AGA | Cornell Huffman | Allstate | 2018-SC-011471-O | Orange |
| 231 | AGA | Dallis Wilson | Allstate | 2018-SC-011443-O | Orange |
| 232 | AGA | Dan Luna | Allstate | 2018-SC-011344-O | Orange |
| 233 | AGA | Dan Slavin | Allstate | 2018-SC-011630-O | Orange |
| 234 | AGA | Damel Diaz-Jerry | Allstate | 2018-SC-011632-O | Orange |
| 235 | AGA | Dave Carrior | Allstate | 2018-SC-011521-O | Orange |
| 236 | AGA | David Caldwell | Allstate | 2018-SC-011665-O | Orange |
| 237 | AGA | David Cross | Allstate | 2018-SC-011662-O | Orange |
| 238 | AGA | David Flannigan | Allstate | 2018-SC-011038-O | Orange |
| 239 | AGA | David Gullet | Allstate | 2018-SC-011181-O | Orange |
| 240 | AGA | David Gullet | Allstate | 2018-SC-011594-O | Orange |
| 241 | AGA | David Leduc | Allstate | 2018-SC-011152-O | Orange |
| 242 | AGA | David Ward | Allstate | 2018-SC-011030-O | Orange |
| 243 | AGA | Debbie Bland | Allstate | 2018-SC-011089-O | Orange |

| 244 | AGA | Deborah Jermond | Allstate | 2018-SC-011210-O | Orange |
|-----|-----|-----------------|----------|------------------|--------|
| 245 | AGA | Deborah Lemiuex | Allstate | 2018-SC-011513-O | Orange |
| 246 | AGA | Deborah Witko | Allstate | 2018-SC-011445-O | Orange |
| 247 | AGA | Deidra Paschal | Allstate | 2018-SC-011201-O | Orange |
| 248 | AGA | Delio Carrera | Allstate | 2018-SC-011660-O | Orange |
| 249 | AGA | Dennis Cikovic | Allstate | 2018-SC-011455-O | Orange |
| 250 | AGA | Dennis Florendo | Allstate | 2018-SC-011013-O | Orange |
| 251 | AGA | Derek Lang | Allstate | 2018-SC-011018-O | Orange |
| 252 | AGA | Dorian Tousignant | Allstate | 2018-SC-011184-O | Orange |
| 253 | AGA | Doug Carmack | Allstate | 2018-SC-011497-O | Orange |
| 254 | AGA | Doug Ferguson | Allstate | 2018-SC-011484-O | Orange |
| 255 | AGA | Doug Selleck | Allstate | 2018-SC-011406-O | Orange |
| 256 | AGA | Dusty Roberts | Allstate | 2018-SC-011251-O | Orange |
| 257 | AGA | Dwane Jones | Allstate | 2018-SC-011456-O | Orange |
| 258 | AGA | Eddy Foye | Allstate | 2018-SC-011566-O | Orange |
| 259 | AGA | Edna Darr | Allstate | 2018-SC-011627-O | Orange |
| 260 | AGA | Edward Shaffer | Allstate | 2018-SC-011435-O | Orange |
| 261 | AGA | Egbert Lundy | Allstate | 2018-SC-011473-O | Orange |
| 262 | AGA | Elenaor Deegan | Allstate | 2018-SC-011631-O | Orange |
| 263 | AGA | Elizabert Naranjo | Allstate | 2018-SC-011648-O | Orange |
| 264 | AGA | Eric Howie | Allstate | 2018-SC-011151-O | Orange |
| 265 | AGA | Eric Johnson | Allstate | 2018-SC-011003-O | Orange |
| 266 | AGA | Ernest Ward | Allstate | 2018-SC-011672-O | Orange |

| 267 | AGA | Evertt Twing | Allstate | 2018-SC-011659-O | Orange |
|-----|-----|--------------|----------|------------------|--------|
| 268 | AGA | Evette Compton | Allstate | 2018-SC-011480-O | Orange |
| 269 | AGA | Evon Zygmunt | Allstate | 2018-SC-011576-O | Orange |
| 270 | AGA | Faye Hunter | Allstate | 2018-SC-011036-O | Orange |
| 271 | AGA | Floyd Benning | Allstate | 2018-SC-011592-O | Orange |
| 272 | AGA | Frank Delucca | Allstate | 2018-SC-011628-O | Orange |
| 273 | AGA | Frank Hurtas | Allstate | 2018-SC-011296-O | Orange |
| 274 | AGA | Frank Zuttartllo | Allstate | 2018-SC-011641-O | Orange |
| 275 | AGA | Fred Graves | Allstate | 2018-SC-011023-O | Orange |
| 276 | AGA | Freda Peterson | Allstate | 2018-SC-011203-O | Orange |
| 277 | AGA | Fredruck Hurson | Allstate | 2018-SC-011658-O | Orange |
| 278 | AGA | Gail Shane | Allstate | 2018-SC-011045-O | Orange |
| 279 | AGA | Gary Grigg | Allstate | 2018-SC-011158-O | Orange |
| 280 | AGA | Gary Williams | Allstate | 2018-SC-011448-O | Orange |
| 281 | AGA | Genevieve Attard | Allstate | 2018-SC-011020-O | Orange |
| 282 | AGA | George Ojeda | Allstate | 2018-SC-011014-O | Orange |
| 283 | AGA | George Perez | Allstate | 2018-SC-011500-O | Orange |
| 284 | AGA | Ghislane Bermudz | Allstate | 2018-SC-011026-O | Orange |
| 285 | AGA | Gina Cintron | Allstate | 2018-SC-011520-O | Orange |
| 286 | AGA | Gisela Morris | Allstate | 2018-SC-011258-O | Orange |
| 287 | AGA | Glenn Cox | Allstate | 2018-SC-011186-O | Orange |
| 288 | AGA | Gloria Wilson | Allstate | 2018-SC-011450-O | Orange |
| 289 | AGA | Greg Morman | Allstate | 2018-SC-011684-O | Orange |

| 290 | AGA | Gregory McElveen | Allstate | 2018-SC-011042-O | Orange |
| 291 | AGA | Hans Goehl | Allstate | 2018-SC-011688-O | Orange |
| 292 | AGA | Harold Scribner | Allstate | 2018-SC-011567-O | Orange |
| 293 | AGA | Harry Benton | Allstate | 2018-SC-011069-O | Orange |
| 294 | AGA | Heather Dawson | Allstate | 2018-SC-011091-O | Orange |
| 295 | AGA | Heather Ray | Allstate | 2018-SC-011202-O | Orange |
| 296 | AGA | Helene Sabelfeldt | Allstate | 2018-SC-011527-O | Orange |
| 297 | AGA | Hop Nguyen | Allstate | 2018-SC-011635-O | Orange |
| 298 | AGA | Horace Young | Allstate | 2018-SC-011597-O | Orange |
| 299 | AGA | Ilean Reinston | Allstate | 2018-SC-011252-O | Orange |
| 300 | AGA | Irma Reyes | Allstate | 2018-SC-011514-O | Orange |
| 301 | AGA | Isabell Palacio | Allstate | 2018-SC-011308-O | Orange |
| 302 | AGA | Jack Parrino | Allstate | 2018-SC-011553-O | Orange |
| 303 | AGA | James Canter | Allstate | 2018-SC-011690-O | Orange |
| 304 | AGA | James Dawe | Allstate | 2018-SC-011039-O | Orange |
| 305 | AGA | James Harzan | Allstate | 2018-SC-011461-O | Orange |
| 306 | AGA | James Newman | Allstate | 2018-SC-011602-O | Orange |
| 307 | AGA | Jane Williams | Allstate | 2018-SC-011519-O | Orange |
| 308 | AGA | Janet Hernandez | Allstate | 2018-SC-011478-O | Orange |
| 309 | AGA | Jason Corrales | Allstate | 2018-SC-011285-O | Orange |
| 310 | AGA | Jason Lamoureux | Allstate | 2018-SC-011135-O | Orange |
| 311 | AGA | Jason Miller | Allstate | 2018-SC-011172-O | Orange |
| 312 | AGA | Jason Stokes | Allstate | 2018-SC-011449-O | Orange |

| 313 | AGA | Jason Stokes | Allstate | 2018-SC-011446-O | Orange |
|-----|-----|--------------|----------|------------------|--------|
| 314 | AGA | Jeff Mantei | Allstate | 2018-SC-011318-O | Orange |
| 315 | AGA | Jeff Mantei | Allstate | 2018-SC-011595-O | Orange |
| 316 | AGA | Jene Cox | Allstate | 2018-SC-011128-O | Orange |
| 317 | AGA | Jennifer Blind | Allstate | 2018-SC-011182-O | Orange |
| 318 | AGA | Jerald Cullin | Allstate | 2018-SC-011502-O | Orange |
| 319 | AGA | Jerald Smith | Allstate | 2018-SC-011603-O | Orange |
| 320 | AGA | Jeri Nelson | Allstate | 2018-SC-011504-O | Orange |
| 321 | AGA | Jerry Clayter | Allstate | 2018-SC-011168-O | Orange |
| 322 | AGA | Jerry Wayer | Allstate | 2018-SC-011536-O | Orange |
| 323 | AGA | Jessica Pedrick | Allstate | 2018-SC-011501-O | Orange |
| 324 | AGA | Jessica Torres | Allstate | 2018-SC-011134-O | Orange |
| 325 | AGA | Jill Wellworth | Allstate | 2018-SC-011640-O | Orange |
| 326 | AGA | Joanne Dixon | Allstate | 2018-SC-011687-O | Orange |
| 327 | AGA | Jodi McKeon | Allstate | 2018-SC-011188-O | Orange |
| 328 | AGA | Jodl Dorsey | Allstate | 2018-SC-011604-O | Orange |
| 329 | AGA | Joe Bodrie | Allstate | 2018-SC-011554-O | Orange |
| 330 | AGA | Joe Mendola | Allstate | 2018-SC-011041-O | Orange |
| 331 | AGA | Joe-Mike S Pitts | Allstate | 2018-SC-011465-O | Orange |
| 332 | AGA | John Dickinson | Allstate | 2018-SC-011637-O | Orange |
| 333 | AGA | John Guastella | Allstate | 2018-SC-011470-O | Orange |
| 334 | AGA | John Halupka | Allstate | 2018-SC-011639-O | Orange |
| 335 | AGA | John Harvey | Allstate | 2018-SC-011610-O | Orange |

| 336 | AGA | John Korte | Allstate | 2018-SC-011274-O | Orange |
|-----|-----|-----------|----------|------------------|--------|
| 337 | AGA | John Leggett | Allstate | 2018-SC-011683-O | Orange |
| 338 | AGA | John Mynahan | Allstate | 2018-SC-011176-O | Orange |
| 339 | AGA | John Stathas | Allstate | 2018-SC-011444-O | Orange |
| 340 | AGA | John Stoke | Allstate | 2018-SC-011192-O | Orange |
| 341 | AGA | Jon Massey | Allstate | 2018-SC-011116-O | Orange |
| 342 | AGA | Jordan Wilson | Allstate | 2018-SC-011442-O | Orange |
| 343 | AGA | Jose Jessup | Allstate | 2018-SC-011034-O | Orange |
| 344 | AGA | Jose Jessup | Allstate | 2018-SC-011463-O | Orange |
| 345 | AGA | Joseph Atkins | Allstate | 2018-SC-011607-O | Orange |
| 346 | AGA | Joseph Culler | Allstate | 2018-SC-011555-O | Orange |
| 347 | AGA | Joseph Dimaio | Allstate | 2018-SC-011469-O | Orange |
| 348 | AGA | Josh Howard | Allstate | 2018-SC-011193-O | Orange |
| 349 | AGA | Juan Alvarado | Allstate | 2018-SC-011690-O | Orange |
| 350 | AGA | Juan Ramirez | Allstate | 2018-SC-011655-O | Orange |
| 351 | AGA | Judith Graumann | Allstate | 2018-SC-011043-O | Orange |
| 352 | AGA | Judy Bedenbaugh | Allstate | 2018-SC-011155-O | Orange |
| 353 | AGA | Julia Austin | Allstate | 2018-SC-011516-O | Orange |
| 354 | AGA | Julie Edwards | Allstate | 2018-SC-011022-O | Orange |
| 355 | AGA | Julie Munderback | Allstate | 2018-SC-011677-O | Orange |
| 356 | AGA | Justin Klinginsmith | Allstate | 2018-SC-011119-O | Orange |
| 357 | AGA | Justin Moulton | Allstate | 2018-SC-011474-O | Orange |
| 358 | AGA | Karen Rockafeller | Allstate | 2018-SC-011256-O | Orange |

