UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALLSTATE INSURANCE COMPANY,
an Illinois corporation; ALLSTATE FIRE
AND CASUALTY INSURANCE COMPANY,
an Illinois corporation; ALLSTATE INDEMNITY
COMPANY, an Illinois corporation; and
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, an Illinois
corporation,

       Plaintiffs,

v.                                CASE NO:    6:18-CV-2184-ORL-KRS

AUTO GLASS AMERICA, LLC,
a Florida limited liability company, and
CHARLES ISALY, a citizen of Arizona,

       Defendants.

_____/

## MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

Defendants Auto Glass America, LLC ("AGA") and Charles Isaly ("Isaly") move to dismiss the Complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., and for an award of attorneys' fees and costs.

## INTRODUCTION

Notwithstanding the Complaint's length and verbosity,[1] it is little more than a cornucopia of hyperbole and legal conclusions that float freely on a sea of bombast. Nowhere in the Complaint is there any reference to a single customer or a single transaction or a single claim made on a single Allstate policy for a single windshield replacement. Boiled down to its essence, the Complaint

---

[1]     The Complaint [D.E. 1] consists of 48 pages of text and includes ten separate counts.

expresses Plaintiffs' displeasure with AGA's legitimate business practices, the amounts AGA charges for windshield replacements and AGA's exercise of its right of access to the courts.

In short, Plaintiffs attempt to state causes of action premised on alleged violations of various consumer protection statutes[2] but they are not consumers or AGA's customers. The real consumer-customers are those who sustained damage to their windshields, hired AGA to replace them and happen to be insured with Allstate.

This Court lacks subject matter jurisdiction because (a) Plaintiffs lack Article III standing; and (b) the hundreds of pending first-filed state court cases weigh heavily in favor of abstention. Plaintiffs additionally failed to state any claim upon which relief may be granted. For these reasons, the Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

## STANDARDS

Rules 12(b)(1) and 12(b)(6) have different standards.

### A.     Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

A plaintiff bears the burden of establishing subject matter jurisdiction. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc*., 411 F.3d 1242, 1248 n.2 (11th Cir. 2005). A defendant can move to dismiss a complaint under Rule 12(b)(1) by attacking subject matter jurisdiction either facially or factually. *Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc*., 524 F.3d 1229, 1232 (11th Cir. 2008). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty*., 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*,

---

[2]      The consumer protection statutes are the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Florida Home Solicitation Sales Act ("FHSSA"), the Federal Trade Commission's Rule Concerning Cooling-off Period for Sales Made at Homes or at Certain Other Locations (the "FTC Rule") and the Florida Motor Vehicle Repair Act ("FMVRA").

919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *Stalley ex rel. U.S.*, 524 F.3d at 1233. By this motion, Defendants mount both a facial and factual attack on the Complaint. Plaintiffs' lack of standing is a facial attack, and Defendants' abstention argument constitutes a factual attack.

### B.    Rule 12(b)(6) – Failure to State a Claim Upon Which Relief May be Granted

To survive a motion to dismiss for failure to state a cause of action under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept the plaintiff's well-pleaded facts as true but need not accept mere legal conclusions. *Demeza v. Hartford Ins. Co. of Midwest*, 2012 WL 163818 (M.D. Fla. Jan. 19, 2012). "Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), in turn quoting *Twombly*, 550 U.S. at 570). A complaint "must consist of more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Lattimore v. Wells Fargo Bank, N.A.*, 590 Fed. Appx. 912, 913 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief." *Gavilan*, 2014 WL 6979625, at *1 (citing *Iqbal*, 556 U.S. at 678). More specifically, the complaint "must be anchored in a bed of facts, not allowed to float freely on a sea of bombast. That is to say, a court assessing a claim's sufficiency has no obligation to take matters on blind faith[] despite the highly deferential reading

which [a court] accords a litigant's complaint under Rule 12(b)(6)." *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 45 (1st Cir. 1991). A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 554-555. Finally, claims for violation of FDUTPA must be pled with the particularity required by Rule 9(b). *Furnari v. Nuance Communications, Inc.*, 2012 WL 13102331 (M.D. Fla. 2012); *Llado-Carreno v. Guidant Corp.*, 2011 WL 705403 (S.D. Fla. 2011); *Beguaig Investment Management, Inc. v. Four Seasons Hotel, Ltd.*, 2011 WL 4434891 (S.D. Fla. 2011).

**ARGUMENT**

The Complaint should be dismissed with prejudice for the following reasons:

**I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION**

This Court lacks subject matter jurisdiction because (a) Plaintiffs lack Article III standing; and (b) the hundreds of pending first-filed state court cases involving substantially the same parties and issues weigh heavily in favor of abstention.

**A.      Plaintiffs Lack Article III Standing**

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To invoke the Article III jurisdiction of the Federal Court, the Constitution requires a plaintiff to establish an injury in fact, a causal connection between the injury and the conduct complained of, and that it is likely the injury will be redressed by a favorable decision. *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2007). "To establish an injury in fact, a plaintiff must show that he or she [as opposed to others] suffered an

invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

The constitutional standing inquiry "often turns on the nature and source of the claim asserted." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The plaintiff must show that it has "raise[]d a claim within the zone of interest covered by a statutory conferral of standing." *Elend*, 471 F.3d at 1206. "The standing inquiry requires a careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to adjudication of the particular claims asserted." *Id.* at 1205. "It is not enough that the [] complaint sets forth facts from which [the court] could imagine an injury sufficient to satisfy Article III's standing requirements," and the Court "should not speculate concerning the existence of standing…If the plaintiff fails to meet its burden, [the] court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Id.* at 1206.

In this case, Plaintiffs have not established that any of their claims fall within the "zone of interest" covered by the consumer protection statutes upon which their claims are based, or that they suffered an injury in fact or that there is any causal connection between the purported injury and the conduct complained of.

**Plaintiffs are not consumers involved in consumer transactions with AGA.**

FDUTPA protection extends only to consumers who were injured by unfair or deceptive acts when buying or purchasing goods and services. *Gibson v. Resort at Paradise Lakes, LLC*, 2017 WL 3421532, *5 (M.D. Fla. 2017);[3] *Carroll v. Lowes Home Centers, Inc.,* 2014 WL

---

[3]     As noted in *Gibson*,

    [i]n 2001, the Florida Legislature amended FDUTPA's standing provision by replacing the word "consumer" with the word "person." *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1296 (S.D. Fla. 2014). District courts in this Circuit are divided over whether the 2001 amendment extended FDUTPA to non-consumers, and the Eleventh Circuit has yet to resolve this split. *See Democratic Republic of the Congo v. Air Capital Grp., LLC*, 614 Fed. Appx. 460, 468-469 (11th Cir. June 11,

1928669, at *3 (S.D. Fla. 2014); *Taft v. The Dade Cty. Bar Ass'n, Inc.,* 2015 WL 5771811, at *4 (S.D. Fla. 2015). "In examining the purpose of the amendment, the record shows that the amendment was sought to clarify the fact that remedies available to individuals under FDUTPA were also available to businesses." *Gibson,* 2017 WL 3421532 at *5; *Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, 2013 WL 1786356, *1 (S.D. Fla. 2013); *PortionPac Chem. Corp. v. Sanitech Sys.*, 217 F. Supp. 2d 1238, 1253 (M.D. Fla. 2002).

Here, Plaintiffs are not the consumer-customers who bought anything from AGA. Rather, as Plaintiffs concede, AGA's alleged deceptive and unfair acts were all directed toward AGA's customers, some of whom happen to be Allstate insureds. Examples include:

- AGA engages in deceptive advertising and solicitation of business including making misrepresentations and omissions to "*customers including Allstate's insureds*" [D.E. 1, ¶ 60] (emph. added);

- AGA offers various incentives to *its customers*, such as discount cards from restaurant.com and "Pick 5" cards, but sometimes fails to provide them to "*all Allstate insureds*" and sometimes *the Allstate insureds* who receive them are disappointed with them [D.E. 1, ¶ 63] (emph. added);

- AGA *may have* offered other discounts and incentives to its *customers* [D.E. 1, ¶ 64] (emph. added);

- AGA's independent contractor salespeople (referred to as "harvesters" by Allstate) solicits *customers* in various places (parking lots, their places of business and residences) [D.E. 1, ¶ 66] (emph. added);

- AGA's salespeople inform *potential customers* of windshield damage to their vehicles, confirm that the *potential customers* have comprehensive automobile

---

2015) (acknowledging this "interpretive tussle" but declining to resolve it). "Courts have interpreted the 2001 amendment generously, but not consistently." *Id.*

*Gibson*, 2017 WL 3421532, *4. The cases cited herein represent the majority view that narrowly interprets the term "consumer." "Indeed, the majority of district courts which have addressed this issue overwhelmingly have favored the narrow interpretation of the term "person" in section 501.211(2) to mean only "consumers" injured by an unfair or deceptive act when buying or purchasing goods and services." *Id.* at *5. The minority view extends FDUTPA protection to any person injured by a deceptive or unfair practice, regardless of whether [they] sustained the injury in a sale or purchase." *Id.* at *4 (citing, *Democratic Republic of the Congo*, 614 F. Appx. at 468).

insurance and then use high pressure sales tactics[4] to convince the *potential customers* to have AGA replace their windshields [D.E. 1, ¶ 67] (emph. added);

- After having improperly solicited *customers*, AGA "proceeds to seal the deal by knowingly misleading and making misrepresentations and omissions to its *potential customers including Allstate insureds*."  [D.E. 1, ¶ 70] (emph. added);

- "AGA representatives tell Allstate *insureds* that AGA will submit its invoices for windshield replacement directly to Allstate and that the *insureds* will not be responsible for any of the cost" thereby creating an allegedly "false impression" in the minds of its *customers* "that AGA works closely with Allstate and that Allstate approves of and authorizes AGA's work and its pricing."  [D.E. 1, ¶ 71] (emph. added);

- "AGA fails to provide necessary information to Allstate's *insureds*, leaving Allstate's *insureds* incorrect impressions, thus preventing Allstate's *insureds* from being able to make informed decisions as to whether and how to proceed with repair or replacement of their windshields."  [D.E. 1, ¶ 73] (emph. added);

- AGA does not inform or tell Allstate's *insureds* various things about the contents of their insurance policies with Allstate or Allstate's claims processes.  [D.E. 1, ¶¶ 74-82];

- "In connection with replacement of a windshield for an Allstate *insured*," AGA does not tell its *customers* (Allstate's *insureds*) what their signatures on AGA work orders are for or leads *them* to falsely believe the signatures are simply to authorize the work or confirm the work was completed.  [D.E. 1, ¶¶ 83-84; 88-91] (emph. added);

- AGA violated the FHSSA (and thereby violated FDUTPA and was unjustly enriched)[5] by (a) failing to obtain certain permits and display them to *"all prospective buyers, including Allstate's insureds*," before soliciting sales; (b) failing to provide certain written statements to "*customers, including Allstate's insureds*,"; (c) failing to provide "*customers, including Allstate's insureds*" with certain documentation; and (d) making misrepresentations and omissions to *"Allstate's insureds"* in violation of the FHSSA.  [D.E. 1, ¶ 121] (emph. added);

- AGA violated the FTC Rule[6] by failing to (a) furnish Allstate's *insureds* with

---

[4]    Curiously, the alleged "high pressure sales tactics" are not described in any manner in the Complaint.