| 359 | AGA | Karen Thomas | Allstate | 2018-SC-011611-O | Orange |
|-----|-----|--------------|----------|------------------|--------|
| 360 | AGA | Karl Hartman | Allstate | 2018-SC-011204-O | Orange |
| 361 | AGA | Karren Genuex | Allstate | 2018-SC-011131-O | Orange |
| 362 | AGA | Katherine White | Allstate | 2018-SC-011498-O | Orange |
| 363 | AGA | Kathleen Carrado | Allstate | 2018-SC-011556-O | Orange |
| 364 | AGA | Kathy Golling | Allstate | 2018-SC-011027-O | Orange |
| 365 | AGA | Keith Hill | Allstate | 2018-SC-010992-O | Orange |
| 366 | AGA | Kelsi Hale | Allstate | 2018-SC-011568-O | Orange |
| 367 | AGA | Kenneth Bartell | Allstate | 2018-SC-011197-O | Orange |
| 368 | AGA | Kenneth Plumb | Allstate | 2018-SC-011593-O | Orange |
| 369 | AGA | Kevin Bramlett | Allstate | 2018-SC-011625-O | Orange |
| 370 | AGA | Kevin Herschkowitz | Allstate | 2018-SC-011560-O | Orange |
| 371 | AGA | Kevin House | Allstate | 2018-SC-011591-O | Orange |
| 372 | AGA | Kevin Huffman | Allstate | 2018-SC-011676-O | Orange |
| 373 | AGA | Kevin Miller | Allstate | 2018-SC-011633-O | Orange |
| 374 | AGA | Kevin Reynolds | Allstate | 2018-SC-011432-O | Orange |
| 375 | AGA | Kevin Winkelneyer | Allstate | 2018-SC-011087-O | Orange |
| 376 | AGA | Khurram Bilal | Allstate | 2018-SC-011517-O | Orange |
| 377 | AGA | Kim Hoover | Allstate | 2018-SC-011262-O | Orange |
| 378 | AGA | Kimberly Lovett | Allstate | 2018-SC-011376-O | Orange |
| 379 | AGA | Kion Pearson | Allstate | 2018-SC-011346-O | Orange |
| 380 | AGA | Kristi Pottgieser | Allstate | 2018-SC-011569-O | Orange |
| 381 | AGA | Lacy Feilds | Allstate | 2018-SC-010995-O | Orange |

| 382 | AGA | Ladislav Zerzan | Allstate | 2018-SC-011638-O | Orange |
|-----|-----|-----------------|----------|-------------------|--------|
| 383 | AGA | Lance McAlister | Allstate | 2018-SC-011120-O | Orange |
| 384 | AGA | Launa Fountain | Allstate | 2018-SC-010998-O | Orange |
| 385 | AGA | Lawannah Chordas | Allstate | 2018-SC-011530-O | Orange |
| 386 | AGA | Lee Snodgrass | Allstate | 2018-SC-011440-O | Orange |
| 387 | AGA | Lenford Noble | Allstate | 2018-SC-011046-O | Orange |
| 388 | AGA | Leonard Tucelli | Allstate | 2018-SC-011538-O | Orange |
| 389 | AGA | Lester Smith | Allstate | 2018-SC-011643-O | Orange |
| 390 | AGA | Lila Rodgers | Allstate | 2018-SC-011298-O | Orange |
| 391 | AGA | Linda Finn | Allstate | 2018-SC-011644-O | Orange |
| 392 | AGA | Linda Grant | Allstate | 2018-SC-011195-O | Orange |
| 393 | AGA | Lisa Bahr | Allstate | 2018-SC-011369-O | Orange |
| 394 | AGA | Lisa Brewer | Allstate | 2018-SC-011609-O | Orange |
| 395 | AGA | Lisa Fernadez | Allstate | 2018-SC-011154-O | Orange |
| 396 | AGA | Lisa Flemming | Allstate | 2018-SC-011162-O | Orange |
| 397 | AGA | Lisa Kincaid | Allstate | 2018-SC-011543-O | Orange |
| 398 | AGA | Liz Johnston | Allstate | 2018-SC-011392-O | Orange |
| 399 | AGA | Lloyd Henry | Allstate | 2018-SC-011544-O | Orange |
| 400 | AGA | Lora Cagle | Allstate | 2018-SC-011612-O | Orange |
| 401 | AGA | Lori Nicholson | Allstate | 2018-SC-011617-O | Orange |
| 402 | AGA | Luis Castaneda | Allstate | 2018-SC-011110-O | Orange |
| 403 | AGA | Luis Concilio | Allstate | 2018-SC-011629-O | Orange |
| 404 | AGA | Lynn Favreau | Allstate | 2018-SC-011149-O | Orange |

| 405 | AGA | Mallory Deloach | Allstate | 2018-SC-011109-O | Orange |
|-----|-----|-----------------|----------|-------------------|--------|
| 406 | AGA | Manuel Lago | Allstate | 2018-SC-011157-O | Orange |
| 407 | AGA | Marcia Schuyler | Allstate | 2018-SC-011653-O | Orange |
| 408 | AGA | Margorie Randall | Allstate | 2018-SC-011183-O | Orange |
| 409 | AGA | Maria Leyva | Allstate | 2018-SC-011124-O | Orange |
| 410 | AGA | Marissa Kinhofer | Allstate | 2018-SC-011070-O | Orange |
| 411 | AGA | Mark Albrecht | Allstate | 2018-SC-011147-O | Orange |
| 412 | AGA | Mark Bausch | Allstate | 2018-SC-011457-O | Orange |
| 413 | AGA | Mark Cassidy | Allstate | 2018-SC-011675-O | Orange |
| 414 | AGA | Mark Hiyasapo | Allstate | 2018-SC-011305-O | Orange |
| 415 | AGA | Mark Kester | Allstate | 2018-SC-011047-O | Orange |
| 416 | AGA | Marry Carr | Allstate | 2018-SC-011623-O | Orange |
| 417 | AGA | Marry Kye | Allstate | 2018-SC-011546-O | Orange |
| 418 | AGA | Mary Blanchard | Allstate | 2018-SC-011270-O | Orange |
| 419 | AGA | Mary Johnson | Allstate | 2018-SC-011393-O | Orange |
| 420 | AGA | Mary Johnson | Allstate | 2018-SC-011078-O | Orange |
| 421 | AGA | Matt Clark | Allstate | 2018-SC-011540-O | Orange |
| 422 | AGA | Matthew Peace | Allstate | 2018-SC-011219-O | Orange |
| 423 | AGA | Mazhar Ahmed | Allstate | 2018-SC-010993-O | Orange |
| 424 | AGA | Melanie Magistri | Allstate | 2018-SC-011368-O | Orange |
| 425 | AGA | Melanie Magistri | Allstate | 2018-SC-011396-O | Orange |
| 426 | AGA | Michale Davey | Allstate | 2018-SC-011010-O | Orange |
| 427 | AGA | Miguel Rubio | Allstate | 2018-SC-011267-O | Orange |

| 428 | AGA | Mike Atkins | Allstate | 2018-SC-011040-O | Orange |
|-----|-----|-------------|----------|------------------|--------|
| 429 | AGA | Mike Hopper | Allstate | 2018-SC-011570-O | Orange |
| 430 | AGA | Mike Northcott | Allstate | 2018-SC-011496-O | Orange |
| 431 | AGA | Mildred Crofferd | Allstate | 2018-SC-011652-O | Orange |
| 432 | AGA | Minka Okanovic | Allstate | 2018-SC-011194-O | Orange |
| 433 | AGA | Miriam Cordova | Allstate | 2018-SC-011122-O | Orange |
| 434 | AGA | Monique Martinez | Allstate | 2018-SC-011382-O | Orange |
| 435 | AGA | Monte Sims | Allstate | 2018-SC-011485-O | Orange |
| 436 | AGA | Nancy Criscola | Allstate | 2018-SC-011096-O | Orange |
| 437 | AGA | Nancy Snyder | Allstate | 2018-SC-011487-O | Orange |
| 438 | AGA | Natile Piazza | Allstate | 2018-SC-011220-O | Orange |
| 439 | AGA | Nellie Mohaddes | Allstate | 2018-SC-011545-O | Orange |
| 440 | AGA | Norman Hassan | Allstate | 2018-SC-011549-O | Orange |
| 441 | AGA | Nurl Saberin | Allstate | 2018-SC-011009-O | Orange |
| 442 | AGA | Nyla Griswold | Allstate | 2018-SC-011548-O | Orange |
| 443 | AGA | Oscar Garcia | Allstate | 2018-SC-011207-O | Orange |
| 444 | AGA | Pam Mazzetti | Allstate | 2018-SC-011205-O | Orange |
| 445 | AGA | Patricia Gabarae | Allstate | 2018-SC-011306-O | Orange |
| 446 | AGA | Paul Thibodeau | Allstate | 2018-SC-011006-O | Orange |
| 447 | AGA | Paul Whalen | Allstate | 2018-SC-011528-O | Orange |
| 448 | AGA | Penny Kasper | Allstate | 2018-SC-011650-O | Orange |
| 449 | AGA | Peter Lezin | Allstate | 2018-SC-013377-O | Orange |
| 450 | AGA | Phillip Meyer | Allstate | 2018-SC-011206-O | Orange |

| 451 | AGA | Raffeal Leamus | Allstate | 2018-SC-011125-O | Orange |
|------|-----|----------------|----------|------------------|--------|
| 452 | AGA | Randy Poindexter | Allstate | 2018-SC-011605-O | Orange |
| 453 | AGA | Rasheen Woodfaulk | Allstate | 2018-SC-011492-O | Orange |
| 454 | AGA | Rashmika Patel | Allstate | 2018-SC-011221-O | Orange |
| 455 | AGA | Raymond Clark | Allstate | 2018-SC-011533-O | Orange |
| 456 | AGA | Rebecca King | Allstate | 2018-SC-011309-O | Orange |
| 457 | AGA | Richard Villodas | Allstate | 2018-SC-011311-O | Orange |
| 458 | AGA | Rick Wester | Allstate | 2018-SC-011054-O | Orange |
| 459 | AGA | Rob Breeden | Allstate | 2018-SC-011621-O | Orange |
| 460 | AGA | Robert Beasley | Allstate | 2018-SC-011671-O | Orange |
| 461 | AGA | Robert Breen | Allstate | 2018-SC-011523-O | Orange |
| 462 | AGA | Robert Labonte | Allstate | 2018-SC-011551-O | Orange |
| 463 | AGA | Robert Tedeschi | Allstate | 2018-SC-011438-O | Orange |
| 464 | AGA | Robert Zagorsky | Allstate | 2018-SC-010999-O | Orange |
| 465 | AGA | Robin Colbert | Allstate | 2018-SC-011590-O | Orange |
| 466 | AGA | Rocky Coate | Allstate | 2018-SC-011550-O | Orange |
| 467 | AGA | Ron Fairman | Allstate | 2018-SC-011012-O | Orange |
| 468 | AGA | Ron Kavula | Allstate | 2018-SC-011130-O | Orange |
| 469 | AGA | Ron Ryder | Allstate | 2018-SC-011348-O | Orange |
| 470 | AGA | Ronald Beverly | Allstate | 2018-SC-011185-O | Orange |
| 471 | AGA | Russ Gibbs | Allstate | 2018-SC-011433-O | Orange |
| 472 | AGA | Ryan Oakley | Allstate | 2018-SC-011373-O | Orange |
| 473 | AGA | Sabahat Khan | Allstate | 2018-SC-011265-O | Orange |