[5]    Count V is an unjust enrichment claim based on alleged violations of the FHSSA and FTC Rule, and Count VII is a FDUTPA claim based on alleged violations of the same statute and rule.

[6]    According to Allstate, "[t]he FTC Rule applies to sales of consumer goods or services in which the seller or his representative personally solicits the sale and the buyer's agreement to purchase is made at a place other than the place of business of the seller and which has a purchase price of $25 or more if the sale is made at the buyer's residence. 16 C.F.R. § 429.1(a)."  [D.E. 1, ¶ 123].

certain documents and disclosures; (b) furnish Allstate's *insureds* with a notice involving their right to cancel the transaction; and (c) orally inform Allstate's *insureds* about their right to cancel the transaction. [D.E. 1, ¶ 123]; and

- AGA violated the FMVRA by (a) failing to provide written estimates and disclosures to *customers*[7]; (b) charging amounts to Allstate's *insureds* (AGA's customers) that exceed the written estimates; (c) inducing Allstate's *insureds* to authorize windshield replacements by making untrue and deceptive statements and omissions; (d) misrepresenting to Allstate's *insureds* the necessity of windshield replacements; (e) causing or allowing Allstate's *insureds* to sign work orders that do not reflect the "automobile's odometer reading at the time of the repair"; (f) having the work contracted out without the knowledge or consent of Allstate's *insureds*; (g) demanding payment from Allstate for amounts that exceeds what Allstate is willing to pay; and (h) performing work for Allstate's *insureds* without informing Allstate about the work. [D.E. 1, ¶ 132] (emphasis added).

The nefarious things Plaintiffs alleged about AGA consist entirely of conduct directed to people **other than Plaintiffs**. And while some of AGA's customers happen to be insured with Allstate, there is no authority for the proposition that the consumer-customer status of an insured extends to the insurer. Importantly, there is no allegation in the Complaint involving a single customer who ever so much as lodged a single complaint or raised a single problem to or about AGA. There is nothing to suggest AGA's customers felt deceived or were treated unfairly. And there is not a single legal basis in the Complaint that would allow Plaintiffs the legal ability to adjudicate the contractual dealing between AGA and the insureds. It is clear in the Complaint that the Plaintiffs do not like how much AGA charges or that AGA files lawsuits when it thinks it is underpaid. But it is equally clear that this is no basis for an actionable FDUTPA claim.

**AGA's true customers did not suffer any harm or damages (actual or otherwise).**

FDUTPA protection extends only to consumers who were injured by unfair or deceptive

---

[7] The FMVRA defines "customer" as "the person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work." Fla. Stat. § 559.903(1).

acts when buying or purchasing goods and services.  *Gibson*, 2017 WL 3421532, at*5.  Critically, the Complaint contains no allegations that any of AGA's true consumer-customers sustained any damages, actual or otherwise, or were harmed by AGA in any way.[8]  In fact, Plaintiffs specifically allege "AGA has not collected and does not seek to collect any payment from Allstate's insureds." [D.E. 1, ¶ 93].  In addition, Plaintiffs acknowledge Fla. Stat. § 627.7288[9] "prohibits an insurer from collecting a deductible for windshield damage claims for comprehensive coverage[.]"  [D.E. 1, ¶ 34].  An insured customer cannot be responsible for paying any portion of a windshield replacement job covered by a policy of motor vehicle insurance.  Under these unique circumstances, it is difficult to envision a scenario where FDUTPA, the FHSSA, the FTC Rule or the FMVRA would be applicable to a windshield replacement job covered by insurance without any deductible because the cost to the consumer-customer is always required to be zero as a matter of law.

**Plaintiffs are not AGA's consumer-customers; they are AGA's competitors.**

Plaintiffs' allegations that they are the consumer-customers belie their representations in the Complaint that they provide windshield replacements themselves.  In other words, Plaintiffs are competitors – not customers or consumers – of AGA. A competitor is the antithesis of a consumer.  For example:

- The insurance policy says that Allstate "may pay for the loss in money, "*or may repair or replace the damaged or stolen property.*" [D.E. 1, ¶ 43] (emphasis added);

- Allstate has the right to "*itself* repair or replace damaged windshields." [D.E. 1, ¶ 44] (emphasis added);

---

[8]　　　To be sure, Plaintiffs do allege that AGA failed to provide "all Allstate insureds with the two promised $50 discount cards to restaurant.com [and that] [e]ven those that receive discount cards to restaurant.com are often disappointed with the cards, as their terms make them difficult to use." [D.E. 1, ¶ 63].

[9]　　　Fla. Stat. § 627.7288 provides "[t]he deductible provision of any policy of motor vehicle insurance, delivered or issued in this state by an authorized insurer, providing comprehensive coverage or combined additional coverage shall not be applicable to damage to the windshield of any motor vehicle covered under such policy."

- "AGA also, with knowledge of the terms of Allstate's automobile policies, fails to allow Allstate to exercise its option to *itself repair or replace damaged windshields*." [D.E. 1, ¶ 98] (emphasis added);

- "AGA does not want Allstate to invoke its *right to repair or replace damaged windshields* because that would prevent AGA from being able to pursue its scheme to make windshield replacements and collect payment for same at greatly inflated, arbitrary and non-competitive prices." [D.E. 1, ¶ 104] (emphasis added);

Plaintiffs can hardly claim they are "consumers" when they expressly acknowledge that they engage in the same business as AGA. Since Plaintiffs are not consumers who are AGA's customers, they wholly lack standing.

**The entire Complaint should be dismissed pursuant to Rule 12(b)(1).**

Since Plaintiffs lack Article III standing under FDUTPA, this Court lacks subject matter jurisdiction to adjudicate the claims asserted in the following counts which are all premised on purported FDUTPA violations:

- Count II – Violation of FDUTPA (Unfair Acts and Practices)

- Count III – Violation of FDUTPA (Deceptive Acts and Practices)

- Count IV – Violation of FDUTPA (Unconscionable Acts and Practices)

- Count V – Unjust Enrichment Based on AGA's Violation of the FHSSA[10] and FTC Rule[11]

---

[10]  Plaintiffs raise the FHSSA as a predicate statute to support FDUPTA liability and as stand-alone claims for unjust enrichment and declaratory relief. By its terms, the FHSSA applies only to "home solicitation sales" which "means a sale, lease, or rental of ***consumer*** goods or services." Fla. Stat. §§ 501.021(1); 501.022(1)(a)(emphasis added).

[11]  Plaintiffs raise the FTC Rule as a predicate statute to support FDUPTA liability and as stand-alone claims for unjust enrichment and declaratory relief. "The FTC Rule applies to sales of ***consumer*** goods or services in which the seller or his representative personally solicits the sale and the buyer's agreement to purchase is made at a place other than the place of business of the seller and which has a purchase price of $25 or more if the sale is made at the buyer's residence or a purchase price of $130 or more if the sale is made at locations other than the buyer's residence." [D.E. 1, ¶ 123](emphasis added).

- Count VI – Unjust Enrichment based on AGA's Violation of the FMVRA[12]

- Count VII – Violation of FDUTPA based on AGA's Violation of the FHSSA and FTC Rule

- Count VIII – Violation of FDUTPA based on AGA's Violation of the FMVRA

- Count IX – Declaratory Judgment (based primarily on FDUTPA, the FMVRA, the FHSSA and FTC Rule)

- Count X – Unjust Enrichment based on all factual allegations in the Complaint.

Each of the consumer protection statutes Plaintiffs allege AGA violated require harm to consumer-customers. Plaintiffs do not allege that they sustained windshield damage to vehicles they own and were somehow victimized by any of AGA's acts or practices as part of the transaction. Plaintiffs do not allege that they were themselves misled, deceived, treated unfairly or that any of the statutory rights it asserts apply to third-party insurance companies rather than their insureds. After all, the rights afforded by these statutes expressly belong to Plaintiffs' insureds/AGA's customers. Plaintiffs have no business seeking to enforce other people's rights.

B.     **The Court Should Abstain and Decline Jurisdiction Based on Parallel First Filed State Court Actions**

As acknowledged in Plaintiffs' Notice of Pendency of Other Actions [D.E. 15] and Defendants' Notice of Pendency of Other Actions [D.E. 16], AGA has filed more than a thousand lawsuits against the various Plaintiff-entities in various Florida county courts prior to the commencement of the instant case.

In *Colorado River Water Conservation Dist. v. U. S.,* 424 U.S. 800 (1976), the Supreme

---

[12]     Plaintiffs raise the FMVRA as a predicate statute to support FDUPTA liability and as stand-alone claims for unjust enrichment and declaratory relief. The FMVRA defines "customer" as "the person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work." Fla. Stat. § 559.903(1). The FMVRA only requires a written repair estimate when the "cost of … repair work will exceed $100 *to the customer*…" Fla. Stat. § 559.905(1)(emphasis added).