| 474 | AGA | Sam Quiros | Allstate | 2018-SC-011011-O | Orange |
|------|-----|------------|----------|--------------------|--------|
| 475 | AGA | Sam Tillman | Allstate | 2018-SC-011209-O | Orange |
| 476 | AGA | Sara Carter | Allstate | 2018-SC-011021-O | Orange |
| 477 | AGA | Sara Myer | Allstate | 2018-SC-011571-O | Orange |
| 478 | AGA | Sean Isaacs | Allstate | 2018-SC-010996-O | Orange |
| 479 | AGA | Sean Johnson | Allstate | 2018-SC-011051-O | Orange |
| 480 | AGA | Sean Overton | Allstate | 2018-SC-011028-O | Orange |
| 481 | AGA | Sean Reams | Allstate | 2018-SC-011349-O | Orange |
| 482 | AGA | Sergio Coronado | Allstate | 2018-SC-011005-O | Orange |
| 483 | AGA | Shana Gerwens | Allstate | 2018-SC-011280-O | Orange |
| 484 | AGA | Sharon Brooks | Allstate | 2018-SC-011614-O | Orange |
| 485 | AGA | Sharon Edwards | Allstate | 2018-SC-011618-O | Orange |
| 486 | AGA | Sharrell Portocarrero | Allstate | 2018-SC-011055-O | Orange |
| 487 | AGA | Shaun Mathews | Allstate | 2018-SC-011584-O | Orange |
| 488 | AGA | Sheila Banks | Allstate | 2018-SC-011619-O | Orange |
| 489 | AGA | Shelly Crannell | Allstate | 2018-SC-011001-O | Orange |
| 490 | AGA | Sherman Miller | Allstate | 2018-SC-011651-O | Orange |
| 491 | AGA | Stacy Cothron | Allstate | 2018-SC-011037-O | Orange |
| 492 | AGA | Steffinie Flowers | Allstate | 2018-SC-011211-O | Orange |
| 493 | AGA | Stephanie Macwhinnie | Allstate | 2018-SC-011257-O | Orange |
| 494 | AGA | Stephen Pagano | Allstate | 2018-SC-011196-O | Orange |
| 495 | AGA | Steve Terreol | Allstate | 2018-SC-011049-O | Orange |
| 496 | AGA | Steven Molinowski | Allstate | 2018-SC-011143-O | Orange |

| 497 | AGA | Suadfad Ali | Allstate | 2018-SC-011522-O | Orange |
|-----|-----|-------------|----------|------------------|--------|
| 498 | AGA | Sudhir Shah | Allstate | 2018-SC-011273-O | Orange |
| 499 | AGA | Tam Churchill | Allstate | 2018-SC-011524-O | Orange |
| 500 | AGA | Tamas Kiss | Allstate | 2018-SC-011319-O | Orange |
| 501 | AGA | Tamas Kiss | Allstate | 2018-SC-011323-O | Orange |
| 502 | AGA | Tamas Kiss | Allstate | 2018-SC-011324-O | Orange |
| 503 | AGA | Tami Trejos | Allstate | 2018-SC-011645-O | Orange |
| 504 | AGA | Tamilyn McCray | Allstate | 2018-SC-011199-O | Orange |
| 505 | AGA | Tammy Farabee | Allstate | 2018-SC-011532-O | Orange |
| 506 | AGA | Tammy Keough | Allstate | 2018-SC-011276-O | Orange |
| 507 | AGA | Terrence Burke | Allstate | 2018-SC-011531-O | Orange |
| 508 | AGA | Thaddeus Mack | Allstate | 2018-SC-010982-O | Orange |
| 509 | AGA | Thaddeus Mack | Allstate | 2018-SC-011434-O | Orange |
| 510 | AGA | Thomas Edwards | Allstate | 2018-SC-011325-O | Orange |
| 511 | AGA | Thomas Hillbreth | Allstate | 2018-SC-011657-O | Orange |
| 512 | AGA | Thomas Kitchen | Allstate | 2018-SC-011015-O | Orange |
| 513 | AGA | Thomas McDonaugh | Allstate | 2018-SC-011198-O | Orange |
| 514 | AGA | Thomas Scandaliato | Allstate | 2018-SC-011403-O | Orange |
| 515 | AGA | Thomas Wooters | Allstate | 2018-SC-011574-O | Orange |
| 516 | AGA | Thuy Nguyen | Allstate | 2018-SC-011271-O | Orange |
| 517 | AGA | Tim Caruso | Allstate | 2018-SC-011144-O | Orange |
| 518 | AGA | Tim Coughlin | Allstate | 2018-SC-011622-O | Orange |
| 519 | AGA | Tim Harrington | Allstate | 2018-SC-011642-O | Orange |

| 520 | AGA | Todd Grantham | Allstate | 2018-SC-011048-O | Orange |
|-----|-----|---------------|----------|------------------|--------|
| 521 | AGA | Tom Gottberg | Allstate | 2018-SC-011153-O | Orange |
| 522 | AGA | Tom Sanderson | Allstate | 2018-SC-011159-O | Orange |
| 523 | AGA | Tommy Lee Tiller | Allstate | 2018-SC-011407-O | Orange |
| 524 | AGA | Tony Croph | Allstate | 2018-SC-011537-O | Orange |
| 525 | AGA | Tony Rodriguz | Allstate | 2018-SC-011579-O | Orange |
| 526 | AGA | Tonya Dando | Allstate | 2018-SC-011616-O | Orange |
| 527 | AGA | Travis Smith | Allstate | 2018-SC-011401-O | Orange |
| 528 | AGA | Vanine Rivas | Allstate | 2018-SC-011187-O | Orange |
| 529 | AGA | Vanna Prak | Allstate | 2018-SC-011222-O | Orange |
| 530 | AGA | Vaughn Haight | Allstate | 2018-SC-011552-O | Orange |
| 531 | AGA | Vincent Scevola | Allstate | 2018-SC-011398-O | Orange |
| 532 | AGA | Virgine Nicodeme | Allstate | 2018-SC-011573-O | Orange |
| 533 | AGA | Walter Cevallos | Allstate | 2018-SC-011534-O | Orange |
| 534 | AGA | William Barz | Allstate | 2018-SC-011313-O | Orange |
| 535 | AGA | William Clark | Allstate | 2018-SC-011264-O | Orange |
| 536 | AGA | William Harrison | Allstate | 2018-SC-011656-O | Orange |
| 537 | AGA | William Resch | Allstate | 2018-SC-011575-O | Orange |
| 538 | AGA | William Watkins | Allstate | 2018-SC-011581-O | Orange |
| 539 | AGA | Yaffa Spieler | Allstate | 2018-SC-011436-O | Orange |
| 540 | AGA | Yojim Kim | Allstate | 2018-SC-011649-O | Orange |
| 541 | AGA | Zack Horl | Allstate | 2018-SC-011525-O | Orange |
| 542 | AGA | Bradley Brinson | Allstate | 2017-SC-006144-O | Orange |

| 543 | AGA | Crissy Alverez-Scott | Allstate | 2017-SC-006145-O | Orange |
|------|-----|----------------------|----------|-------------------|--------|
| 544 | AGA | Daniel Benavives | Allstate | 2017-SC-006147-O | Orange |
| 545 | AGA | Alicia Gonzalez | Allstate | 2017-SC-006235-O | Orange |
| 546 | AGA | Anna Brown | Allstate | 2017-SC-006236-O | Orange |
| 547 | AGA | Breanna Doran | Allstate | 2017-SC-006237-O | Orange |
| 548 | AGA | Charles Hoffman | Allstate | 2017-SC-006238-O | Orange |
| 549 | AGA | Charles Hoffman | Allstate | 2017-SC-006255-O | Orange |
| 550 | AGA | Elizabeth Haynes | Allstate | 2017-SC-006273-O | Orange |
| 551 | AGA | Eugene Broker | Allstate | 2017-SC-006276-O | Orange |
| 552 | AGA | George Caruther | Allstate | 2017-SC-006297-O | Orange |
| 553 | AGA | Harrold Hutto | Allstate | 2017-SC-006299-O | Orange |
| 554 | AGA | Lisa Kerr | Allstate | 2017-SC-006310-O | Orange |
| 555 | AGA | Heather Collins | Allstate | 2017-SC-006314-O | Orange |
| 556 | AGA | Jacklyn Jones | Allstate | 2017-SC-006317-O | Orange |
| 557 | AGA | James Conley | Allstate | 2017-SC-006321-O | Orange |
| 558 | AGA | Jeff Boisvert | Allstate | 2017-SC-006325-O | Orange |
| 559 | AGA | Jene Foresythe | Allstate | 2017-SC-006328-O | Orange |
| 560 | AGA | Jimmy Huddleston | Allstate | 2017-SC-006331-O | Orange |
| 561 | AGA | Joe Broadus | Allstate | 2017-SC-006343-O | Orange |
| 562 | AGA | Joe Dedea | Allstate | 2017-SC-006344-O | Orange |
| 563 | AGA | John Hunkler | Allstate | 2017-SC-006349-O | Orange |
| 564 | AGA | Jorge Fadhel | Allstate | 2017-SC-006350-O | Orange |
| 565 | AGA | Jorge Fadhel | Allstate | 2017-SC-006352-O | Orange |

| 566 | AGA | Juliana Geraells-James | Allstate | 2017-SC-006355-O | Orange |
|------|-----|------------------------|----------|-------------------|--------|
| 567 | AGA | Kouassi Dansou | Allstate | 2017-SC-006357-O | Orange |
| 568 | AGA | Margery Charles | Allstate | 2017-SC-006365-O | Orange |
| 569 | AGA | Mark Ban-Kouteren | Allstate | 2017-SC-006368-O | Orange |
| 570 | AGA | Marlow Gilbert | Allstate | 2017-SC-006371-O | Orange |
| 571 | AGA | Marry Brooks | Allstate | 2017-SC-006376-O | Orange |
| 572 | AGA | Melinda Hamlin | Allstate | 2017-SC-006377-O | Orange |
| 573 | AGA | Nicholas Bohn | Allstate | 2017-SC-006378-O | Orange |
| 574 | AGA | Paul Hunter | Allstate | 2017-SC-006380-O | Orange |
| 575 | AGA | Robert Johnson | Allstate | 2017-SC-006382-O | Orange |
| 576 | AGA | Robert Keys | Allstate | 2017-SC-006383-O | Orange |
| 577 | AGA | Robin Edwards | Allstate | 2017-SC-006385-O | Orange |
| 578 | AGA | Shauna Atwell | Allstate | 2017-SC-006412-O | Orange |
| 579 | AGA | Sophia Brinson | Allstate | 2017-SC-006417-O | Orange |
| 580 | AGA | Steve Carlton | Allstate | 2017-SC-006420-O | Orange |
| 581 | AGA | Steve Gilliam | Allstate | 2017-SC-006429-O | Orange |
| 582 | AGA | Sydney Curry-Scott | Allstate | 2017-SC-006433-O | Orange |
| 583 | AGA | Tom Edwards | Allstate | 2017-SC-006450-O | Orange |
| 584 | AGA | Tom Hayes | Allstate | 2017-SC-006461-O | Orange |
| 585 | AGA | Victor Deogracia | Allstate | 2017-SC-006525-O | Orange |
| 586 | AGA | Van Johnson | Allstate | 2015-SC-014029-O | Orange |
| 587 | AGA | Eric Johnson | Allstate | 2018-SC-01003-O | Orange |
| 588 | AGA | Kimberly Sweat | Allstate | cono16-009155(73) | Broward |