Court created a doctrine of exemption to prevent duplicative litigation in both state and federal courts. In the Eleventh Circuit, *Colorado River* abstention applies "as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1329-30 (11th Cir. 2004). The Eleventh Circuit employs a six-factor balancing test to determine whether to relinquish a matter to state court under *Colorado River* when faced with parallel litigation: (1) whether one of the courts has assumed jurisdiction over property; (2) the federal forum's inconvenience for the parties; (3) the potential for piecemeal litigation; (4) which forum exercised jurisdiction first; (5) whether state or federal law will be applied; and (6) the state court's adequacy in protecting the parties' rights. *Id*. at 1331 (citing, *Am. Bankers Ins. Co. of Florida v. First State Ins. Co*., 891 F.2d 882, 884 (11th Cir. 1990)). In *Moses H. Cone Mem. Hosp. v. Mercury Constr*., 460 U.S. 1, 17, n.20 (1982), the Supreme Court identified an additional factor that "may influence a court's decision whether to defer to a parallel state litigation under *Colorado River*: whether either the federal or the state litigation is "vexatious or reactive in nature."

The litigation history between Allstate and AGA is long and substantial. As noted in their Notice of Pendency of Other Actions [D.E. 16],

> Defendants are aware of 1,185 cases filed by Auto Glass America, LLC ("AGA") against one or more of the Allstate entities named as plaintiffs in the instant case. Those cases are listed on Exhibit A to this Notice. In their Complaint (Doc. No. 1), Plaintiffs allege there are or have been over 1,400 lawsuits filed by AGA against one or more of the Allstate entities named as plaintiffs in this case. Defendants respectfully submit that at the appropriate time, it will request a list of the "over 1,400" lawsuits.

Defendants further noted that

> [t]here are 1,185 cases on this list. Lines one through 588 (in bold print) are being actively litigated and were in suit prior to the instant case being served on

Defendants.  Lines 589[13] through 1,185 represent cases that have been settled long before the instant case was filed.

[D.E. 16].  Every single case on the list was commenced by AGA against Allstate for declaratory relief regarding the interpretation of the insurance policies and/or damages, as reflected in the Affidavit of Charles W. Isaly ("Isaly Aff.") [D.E. 21].  Of the 1,185 cases identified so far, approximately 600 have been settled on terms that are favorable to AGA and the rest remain pending [D.E. 21, ¶ 15].  All of them were filed before Plaintiffs commenced the instant action [D.E. 21, ¶ 15].

The settled cases each involve similar substantive and procedural fact patterns and presumably are a part of the Plaintiffs' claim for disgorgement in this case. [D.E. 21, Ex. 5-6].  Typically, AGA performs a windshield replacement for an Allstate insured and, thereafter, AGA submits its invoice to Allstate [D.E. 21, ¶ 5].  Allstate typically pays AGA less than the amount invoiced [D.E. 21, ¶ 6].  Whenever Allstate pays less than the invoiced amount, it notifies AGA that it demands appraisal under the policy [D.E. 21, ¶ 7].  AGA, taking the position that the issue is not appropriate for appraisal and that Allstate's chosen appraiser is far from "disinterested" as required by the policy, files suit in an effort to get paid properly [D.E. 21, ¶¶ 8-9].  Notably, in the instant case, Plaintiffs alleged that "Allstate pays AGA an amount equal to or in excess of the competitive, market rates paid to other auto glass shops in Florida, but that is less than the inflated amounts invoiced by AGA."  [D.E. 1, ¶ 116].  That is the primary issue in the state court cases.

After the state court lawsuits are served, Allstate typically files motions to dismiss and to compel appraisal [D.E. 21, ¶ 10].  AGA prevails on these motions overwhelmingly more than it

<hr>

13    In preparing this motion and supporting memorandum, counsel for AGA noticed a typographical error on the list.  The Notice of Pendency of Other Actions states "[l]ines 589 through 1,185 represent cases that have been settled long before the instant case was filed" but should be revised to say that "[l]ines 588 through 1,185 represent cases that have been settled long before the instant case was filed."  In an abundance of caution, Defendants will amend their Notice of Pendency of Other Actions to reflect the correction.

does not [D.E. 21, ¶ 10].  Various state court rulings on Allstate's dismissal/appraisal motions are attached to Isaly's affidavit.  [D.E. 21, Ex. 6].

After Allstate's dismissal/appraisal motions are denied, Allstate typically choses to settle whatever cases were then pending [D.E. 21, ¶ 11].  Most recently, after the dismissal/appraisal motions were denied in 44 cases at the trial court level, Allstate petitioned the Broward County Circuit Court's Appellate Division for certiorari relief in late 2017 and early 2018 as reflected on the case numbers on the list attached to Isaly's affidavit. [D.E. 21, Ex. 4]. When AGA and Allstate entered into a full and final settlement of hundreds of cases in April and May 2018, Allstate dismissed the 44 appeals with prejudice [D.E. 21, ¶ 12].  Exemplar copies of AGA's state court complaint, Allstate's dismissal/appraisal motion, transcript of the hearing on the dismissal/appraisal motion, order denying the motion, Allstate's Petition for Writ of Certiorari and stipulation for dismissal of same with prejudice are all attached to Isaly's affidavit.  [D.E. 21, Ex. 7].  Prior to the 2018 global settlement, Allstate and AGA negotiated and globally settled scores of additional cases in April 2016 [D.E. 21, ¶ 16].  All in, AGA is unaware of a single case in which Allstate answered a complaint or asserted any affirmative defenses or counterclaims (compulsory or otherwise) although it clearly had that option [D.E. 21, ¶ 16].  Instead, Allstate simply settled once defeated on its dismissal/appraisal motions. Likewise, Allstate has not filed answers, defenses or counterclaims in the cases that remain pending, more than 150 of which involve the same short-pay scenario described above and the rest involve Allstate's failure to pay interest on appraisal awards on older claims on which AGA voluntarily submitted to the appraisal process [D.E. 21, ¶ 16].

In this case, the *Ambrosia* factors overwhelmingly favor abstention.  Factor (1) is irrelevant since there is no jurisdiction over property. Factor (2) is neutral because the pending and settled

state court actions were all filed in Florida. The remaining factors weigh in favor of abstention. Factor (3) favors abstention because the potential for inconsistent results is strong, and it is excessive and deleterious to have the parties' rights adjudicated by two courts. Factor (4) favors abstention not only because state court jurisdiction over parallel actions preceded the instant federal litigation, but when considered in conjunction with the *Cone* (seventh) factor, it is obvious that the instant litigation is "reactive" to Allstate's lack of satisfaction with state court rulings and its obvious remorse at having settled hundreds and hundreds of lawsuits AGA filed against Allstate. Factor (5) weighs in favor of abstention because no substantive federal law is implicated in this diversity case; and Factor (6) weighs in favor of abstention because Florida courts are adequate to protect the parties' interests which arise under clearly articulated Florida law.

This Court should also abstain and decline jurisdiction over Plaintiffs' requests for judicial declarations[14] under other abstention doctrines. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137 (1995). The discretionary standard of *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173 (1942), governs a district court's decision to stay or otherwise abstain from hearing declaratory judgment actions during the pendency of parallel state court proceedings.

Pursuant to 28 U.S.C. § 2201(a), a district court "**may** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (emph. added). The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton,* 515 U.S.

---

[14]     In addition to Count IX (entitled "Declaratory Judgment"), Plaintiffs seek declarations in the "WHEREFORE" clauses contained in Counts II -IV and VII and VIII that AGA violated FDUTPA and that the assignments of benefits procured in windshield replacement claims are void. [D.E. 1, pp. 33, 35, 37, 42 and 44].

at 287. "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir.2005). While district courts may not decline to hear actions for declaratory relief "on the basis of whim or personal disinclination," the standard is clearly generous. *Angora v. Condo. Ass'n of Lakeside Village, Inc.*, 796 F.2d 384, 387 (11th Cir. 1986). Accordingly, a district court enjoys substantial latitude in deciding to stay or dismiss a declaratory judgment action in deference to a state action, if "parallel proceedings, presenting opportunity for ventilation of the same state law issues, [are] underway in state court." *Wilton*, 515 U.S. at 290. To avoid waste and gratuitous interference with the orderly and comprehensive disposition of state court litigation, a district court ordinarily defers if "another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. In fact, it appears that when parallel state proceedings are pending, there is virtually a presumption ***against*** the exercise of jurisdiction in the federal declaratory judgment action. *Lincoln Ben. Life Co. v. Look,* 2006 WL 3734331 (M.D. Fla. 2006). This Court should exercise its discretion and decline jurisdiction in this matter as there are pending parallel state court proceedings involving the same parties and same issues as referenced above.

As explained above and acknowledged by both parties, there are hundreds of state court actions involving these same parties and issues. The matters asserted in Plaintiffs' requests for declaratory relief here merely set forth issues which, if viable, could be raised as affirmative defenses or counterclaims in the state court cases. But even if there were no parallel cases, nothing in the Federal Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state court proceeding shares substantially the same parties and issues. Instead, the district court must weigh all relevant factors in this case, even if state and federal

actions are not parallel. *First Mercury Ins. Co. v. Excellent Computing Distribs.*, 648 Fed. Appx. 861 (11th Cir. 2016).