| 589 | AGA | Lance Snodgrass | Allstate | cono16-009154(73) | Broward |
|------|-----|-----------------|----------|-------------------|---------|
| 590 | AGA | Dianne Wiseman | Allstate | cono16-009153(73) | Broward |
| 591 | AGA | Sharlen Lewis | Allstate | cono16-009152(73) | Broward |
| 592 | AGA | Richard Park | Allstate | cono16-009151(73) | Broward |
| 593 | AGA | Elizabeth Stevenson | Allstate | cono16-009148(73) | Broward |
| 594 | AGA | Randy Hanson | Allstate | cono16-009145(73) | Broward |
| 595 | AGA | Samuel Puhr | Allstate | cono16-009147(73) | Broward |
| 596 | AGA | Brent Alapa | Allstate | cono16-009146(73) | Broward |
| 597 | AGA | Shirley Doerr | Allstate | cono16-009149(73) | Broward |
| 598 | AGA | Advanced Lighting | Allstate | cono17-001123(73) | Broward |
| 599 | AGA | Maria Spainhoward | Allstate | cono17-001124(73) | Broward |
| 600 | AGA | William Schanck | Allstate | 18-cc-010125(M) | Hillsborough |
| 601 | AGA | Anne Nolting | Allstate | 18-cc-010124(M) | Hillsborough |
| 602 | AGA | Kelly Tyrnell | Allstate | 18-cc-010246(K) | Hillsborough |
| 603 | AGA | Kathleen Hammock | Allstate | 18-cc-010249(H) | Hillsborough |
| 604 | AGA | Christina Manriquez | Allstate | 18-CC-001064(H) | Hillsborough |
| 605 | AGA | Lilia Lombardi | Allstate | 17-cc-039243(M) | Hillsborough |
| 606 | AGA | Mary Hill | Allstate | 17-cc-039242(M) | Hillsborough |
| 607 | AGA | Sonia Cerlli | Allstate | 17-cc-039241(M) | Hillsborough |
| 608 | AGA | Jackie Hinger | Allstate | 17-cc-039240(M) | Hillsborough |
| 609 | AGA | Jason Sampson | Allstate | 17-cc-039777(J) | Hillsborough |
| 610 | AGA | Jill Neese | Allstate | 17-cc-039778(J) | Hillsborough |
| 611 | AGA | Bettsi Hernandez | Allstate | 17-cc-039725(I) | Hillsborough |
| 612 | AGA | John Bellin | Allstate | 17-cc-039718(M) | Hillsborough |
| 613 | AGA | Karl Peterson | Allstate | 17-cc-039716(M) | Hillsborough |
| 614 | AGA | Logan Skyllas | Allstate | 17-cc-040146(I) | Hillsborough |
| 615 | AGA | Goffredo D'Addieco | Allstate | 17-cc-040144(H) | Hillsborough |
| 616 | AGA | Richard Hogan | Allstate | 17-cc-040163(L) | Hillsborough |
| 617 | AGA | Roberta Mccauley | Allstate | 17-cc-040189(L) | Hillsborough |
| 618 | AGA | Reece Skelton | Allstate | 17-cc-040222(M) | Hillsborough |
| 619 | AGA | Crystal Carroll | Allstate | 17-cc-040171(I) | Hillsborough |

| 620 | AGA | Lucas Shuman | Allstate | 17-cc-040169(H) | Hillsborough |
|-----|-----|--------------|----------|-----------------|--------------|
| 621 | AGA | William White | Allstate | 17-cc-040165(I) | Hillsborough |
| 622 | AGA | Vaughn Lickenfelt | Allstate | 17-cc-040141(H) | Hillsborough |
| 623 | AGA | Chris Lee | Allstate | 17-cc-041817(I) | Hillsborough |
| 624 | AGA | Karen Patterson | Allstate | 17-cc-041818(M) | Hillsborough |
| 625 | AGA | Anthony Cuozzo | Allstate | 17-cc-042291(M) | Hillsborough |
| 626 | AGA | OC Johnson | Allstate | 17-cc-042215(J) | Hillsborough |
| 627 | AGA | Tamra Weyers-Patrick | Allstate | 17-cc-042218(I) | Hillsborough |
| 628 | AGA | Jessica Breden | Allstate | 17-cc-042220(J) | Hillsborough |
| 629 | AGA | Ernest Outlaw | Allstate | 17-cc-041819(H) | Hillsborough |
| 630 | AGA | Ernest Outlaw 2 | Allstate | 17-cc-041820(I) | Hillsborough |
| 631 | AGA | Jacinda Gundzik | Allstate | 17-cc-041821(M) | Hillsborough |
| 632 | AGA | Jay Fox | Allstate | 17-cc-041822(M) | Hillsborough |
| 633 | AGA | Nestaly Flores | Allstate | 17-cc-041824(U) | Hillsborough |
| 634 | AGA | Norm Wilson | Allstate | 17-cc-041823(I) | Hillsborough |
| 635 | AGA | Dennis Davis | Allstate | 17-cc-041825(H) | Hillsborough |
| 636 | AGA | Melissa Fitzsimons | Allstate | 17-cc-041826(I) | Hillsborough |
| 637 | AGA | Shane Williams | Allstate | 17-cc-042937(H) | Hillsborough |
| 638 | AGA | Classic Glass and Mirror | Allstate | 17-cc-042935(L) | Hillsborough |
| 639 | AGA | Aaron Krzysik | Allstate | 17-cc-042933(K) | Hillsborough |
| 640 | AGA | Stacry Moses | Allstate | 17-cc-043391(K) | Hillsborough |
| 641 | AGA | Janet Lane | Allstate | 17-cc-043393(L) | Hillsborough |
| 642 | AGA | Shane Williams 2 | Allstate | 17-cc-043395(M) | Hillsborough |
| 643 | AGA | Emmitt Wooten | Allstate | 17-cc-044602(I) | Hillsborough |
| 644 | AGA | Sandra Ashkenazi | Allstate | 17-cc-044603(L) | Hillsborough |
| 645 | AGA | Tyler Stephen | Allstate | 17-cc-044604(I) | Hillsborough |
| 646 | AGA | Donald Sines | Allstate | 17-cc-045016(L) | Hillsborough |
| 647 | AGA | Elana Harabagiu | Allstate | 17-cc-044976(M) | Hillsborough |
| 648 | AGA | Jose Delgato | Allstate | 17-cc-044974(I) | Hillsborough |
| 649 | AGA | Michael Kwiecinski | Allstate | 17-cc-044970(M) | Hillsborough |
| 650 | AGA | Richard Conway | Allstate | 17-cc-46339(M) | Hillsborough |
| 651 | AGA | Robin Kerns | Allstate | 17-cc-46340(I) | Hillsborough |
| 652 | AGA | JTS Landscaping & Joddy Naiby | Allstate | 17-cc-46341(I) | Hillsborough |
| 653 | AGA | Aroon Klunthong | Allstate | 17-cc-46338(M) | Hillsborough |
| 654 | AGA | Aroon Klunthong 2 | Allstate | 17-cc-46337(M) | Hillsborough |
| 655 | AGA | Hector Soto | Allstate | 17-cc-46457(L) | Hillsborough |
| 656 | AGA | Jesse Bailey | Allstate | 17-cc-46454(M) | Hillsborough |

| 657 | AGA | Phil Marguriet | Allstate | 17-cc-46447(K) | Hillsborough |
|-----|-----|----------------|----------|----------------|--------------|
| 658 | AGA | Taylor Vargas | Allstate | 17-cc-46456(K) | Hillsborough |
| 659 | AGA | Rafiel & Casey Diaz | Allstate | 17-cc-47691(M) | Hillsborough |
| 660 | AGA | Steve Star | Allstate | 17-cc-47699(H) | Hillsborough |
| 661 | AGA | Ashton Scaccia 2 | Allstate | 17-cc-47690(H) | Hillsborough |
| 662 | AGA | Ashton Scaccia | Allstate | 17-cc-47688(M) | Hillsborough |
| 663 | AGA | Donna Earnest | Allstate | 17-cc-47687(H) | Hillsborough |
| 664 | AGA | Joshua Mondry | Allstate | 17-cc-47680(M) | Hillsborough |
| 665 | AGA | Cynthia Chetlain | Allstate | 17-cc-47678(H) | Hillsborough |
| 666 | AGA | Simone Bonaparte | Allstate | 17-cc-47675(J) | Hillsborough |
| 667 | AGA | Garrett Richadson | Allstate | 17-cc-47674(M) | Hillsborough |
| 668 | AGA | Jeff Lightburn | Allstate | 17-cc-47659(H) | Hillsborough |
| 669 | AGA | William Friend | Allstate | 17-cc-47658(J) | Hillsborough |
| 670 | AGA | Michael Simonetti | Allstate | 17-cc-48388(I) | Hillsborough |
| 671 | AGA | Clayton Speere | Allstate | 17-cc-48392(I) | Hillsborough |
| 672 | AGA | Maria Mueller | Allstate | 17-cc-48393(J) | Hillsborough |
| 673 | AGA | Margarita Lamboy | Allstate | 17-cc-48390(I) | Hillsborough |
| 674 | AGA | Gabrielle Bishop | Allstate | 17-cc-48397(J) | Hillsborough |
| 675 | AGA | Wesley Small | Allstate | 17-cc-047701(I) | Hillsborough |
| 676 | AGA | Forrest Martinez | Allstate | 17-cc-50255(M) | Hillsborough |
| 677 | AGA | Greg Miller | Allstate | 17-cc-050489(H) | Hillsborough |
| 678 | AGA | Joan Wegner | Allstate | 17-cc-050492(I) | Hillsborough |
| 679 | AGA | Richard Mcconnell | Allstate | 17-cc-50313(M) | Hillsborough |
| 680 | AGA | Kevin Santos | Allstate | 17-cc-50315(L) | Hillsborough |
| 681 | AGA | Joe Samus | Allstate | 17-cc-50335(L) | Hillsborough |
| 682 | AGA | Crystal Gavin | Allstate | 17-cc-050528(M) | Hillsborough |
| 683 | AGA | Tom Conner | Allstate | 17-cc-52033(I) | Hillsborough |
| 684 | AGA | Josh Smith | Allstate | 17-cc-52032(K) | Hillsborough |
| 685 | AGA | Jeff Robison | Allstate | 17-cc-52031(K) | Hillsborough |
| 686 | AGA | Tracy Parker | Allstate | 17-cc-52021(I) | Hillsborough |
| 687 | AGA | Donna Paradise | Allstate | 17-cc-52023(L) | Hillsborough |
| 688 | AGA | Thomas Bergland | Allstate | 17-cc-52025(M) | Hillsborough |
| 689 | AGA | Victoria Elder | Allstate | 17-cc-52027(H) | Hillsborough |
| 690 | AGA | Jason Kristowski | Allstate | 17-cc-52028(H) | Hillsborough |
| 691 | AGA | Daniel Balilia | Allstate | 17-cc-52029(H) | Hillsborough |
| 692 | AGA | Margarita Lamboy | Allstate | 17-cc-052513(I) | Hillsborough |
| 693 | AGA | Randy Stover | Allstate | coso16-010629(62) | Broward |
| 694 | AGA | Darci Bostrom | Allstate | coso16-010627(62) | Broward |