In *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005), the Eleventh Circuit provided "guideposts" for determining whether to extend jurisdiction to a declaratory action when a similar proceeding is pending in state court: (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (2) whether the judgment in the federal declaratory action would settle the controversy; (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue; (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" – that is, to provide an arena for a race for *res judicata*[15] or to achieve a federal hearing in a case otherwise not removable; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; (6) whether there is an alternative remedy that is better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

The essence of the Plaintiffs' requests for declaratory relief in the instant case is the imposition on this court to interpret Florida statutory law as an affirmative defense or counterclaim to ongoing and future state court actions. In applying the *Ameritas* guideposts, abstention is

---

[15] Indeed, as referenced above, hundreds of state court cases between AGA and Allstate fully and finally settled after court-jousting over the appraisal and payment provisions in Allstate's policies and Allstate's failure to pay the proper amount invoiced. While Allstate did not actually assert any affirmative defenses or compulsory counterclaims in those settled cases, it clearly could have thereby giving rise to principles of issue and claim preclusion. To the extent Plaintiffs survive this motion to dismiss, Defendant anticipates raising those principles.

warranted in this case. First, Florida state courts have a very strong interest in analyzing and applying new and previously untested defenses to payment of insurance claims and more importantly to the interpretation and application of the Florida Statutes. The rulings requested by the Plaintiffs in its claims for declaratory relief have widespread and broad applicability to insurance claims in Florida and will affect the entire auto glass and insurance industries regardless of the identification of the insurance carrier. Second, as there are no contract actions asserted in this federal venue, this Court's adjudication of the Plaintiffs' declaratory judgment questions would not resolve the whole controversy as the state court claims all involve Allstate's payment obligations under their insurance contracts. Third, the Federal Declaratory Judgment Act would not promote a clarification of the legal issues as the Plaintiffs' "questions" require this Court to assume disputed facts. Fourth, the Plaintiffs are clearly using this declaratory judgment action as "procedural fencing" as the individual cases are not otherwise removable and federal jurisdiction would not exist outside the Plaintiffs' filing of the collective pleading herein. Additionally, the issues asserted by the Plaintiffs in this case could and should have been raised in the hundreds of state court cases that Allstate settled and still can be raised in the hundreds of state court cases still pending. Fifth, if a federal court decides issues of state law that are matters of first impression, particularly when state courts are or could be presently resolving these issues, it will most certainly result in friction between the state and federal courts. Sixth, the alternative remedy that is more appropriate is for the parties or judges to resolve these issues in the ongoing state court actions. Seventh, there are no underlying factual issues presented herein that are important to a resolution of the declaratory judgment claims. Eighth, the state courts are in a better position to determine the factual issues related to the alleged violations of Florida statutes and its application to the legal relations and public policy of Florida's consumer protection laws. Federal review should not

disrupt a state's efforts to establish a coherent policy in matters of public concern. *Colorado River*, 424 U.S. at 800. The states regulate insurance companies and the rights of both insurers and consumers, and as such, state courts are best situated to identify and enforce the public policies that form the foundation of such regulations. The Eleventh Circuit has routinely affirmed dismissals of declaratory judgment actions in similar cases.[16]

The careful application of the *Ameritas* factors and principles to the instant case indicates that dismissal is not only appropriate but is necessary. Abstention will promote the interests of practicality, comity and the efficient, wise administration of justice.

## II.     FAILURE TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED

Plaintiffs failed to state a cause of action upon which relief may be granted in any of the ten counts of its Complaint. Dismissal is therefore warranted pursuant to Rule 12(b)(6).

### A.     Count I (Tortious Interference) Fails to State a Claim Upon Which Relief May be Granted

Allstate theorizes that AGA tortiously interfered with Allstate's contractual relationships with their insureds by: (1) depriving Allstate of their contractual rights to inspect damaged windshields, invoke appraisal or repair/replace the damaged windshields itself; and (2) preventing Allstate from communicating directly with their insureds until after damaged windshields have

---

[16]     *See, e.g., Geico Gen. Ins. Co. v. Kastenolz*, 649 Fed. Appx. 647 (11th Cir. 2016) ("The district court did not abuse its discretion when it abstained from exercising jurisdiction over an insurer's declaratory judgment action, which sought a determination that there was no coverage for a wrongful death judgment, because a bad faith action had been filed against the insurer in state court and the factors set forth in the case law regarding parallel state proceedings weighed in favor of abstention"); *Storick v. CFG, LLC*, 505 Fed. Appx. 883 (11th Cir. 2013) ("In fact, the Supreme Court has stated 'it would be **uneconomical as well as vexatious** for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'") (emph. added); *Triple S Ref. Corp. v. Mount Canaan Full Gospel Church*, 254 Fed. Appx. 762 (11th Cir. 2007) ("That the action in state court was filed after the federal complaint, in anticipation of the motion to dismiss, is of no moment."). These cases all reveal that an order dismissing a declaratory judgment action will only be reversed when the district court does not consider all the *Ameritas* factors, and/or where the district court's decision amounts to an abuse of discretion.

already been replaced thereby depriving Allstate and their insureds from making informed decisions regarding windshield repair/replacement.  [D.E. 1, ¶¶ 143-146].

In Florida, the elements of tortious interference with a contractual relationship are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *U.S. Life Ins. Co. v. Logus Mfg. Corp.*, 845 F.Supp.2d 1303, 1320 (S.D.Fla.2012) (internal quotation marks omitted).*See, also, Mariscotti v. Merco Grp. at Akoya, Inc.*, 917 So.2d 890, 892 (Fla. 3d DCA 2005); *Florida Teleph. Corp. v. Essig*, 468 So.2d 543 (Fla. 5th DCA 1985).  The gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other. *Dade Enterprises, Inc. v. Wometco Theatres, Inc*., 119 Fla. 70, 73, 160 So. 209, 210 (1935); *Steffan v. Zernes*, 124 So.2d 495, 498 (Fla. 1st DCA 1960).  In order to state a cause of action for tortious interference, there must be allegations of a *specific* contract with an *identifiable* customer with which the defendant interfered thereby *resulting in a breach of that contract*.  *Astro Tel, Inc. v. Verizon Florida, LLC*, 979 F.Supp.2d 1284, 1298 (M.D. Fla. 2013)(emph. added).

In order to be held liable for tortious interference, "the interfering defendant must be a third party, a stranger to the business relationship."  *Mattocks v. Black Entertainment Television, LLC*, 43 F.Supp. 1311, 1319 (S.D. Fla. 2014) (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A*., 742 So.2d 381, 386 (Fla. 4th DCA 1999)).  "A defendant is not a 'stranger' to a business relationship if the defendant 'has any beneficial or economic interest in, or control over, that relationship.'" *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc*., 13 So.3d 1090, 1094 (Fla. 4th DCA 2009) (quoting, *Nimbus Tech., Inc. v. SunnData Prods., Inc*., 484 F.3d 1305,

1309 (11th Cir.2007)); *Mitchell v. School Bd. of Dade County, Fla.*, 566 So.2d 2, 3 (Fla. 3d DCA 1990). Stated differently, "a cause of action for tortious interference does not exist against one [that is itself] a party to the business relationship." *Genet Co. v. Annheuser-Busch, Inc.*, 498 So.2d 683, 684 (Fla. 3d DCA 1986); *Ethyl Corp. v. Balter*, 386 So.2d 1220, 1224 (Fla. 3d DCA 1980); *United of Omaha Life Insurance Co. v. Nob Hill Associates*, 450 So.2d 536, 539 (Fla. 3d DCA 1984) The reason is obvious; "[a]n interested third-party accused of tortious interference is essentially "interfering" with its own interests. This is not interference; it is freedom of contract." *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ.*, Inc., 13 So.3d 1090, 1095 (Fla. 4th DCA 2009).

In the instant case, Allstate alleges that its insureds execute assignments of benefits (AOBs) under the Allstate policies to AGA prior to AGA performing the replacements. [D.E. 1, ¶ 5]. At that point, AGA owns the right to collect benefits from Allstate under the insureds' policies and thereby steps in the insureds' shoes under the insurance contracts. *See, Price v. RLI Ins. Co.*, 914 So. 2d 1010, 1013 (Fla. 5th DCA 2005) ("An assignment is a transfer of all the interests and rights to the thing assigned. The assignee . . . stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name."); *Lauren Kyle Holdings, Inc. v. Health-Peterson Constr. Corp.*, 864 So. 2d 55, 58 (Fla. 5th DCA 2003)(same). Based on the AOBs that Allstate's insureds signed, AGA billed Allstate directly for payment under the insurance policies comprehensive coverage and Allstate made payments directly to AGA for those services. Plaintiffs can hardly claim that AGA – as an assignee of benefits under the very contracts to which they claim AGA interfered – is a "stranger" to those contracts.

### B. Counts II – X Fail to State a Claim Upon Which Relief May be Granted

As a threshold matter, Counts II – X fail to state a claim upon which relief may be granted

for the same reasons Plaintiffs lack Article III standing as described in detail above, i.e. that Plaintiffs are not AGA's consumer-customers nor are they consumers who suffered an injury in a consumer transaction as required by Florida or Federal law. Defendants rely on those arguments *infra* in support of its position that the Complaint should also be dismissed under Rule 12(b)(6) and incorporate them by reference. The additional reasons Counts II – X fail to state a claim are addressed below.

Plaintiffs improperly asserted claims under FDUTPA against both AGA and Isaly that fail to state a claim upon which relief should be granted because: (a) the FDUTPA claims are not pled with the particularity required by Rule 9(b); (b) Plaintiffs have not sufficiently alleged that AGA violated any state or federal law; (c) Plaintiffs could have avoided injury by simply denying the windshield replacement claims even if they are somehow deemed to be AGA's consumer-customers (they are not); (d) Plaintiffs are statutorily prohibited from asserting FDUTPA relief because each Allstate-entity is a "person" regulated by Florida's Office of Insurance Regulation; and (e) Plaintiffs have not sufficiently alleged any specific fact demonstrating that Isaly was a "direct participant" in any alleged improper dealings; rather, Isaly's involvement is premised purely on conjecture and hyperbole.