| 695 | AGA | John Azaria | Allstate | cowe16-015520(81) | Broward |
| 696 | AGA | Lester Finotti | Allstate | cowe16-015518(81) | Broward |
| 697 | AGA | Christina Trunz | Allstate | cowe16-015519(81) | Broward |
| 698 | AGA | George Smetzer | Allstate | cowe16-015524(81) | Broward |
| 699 | AGA | Phillippe Soucy | Allstate | cowe16-015525(81) | Broward |
| 700 | AGA | Mark Snider | Allstate | cowe16-015528(81) | Broward |
| 701 | AGA | Arai Triguero | Allstate | cowe16-015529(81) | Broward |
| 702 | AGA | Dawnmarie Lario | Allstate | cowe16-015531(81) | Broward |
| 703 | AGA | Fred Capriglione | Allstate | cowe16-015530(81) | Broward |
| 704 | AGA | Mark Stayer | Allstate | cowe16-015526(81) | Broward |
| 705 | AGA | Robert Mannion | Allstate | coso16-010942(60) | Broward |
| 706 | AGA | George Vouvalis | Allstate | coso16-010948(60) | Broward |
| 707 | AGA | Rene Atzigen | Allstate | coso16-010952(60) | Broward |
| 708 | AGA | Regina Simon | Allstate | coso16-010957(60) | Broward |
| 709 | AGA | Heather Vickers | Allstate | coso16-010958(60) | Broward |
| 710 | AGA | Lisa Jones | Allstate | coso16-010954(60) | Broward |
| 711 | AGA | Antoin Dinguall | Allstate | coso16-010818(60) | Broward |
| 712 | AGA | CNR Air | Allstate | cowe16-015777(82) | Broward |
| 713 | AGA | Patrick Sterling | Allstate | cowe16-015774(82) | Broward |
| 714 | AGA | Mitchell Westlund | Allstate | cowe16-015781(82) | Broward |
| 715 | AGA | Anne Smith | Allstate | cowe16-015778(82) | Broward |
| 716 | AGA | April Moore | Allstate | cowe16-015762(82) | Broward |
| 717 | AGA | Joelle Thomas | Allstate | cowe16-015763(82) | Broward |

| 718 | AGA | Joyson Mathew | Allstate | cowe16-015761(82) | Broward |
|-----|-----|---------------|----------|-------------------|---------|
| 719 | AGA | Shannon Hammer | Allstate | cowe16-015764(82) | Broward |
| 720 | AGA | James Woodring | Allstate | cowe16-015767(82) | Broward |
| 721 | AGA | Shelby Plante | Allstate | cowe16-015765(82) | Broward |
| 722 | AGA | Mark Cotter | Allstate | cowe16-015744(82) | Broward |
| 723 | AGA | Julius Engel | Allstate | coso16-011115(61) | Broward |
| 724 | AGA | George Mcmillen | Allstate | coso16-011120(61) | Broward |
| 725 | AGA | Magerita Sanfiel | Allstate | coso16-011107(61) | Broward |
| 726 | AGA | Mary Hutton | Allstate | cowe16-016432(80) | Broward |
| 727 | AGA | Sam Heyes | Allstate | cono16-010061(71) | Broward |
| 728 | AGA | Veronica Sequieira | Allstate | cono16-010059(71) | Broward |
| 729 | AGA | Natascha Haug | Allstate | coso16-012995(62) | Broward |
| 730 | AGA | Susan Fitzgerald | Allstate | coso16-013002(62) | Broward |
| 731 | AGA | Susane Peterson | Allstate | coso16-012996(62) | Broward |
| 732 | AGA | Yuter Chen | Allstate | coso16-012978(62) | Broward |
| 733 | AGA | Kathy Coogan | Allstate | cowe16-017973(83) | Broward |
| 734 | AGA | Frances Childs | Allstate | cowe16-017972(83) | Broward |
| 735 | AGA | Alex Nikolich | Allstate | cowe16-017971(83) | Broward |
| 736 | AGA | Harry Free | Allstate | cowe16-017968(83) | Broward |
| 737 | AGA | Stacia Clowse | Allstate | cowe16-017967(83) | Broward |
| 738 | AGA | Lierin Reinhard | Allstate | cono16-010139(71) | Broward |
| 739 | AGA | Josh Whitney | Allstate | cono16-010138(71) | Broward |
| 740 | AGA | Kenneth Luty | Allstate | cono16-010137(71) | Broward |

| 741 | AGA | Robert Ricci | Allstate | cono16-010126(71) | Broward |
| 742 | AGA | Kimberly Jernigan | Allstate | cono16-010135(71) | Broward |
| 743 | AGA | Joe Mclean | Allstate | coso16-013187(60) | Broward |
| 744 | AGA | Kristen Rowe | Allstate | coso16-013181(60) | Broward |
| 745 | AGA | Tarik Ahmetagic | Allstate | coso16-013180(60) | Broward |
| 746 | AGA | Harry Free 2 | Allstate | coso16-013184(60) | Broward |
| 747 | AGA | Kathy Coogan 2 | Allstate | coso16-013171(60) | Broward |
| 748 | AGA | Leeroy Brown Barber | Allstate | cowe16-018178(83) | Broward |
| 749 | AGA | Mark Miller | Allstate | cowe16-018177(83) | Broward |
| 750 | AGA | Donald Lloyd | Allstate | cowe16-018176(83) | Broward |
| 751 | AGA | George Wright | Allstate | cono16-010181(71) | Broward |
| 752 | AGA | Gregory Mcelveen | Allstate | cono16-010183(71) | Broward |
| 753 | AGA | James Jones | Allstate | cono16-010180(71) | Broward |
| 754 | AGA | Larry Slater | Allstate | cono16-010182(71) | Broward |
| 755 | AGA | Richard Thomas | Allstate | cowe16-018242(80) | Broward |
| 756 | AGA | John Fragomeni | Allstate | cowe16-018241(80) | Broward |
| 757 | AGA | Kameria Lemke | Allstate | cono16-010208(71) | Broward |
| 758 | AGA | Matthew Young | Allstate | coso16-013329(60) | Broward |
| 759 | AGA | Marvin Rodriguez | Allstate | coso16-013325(60) | Broward |
| 760 | AGA | Dan Kenyon | Allstate | coso16-013328(60) | Broward |
| 761 | AGA | Thomas Baldwin | Allstate | coso16-013326(60) | Broward |
| 762 | AGA | Matthew Young 2 | Allstate | coso16-013317(60) | Broward |
| 763 | AGA | Avony Acasio | Allstate | cono16-010291(72) | Broward |

| 764 | AGA | Donna Lind | Allstate | cono16-010296(72) | Broward |
| 765 | AGA | Wilma Lynch | Allstate | cono16-010297(72) | Broward |
| 766 | AGA | Michael Hedden | Allstate | cono16-010298(72) | Broward |
| 767 | AGA | Mitch Fox | Allstate | cono16-010299(72) | Broward |
| 768 | AGA | Alex Lavender | Allstate | cono16-010301(72) | Broward |
| 769 | AGA | Omar Barbian | Allstate | cono16-010306(72) | Broward |
| 770 | AGA | Dorlan Dillion | Allstate | cono16-010310(72) | Broward |
| 771 | AGA | Franklin Drennon | Allstate | cono16-010302(72) | Broward |
| 772 | AGA | Alex Hudson | Allstate | cono16-010303(72) | Broward |
| 773 | AGA | Oscar Meneses | Allstate | cono16-010304(72) | Broward |
| 774 | AGA | Sheldon Lubie | Allstate | cono16-010305(72) | Broward |
| 775 | AGA | Michael Iemma | Allstate | cowe16-018407(80) | Broward |
| 776 | AGA | Jessica Hilliard | Allstate | cowe16-018408(80) | Broward |
| 777 | AGA | Gary Whetley | Allstate | cowe16-018410(80) | Broward |
| 778 | AGA | Luis Garcia | Allstate | cowe16-018412(80) | Broward |
| 779 | AGA | Pam Davis | Allstate | cowe16-018411(80) | Broward |
| 780 | AGA | Lesley Mastalerz | Allstate | cowe16-018414(80) | Broward |
| 781 | AGA | Patricia Johnston | Allstate | cowe16-018413(80) | Broward |
| 782 | AGA | Tiffany Hall | Allstate | cowe16-018418(80) | Broward |
| 783 | AGA | Caitlin Evans | Allstate | cowe16-018417(80) | Broward |
| 784 | AGA | Roberta Moss | Allstate | cowe16-018419(80) | Broward |
| 785 | AGA | Craig Chapman 2 | Allstate | cowe16-018422(80) | Broward |
| 786 | AGA | Thomas Drum | Allstate | cowe16-018420(80) | Broward |

| 787 | AGA | Lesley Mastalerz 2 | Allstate | cowe16-018421(80) | Broward |
|-----|-----|--------------------|----------|-------------------|---------|
| 788 | AGA | James Linus | Allstate | coso16-013636(61) | Broward |
| 789 | AGA | Jamie Charrier | Allstate | coso16-013632(61) | Broward |
| 790 | AGA | Delta One | Allstate | coso16-013634(61) | Broward |
| 791 | AGA | Carolyn Eaton | Allstate | coso16-013631(61) | Broward |
| 792 | AGA | Mark Jackson | Allstate | coso16-013609(61) | Broward |
| 793 | AGA | Pat Lundy | Allstate | coso16-013627(61) | Broward |
| 794 | AGA | Guadalupe Sierra | Allstate | coso16-013629(61) | Broward |
| 795 | AGA | Mike Clark | Allstate | coso16-013613(61) | Broward |
| 796 | AGA | Eleanor Nichols | Allstate | coso16-013607(61) | Broward |
| 797 | AGA | Fred Lamarre | Allstate | coso16-013610(61) | Broward |
| 798 | AGA | Winston Da Silva | Allstate | coso16-013621(61) | Broward |
| 799 | AGA | Tiffany Hall 2 | Allstate | coso16-013614(61) | Broward |
| 800 | AGA | Walter Connell | Allstate | coso16-013618(61) | Broward |
| 801 | AGA | Susan Blanton | Allstate | coso16-013575(61) | Broward |
| 802 | AGA | Don Barnett | Allstate | coso17-000016(61) | Broward |
| 803 | AGA | Jeff Smith | Allstate | coso17-000017(61) | Broward |
| 804 | AGA | Rubin Tapia 2 | Allstate | coso17-000015(61) | Broward |
| 805 | AGA | Marcia Gillespie | Allstate | coso17-000007(61) | Broward |
| 806 | AGA | Dawn Mueller | Allstate | cowe17-001669(83) | Broward |
| 807 | AGA | Debra Hank | Allstate | cowe17-001671(83) | Broward |
| 808 | AGA | William Leclair | Allstate | cowe17-001670(83) | Broward |
| 809 | AGA | Jose Rubio | Allstate | cowe17-001665(83) | Broward |

| 810 | AGA | Andy Vu | Allstate | cowe17-001666(83) | Broward |
| 811 | AGA | Erica Gantley | Allstate | cono17-001041(72) | Broward |
| 812 | AGA | James Mayer | Allstate | cono17-001040(72) | Broward |
| 813 | AGA | Leanne Galley | Allstate | cono17-001044(72) | Broward |
| 814 | AGA | Valerie White | Allstate | cono17-001043(72) | Broward |
| 815 | AGA | Mike Rose | Allstate | coso17-001601(61) | Broward |
| 816 | AGA | Dean Dove | Allstate | coso17-001620(61) | Broward |
| 817 | AGA | Bradley Stewart | Allstate | coso17-001621(61) | Broward |
| 818 | AGA | Henry Salazar | Allstate | coso17-001522(61) | Broward |
| 819 | AGA | Bridgett Myers | Allstate | coso17-001625(61) | Broward |
| 820 | AGA | Cuenya Contruction Company 1 | Allstate | cowe17-002067(81) | Broward |
| 821 | AGA | Keeneth Borruso | Allstate | cowe17-002068(81) | Broward |
| 822 | AGA | Mike Pfeiffer | Allstate | cowe17-002082(81) | Broward |
| 823 | AGA | Alexander Oneall | Allstate | cowe17-002080(81) | Broward |
| 824 | AGA | Victor Del Prete | Allstate | cowe17-002083(81) | Broward |
| 825 | AGA | Cuenya Contruction Company 2 | Allstate | cono17-001119(73) | Broward |
| 826 | AGA | Cuenya Contruction Company 3 | Allstate | cono17-001120(73) | Broward |
| 827 | AGA | Dorothy Mundt | Allstate | cono17-001122(73) | Broward |
| 828 | AGA | Tyler Spivey | Allstate | cowe17-002368(83) | Broward |
| 829 | AGA | James Nobles | Allstate | cowe17-002367(83) | Broward |
| 830 | AGA | Fransico Hernadez | Allstate | cowe17-002366(83) | Broward |
| 831 | AGA | Robert Norton | Allstate | cowe17-002365(83) | Broward |