A cause of action under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Gibson*, 2017 WL 3421532 at *5. FDUTPA "protects consumers from those 'who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809, 812 (Fla. 4th DCA 2002) (quoting Fla. Stat. § 501.202(2)) (emph. added). "Trade or commerce" is defined by the Act as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good

or service…." Fla. Stat. § 501.203(8). An act or practice is deceptive if it "is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Casey v. Florida Coastal School of Law, Inc.*, 2015 WL 10096084, *6 (M.D. Fla. 2015), citing, *State v. Beach Blvd. Automotive, Inc.,* 139 So.3d 380, 387 (Fla. 1st DCA 2014). That standard requires a showing of "probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." *Casey*, 2015 WL 10096084 at *6, citing, Zlotnick, 480 F.3d at 1284. "An act or practice is "unfair" if it causes consumer injury that is (1) substantial, (2) not outweighed by any countervailing benefits to consumers or competition, and (3) one that consumers themselves could not have reasonably avoided." *Casey*, 2015 WL 10096084, *6 , citing, *Porsche Cars N. Amer., Inc. v. Diamond,* 140 So.3d 1090, 1096 (Fla. 3d DCA 2014)[17]. An injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it." *Orkin Exterm. Co., Inc. v. FTC,* 849 F.2d 1354, 1365–66 (11th Cir.1988).

### Plaintiffs failed to plead their FDUTPA claims with particularity.

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In this case, five of the ten counts in the Complaint are based on alleged FDUTPA yet are not pled with the heightened particularity required under Rule 9(b). "Most courts construing claims alleging violations of the [FDUTPA] *or its state counterparts* have required the heightened pleading standard requirements of Rule 9(b)." *Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1322 (M.D. Fla. 2002) (emph. added).*See, also, Casey v. Florida Coastal School of Law, Inc.*, 2015 WL 10818746 (M.D. Fla. 2015)(applying Rule 9(b) to FDUTPA claims); *Llado-Carreno*, 2011 WL 705403 at *5(same); *Begualg Inv.*

---

[17]    "Although courts applying FDUTPA have long defined an "unfair" act or practice as one that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *see, e.g., PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla.2003) (quoted), that definition is outdated, *Porsche,* 140 So.3d at 1096."; *Casey,* 2015 WL 10096084, *6, *16, n. 9.

*Management*, 2011 WL 4434891 (same); *Solution Z v. Alma Lasers, Inc.*, 2012 WL 13012765 (S.D. Fla. 2012) (same); *Cannon v. Metro Ford, Inc.*, 242 F.Supp.2d 1322, 1332 (S.D. Fla. 2002)(same); *Vorst v. TBC Retail Group, Inc.*, 2012 WL 13026643 (S.D. Fla. 2012)(same); *Najor v. Ginn Companies, LLC*, 2011 WL 13186114 (M.D. Fla. 2011)(same).

The reasoning behind these holdings is that "[t]he particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law." *Llado-Carreno*, 2011 WL 705403 at *5. In cases where FDUTPA claims involve deception, misrepresentation, omissions, inducements, courts generally apply Rule 9(b).[18] *Id.*; *See, also, Solution Z*, 2012 WL 13012765 at *3; *Begualg Inv. Mgmt.*, 2011 WL 4434891 at *5 (applying Rule 9(b) to FDUTPA claim); *Cannon*, 242 F. Supp.2d at 1332 (applying Rule 9(b) to FDUTPA claim).

In the Eleventh Circuit, the particularity requirement of Rule 9(b) "is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2011) (citing, *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). Here, the Complaint is completely devoid of allegations identifying precisely the content of the alleged misrepresentations, who made them, where they were made, when they were made and to whom they were made. Indeed, nowhere in the Complaint is there

---

[18] The Complaint is replete with generalized averments of misrepresentation, omissions, inducements, false promises and statements intended to induce Allstate's insureds (but not Plaintiffs), and concealment [D.E. 1 at ¶¶ 60-63; 65-69; 70-82 (including an entire subject heading called "AGA's Misrepresentations and Omissions to Allstate's Insureds"); 84; 88-93; 121(d); 131-132 and 135].

any specific reference to or identification of a single customer or a single transaction or a single claim made on an Allstate policy for a single windshield replacement. The allegations in the Complaint are so generalized that Plaintiffs arguably have not satisfied even the most basic Rule 8 pleading requirements, which require more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]." *Lattimore*, 590 Fed. Appx. at 913 (quoting *Ashcroft*, 556 U.S. at 678. And they have not even come close to meeting the heightened particularity standard required by Rule 9(b).

The foregoing applies to all the FDUTPA claims Plaintiffs asserted, as well as the other causes of action premised on FDUTPA violations (declaratory relief and unjust enrichment). Importantly, the foregoing Rule 9(b) analysis equally applies to Plaintiffs' attempt to impose personal liability on Charles Isaly.

Plaintiffs fail to state a cause of action against Isaly in his individual capacity because there are no allegations of ultimate (or any) fact about his purported "direct participation" in the allegations of wrongful conduct of which Plaintiffs claim to be the victim. To hold an individual officer liable under FDUTPA, "the aggrieved party must show that the individual was a 'direct participant' in the improper dealings." *North American Clearing, Inc. v. Brokerage Computer Systems, Inc*., 666 F.Supp. 2d 1299, 1311 (M.D. Fla. 2009); *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1075 (Fla. 5th DCA 2009)("…it has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings."). While it is true that Plaintiffs blandly alleged "Isaly actively and directly participated in or had substantial control over AGA's [unfair] [deceptive] [unconscionable] acts or practices" and Isaly – as the owner and sole member of AGA – is the "scheme's mastermind" there are no specific allegations about Isaly's personal

involvement or participation (direct or otherwise) [D.E. 1 (Compl.), ¶¶ 2, 156, 168, 180].

**Plaintiffs have not sufficiently alleged AGA violated any law.**

In the very first paragraph of the Complaint, Plaintiffs summarize the "extensive and complex scheme" they accuse AGA and Isaly of perpetrating against their insureds:

> This action arises out of an extensive and complex scheme devised and executed by Defendants AGA and Isaly to pressure Allstate's insureds into hiring AGA for windshield replacements, obtain assignments of benefits from the insureds, submit invoices to Allstate for excessive and unreasonable amounts, and file over 1,400 lawsuits for recovery of the excessive and unreasonable amounts, all in an effort to unlawfully obtain payment for its excessive and unreasonable charges from Allstate.

[D.E. 1, ¶ 1]. Plaintiffs further allege Fla. Stat. § 627.7288[19] is the basis for the alleged scheme [D.E. 1, ¶ 35]. But the acts and practices about which Plaintiffs cry foul are permitted by law, which are provided safe-harbor under Fla. Stat. §501.212(1); specifically, "[t]his part does not apply to [a]n act or practice required or specifically permitted by federal or state law." *Phelps v. Hormel Foods Corporation*, 244 F.Supp. 3d 1312 (S.D. Fla. 2017).

Plaintiffs allege that AGA provides its customers, including those insured with Allstate, with work orders indicating there will be no out-of-pocket charge to the insured. [D.E. 1, ¶ 90]. That's true and is specifically permitted under Fla. Stat. § 627.7288 which provides that Floridians cannot be held responsible for paying any portion of a windshield replacement job covered by insurance. In other words, the out-of-pocket charge to insured customers will always be zero.

Plaintiffs also allege AGA's work orders, which contain an insured's waiver of the written estimate for repairs, and other alleged technical deficiencies under the FMVRA, qualifies as "deception" under FDUTPA. [D.E. 1, ¶¶ 83-93]. But Fla. Stat. §559.905(1) provides a written

---

[19]    Fla. Stat. § 627.7288 provides that "[t]he deductible provision of any policy of motor vehicle insurance, delivered or issued in this state by an authorized insurer, providing comprehensive coverage or combined additional coverage shall not be applicable to damage to the windshield of any motor vehicle covered under such policy."

estimate is only required when the "customer" requests repair work, "*the cost of which repair work will exceed $100 to the customer*." (emph. added.). Plaintiffs are not the statutorily defined "customer," since, under the statute, a "customer" is defined as "the person who signs the written repair estimate." Fla. Stat. §559.903(1); *America Atlantic Transmission v. Nice Car, Inc.*, 112 So.3d 112 (Fla. 4th DCA 2013) (holding the MVRA gives right only to "customer" and the statute does not identify other third-parties, claiming interest, to have same rights). Putting that issue aside, AGA's charges will never exceed $100 to the customer because charges to the actual consumer-customers will always be zero as a matter of law. Therefore, no written estimate is required by statute. In any event, statutory law expressly permits a customer to waive the requirement of a written estimate and holdings under Florida decisional law clarify that the statute is not violated if there is some writing which substantially complies with the FMVRA. Fla. Stat. §559.905(2).[20] Against these permitted practices, Plaintiffs' belabor a red herring because AGA's work orders are fully compliant with the FMVRA; Plaintiffs concede their insureds authorized the work and Plaintiffs do not allege the work was not satisfactorily performed.

Plaintiffs also allege AGA violated and continues to violate the FMVRA by "having repair work contracted out without the knowledge or consent of Allstate's insureds." [D.E. 1 (Compl.), ¶ 132(f)]. There is nothing under federal or state law that forbids sellers of goods and services from delegating performance to a third party. Instead, there is a Florida statute expressly permitting it – Fla. Stat. § 672.210(a).[21]

---

[20]    *See, e.g., Siam Motors, Inc. v. Spivey*, 136 So.3d 692 (Fla. 2d DCA 2014)(customer waived any written estimate required by §559.905(1)); *KT's Kar Kare, Inc. v. Laing*, 617 So.2d 325 (Fla. 4th DCA 1993) (handwritten note substantially complied with written estimate requirement); *Liberman v. Collision Specialists, Inc.*, 526 So.2d 102 (Fla. 4th DCA 1987) (finding no violation of MVRA when repair shop prepared no written estimate for customer, but accepted insurer estimate).

[21]    Fla. Stat. § 672.210(a) – part of the Uniform Commercial Code governing sales of goods and services in Florida – specifically says:

Plaintiffs further allege AGA violated the FHSSA and FTC Rule which both impose requirements on door-to-door salespeople peddling goods and services for $25.00 or more. [D.E. 1, ¶¶ 118-123].]. For the same reasons AGA's conduct with respect to the FMVRA is perfectly legal, AGA's conduct under the FHSSA and FTC Rule is also perfectly legal. Since Fla. Stat. § 627.7288 provides that Floridians cannot be held responsible for paying any portion of a windshield replacement job covered by insurance, AGA's insured customers will never go out-of-pocket at all. Accordingly, since the FHSSA and FTC Rule only apply when consumers are sold goods or services for $25.00 or more, neither can apply here.