| 832 | AGA | Shirley Jewel | Allstate | cowe17-002364(83) | Broward |
|-----|-----|---------------|----------|-------------------|---------|
| 833 | AGA | Kane Henneke | Allstate | coso17-001846(62) | Broward |
| 834 | AGA | John Ash | Allstate | coso17-001843(62) | Broward |
| 835 | AGA | Prentis Knotts | Allstate | coso17-001839(62) | Broward |
| 836 | AGA | Mark & Barbara Kiella | Allstate | coso17-001837(62) | Broward |
| 837 | AGA | James Schroder | Allstate | coso17-001830(62) | Broward |
| 838 | AGA | Christopher Magnano | Allstate | cowe17-002809(81) | Broward |
| 839 | AGA | Daniel Pigott | Allstate | cowe17-002807(81) | Broward |
| 840 | AGA | Robert Lynch | Allstate | cowe17-002804(81) | Broward |
| 841 | AGA | Fransico Herendez 2 | Allstate | cowe17-002799(81) | Broward |
| 842 | AGA | Derek Jeffery | Allstate | coso17-002129(60) | Broward |
| 843 | AGA | Jose Colon | Allstate | coso17-002132(60) | Broward |
| 844 | AGA | Diane Scott | Allstate | coso17-002133(60) | Broward |
| 845 | AGA | Krystal Rardon | Allstate | coso17-002134(60) | Broward |
| 846 | AGA | David Sosa | Allstate | coso17-002118(60) | Broward |
| 847 | AGA | Jeff Green | Allstate | cono17-001378(71) | Broward |
| 848 | AGA | Susan Carter | Allstate | cono17-001377(71) | Broward |
| 849 | AGA | Bridgett Myers 2 | Allstate | cono17-001376(71) | Broward |
| 850 | AGA | Roland Anisztzyk | Allstate | cono17-001375(71) | Broward |
| 851 | AGA | Roland Anisztzyk 2 | Allstate | cono17-001374(71) | Broward |
| 852 | AGA | Taylor Whittenton | Allstate | cono17-001373(71) | Broward |
| 853 | AGA | Debrah Ryan | Allstate | cono17-001558(73) | Broward |
| 854 | AGA | Brittney Rimes | Allstate | cowe17-003241(82) | Broward |

| 855 | AGA | Billy Wood | Allstate | cowe17-003242(82) | Broward |
|-----|-----|------------|----------|-------------------|---------|
| 856 | AGA | Edward Schultz | Allstate | cowe17-003243(82) | Broward |
| 857 | AGA | Ted Kubisek | Allstate | cowe17-003244(82) | Broward |
| 858 | AGA | Beth Ann & Robert Hering | Allstate | cowe17-003245(82) | Broward |
| 859 | AGA | Daniel Nelson | Allstate | cowe17-003248(82) | Broward |
| 860 | AGA | Kenny Sands | Allstate | cono17-001592(73) | Broward |
| 861 | AGA | Joe Johnson | Allstate | cowe17-003282(82) | Broward |
| 862 | AGA | Sabrina Golver | Allstate | cowe17-003284(82) | Broward |
| 863 | AGA | Kenneth Woodson | Allstate | cowe17-003285(82) | Broward |
| 864 | AGA | Nyjel Cukes | Allstate | cono17-001539(73) | Broward |
| 865 | AGA | Sage Andress | Allstate | cono17-001540(73) | Broward |
| 866 | AGA | Brad Redniur | Allstate | cono17-001542(73) | Broward |
| 867 | AGA | Linda Kahley | Allstate | cono17-001541(73) | Broward |
| 868 | AGA | Carl Cotroneo | Allstate | cono17-001546(73) | Broward |
| 869 | AGA | Sharon Poulos | Allstate | cono17-001545(73) | Broward |
| 870 | AGA | Robert Mowers | Allstate | cono17-001548(73) | Broward |
| 871 | AGA | Tracy/Charles Snow/Riffe | Allstate | cono17-001549(73) | Broward |
| 872 | AGA | Henry Samel | Allstate | cono17-001551(73) | Broward |
| 873 | AGA | Deloris Chegas | Allstate | cono17-001550(73) | Broward |
| 874 | AGA | Thomas Giusurta | Allstate | cono17-001552(73) | Broward |
| 875 | AGA | Gary Zinn | Allstate | cono17-001554(73) | Broward |
| 876 | AGA | Steve Lyons | Allstate | cono17-001555(73) | Broward |

| 877 | AGA | Arlene Adams | Allstate | cowe17-003267(82) | Broward |
| 878 | AGA | Jeff Murphy | Allstate | cowe17-003253(82) | Broward |
| 879 | AGA | Charles Baldwin | Allstate | cowe17-003255(82) | Broward |
| 880 | AGA | Karen Rodriguez | Allstate | cowe17-003259(82) | Broward |
| 881 | AGA | Jeremiah White | Allstate | cowe17-003262(82) | Broward |
| 882 | AGA | Chad Latour | Allstate | cowe17-003265(82) | Broward |
| 883 | AGA | Steve Lyons 2 | Allstate | cowe17-003263(82) | Broward |
| 884 | AGA | Brian Moore | Allstate | cowe17-003286(82) | Broward |
| 885 | AGA | Shon Gilbert | Allstate | cowe17-003288(82) | Broward |
| 886 | AGA | Richard Allen | Allstate | cowe17-003264(82) | Broward |
| 887 | AGA | Patrick Bigiovanni | Allstate | cono17-001536(73) | Broward |
| 888 | AGA | Raygin Fenslau | Allstate | cono17-001535(73) | Broward |
| 889 | AGA | Angel Soto | Allstate | cono17-001534(73) | Broward |
| 890 | AGA | Peter Dove | Allstate | cono17-001533(73) | Broward |
| 891 | AGA | Wesley Vari | Allstate | cono17-001585(73) | Broward |
| 892 | AGA | Victor & Francine Pistone | Allstate | cono17-001599(73) | Broward |
| 893 | AGA | Arvin Mendiola | Allstate | cono17-001596(73) | Broward |
| 894 | AGA | Mohammad Rauf | Allstate | cono17-001595(73) | Broward |
| 895 | AGA | Marian Donovan | Allstate | cowe17-003260(82) | Broward |
| 896 | AGA | Stephanie Mccarron | Allstate | cono17-001594(73) | Broward |
| 897 | AGA | Susan Lentz | Allstate | cowe17-003261(82) | Broward |
| 898 | AGA | Daniel Pitock | Allstate | cono17-001653(73) | Broward |

| 899 | AGA | Joseph Burgess | Allstate | cono17-001647(73) | Broward |
| 900 | AGA | Arvin Mendiola 2 | Allstate | cono17-001648(73) | Broward |
| 901 | AGA | Stephanie Schubac | Allstate | cono17-001650(73) | Broward |
| 902 | AGA | Emily Geier | Allstate | cono17-001651(73) | Broward |
| 903 | AGA | Linda Mandich | Allstate | cono17-001857(73) | Broward |
| 904 | AGA | Leo Shiflett | Allstate | cono17-001856(73) | Broward |
| 905 | AGA | Vincent Musto | Allstate | cono17-001854(73) | Broward |
| 906 | AGA | George Warner | Allstate | cono17-001855(73) | Broward |
| 907 | AGA | David Ramirez | Allstate | cono17-001851(73) | Broward |
| 908 | AGA | Mike Minichino | Allstate | cono17-001863(73) | Broward |
| 909 | AGA | Coralie Hamblin | Allstate | cono17-001886(73) | Broward |
| 910 | AGA | Angelina Davinport | Allstate | cono17-001981(72) | Broward |
| 911 | AGA | Warren Hall | Allstate | coce17-003722(55) | Broward |
| 912 | AGA | Chester Tomaszuk | Allstate | cono17-002087(73) | Broward |
| 913 | AGA | Christina Sakales | Allstate | cono17-002085(73) | Broward |
| 914 | AGA | Michelle Caceras | Allstate | cono17-002086(73) | Broward |
| 915 | AGA | Cathy Johnson | Allstate | cono17-002084(73) | Broward |
| 916 | AGA | Iris Tuskas | Allstate | coce17-003921(56) | Broward |
| 917 | AGA | William Petys | Allstate | coce17-003923(56) | Broward |
| 918 | AGA | George Cochran | Allstate | coce17-003926(56) | Broward |
| 919 | AGA | Michael Whitney | Allstate | coce17-003925(56) | Broward |
| 920 | AGA | David Vella | Allstate | coce17-003927(56) | Broward |
| 921 | AGA | Ivan West | Allstate | coce17-003928(56) | Broward |

| 922 | AGA | Bob Yourksky | Allstate | coce17-003930(56) | Broward |
|-----|-----|--------------|----------|-------------------|---------|
| 923 | AGA | William George | Allstate | coce17-003931(56) | Broward |
| 924 | AGA | Lynn Beaudin | Allstate | coce17-004259(49) | Broward |
| 925 | AGA | John Becker | Allstate | cono17-002658(73) | Broward |
| 926 | AGA | Eddie Johnson 2 | Allstate | cono17-002656(73) | Broward |
| 927 | AGA | Chris Bower | Allstate | coce17-005146(55) | Broward |
| 928 | AGA | Chris Bower 2 | Allstate | coce17-005147(56) | Broward |
| 929 | AGA | Dan Judd | Allstate | cono17-002767(73) | Broward |
| 930 | AGA | Johnathan Lewis | Allstate | cono17-002768(73) | Broward |
| 931 | AGA | Vincent Sardo | Allstate | cono17-002770(73) | Broward |
| 932 | AGA | Gladys Wilson | Allstate | cono17-002771(73) | Broward |
| 933 | AGA | Manuel Pizarro | Allstate | cono17-002796(71) | Broward |
| 934 | AGA | Jonathan Hind | Allstate | cono17-002797(72) | Broward |
| 935 | AGA | Jesse Gieseke | Allstate | cono17-002799(72) | Broward |
| 936 | AGA | Tonya Womack | Allstate | coce17-005712(51) | Broward |
| 937 | AGA | Vicky Meyers | Allstate | coce17-005727(55) | Broward |
| 938 | AGA | Justine Harrison | Allstate | coce17-005720(55) | Broward |
| 939 | AGA | Carol Crawford | Allstate | coce17-005724(53) | Broward |
| 940 | AGA | Kelley Holmes | Allstate | coce17-005717(56) | Broward |
| 941 | AGA | Abbey Taylor | Allstate | coce17-005496(52) | Broward |
| 942 | AGA | Angel Rivera 2 | Allstate | coce17-005493(52) | Broward |
| 943 | AGA | Bradford Lively | Allstate | coce17-005507(52) | Broward |
| 944 | AGA | Barbra Murray | Allstate | coce17-005472(51) | Broward |