**Plaintiffs Could Have Avoided Injury by Simply Denying Claims**

An act or practice is "unfair" if it causes consumer injury that consumers themselves could not have reasonably avoided." *Casey, infra,* 2015 WL 10096084, *6; *Diamond*, 140 So.3d at 1096. An injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it." *Casey*, 2015 WL 10096084, *6 (citing *Orkin Exterm. Co., Inc. v. FTC*, 849 F.2d 1354, 1365-66 (11th Cir.1988)).

Under Florida law, insurers have the right to deny claims if their insureds fail to cooperate during the claims process. *Travelers Ind. Co. of Conn. V. Attorney's Title Ins. Fund*, 194 F.Supp. 1224, 1232 (M.D. Fla. 2016). To properly do so, the insurer must show that the lack of cooperation was material and that it was substantially prejudiced in the particular case by the failure to

---

A party may perform her or his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having her or his original promisor perform or control the acts required by the contract. No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.

Delegating the windshield replacement work to third parties is not in violation of any state or federal law. It is therefore not a FDUTPA violation. There is not a single allegation suggesting or implying a single AGA customer has a substantial interest in having an AGA employee (as opposed to an independent contractor) perform or control the acts required by the contract. There is not a single allegation that AGA claimed it was not exposed to liability for a breach by a third-party delegate.

cooperate. *Id.* (citing, *Ramos v. Northwestern Mut. Ins. Co.*, 336 So.2d 71, 75 (Fla. 1976). In other words, if an insurer requires notice of a loss at a certain time before the damage is repaired or replaced, then an insured's failure to provide that notice is a failure to cooperate.

In this case, Plaintiffs characterized the entire "scheme" perpetrated by AGA and masterminded by Isaly as one "to deprive Allstate of its contractual rights to an inspection, to demand appraisal, and to exercise its option to repair or replace." [D.E. 1, ¶ 59]. Plaintiffs assert harm because (1) their insureds do not report damaged windshields to them prior to AGA replacing them thus deny Allstate the opportunity to first assess the damage and exercise its ability to control costs and negotiate repair/replacement costs [D.E. 1 at ¶ 94, 99-100]; (2) Allstate is deprived of its right to inspect and appraise the windshield damage before AGA replaces it [D.E. 1 at ¶¶ 96-97]; (3) Allstate is deprived of its right to replace the windshield itself [D.E. 1 at ¶ 98]. According to Plaintiffs, these rights are "[o]f particular importance to this lawsuit." [D.E. 1, ¶ 44].

*But Plaintiffs paid the claims anyway* (albeit in an amount less than AGA invoiced). They could have denied the claims for lack of cooperation. They chose not to do so. They could have denied the claims because they were allegedly deprived the rights identified above. They chose not to do so. Instead, they chose to pay the claims. Even assuming Plaintiffs can be considered AGA's consumer-customers, they still fail to state a cause of action for FDUTPA violations because they could have avoided all alleged harm by simply denying the windshield replacement claims AGA submitted and then defend the denials in court if sued.

### FDUTPA does not apply to "person[s]" regulated by Florida's OIR.

FDUTPA does not apply to any ***person*** or activity regulated under laws administered by the Office of Insurance Regulation of the Financial Services Commission ("OIR"). Fla. Stat. § 501.212(4)(a)(emph. added). As Plaintiffs expressly concede, "[e]ach Plaintiff is a "person" under

Florida Statute § 501.211(2)…" [D.E. 1, ¶¶ 150, 163, 175, 204 and 218]. As insurance companies, Plaintiffs are regulated under laws administered by OIR. As a matter of plain statutory text and common sense, Allstate is a "person" regulated under laws administered by the OIR, to whom FDUTPA simply does not apply. To hold otherwise is to ignore and effectively rewrite the plain language of Fla. Stat. § 501.212(4)(a).[22] It is a basic tenet of the Separation of Powers doctrine that courts are precluded from rewriting statutes. *See, e.g., Murphy v. Smith*, 138 S.Ct. 784, 789 (2018)("And respect for Congress's prerogatives as policymaker means carefully attending to the words it chose rather than replacing them with others of our own."); *Thrivent Financial for Lutherans v. State Dept. of Financial Services*, 145 So.3d 178, 182 (Fla. 1st DCA 2014)( Holding courts may not rewrite statutes contrary to their plain language.).

### C. Count V (Unjust Enrichment Based on Violation of the FHSSA and FTC Rule) fails to state a claim upon which relief may be granted.

To state a cause of action for unjust enrichment, a complaint must allege that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (citation omitted).

Here, Plaintiffs allege that AGA was unjustly enriched by violating the FHSSA and the

---

[22]     To be sure, the Eleventh Circuit held otherwise in *State Farm Mut. Auto. Ins. Co., et. al., v. Physicians Injury Care Center, et. al.*, 427 F.Appx. 714, 723 (11th Cir. 2011), rev'd on other grounds by *State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014). But since it is an unpublished opinion (it literally says "This case was not selected for publication in the Federal Reporter"on the first page), it is not binding and has no precedential value. See, 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."). The *Physicians Injury Care Center* case should not even be considered persuasive here because the focus in that case was solely on whether the "activity" complained of was regulated by the OIR. There was no consideration, analysis, discussion or even reference to the issue of whether FDUTPA applies to any action by or against a "person" regulated by OIR. The instant case appears to be a case of first impression in that regard.

FTC Rule, yet both deem unlawful the sale of goods or services that exceed $25.00. Fla. Stat. § 501.021(1); 16 C.F.R. § 429.0(a); [D.E. 1, ¶ 123]. This alone should result in the dismissal with prejudice of Count V because, again, Plaintiffs concede that "AGA has not collected and does not seek to collect any payment from Allstate's insureds." [D.E. 1, ¶ 123]. And since Fla. Stat. § 627.7288 provides that Floridians cannot be held responsible for paying any portion of a windshield replacement job covered by insurance, it is inconceivable the FHSSA or the FTC Rule could apply here. And if neither the FHSSA nor FTC Rule can apply, then AGA cannot possibly have been unjustly enriched by violating them. In other words, the circumstances are not such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

**D.      Count VI (Unjust Enrichment Based on Violation of the FMVRA) fails to state a claim upon which relief may be granted.**

The FMVRA defines "customer" as "the person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work." Fla. Stat. § 559.903(1). This means the FMVRA does not apply to insurers unless the vehicles being repaired are owned by the insurer and an authorized representative of the insurer signs the written repair estimate. Moreover, the FMVRA only requires a written repair estimate when "the cost of … repair work will exceed $100.00 *to the customer*…" Fla. Stat. § 559.905(1)(emph. added). As discussed, Fla. Stat. § 627.7288 precludes the imposition of a deductible on insureds making windshield replacement claims. As noted by a Florida judge:

> In other words, under Section 627.7288, the insured cannot be held responsible for paying any portion of a windshield repair or replacement job that is covered by [automobile] insurance. Under these circumstances, it is difficult to envision a scenario where the Florida Motor Vehicle Repair Act would be applicable to a windshield repair or replacement job that is covered by insurance without any deductible, *because the cost "to the customer" is always required to be zero as a matter of law.*

31

*Quality Counts Auto Glass a/a/o Overturf's Floor & Fabric Care v. State Farm Mut. Auto. Ins. Co.*, Order on Competing Motions for Summary Disposition at ¶¶ 19-20, Case No. 17CC25939 (Hillsborough Cty. Ct., May 23, 2018) (emph. added).[23]

Based on this analysis, Plaintiffs have not stated a claim under the FMVRA or the common law elements of unjust enrichment. Without violating the FMVRA, there can be no credible allegation that "it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Hillman Const. Corp. v. Wainer*, 636 So.2d 576, 577 (Fla. 4th DCA 1994). As such, Plaintiffs' unjust enrichment claim fails.

**E.      Counts VII and VIII fail to state a claim upon which relief may be granted.**

Counts VII and VIII, claims for FDUTPA violations based on violations on the FHSSA and FTC Rule, respectively, were already addressed at length *infra*; Defendants rely on the arguments previously advanced regarding these specific counts.

**F.      Count IX (Declaratory Judgment) fails to state a claim upon which relief may be granted.**

Count IX seeks judicial declarations that AGA and Isaly tortuously interfered with insurance contracts, violated FDUTPA, violated the FHSSA, the FTC Rule and the FMVRA [D.E. 1, ¶¶ 229-235]. As this cause of action is nothing more than a mash-up of all prior counts and is duplicative of the multiple requests for declaratory relief asserted as part of the FDUTPA claims, Defendants rely on the arguments they have previously made.

In addition to the foregoing, Count IX should be dismissed because the Federal Declaratory Judgment Act does not support the requested declarations. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201 states in pertinent part as follows:

---

[23]      The referenced order has not been published so a copy is attached hereto as Exhibit A.

> (a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Supreme Court has held "[t]he Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112, 82 S. Ct. 580, 7 L. Ed. 2d 604 (1962). "The declaratory judgment is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose." *Allstate Ins. Co. v. Employers Liability Assur. Corp*., 445 F.2d 1278, 1280 (5th Cir. 1971). "The point of a declaratory judgment is to permit 'actual controversies to be settled **before they ripen into violations of law,' not to adjudicate past conduct**." *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.,* U.S. Dist. LEXIS 24318, *5 (S.D. Fla. Mar. 27, 2008) (emph. added). *See, also, SBA Communications, Inc. v. Zoning Commission of Town of Brookfield*, 96 F. Supp. 2d 139, 141; *Gruntal & Co. v. Steinberg,* 837 F. Supp. 85, 89 (D.N.J. 1993); *Hoagy Wrecker Service, Inc. v. City of Fort Wayne*, 776 F. Supp. 1350, 1358 (N.D. Ind. 1991).