| 945 | AGA | Yolanda Peters | Allstate | coce17-005506(50) | Broward |
|-----|-----|----------------|----------|-------------------|---------|
| 946 | AGA | Noah Pollack | Allstate | coce17-006206(50) | Broward |
| 947 | AGA | Kimberly Traynham | Allstate | coce17-006201(52) | Broward |
| 948 | AGA | Claudia Montoya | Allstate | coce17-006757(56) | Broward |
| 949 | AGA | Terry Carter 2 | Allstate | coce17-006490(55) | Broward |
| 950 | AGA | Rachel Hitsman | Allstate | coce17-006760(56) | Broward |
| 951 | AGA | Debbie Marsh | Allstate | cono17-003391(73) | Broward |
| 952 | AGA | Cynthia Samples | Allstate | cono17-003389(73) | Broward |
| 953 | AGA | William Woznik | Allstate | cono17-003392(73) | Broward |
| 954 | AGA | Amy Trucano | Allstate | cono17-003394(73) | Broward |
| 955 | AGA | Nadja Svrdlin | Allstate | cono17-003393(73) | Broward |
| 956 | AGA | Marta Robles | Allstate | cono17-003395(73) | Broward |
| 957 | AGA | Saad Eraq | Allstate | cono17-003396(73) | Broward |
| 958 | AGA | Lee Anderson | Allstate | cono17-003404(73) | Broward |
| 959 | AGA | Mary Joe Key | Allstate | cowe17-009814(80) | Broward |
| 960 | AGA | Jose Partida | Allstate | cowe17-009817(80) | Broward |
| 961 | AGA | Nadja Svrdlin 2 | Allstate | cowe17-009818(80) | Broward |
| 962 | AGA | Paula Altomare | Allstate | cowe17-009819(80) | Broward |
| 963 | AGA | John Oneil | Allstate | cowe17-009820(80) | Broward |
| 964 | AGA | Rosa Cox | Allstate | cono17-003408(73) | Broward |
| 965 | AGA | Telmirando De Olivera | Allstate | cono17-003407(73) | Broward |
| 966 | AGA | Linda Harris | Allstate | cono17-003382(73) | Broward |
| 967 | AGA | William Cupps | Allstate | cono17-003380(73) | Broward |

| 968 | AGA | Diane Bloom | Allstate | cono17-003385(73) | Broward |
| 969 | AGA | James Furman 2 | Allstate | cowe17-010641(82) | Broward |
| 970 | AGA | Illir Muhametaj | Allstate | cowe17-010645(82) | Broward |
| 971 | AGA | Gregory Williams | Allstate | cowe17-010644(82) | Broward |
| 972 | AGA | Cezar Smith | Allstate | cowe17-010648(82) | Broward |
| 973 | AGA | Tim Fitzpatrick | Allstate | cowe17-010649(82) | Broward |
| 974 | AGA | David Scinta | Allstate | cowe17-010653(82) | Broward |
| 975 | AGA | Katerina Yakimovich | Allstate | cowe17-010652(82) | Broward |
| 976 | AGA | John Schultz | Allstate | cowe17-010897(83) | Broward |
| 977 | AGA | Randy Hart | Allstate | cowe17-010883(83) | Broward |
| 978 | AGA | Jon Vincent | Allstate | cowe17-010884(83) | Broward |
| 979 | AGA | Tommy Branstum | Allstate | cowe17-010900(83) | Broward |
| 980 | AGA | Mike Nguyen | Allstate | cowe17-011765(83) | Broward |
| 981 | AGA | Raymond Alba | Allstate | cowe17-011768(83) | Broward |
| 982 | AGA | Todd Timmons | Allstate | cowe17-012814(82) | Broward |
| 983 | AGA | Joe Gibson | Allstate | cowe17-012813(82) | Broward |
| 984 | AGA | Eric Piety | Allstate | cowe17-012754(81) | Broward |
| 985 | AGA | Chris Dezsi | Allstate | cowe17-012752(81) | Broward |
| 986 | AGA | Frank Burno | Allstate | cowe17-012751(81) | Broward |
| 987 | AGA | Crave Colinar, LLC | Allstate | cowe17-012749(81) | Broward |
| 988 | AGA | Breeze Bemnu | Allstate | cowe17-012747(81) | Broward |
| 989 | AGA | Alan Dormeyer | Allstate | cowe17-012744(81) | Broward |
| 990 | AGA | Dominique Colleli | Allstate | cowe17-012743(81) | Broward |

| 991 | AGA | Verl Jones | Allstate | cowe17-012742(81) | Broward |
|------|-----|-----------|----------|-------------------|---------|
| 992 | AGA | William Diesselhorst | Allstate | cowe17-013179 (83) | Broward |
| 993 | AGA | Alex Link | Allstate | cowe17-013361(83) | Broward |
| 994 | AGA | Brett Sawyer | Allstate | cowe17-013367(83) | Broward |
| 995 | AGA | Kelley Haas | Allstate | cowe17-013366(83) | Broward |
| 996 | AGA | Cristie Carter | Allstate | cowe17-013377(83) | Broward |
| 997 | AGA | Chris Pona | Allstate | cowe17-013372(83) | Broward |
| 998 | AGA | Tom Simmons | Allstate | cowe17-014325(82) | Broward |
| 999 | AGA | Matt Grzeslo | Allstate | cowe17-014321(82) | Broward |
| 1000 | AGA | Eric Herrera-Fuentes | Allstate | cowe17-014324(82) | Broward |
| 1001 | AGA | Jeff Knorr | Allstate | cowe17-014320(82) | Broward |
| 1002 | AGA | Laurie Aubry | Allstate | cowe17-014319(82) | Broward |
| 1003 | AGA | Steve Elia | Allstate | cowe17-014317(82) | Broward |
| 1004 | AGA | Djanna Kaminsky | Allstate | cowe17-014315(82) | Broward |
| 1005 | AGA | Timothy Green | Allstate | cowe17-014960(83) | Broward |
| 1006 | AGA | Tom Stoner | Allstate | cowe17-014961(83) | Broward |
| 1007 | AGA | Deborah & Raegan Brent | Allstate | cowe17-014959(83) | Broward |
| 1008 | AGA | Larry Machak | Allstate | cowe17-014958(83) | Broward |
| 1009 | AGA | Shanty Froehlich | Allstate | cowe17-014953(83) | Broward |
| 1010 | AGA | Christine Pepe | Allstate | cowe17-014952(83) | Broward |
| 1011 | AGA | Mike Johnson | Allstate | cowe17-014954(83) | Broward |
| 1012 | AGA | Chris Pona 2 | Allstate | cowe17-015258(83) | Broward |

| 1013 | AGA | Donna Lento | Allstate | cowe17-015262(83) | Broward |
|------|-----|-------------|----------|-------------------|---------|
| 1014 | AGA | Samantha Dixon | Allstate | cowe17-015658(81) | Broward |
| 1015 | AGA | Teresa Morgan | Allstate | cowe17-015654(81) | Broward |
| 1016 | AGA | Ralph Clayton | Allstate | cowe17-015651(81) | Broward |
| 1017 | AGA | Pricilla Richardson-Rude | Allstate | cowe17-015650(81) | Broward |
| 1018 | AGA | Kendall Pancotti | Allstate | cowe17-016345(82) | Broward |
| 1019 | AGA | John Colquhoun | Allstate | cowe17-016348(80) | Broward |
| 1020 | AGA | Gerald Gabardi | Allstate | cowe17-016347(82) | Broward |
| 1021 | AGA | Paula Altomare 2 | Allstate | cowe17-016399(80) | Broward |
| 1022 | AGA | Erin Burdette | Allstate | cowe17-016556(80) | Broward |
| 1023 | AGA | Rachel Farmer | Allstate | cowe17-016536(80) | Broward |
| 1024 | AGA | Karen Hadsall | Allstate | cowe17-017036(83) | Broward |
| 1025 | AGA | Antonio Zepata | Allstate | cowe17-017034(83) | Broward |
| 1026 | AGA | Elizabeth Reidy | Allstate | cowe17-017035(83) | Broward |
| 1027 | AGA | Matt Schofield | Allstate | cowe17-017033(83) | Broward |
| 1028 | AGA | Kareem Brown | Allstate | cono17-005500(72) | Broward |
| 1029 | AGA | Ana Santana | Allstate | cono17-005663(72) | Broward |
| 1030 | AGA | Jose Prieto | Allstate | cono17-005661(72) | Broward |
| 1031 | AGA | Julie Delong | Allstate | cono17-005648(72) | Broward |
| 1032 | AGA | Matthew Mcgill | Allstate | cono17-005646(72) | Broward |
| 1033 | AGA | Jessica Westgate | Allstate | cono17-005645(72) | Broward |
| 1034 | AGA | Max Decuba | Allstate | cowe17-018803(80) | Broward |

| 1035 | AGA | Lloyd Puente | Allstate | cowe17-018800(80) | Broward |
|------|-----|--------------|----------|-------------------|---------|
| 1036 | AGA | Gregory Ortiz | Allstate | cowe17-018799(82) | Broward |
| 1037 | AGA | Anna Guevara | Allstate | cowe17-018801(80) | Broward |
| 1038 | AGA | Mary Ann Fowler | Allstate | cono17-005910(72) | Broward |
| 1039 | AGA | Alyssa Rezny | Allstate | cono17-005984(72) | Broward |
| 1040 | AGA | Dwight Reynolds | Allstate | cono17-005985(72) | Broward |
| 1041 | AGA | Elizabeth Velez | Allstate | cono17-005986(72) | Broward |
| 1042 | AGA | Derick Shepard | Allstate | cono17-006014(73) | Broward |
| 1043 | AGA | The AC Guyz David | Allstate | cono17-006012(73) | Broward |
| 1044 | AGA | Amir Wassef | Allstate | cono17-006054(73) | Broward |
| 1045 | AGA | Anthony Presti 1 | Allstate | cono17-006117(73) | Broward |
| 1046 | AGA | Drew Matisack | Allstate | cono17-006116(73) | Broward |
| 1047 | AGA | Joshua Johnson | Allstate | cono17-006115(73) | Broward |
| 1048 | AGA | Joseph Martetanski | Allstate | cono17-006114(73) | Broward |
| 1049 | AGA | Lynn Deady | Allstate | cono17-006111(73) | Broward |
| 1050 | AGA | Anthony Presti 2 | Allstate | cono17-006112(73) | Broward |
| 1051 | AGA | Mike Colton | Allstate | cono17-006275(73) | Broward |
| 1052 | AGA | Benjamin Chunn | Allstate | cono17-006274(73) | Broward |
| 1053 | AGA | Marjorie Krieter | Allstate | cono17-006273(73) | Broward |
| 1054 | AGA | Chris Wallace | Allstate | cono17-006448(73) | Broward |
| 1055 | AGA | Keegan Manning | Allstate | cono17-006447(73) | Broward |
| 1056 | AGA | Cody Fordham | Allstate | cono17-006444(73) | Broward |
| 1057 | AGA | Dylan Stewart | Allstate | cono17-006445(73) | Broward |