In Count IX, the Plaintiffs request a "judgment declaring that all claims or charges submitted by AGA to Plaintiffs for windshield replacements are not owed by Plaintiffs, that Plaintiffs are owed a refund for any amounts previously paid; and that the assignments of benefits obtained in violation of the Sales Act, the FTC Rule, the Repair Act and the FDUTPA are illegal and void." [D.E. 1, ¶ 235]. Essentially, Plaintiffs seek an impermissible advisory opinion from this Court that the Defendants violated numerous provisions of Florida and Federal law. This claim should accordingly be dismissed.

**G.** **Count X (Unjust Enrichment) fails to state a claim upon which relief may be granted**

Count X appears to be a catch-all count that literally incorporates all facts and legal theories contained in the rest of the Complaint [D.E. 1, ¶¶ 236-242]. For the reasons and arguments articulated above as to why no legal theory advanced in the Complaint should result in relief for any of the Plaintiffs against either Defendant, Count X should also be dismissed.

**H.** **Conclusion and Prayer for Relief**

The Complaint should be dismissed for the reasons set forth herein, and Defendants respectfully request this Court do so, as well as award such other and further relief as is just and proper including an award of reasonable attorneys' fees and costs pursuant to Fla. Stat. §§ 627.428, 559.921(1) and 501.2105.

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on February 4, 2019, we electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide notice to counsel for the Plaintiffs, Lori J. Caldwell, Esquire, Sally R. Culley, Esquire and Douglas B. Brown, Esquire, Rumberger, Kirk & Caldwell, P.A., Lincoln Plaza, Suite 1400, 300 South Orange Drive, Post Office Box 1873, Orlando, Florida 32802-1873.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| | |
| s/Mac S. Phillips | s/Chad A. Barr |
| Fla. Bar No. 195413 | Fla. Bar No.: 55365 |
| PHILLIPS TADROS, P.A. | LAW OFFICE OF CHAD A. BARR, P.A. |
| Trial Counsel for Defendants | Trial Counsel for Defendants |
| 212 SE 8th Street, Suite 103 | 986 Douglas Avenue, Suite 100 |
| Fort Lauderdale, Florida 33316 | Altamonte Springs, Florida 32714 |
| T.      954.642.8885 | T.      407.599.9036 |
| F.      954.252.4621 | F.      407.960.6247 |
| E.      service@phillipstadros.com | E.      service@chadbarrlaw.com |
|          mphillips@phillipstadros.com |          chad@chadbarrlaw.com |
| |          paralegal@chadbarrlaw.com |

# EXHIBIT A

**IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
GENERAL CIVIL DIVISION**

QUALITY COUNTS AUTO GLASS
a/a/o OVERTURF'S FLOOR & FABRIC CARE

       Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

       Defendant.

_____/

CASE NO.: 17CC25939
DIVISION: M

## ORDER ON COMPETING MOTIONS FOR SUMMARY DISPOSITION

**THIS CAUSE** came before the Court on April 9, 2018 on summary disposition filed by the Plaintiff, Quality Counts Auto Glass, as well as, on April 16, 2018 on summary disposition filed by the Defendant, State Farm Mutual Automobile Insurance Company. The Court, having considered the motions, the arguments of counsel, the admissible evidence, and being advised in the premises,

      **ORDERS AND ADJUDGES** as follows:

**A.**   **Introduction**

     1.    Plaintiff has brought the above-styled cause of action seeking overdue/unpaid benefits for windshield repair services rendered to the insured under the Physical Damages portion of the relevant policy of insurance.

     2.    In this matter, Overturf's Floor & Fabric Care, the ("Insured") requested the Plaintiff replace a damaged windshield on a motor vehicle that had windshield replacement insurance issued by the Defendant. The Insured assigned his or her insurance benefits to the Plaintiff. The Plaintiff remediated the loss and submitted its bill to the Defendant in the amount of $1,026.67. The Defendant did not pay the Plaintiff's billed amount, and instead paid Plaintiff $311.49.

3.    The action is centered around the language set forth in the relevant policy of insurance which states in part:

**Insuring Agreement**
  1.    **Comprehensive Coverage**
  
      a.    *We* will pay for *loss, except loss caused by collision*, to a *covered vehicle.*

         \* \* \*

      c.    The deductible does not apply to damage to the windshield of any *covered vehicle.*

         \* \* \*

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

    1.    *We* **have the right to choose to settle with** *you* **or the owner of the** *covered vehicle* **in one of the following ways:**

      a.    **Pay the cost to repair the** *covered vehicle* **minus any applicable deductible.**

         **(1)** *We* **have the right to choose one of the following to determine the cost to repair the** *covered vehicle***:**

            (a) The cost agreed to by both the owner of the *covered vehicle* and us;

            **(b) A bid or repair estimate approved by** *us***;**

        or

            (c) A repair estimate that is written based upon or adjusted to:

               (i) the prevailing competitive price;

               (ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or
               (iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle is* to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other

(2) The cost to repair the *covered vehicle* does not include
(3) If the repair or replacement of a part results in the betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.
(4) If you and we agree, then windshield glass will be repaired instead of replaced;

b. Pay the actual cash value of the covered vehicle minus any deductible.

4.     Plaintiff contends that it has complied with all relevant terms of the policy and that the Defendant breached the policy when it did not pay out the loss pursuant to the Limits and Loss Settlement portion of the same. Plaintiff contends that the applicable provisions of the insurance policy purport to give the Defendant unbridled discretion in reimbursing windshield claims. Plaintiff contends that the Defendant has not clearly and unambiguously engaged in any meaningful exchange of information with the Plaintiff or the Insured, to determine how Defendant limited liability as to the amount of loss in accordance with the policy of insurance.

5.     The Defendant filed a motion for summary disposition contending that it has paid out the loss pursuant to1.a.(1)(b) of the Limit and Loss Settlement provision of the policy and has met its full liability. The Defendant contends that the Plaintiff did not provide timely notice of the loss, which has prejudiced the Defendant in not being able to inspect the loss. The Defendant also contends that Plaintiff's assignment is invalid as it was procured through a

fraudulent or negligent misrepresentation to the Insured. The Defendant also contends that Plaintiff promised the Insured that it would accept whatever amount paid by Defendant as payment in full and is therefore estopped from seeking recovery. Finally, the Defendant also contends that the Plaintiff failed to comply with Section 559.905, Florida Statutes because Plaintiff failed to provide the Insured with a written estimate prior to the repairs being performed and therefore the Defendant is not obligated to pay any amount over $100.00 for the loss.

6.      For the reasons set forth below, this Court concludes that the material facts are undisputed, and that as a matter of law, the Plaintiff is entitled to summary disposition, on the basis of Defendant's unlawful failure and/or refusal to pay the Plaintiff's full price charged.

## B.  Analysis

7.      The Court has reviewed the deposition of Ulises Ibarra, the Plaintiff's corporate representative. Mr. Ibarra stated that the Plaintiff was hired by the Insured to remediate the loss and was provided a written assignment of benefits. Mr. Ibarra stated that he personally handled the claim and was the technician who performed the services. Mr. Ibara stated that the Defendant was notified of the loss and coverage was confirmed on May 23, 2017 while on a three way call with himself, the Insured and the Defendant's third party agent, LYNX. Mr. Ibarra stated that coverage was confirmed, the job was completed on May 24, 2017, and that he submitted the invoice and related documents for payment to Defendant on the same date.

8.      The Court has reviewed the deposition of the Insured's corporate representative, Jeremy Overturf. Mr. Overturf stated that he hired the Plaintiff to remediates the loss. Mr. Overturf confirmed that the Defendant was provided notice of the loss by way of a three way phone call with himself, the Defendant's agent, and Plaintiff. Mr. Overturf stated that Plaintiff did not explain the payment process with him in any fashion but that he was already familiar with the process due to previous claims.

9.      This Court has reviewed the affidavit of Gerald Young, the Defendant's corporate representative. Mr. Young stated that the Defendant paid out the loss under the "bid or repair estimate approved by us" provision of the policy's "Limits of liability" for Comprehensive and Collision Coverages. Mr. Young stated that the amount paid by the Defendant is the "bid or repair estimate" based on bids or repair estimates obtained and approved by the Defendant in accordance with the policy's "Limit of Liability" for Comprehensive and Collision Coverages.

10.     The Court has reviewed the deposition of Anria Sparkman, the Defendant's corporate representative. Ms. Sparkman stated that the Defendant's first notice of the loss was on May 24, 2017, when the Plaintiff's invoice was submitted, and that she has no knowledge of any prior notice. Ms. Sparkman stated that the late notice prohibited the Defendant from conducting a timely inspection of the loss. Ms. Sparkman stated that the Defendant afforded coverage and paid out the loss pursuant to 1.a.(1)(b) of the Limit and Loss Settlement provision of the policy. Ms. Sparkman stated the Defendant received two bids from separate facilities, from LYNX. Ms. Sparkman stated that the Defendant paid the loss pursuant the methodology set forth in their letter dated June 7, 2017 to the Insured. Ms. Sparkman stated that the Defendant did not pay either of the two bids received; rather the payment was made pursuant to Defendant's "adjusted system bid", which is an amount that she determined. Ms. Sparkman stated the Defendant did not receive any bid in the amount of $311.49. Ms. Sparkman stated that she has no knowledge of any facts to support the Defendant's accusation that the Plaintiff procured the assignment under fraudulent or negligent misrepresentations to the Insured. Ms. Sparkman also stated that she has no knowledge of any facts to support the Defendant's allegation that the Plaintiff promised the Insured that it would accept whatever amount paid by Defendant as payment in full. Ms. Sparkman stated that the only repair estimate received or considered by the Defendant was the Plaintiff's.