| 1058 | AGA | Rebecca Bedillion | Allstate | cono17-006442(73) | Broward |
|------|-----|-------------------|----------|-------------------|---------|
| 1059 | AGA | Steven Hall | Allstate | cono17-006443(73) | Broward |
| 1060 | AGA | Jason Sampson | Allstate | cono17-006698(73) | Broward |
| 1061 | AGA | Robert Watkins | Allstate | cono17-006705(73) | Broward |
| 1062 | AGA | Joshua Johnson 2 | Allstate | cono17-006704(73) | Broward |
| 1063 | AGA | Joshua Johnson 3 | Allstate | cono17-006702(73) | Broward |
| 1064 | AGA | Pamela Barber | Allstate | cono17-006701(73) | Broward |
| 1065 | AGA | Don Burke | Allstate | cono17-006700(73) | Broward |
| 1066 | AGA | Robert Baty | Allstate | cono17-006902(72) | Broward |
| 1067 | AGA | Johnathan Hayman | Allstate | cono17-006899(72) | Broward |
| 1068 | AGA | Claiborne Moulton | Allstate | cono17-006896(72) | Broward |
| 1069 | AGA | Susan Caphart | Allstate | cono17-006894(72) | Broward |
| 1070 | AGA | Scott Wilson | Allstate | cono17-006893(72) | Broward |
| 1071 | AGA | Anthony Deponto | Allstate | cono17-006892(72) | Broward |
| 1072 | AGA | Angelo Nyiri | Allstate | cono17-006889(72) | Broward |
| 1073 | AGA | Jason Sampson 2 | Allstate | cono17-006895(72) | Broward |
| 1074 | AGA | Sean Todd | Allstate | cono17-007041(73) | Broward |
| 1075 | AGA | Kristen Rowe 2 | Allstate | cono17-007234(72) | Broward |
| 1076 | AGA | Doreen Stansfield | Allstate | cono17-007233(72) | Broward |
| 1077 | AGA | Sara Roman | Allstate | coce17-015464(51) | Broward |
| 1078 | AGA | Erica Kazor | Allstate | coce17-015466(51) | Broward |
| 1079 | AGA | Kyle Schultz | Allstate | coce17-015467(51) | Broward |
| 1080 | AGA | Carmen Linder | Allstate | coce17-015461(51) | Broward |

| 1081 | AGA | Ben Wilson | Allstate | coce17-015459(51) | Broward |
|------|-----|-----------|----------|-------------------|---------|
| 1082 | AGA | Nicholas Schaefer | Allstate | coce17-015640(53) | Broward |
| 1083 | AGA | Krisamy Cannova | Allstate | coce17-015656(53) | Broward |
| 1084 | AGA | Eva Lopez | Allstate | coce17-015803(53) | Broward |
| 1085 | AGA | German Correa | Allstate | coce17-015802(53) | Broward |
| 1086 | AGA | Secreen Murray | Allstate | coce17-016840(56) | Broward |
| 1087 | AGA | Christine Isenhower | Allstate | coce17-016742(55) | Broward |
| 1088 | AGA | John Budrevic | Allstate | coce17-016910(56) | Broward |
| 1089 | AGA | Lindsay Dunn | Allstate | 18-cc-011472(M) | Broward |
| 1090 | AGA | Frank Wiggins | Allstate | 18-cc-011473(I) | Broward |
| 1091 | AGA | Loraine Eastman | Allstate | 18-cc-011474(M) | Broward |
| 1092 | AGA | George Lewis | Allstate | 18-cc-012018(M) | Broward |
| 1093 | AGA | Chris Ward | Allstate | 18-cc-012016(U) | Broward |
| 1094 | AGA | Duane Arriza | Allstate | 18-cc-012020(K) | Broward |
| 1095 | AGA | Thomas Caliss | Allstate | 18-cc-012021(K) | Broward |
| 1096 | AGA | David Connely | Allstate | 18-cc-012022(U) | Broward |
| 1097 | AGA | Michael Sachinger | Allstate | 18-cc-012023(M) | Broward |
| 1098 | AGA | Joanne Klare | Allstate | 18-cc-012024(J) | Broward |
| 1099 | AGA | Carol Mannix | Allstate | 18-cc-012025(M) | Broward |
| 1100 | AGA | Juan Henao | Allstate | 18-cc-012026(M) | Broward |
| 1101 | AGA | Snack Works 2 | Allstate | 18-cc-012027(I) | Broward |
| 1102 | AGA | Bob Lofgren 2 | Allstate | 18-cc-012028(L) | Broward |
| 1103 | AGA | Horacio Araujo 2 | Allstate | 18-cc-012029(J) | Broward |
| 1104 | AGA | James Wilder 2 | Allstate | 18-cc-012030(J) | Broward |
| 1105 | AGA | Ann Bilzerian 2 | Allstate | 18-cc-012033(H) | Broward |
| 1106 | AGA | Jerry Ivette 2 | Allstate | 18-cc-012034(M) | Broward |
| 1107 | AGA | Lisa Wanger | Allstate | 18-cc-012035(M) | Broward |
| 1108 | AGA | Jill Black | Allstate | 18-cc-012014(U) | Broward |
| 1109 | AGA | Donald Hunt | Allstate | 18-cc-012015(I) | Broward |
| 1110 | AGA | Robin Towle | Allstate | 18-cc-012019(I) | Broward |
| 1111 | AGA | Kimberly Rabren | Allstate | 17-cc-040188(I) | Broward |
| 1112 | AGA | Delta One 2 | Allstate | coso16-013624(61) | Broward |

| 1113 | AGA | Robert Oxar | Allstate | cono17-001042(72) | Broward |
|------|-----|-------------|----------|-------------------|---------|
| 1114 | AGA | Michael Melasi | Allstate | cono17-001885(73) | Broward |
| 1115 | AGA | Kimberly Eppley | Allstate | cono17-001980(72) | Broward |
| 1116 | AGA | Robert Mowers 2 | Allstate | cono17-001976(72) | Broward |
| 1117 | AGA | Joesph Alexander | Allstate | cono17-002766(73) | Broward |
| 1118 | AGA | James Furman | Allstate | cono17-002773(73) | Broward |
| 1119 | AGA | Terry Carter | Allstate | coce17-005705(56) | Broward |
| 1120 | AGA | Jessica Dassett | Allstate | coce17-005713(49) | Broward |
| 1121 | AGA | Nicole Guyton | Allstate | cowe17-013373(83) | Broward |
| 1122 | AGA | Kayla Lucero | Allstate | cono17-005644(72) | Broward |
| 1123 | AGA | Leah Hill | Allstate | cono17-002769(73) | Broward |
| 1124 | AGA | Christopher Dolan | Allstate | coce16-003340(53) | Broward |
| 1125 | AGA | Kevin Bennett | Allstate | coce16-003341(53) | Broward |
| 1126 | AGA | TJ Haas | Allstate | coce16-003342(53) | Broward |
| 1127 | AGA | Maria Johnston | Allstate | coce16-003343(53) | Broward |
| 1128 | AGA | Terry Schram | Allstate | coce16-003344(53) | Broward |
| 1129 | AGA | Edmond Eichinger | Allstate | coce16-003346(53) | Broward |
| 1130 | AGA | Donald Harris | Allstate | coce16-003347(53) | Broward |
| 1131 | AGA | Melvin Mcmullen | Allstate | coce16-003348(53) | Broward |
| 1132 | AGA | Terrance Burke | Allstate | coce16-003349(53) | Broward |
| 1133 | AGA | James Browning | Allstate | coce16003351(53) | Broward |
| 1134 | AGA | Gary Beatty | Allstate | coce16-003352(53) | Broward |
| 1135 | AGA | Wendy Bowman | Allstate | coce16-003353(53) | Broward |

| 1136 | AGA | Cu Nguyen | Allstate | coce16-003355(53) | Broward |
|------|-----|-----------|----------|-------------------|---------|
| 1137 | AGA | Advanced Film Solutions | Allstate | coce16-003354(53) | Broward |
| 1138 | AGA | Todd Rupp | Allstate | coce16-003356(53) | Broward |
| 1139 | AGA | Gary Carter | Allstate | coce16-003357(53) | Broward |
| 1140 | AGA | Laura Demarest | Allstate | coce16-003578(52) | Broward |
| 1141 | AGA | Douglas Post | Allstate | coce16-003573(52) | Broward |
| 1142 | AGA | Raul Vidal | Allstate | coce16-003569(52) | Broward |
| 1143 | AGA | Loveline Lestage | Allstate | coce16-003567(52) | Broward |
| 1144 | AGA | Sarah Barr | Allstate | coce16-003544(52) | Broward |
| 1145 | AGA | Tina Cassee | Allstate | coce16-003539(52) | Broward |
| 1146 | AGA | Elan Burda | Allstate | coce16-003538(52) | Broward |
| 1147 | AGA | Evelyn Badia | Allstate | coce16-003532(52) | Broward |
| 1148 | AGA | Robert Valdez | Allstate | coce16-003559(52) | Broward |
| 1149 | AGA | Danna Stebbins | Allstate | coce16-003524(52) | Broward |
| 1150 | AGA | Karla Sedgwick | Allstate | coce16-003512(52) | Broward |
| 1151 | AGA | Henry Simon | Allstate | cono16-001385(73) | Broward |
| 1152 | AGA | Darnel Diaz Jerry | Allstate | cono16-001383(73) | Broward |
| 1153 | AGA | Rasheen Woodfaulk | Allstate | cono16-001382(73) | Broward |
| 1154 | AGA | Pertson Carter | Allstate | cono16-001381(73) | Broward |
| 1155 | AGA | Julie Gress | Allstate | cono16-001380(73) | Broward |
| 1156 | AGA | Diana Migliardi | Allstate | cono16-001379(73) | Broward |
| 1157 | AGA | Steven Hohlbaugh | Allstate | cono16-001378(73) | Broward |
| 1158 | AGA | Carol Sandvik | Allstate | cono16-001377(73) | Broward |

| 1159 | AGA | Mike Risola | Allstate | cono16-001374(73) | Broward |
|------|-----|-------------|----------|-------------------|---------|
| 1160 | AGA | Wendy Stone | Allstate | cono16-001373(73) | Broward |
| 1161 | AGA | Troy Sneyder | Allstate | cono16-001371(73) | Broward |
| 1162 | AGA | Lawrence Stachulski | Allstate | cono16-001372(73) | Broward |
| 1163 | AGA | Allan Whitson | Allstate | cono16-001370(73) | Broward |
| 1164 | AGA | Elizabeth Nelson | Allstate | cono16-001369(73) | Broward |
| 1165 | AGA | Sonja Stone | Allstate | cono16-001368(73) | Broward |
| 1166 | AGA | Francises Thompson | Allstate | cono16-001367(73) | Broward |
| 1167 | AGA | Eric Johnson | Allstate | cono16-001366(73) | Broward |
| 1168 | AGA | Vivian Mathis | Allstate | cono16-001364(73) | Broward |
| 1169 | AGA | Kimberly Pudoka | Allstate | cono16-001365(73) | Broward |
| 1170 | AGA | Thoe Stavropoul | Allstate | cono16-001362(73) | Broward |
| 1171 | AGA | James Binh | Allstate | cono16-001363(73) | Broward |
| 1172 | AGA | Tyler Spivey | Allstate | cono16-001361(73) | Broward |
| 1173 | AGA | Walter Haynes | Allstate | cono16-001359(73) | Broward |
| 1174 | AGA | Patrick kronk | Allstate | cono16-001360(73) | Broward |
| 1175 | AGA | Susan cregger | Allstate | cono16-001357(73) | Broward |
| 1176 | AGA | Kristina Triana | Allstate | cono16-001356(73) | Broward |
| 1177 | AGA | Ron Kavula | Allstate | cono16-001355(73) | Broward |
| 1178 | AGA | Jerry Selman | Allstate | cono16-001354(73) | Broward |
| 1179 | AGA | Patrick Lui | Allstate | cono16-001352(73) | Broward |
| 1180 | AGA | John Firoito | Allstate | cono16-001348(73) | Broward |
| 1181 | AGA | Robert Valdez | Allstate | cono16-003771(52) | Broward |

| 1182 | AGA | Shauna Atwell | Allstate | cono16-003778(52) | Broward |
|------|-----|---------------|----------|-------------------|---------|
| 1183 | AGA | Robert Satter | Allstate | coce16-003776(52) | Broward |
| 1184 | AGA | Bianco Haas | Allstate | coce15-023750 | Broward |
| 1185 | AGA | Nancy Domanko | Allstate | coce16-005925(50) | Broward |