11.     During her deposition, Ms. Sparkman raised confidentiality, trade secret, and/or attorney-client privilege to every pertinent question posed by Plaintiff's counsel regarding: (a) notice and any prejudice that would stem from an alleged lack of notice; (b) whether the Defendant has communicated in any manner with the Insured regarding the subject loss; (c) whether the two bids reviewed for the loss were from facilities that were contractually obligated to provide a lower bid amount; (d) the Defendant's National Offer and Acceptance Program; (e) the "adjusted system bid" upon which the payment was allegedly based; (f) the Defendant's program pricing; (g) the information contained in the letter dated June 7, 2017; (h) how the document titled, "LYNX Services Job Lookup" is utilized by the Defendant; and (i) the meaning of the dispatch number noted on the Lynx Services Job Lookup.

12.     Ms. Sparkman also stated that she has no knowledge of whether the Defendant ever inspected the vehicle pre or post-remediation. Nonetheless, the Defendant contends that it

was not afforded the opportunity to inspect the loss because the Plaintiff has breach the notice provision of the policy. That notice provision states in pertinent part:

**INSURED'S DUTIES**

. . . . .

**2. Notice to Us of an Accident of Loss**
The insured must give us or one of our agents notice of the accident or loss as soon as reasonably possible.

. . . . .

**6. Other Duties Under the Physical Damage Coverages**
When there is a loss, you or the owner of the covered vehicle must:

. . . . .

c.      allow us to:
        (1) to inspect any damage property before its repair or disposal

13.      This Court agrees with Plaintiff and finds that the Defendant waived its right to assert a coverage defense as to lack of notice when it afforded coverage and tendered payment. *Llerena v. Lumberman,* 379 So.2d 166 (Fla. 3rd DCA 1980); *Bear v. New Jersey Ins. Co.,* 138 Fla. 298, 189 So. 252 (1939); *English and American Ins. Co. v. Swain Groves, Inc.,* 218 So.2d 453 (Fla. 4th DCA 1969); *American Bankers Ins. Co. of Fla. v. Terry,* 277 So.2d 563 (Fla. 3d DCA 1973).

14.      Putting waiver aside, this Court agrees with Plaintiff and finds that both the Plaintiff and Insured confirmed that timely notice of the loss was given on May 23, 2017 while on a three way call with LYNX, the Defendant's third party administrator. This Court finds that the LYNX Services Job Lookup document for the relevant claims evinces that notice of the loss was generated on May 23, 2017. This Court duly notes that the letter dated June 7, 2017 from LYNX to the insured patently evinces that a conversation did in fact take place on May 23, 2017 regarding the loss. This Court duly notes that the letter dated June 7, 2017 from LYNX to the insured patently evinces that the Defendant's position is that they have met their obligations under the policy and there is no evidence to support the Defendant's suggestion that it did not receive notice. There is also no evidence that the Defendant requested or even considered inspecting the loss in any manner. This Court finds that policy language in question does not impose a specific time period that an Insured must wait for inspection after providing notice of a loss. Regardless, this Court notes that the plain language of Section 627.7288, Florida Statutes and the public policy implemented by that statute contemplate immediate replacement of

damaged windshields. *See,* Committee on Insurance, Staff Report, House Bill #357. As such, this Court finds that the undisputed material facts show that the Plaintiff and the Insured provided timely notice of the loss.

15.    Putting proper notice and waiver aside, this Court agrees with Plaintiff and finds that the Defendant cannot maintain its lack of notice defense because the Defendant repeatedly refused to answer any questions pertinent to the prejudice they allegedly suffered. The Plaintiff has a right rebut any prejudice alleged as a result of Plaintiff's alleged untimely notice. The Defendant cannot allege that it has been prejudiced and then refuse to discuss the circumstance surrounding the alleged prejudice, and the nature, extent, and effect of such alleged prejudice. This Court also notes that the Defendant lacks any knowledge as to whether an inspection was even requested or performed for the loss. As such, the Court finds that the undisputed material facts fail to demonstrate that the Defendant was prejudiced by any allegedly untimely or insufficient notice of the loss.

16.    This Court finds that the Defendant lacks any evidence to support its allegation that Plaintiff promised the Insured that it would accept whatever amount paid by Defendant as payment in full. As such, the Court finds that the undisputed material facts show the Plaintiff did not promise the Insured that it would accept whatever amount paid by Defendant as payment in full.

17.    This Court finds that the Defendant lacks any evidence to support its accusation that Plaintiff's assignment was procured through a fraudulent or negligent misrepresentation to the Insured. As such, the Court finds that the undisputed material facts show that the assignment was not procured through a fraudulent or negligent misrepresentation to the Insured.

18.    The Defendant bears the burden of proving its affirmative defenses. *Bankers Ins. Co. v. Randall Thomas,* 684 So2d 246 (Fla. 2nd DCA 1996). Generally, the attorney-client privilege is not waived by bringing or defending a lawsuit. *Home Ins. Co. v. Advance Mach. Co., 443 So.2d 165, 168 (Fla. 1st DCA 1983).* But, if proof of the claim would require evidence of the privileged matter, the privileged matter is discoverable. *Id.* This is a classic violation of the "sword and shield" doctrine. Under the sword and shield doctrine, a party who raises a claim or defense that will necessarily require proof by way of privileged evidence cannot also insist that the evidence is privileged and not subject to discovery. *Jenney v. Airdata Wiman, Inc.,* 846 So.2d 664, 668 (Fla. 2d DCA 2003), *citing, Savino v. Luciano,* 92 So.2d 817, 819 (Fla. 1957). *See also,*

*Hoyas v. State*, 456 So.2d 1225, 1229 (Fla. 3d DCA 1984) ("the privilege was intended as a shield, not a sword" and that "a party may not insist upon the protection of the privilege ... while disclosing other selected communications because they are self-serving"). Accordingly, with the exception of the defense directed to Section 559.905, the Defendant cannot maintain its affirmative defenses due to its refusal to address the facts surrounding those defenses based on its assertions of confidentiality, trade secret, and/or attorney client privilege.

19. Next, the Defendant misplaces its reliance on the Florida Motor Vehicle Repair Act (i.e., Ch. 559, Part IX, Fla. Stat.). That Act is a consumer protection law which might, under certain circumstances, provide certain remedies to a motor vehicle repair shop's customer and to certain state agencies, but the Act does not provide any remedies or even defenses to an insurance company. *See,* §559.903(1), Fla. Stat. (defining "customer" as "the person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work"); §559.921, Fla. Stat. (describing available remedies for violations of the Act). In any event, assuming arguendo that the Act could somehow be applicable to this case, the Court finds: (a) the Defendant failed to present any evidence that the customer (i.e., the Insured) or the Defendant suffered any injury or other damages caused by any alleged violation of the Act; (b) the Defendant afforded coverage and waived its right, if any, to raise an alleged violation of the Act; (c) the Act is inapplicable under an assignment scenario; and (d) the customer knowingly and voluntarily waived its right, if any, to receive a written estimate.

20. Moreover, assuming arguendo that the Florida Motor Vehicle Repair Act can be invoked by the Defendant in this case, that Act only requires a written repair estimate when "the cost of ... repair work will exceed $100 *to the customer....*" § 559.905(1), Fla. Stat. (emph. added). In contrast, under Section 627.7288, the Florida Legislature has mandated that drivers with windshield insurance must be covered without any deductible. In other words, under Section 627.7288, the insured cannot be held responsible for paying any portion of a windshield repair or replacement job that is covered by such insurance. Under these unique circumstances, it is difficult to envision a scenario were the Florida Motor Vehicle Repair Act would be applicable to a windshield repair or replacement job that is covered by insurance without any deductible, because the cost "to the customer" is always required to be zero as a matter of law.

21.     This Court finds that the admissible undisputed evidence conclusively establishes that the Plaintiff has complied with all relevant portions of the insurance policy.

22.     This Court finds that the Defendant's letter dated June 7, 2017 to the Insured, as well as the affidavit of the Defendant's corporate representative reference a payment methodology that is not found in the insurance policy. If applicable, the standard set forth in under section 1.a.(1)(b) of the Limits and Loss Settlement portion of the policy requires that the Defendant must receive a true bid or repair estimate and pay the same. The Defendant has not presented any evidence of any bid or repair estimate provided to the Defendant, upon which payment was allegedly based, in the amount of $311.49. To the contrary, Ms. Sparkman stated that the only repair estimate received or considered by the Defendant was the Plaintiff's. As such, this Court agrees with Plaintiff and finds that the Defendant did not reimburse Plaintiff pursuant to a bid or repair estimate according to section 1.a.(1)(b) of the insurance policy, or any other relevant portion of that policy.

23.     The Court further finds that the applicable provisions of the insurance policy purport to give the Defendant unbridled discretion in reimbursing windshield replacement claims. The Limit and Loss Settlement section of the insurance policy does not clearly identify or describe the manner upon which comprehensive and collision losses will be settled. The Defendant contends that the relevant loss falls within sections 1.a.(1)(a)(b) and (c). However, those sections only speak in terms of repair, and the policy draws an express distinction between repairs and replacements of windshields at subsection (4). The loss at issue is a replacement not a repair. As such, this Court finds that the insurance policy does not clearly and unambiguously put its insureds on notice as to how windshield replacement losses that fall within the Physical Damage portion of the insurance policy will be reimbursed. *See, Geico Gen. Ins. Co. v. Virtual Imaging Services, Inc.,* 141 So.3d 147, 157 (Fla. 2013).

24.     Accordingly, the Court finds that the undisputed material facts in this case demonstrate that the Plaintiff has complied with all relevant terms of the policy of insurance.

## C.   Conclusion

25.     Based on the foregoing, the Defendant's motion for summary disposition is **DENIED**, and Plaintiff's motion for summary disposition is hereby **GRANTED**. The Plaintiff's

damages are set in the amount of $715.18, the difference between the amount charge by Plaintiff and the amount paid by Defendant.

26. This is a non-final order. The Court hereby reserves jurisdiction to determine the Plaintiff's claims for attorneys' fees, costs and interest.

**DONE AND ORDERED**, in chambers, in Tampa, Hillsborough County, Florida, on this 21 day of _____May_____, 20 18.

Honorable Herbert M. Berkowitz
County Court Judge

Conformed copies to:

Plaintiff's counsel - Anthony T. Prieto, Esquire,

Defendant's counsel – Kristen Gonzalez, Esquire