UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALLSTATE INSURANCE COMPANY,
an Illinois corporation; ALLSTATE FIRE
AND CASUALTY INSURANCE COMPANY,
an Illinois corporation; ALLSTATE INDEMNITY
COMPANY, an Illinois corporation; and
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, an Illinois
corporation,

      Plaintiffs,

v.                               Case No. 6:18-cv-2184-Orl-41KRS

AUTO GLASS AMERICA, LLC,
a Florida limited liability company, and
CHARLES ISALY, a citizen of Arizona,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company (collectively "Allstate" or "Plaintiffs"), respectfully request that this Court deny Defendants' Motion to Dismiss.

## I.    INTRODUCTION

As set forth in the Complaint, Defendants have created and implemented a business model designed to force insurers like Allstate to pay excessive amounts for windshield replacements that Defendants would never be able to collect in a competitive market. This course of conduct by Defendants, which has taken place over many years and covers

thousands of windshield claims, is the subject of this lawsuit. And it is this course of conduct, in the aggregate, that has caused and will continue to cause substantial damages to Allstate. Importantly, the claims asserted by Allstate in this lawsuit do not require an analysis of each individual windshield claim submitted by Auto Glass America, LLC ("AGA"); rather, Allstate's claims pertain to Defendants' overall business tactics and practices.

Defendants hide behind the laws in Florida that allow assignments of benefits and prohibit collection of deductibles on windshields claims when there is comprehensive automobile insurance coverage available, but those laws do not permit auto glass vendors to use unfair and deceptive tactics in their solicitation of insureds, obtaining of assignments of benefits, seeking of excessive payments for their work from Allstate, and filing of vexatious lawsuits. Indeed, consumer protection laws like Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Home Solicitation Sales Act ("Sales Act"), and Motor Vehicle Repair Act ("Repair Act") were enacted to protect the public from such tactics, and Defendants' attempt to skirt the requirements of those laws based on irrational strained interpretations is inconsistent with their intent and spirit.

Plaintiffs' Complaint contains specific factual allegations which describe in detail Defendants' unfair and deceptive business practices. Defendants have largely ignored Allstate's factual allegations and in their Motion to Dismiss are asking this Court to ignore those allegations, as well. Defendants' characterization of the Complaint as "a cornucopia of hyperbole and legal conclusions that float freely on a sea of bombast" (Doc. 22 p.1) is not only overly dramatic but flat wrong.

## II.    **PROCEDURAL BACKGROUND**

This lawsuit was filed by Plaintiffs on December 21, 2019. Plaintiffs' Complaint raises the following causes of action against AGA and Charles Isaly:

- Count I – Tortious Interference against AGA, on the grounds that AGA has intentionally and unjustifiably interfered with Allstate's contractual relationships with its insureds;

- Count II – Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") against AGA and Isaly, on the grounds that AGA and Isaly's practices and conduct are unfair;

- Count III – Violation of FDUTPA against AGA and Isaly, on the grounds that AGA and Isaly's practices and conduct are deceptive;

- Count IV – Violation of FDUTPA against AGA and Isaly, on the grounds that AGA and Isaly's practices and conduct are unconscionable;

- Count V – Unjust Enrichment against AGA, based on AGA's violation of Florida's Home Solicitation Sales Act ("Sales Act") and the Federal Trade Commission's Rule Concerning Cooling-off Period for Sales Made at Homes or at Certain Other Locations ("FTC Rule");

- Count VI – Unjust Enrichment against AGA, based on AGA's violation of Florida's Motor Vehicle Repair Act ("Repair Act");

- Count VII – Violation of FDUTPA against AGA, based on AGA's violation of the Sales Act and FTC Rule;

- Count VIII – Violation of FDUTPA against AGA, based on AGA's violation of the Repair Act;

- Count IX – Declaratory Judgment against AGA and Isaly, requesting a declaration regarding AGA's practices and conduct and Allstate's liability for payment of AGA's claims;

- Count X – Unjust Enrichment against AGA, on the grounds that AGA has been unjustly enriched by collecting payments from Allstate for windshield replacements when repairs should have been made.

On February 4, 2019, Defendants filed a Motion to Dismiss, which seeks dismissal of the Plaintiff's Complaint with prejudice under Fed.R.Civ.P. 12(b)(1) on the grounds that (i)

Allstate lacks Article III standing to assert a claim for damages under FDUTPA and, by extension, the tortious interference, unjust enrichment, and declaratory judgments counts, and (ii) the Court should abstain and decline jurisdiction of this action based on cases previously filed in Florida's small claims courts. The Motion to Dismiss further seeks dismissal under Fed.R.Civ.P. 12(b)(6) of all ten claims asserted in the Complaint, asserting that none of those claims state a claim upon which relief may be granted.

For the reasons discussed below, Allstate requests that this Court deny Defendants' Motion to Dismiss in its entirety.

### III. THIS COURT HAS SUBJECT MATTER JURISDICTION

#### A. Plaintiffs have Article III Standing

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction…." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (*quoting Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). A complaint may be dismissed for lack of standing only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir.1994) (internal citation omitted). To demonstrate standing and thus subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must show: (1) an injury-in-fact; (2) a causal connection between the injury-in-fact and the defendant's actions; and (3) that the injury will be redressed by a favorable decision. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir.2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Defendants contend that Plaintiffs do not have standing to pursue claims for damages under FDUTPA because Plaintiffs are not consumers involved in consumer transactions with AGA.[1]  Doc. 22, p. 5. But Florida's federal courts, without questioning standing, have repeatedly allowed insurers to pursue claims under FDUTPA for recovery of amounts paid under insurance policies.  In addition, claims for damages under FDUTPA are no longer limited to consumers.  Moreover, as they are the ones who pay AGA for windshield replacements, Plaintiffs are, in fact, consumers (and have alleged that they are consumers in the Complaint).

1. **Insurers can Pursue Claims for Damages under FDUTPA for Return of Insurance Proceeds**

As an initial matter, Defendants' argument that insurers cannot pursue claims for damages under FDUTPA for return of insurance payments ignores the plethora of federal court cases in Florida allowing insurers to pursue such claims without questioning their standing to do so.  *See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*, 427 Fed. Appx. 714 (11th Cir. 2011) (without specifically addressing State Farm's standing, the Eleventh Circuit found that the insurer's FDUTPA claim was proper in case seeking return of PIP payments); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291 (S.D. Fla. 2018) and *State Farm*

---

[1]     Defendants do not limit this argument to claims *for damages* under FDUTPA, but such a limitation is assumed.  As discussed further below in subsection A.2., claims under FDUTPA for declaratory and injunctive relief are available to "anyone aggrieved," and indisputably are not confined to consumers or consumer transactions.  *See, e.g., Gibson v. Resort at Paradise Lakes, LLC*, 2017 WL 3421532, *5-6 (M.D. Fla. 2017) (court acknowledged distinction between claims for damages and those for injunctive and declaratory relief).

*Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 2018 WL 2186496 (S.D. Fla. 2018) (State Farm's standing to recover damages under FDUTPA for claim asserted against health care provider was not questioned in connection with rulings on motions to dismiss and for summary judgment); *State Farm Auto. Ins. Co. v. First Care Solution, Inc.*, 232 F. Supp. 3d 1257 (S.D. Fla. 2017) (summary judgment granted in favor of State Farm on FDUTPA claim seeking recovery of insurance benefits paid to health care provider; standing of State Farm was not questioned); *State Farm Auto. Ins. Co. v. Medical Service Center of Fla. Inc.*, 103 F. Supp. 3d 1343 (S.D. Fla. 2015) (same); *State Farm Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303 (M.D. Fla. 2014) (motion to dismiss insurer's FDUTPA claim was denied; insurer's standing was not questioned); *Fidelity & Guaranty Ins. Co. v. Ford Motor Co.*, 2009 WL 1444410 (M.D. Fla. 2009) (same); *State Farm Mut. Auto. Ins. Co. v. Kugler*, 2011 WL 4389915 (S.D. Fla. 2011) (same); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769 (M.D. Fla. 2011) (same).

### a. Plaintiffs are Consumers Entitled to Sue for Damages under FDUTPA

Defendants' contention that Plaintiffs are not consumers and, therefore, cannot sue for damages under FDUTPA is flawed from the outset because, in fact, Plaintiffs *are* consumers. "A 'consumer' is one who has engaged in the purchase of goods or services." *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014). *See also N.G.L. Travel Assoc. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 674 (Fla. 3d DCA 2000). As acknowledged by Defendants, Plaintiffs paid for AGA's windshield replacements. Thus,

Plaintiffs are engaged in the purchase of goods and services from AGA and are, as a result, consumers.

> **b.** Claims for Damages under FDUTPA are not Limited to Consumers

More significantly, even if Plaintiffs are not seen as consumers under FDUTPA, they still would be entitled to pursue their damages claims against AGA and Isaly under FDUTPA, because that statute no longer requires a plaintiff to be a consumer in order to have standing to pursue such claims. That an insurer has standing to pursue FDUTPA claims against a glass vendor for recovery of actual damages resulting from overpayments made on windshield claims was recently underscored by Judge Antoon in *Gov't Employees Ins. Co. v. Clear Vision Windshield Repair, LLC*, 2017 WL 1196438 (M.D. Fla. 2017):

> Plaintiffs have standing to bring a claim under FDUTPA. The Florida legislature broadened the remedy provision of FDUTPA in 2001 to replace the term "consumer" with "person." Fla. Stat. § 501.211(2). The term "person" is defined—along with the term "interested party"—to mean "any person affected by a violation of this part or any person affected by an order of the enforcing authority." Fla. Stat. § 501.203. "The legislative change regarding the claimant able to recover under FDUTPA from a 'consumer' to a 'person' must be afforded significant meaning. This change indicates that the legislature no longer intended FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015). This is consistent with FDUTPA's purpose, which is "[t]o protect the consuming public *and legitimate business enterprises* from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). Defendants' motion must be denied on this ground.

*Clear Vision,* 2017 WL 1196438 at *3 (internal footnote omitted, emphasis in original). *See also The Democratic Republic of Congo v. Air Capital Group, LLC*, 614 Fed. Appx. 460, 468-69 (11th Cir. 2015) (at a minimum, a plaintiff that has suffered damages because of a

purchase or sale can recover FDUTPA damages); *Gibson v. MHHS-Sinsations, LLC*, 2018 WL 3625783 (M.D. Fla. 2018) (followed Florida state appellate decisions that non-consumers have standing to sue under FDUTPA); *Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F. Supp. 2d 1356 (S.D. Fla. 2010) (analyzed the two competing lines of cases and concluded that non-consumers can sue for damages under FDUTPA).

The cases cited by Defendants, in which the courts found that the plaintiffs were not consumers and therefore had no standing to sue for damages under FDUTPA, all involved scenarios in which there was no consumer transaction -- that is, a purchase of goods or services -- at issue in the case.[2] This is an important distinction. Plaintiffs acknowledge that the District Courts in the Eleventh Circuit have not reached a consensus as to whether "any person" can sue for damages under FDUTPA *when there is no purchase transaction at issue in the case,* and that the Eleventh Circuit has not yet resolved the conflict. But where there *is* a purchase transaction at issue in the case, as there is here, a plaintiff is permitted to pursue a FDUTPA claim for damages regardless of whether or not the plaintiff is deemed to be a "consumer."

---

[2]     *See Gibson v. Resort at Paradise Lakes, LLC*, 2017 WL 3421532 (M.D. Fla. 2017) (claim for unauthorized use and theft of plaintiffs' images and likenesses); *Carroll v. Lowes Home Centers, Inc.*, 2014 WL 1928669 (S.D. Fla. 2014) (claim by employee that he was misclassified as independent contractor); *Taft v. The Dade Co. Bar Ass'n, Inc.*, 2015 WL 5771811 (S.D. Fla. 2015) (claim by employee for age and disability retaliation and discrimination); *Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, 2013 WL 1786356 (S.D. Fla. 2013) (claim for alleged delays in obtaining replacement parts for leased Mercedes-Benz automobiles); *PortionPac Chemical Corp. v. Sanitech Systems, Inc.*, 217 F. Supp. 2d 1238 (M.D. Fla. 2002) (claim for copyright and trade dress infringement).

**2. Claims for Declaratory and Injunctive Relief are not Limited to Consumers**

Defendants' arguments that Plaintiffs are not consumers under FDUTPA are not only meritless, but they ignore that Plaintiffs also seek declaratory and injunctive relief – this alone precludes a wholesale dismissal of Plaintiffs' claims. Section 501.211(1) of FDUTPA provides for very broad declaratory and injunctive relief to "anyone aggrieved:"

> (1) Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

Fla. Stat. §501.211(1). The breadth of standing under §501.211(1) requires only that a person be aggrieved by a violation that "has occurred, is now occurring, or is likely to occur in the future." *Ahearn v. Mayo Clinic,* 186 So. 3d 165, 175-76 (Fla. 1st DCA 2015); *Davis v. Powertel, Inc.*, 775 So. 2d 921 (Fla. 1st DCA 2000). *See also Carroll v. Lowes Home Centers, Inc.*, 2014 WL 1928669, *4 (S.D. Fla. 2014), and *Gibson v. Resort at Paradise Lakes, LLC*, 2017 WL 3421632, *6 (M.D. Fla. 2017) (courts found in both cases, neither of which involved consumer transactions, that plaintiffs had standing to pursue claims under FDUTPA for declaratory and injunctive relief but not for damages).

Thus, Plaintiffs' FDUTPA claims also should not be dismissed, because Plaintiffs can seek, as "persons aggrieved," their requested declaratory and injunctive relief.

**3. Plaintiffs' Other Claims are not FDUTPA Claims**

Defendants also seek dismissal of the Complaint's non-FDUTPA claims based upon the unsupported and irrational assertion that all of the other claims (for Count I - tortious interference, Counts V, VI, and X - unjust enrichment, and Count IX - declaratory judgment)

are "premised on purported FDUTPA violations." This argument effectively concedes that Plaintiffs have standing with respect to each of its non-FDUTPA claims. Plaintiffs' claims for tortious interference, unjust enrichment, and declaratory judgments are completely separate claims, with different elements, and none of them depend on a violation of FDUTPA. *See Griffin v. Dugger*, 823 F. 2d 1476, 1483 (11th Cir. 1987) (with regard to establishing standing, "each claim must be analyzed separately…"); *Wilson v. Everbank, N.A.*, 2015 WL 4043011, *3 (S.D. Fla. 2015) ("standing requires a claim-by-claim analysis."). Accordingly, even if Plaintiffs' claims for damages under FDUTPA are dismissed, such a dismissal would not provide any support for dismissal of the other, non-FDUTPA claims that have been asserted by Plaintiffs in the Complaint.

**B.      Abstention is not Warranted**

The Defendants argue for abstention under two different abstention doctrines set out in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942), respectively. As discussed below, neither the *Colorado River* doctrine nor the *Brillhart* doctrine provides a basis for abstention in this case.

**1.      The Abstention Doctrines Do Not Apply Because the Pending State Actions are Not "Parallel" to the Federal Action**

As a preliminary matter, there are differences in the parties and issues in the state court actions and this action that make the abstention under *Colorado River* or *Brillhart* inapplicable. To invoke abstention under *Colorado River* requires the presence of "parallel" or "concurrent" federal and state court lawsuits that involve substantially the same parties litigating substantially the same issues. *Jackson-Platts v. Gen. Elec. Capital Corp.,* 2013 WL

4463006 at *10 (11th Cir. Aug. 22, 2013); *Ambrosia Coal & Const. Co. v. Pages Morales,* 368 F.3d 1320, 1330 (11th Cir. 2004). Abstention under *Brillhart* likewise requires that there be parallel state and federal actions. *See Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000) ("A court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues."); *Michigan Tech Fund v. Century Nat'l Bank of Broward,* 680 F.2d 736, 742 (11th Cir.1982) (reversing discretionary dismissal of declaratory judgment complaint where there was "no pending state proceeding in which the issues in this case will necessarily be resolved").

Here, there are no "concurrent" or "parallel" state court proceedings. Defendants suggest that there are more than 1,000 small claims court lawsuits involving the same issues and parties as those in this case. Doc. 22, pp. 12-13. This is incorrect. The small claims cases do not involve substantially the same parties or the same issues and therefore are not "parallel" proceedings. Each small claims case was filed by AGA *as assignee of an insured* (different insureds, of course, in each case) against a single Allstate entity. The instant case, however, includes four different Allstate entities as Plaintiffs, as well as AGA in its own capacity (not as an assignee) and Charles Isaly.[3] .

The issues in the state court proceedings also are different than the issues in this federal suit. The issues raised in each of the small claims cases are limited and address only the amount charged for a specific windshield replacement on a specific vehicle and the policy interpretation and application of when and how appraisals can be administered. This federal

---

[3]      Charles Isaly is not a party to any of the state court cases.

case, in contrast, asserts claims against AGA *and Isaly* regarding AGA's extensive and ongoing unlawful and improper business practices and activities, which are not dependent on specific issues pertaining to specific claims. Importantly, the claims raised in this case, for tortious interference, violation of FDUTPA, unjust enrichment, and under the Declaratory Judgment Act, all of which are based on Defendants' unfair, deceptive, and unconscionable business acts and practices, are not at issue in the small claims cases.

In addition to addressing different issues, the small claims lawsuits pertain to only a portion of AGA's windshield claims that are at issue in the instant lawsuit. AGA has not filed lawsuits on all the invoices it has submitted to Allstate. In addition, AGA's unlawful business practices continue, and invoices for arbitrary, excessive, and unreasonable amounts continue to be submitted by AGA to Allstate. Accordingly, the instant action seeks relief on a much larger scale than is conceivably present in the small claims cases.

In the Affidavit of Charles Isaly and Defendants' Motion to Dismiss, there is much attention devoted to Defendants' small claims cases, the appraisal issues that are raised and addressed in those cases, and settlements of some of the cases. An "exemplar copy" of a complaint filed by AGA, as assignee of Tonya Womack, against Allstate Insurance Company is attached to Isaly's affidavit, along with other materials, including a county court order denying Allstate's request for an appraisal.[4] These materials, however, highlight that the

---

[4]      Noticeably absent from Isaly's Affidavit and Defendants' Motion to Dismiss is any reference to the only appellate court decision on the enforcement of appraisal clauses in connection with windshield claims *See Progressive American Ins. Co. v. SHL Enterprises, LLC,* 2018 WL 5624384 (Fla. 2d DCA Oct. 13, 2018). In that case, the court found that the appraisal clause was enforceable. It is not yet a final decision, as there is a pending motion for rehearing.

Womack case is not parallel to the instant one. Again, there are different parties, and the issues raised in the Womack case – all dealing with the policy interpretation and whether, when, and how an appraisal can be administered – are not directly at issue in the instant one. Further, the issues and claims raised in the instant lawsuit were not raised or addressed in the small claims case.

Because the state court cases and the instant federal case are not "parallel," abstention is not warranted. *See Physicians Grp. of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303, 1309-10 (M.D. Fla. 2014) (ruling *Colorado River* abstention was improper where parties were not identical and legal issues were distinct in state and federal cases); *Amerisure Ins. Co. v. R.L. Lantana Boatyard, Ltd.*, 2010 WL 4676503 (S.D. Fla. Nov. 9, 2010) (ruling there was no need to consider *Brillhart* abstention because there were differences in the parties and issues between the state and federal suits).

### 2. No "Exceptional Circumstances" Exist Warranting *Colorado River* Abstention

Even if the small claims cases were parallel to the instant case, Defendants still would not be entitled to abstention because they have failed to demonstrate that any exceptional circumstances exist that could justify abstention under *Colorado River*. Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them by Congress. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Accordingly, as the Supreme Court has repeatedly emphasized, the general rule is that the pendency of a parallel state proceeding is not a basis to decline to exercise federal jurisdiction, and "federal courts can abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances." *Id.*; *see also Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S.

69, 72 (2013); *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting *Colorado River*, 424 U.S. at 817). "'The doctrine of abstention … is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Ambrosia*, 368 F.3d at 1331 (11th Cir. 2004) (quoting *Colorado River*, 424 U.S. at 813; finding abuse of discretion where district court "fail[ed] to appreciate the gravity of its duty to exercise jurisdiction").

In applying *Colorado River*, the Eleventh Circuit has identified six factors to be weighed: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights. *See Ambrosia*, 368 F.3d at 1331. "Additionally, 'the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n. 20 (1983)). "[N]o one factor is necessarily determinative," and "the weight to be given to any one factor may vary greatly from case to case." *Id.* at 1332 (citations omitted). The district court must consider the factors flexibly and pragmatically, not as a "mechanical checklist." *Id.* Regardless, the inquiry must be "heavily weighted in favor of the exercise of jurisdiction." *Id.*; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16 (abstention inquiry must be "heavily weighted in favor of the exercise of jurisdiction"). None of the factors identified in *Ambrosia* favor abstention in this case.

Factor 1:  Whether One of the Two Courts has Assumed Jurisdiction over Property. While Defendants are correct that "there is no jurisdiction over property" in this case (Doc. 22, p. 14), their conclusion that the first factor is irrelevant "rests on a clear misapplication of *Colorado River*." *Ambrosia*, 368 F.3d at 1331. Rather, as the Eleventh Circuit explained, "[b]ecause the relevant cases are not proceedings in rem … the first *Colorado River* factor does not favor abstention" in this case. *Id.*; *see also Hall v. Sargeant*, 2018 WL 6027028, *7 (S.D. Fla. Oct. 2, 2018) (where action did not involve disposition of property, first factor did not favor abstention).

Factor 2:  The Inconvenience of the Federal Forum. "This factor should focus primarily on the physical proximity of the federal forum to the evidence and witnesses . . . ." *Ambrosia*, 368 F.3d at 1331. As Defendants acknowledge, the state court actions were all filed in Florida. Doc. 22, pp. 14-15. A majority of the evidence and witnesses in this case will be located in Florida. Defendants do not attempt to argue that there is any inconvenience associated with proceeding in this Court. This factor weighs against abstention. *See, e.g., Allstate Ins. Co. v. Vizcay,* 2011 WL 5870016, *5 (M.D. Fla. Nov. 22, 2011) (second factor weighed in favor of federal jurisdiction where federal forum was located in same state as state forum); *Lucas v. Acheson*, 2015 WL 685638, *8 (N.D. Ala. Feb. 18, 2015) (second factor weighed against abstention where federal forum and state forum were equally convenient); *Hall*, 2018 WL 6027028, at *7 (same).

Factor 3:  The Potential for Piecemeal Litigation. Defendants assert, without support or explanation, that this factor favors abstention because "the potential for inconsistent results is strong, and it is excessive and deleterious to have the parties' rights adjudicated by

two courts." Doc. 22, p. 15. As the Eleventh Circuit noted, under Defendants' reasoning, "the third *Colorado River* factor would seemingly support abstention in every federal case that has a parallel state case. If this mistaken approach were in fact the rule, defendants could always escape federal courts simply by filing parallel state lawsuits." *Ambrosia*, 368 F.3d at 1333. Rather, this "factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Id*. The instant action will potentially avoid hundreds or thousands of piecemeal cases filed in individual small claims courts, in different counties and before different judges, by resolving the validity of Defendants' business practices in one action before this Court. This federal case does not present any abnormally excessive or deleterious litigation efforts, given that it is a single proceeding, and instead would substantially reduce the potential for piecemeal litigation. As such, this factor weighs against abstention.

Factor 4:  The Order in Which the Fora Obtained Jurisdiction. The Eleventh Circuit explained that "despite the somewhat misleading phrasing . . . , this factor 'should be measured . . .  in terms of how much progress has been made in the two cases.'" *Ambrosia*, 368 F.3d at 1333 (quotations omitted). As the Defendants acknowledge, any pending small claims cases are in the pleadings stage. Doc. 22, p. 14. Given that this action and the pending state court actions are in the pleadings stage, there is no material difference in the progress of either case. This factor weighs against abstention. *See, e.g., Lucas*, 2015 WL 685638, at *8 (ruling that this factor favored federal court's exercise of jurisdiction where no significant progress occurred in previously filed state court action).

Factor 5:  Whether State or Federal Law Will Apply. The fifth factor looks not simply at whether state or federal law applies as Defendants argue but, rather, whether it involves such complex questions of state law that a state court may be best suited to resolve the dispute. *See Ambrosia*, 368 F.3d at 1334 (citing *Noonan South, Inc. v. County of Volusia*, 841 F.2d 380, 382 (11th Cir. 1988) (explaining that the application of Florida law alone in a federal diversity case did not favor *Colorado River* abstention where no "complex questions of state law" were at issue). Defendants have not identified any complex questions of state law that favor abstention. This case involves straightforward legal issues related to tortious interference, Florida's Deceptive and Unfair Trade Practices Act, unjust enrichment, and declaratory relief. This factor weighs against abstention. *See, e.g., Hall*, 2018 WL 6027028, at *7 (fifth factor did not favor abstention where federal court was "fully competent to adjudicate" the state law claims).

Factor 6:  The Adequacy of the State Court to Protect the Parties' Rights. The sixth "factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights." *Ambrosia*, 368 F.3d at 1334. Defendants provide no explanation for why this Court cannot adequately protect the rights of the parties, and argue only that the Florida courts are adequate to protect the parties' interests. Doc. 22, p. 15.  But the small claims suits involve only limited, specific issues in individual windshield claims. They do not address claims for which no lawsuit has been filed, AGA's future conduct, or the overall business model that has been employed by AGA and Isaly which, in the aggregate, constitutes deceptive, unfair, and unconscionable acts and practices.  Further, Plaintiffs are foreign corporations that have properly invoked this Court's diversity jurisdiction. This factor

also does not favor abstention. *See also Hall*, 2018 WL 6027028, at *7 (ruling sixth factor weighed in favor of federal jurisdiction where defendants had not shown or argued that the federal court could not adequately protect his rights, and plaintiffs were foreign citizens who properly invoked the court's diversity jurisdiction); *Lucas*, 2015 WL 685638, at *8 (ruling this factor was neutral where no basis was presented to demonstrate that either forum was inadequate).

*Cone* Factor: Vexatious or Reactive Nature of Either the Federal or the State Litigation. Finally, there is no basis to find that Plaintiffs' Complaint is vexatious or reactive for purposes of abstention. This federal action is not being used for any vexatious purpose or to obtain federal jurisdiction in a case otherwise not removable. As set out below, Plaintiffs' Complaint asserts properly pled claims which are based on alleged improper and unlawful business practices of Defendants, which raises legal and factual issues that are distinct from those in the state court lawsuits, and which satisfies the requirements for diversity jurisdiction.

Accordingly, as none of the *Ambrosia* factors favor abstention under a proper analysis, and considering that this Court must heavily weigh the factors in favor of the exercise of jurisdiction, Defendants' request that the Court abstain from exercising jurisdiction over this case under *Colorado River* should be denied.

**3.** ***Brillhart* Abstention is Not Warranted**

a. <u>*Brillhart* Abstention Does not Apply to a "Mixed" Action for both Damages and Declaratory Relief</u>

Contrary to Defendants' assertion, *Brillhart* Abstention does not apply to the Complaint in this case, which asserts claims for damages and injunctive relief, as well as for

declaratory relief. The *Brillhart* doctrine interprets the Declaratory Judgment Act to give federal courts limited discretion to abstain from adjudicating federal declaratory judgment actions that raise issues that overlap with a pending state-court proceeding. *See Wilton*, 515 U.S. at 286; *Brillhart*, 316 U.S. at 495. These United States Supreme Court decisions, and each of the other authorities relied upon by Defendants, involved a district court's ability to exercise its discretion to decline jurisdiction over a case where the <u>only</u> claims asserted were for declaratory relief. *See, e.g., Ameritas Variable Life Ins. Co. v. Roach*, 411 F. 3d 1328 (11th Cir. 2005); *Angora Enters., Inc. v. Condo. Ass'n of Lakeside Village, Inc.*, 796 F.2d 384 (11th Cir. 1986); *Lincoln Ben. Life Co. v. Look*, 2006 WL 3734331 (M.D. Fla. Dec. 15, 2006). Defendants' authorities simply do not apply because the Complaint here asserts claims for both monetary and injunctive relief in addition to declaratory relief.

The Eleventh Circuit has not yet directly addressed whether the discretionary standard under the *Brillhart* doctrine or the more stringent *Colorado River* standard applies in cases where, as here, there are mixed claims for declaratory and other relief. However, binding precedent of the Fifth Circuit Court of Appeals holds that *Brillhart* does not apply in this situation.[5] *See PPG Indus., Inc. v. Continental Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973) (refusing to apply *Brillhart* because case was not "solely a declaratory action"); *Occidental Life Ins. Co. of Cal. v. Nichols*, 216 F.2d 839, 842 (5th Cir. 1954) (reversing dismissal on abstention grounds because "the instant case is not merely for a declaratory judgment, but also for a rescission"). The Fifth Circuit has repeatedly reaffirmed this rule. *See, e.g., New*

---

[5]  The Eleventh Circuit has adopted all decisions of the Fifth Circuit issued before October 1, 1981, as precedent. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

*England Ins. Co. v. Barnett*, 561 F.3d 392, 397 (5th Cir. 2009); *Trent v. National City Bank of Ind.*, 145 F. App'x 896, 898 (5th Cir. 2005).[6]

While some Florida district courts have viewed the issue as an "open question" absent a ruling from the Eleventh Circuit Court of Appeals, *see Regions Bank v. Commonwealth Land Title Ins. Co.*, 2012 WL 1135844, *3 (S.D. Fla. Apr. 4, 2012); *Govt. Employees Ins. Co. v. Clear Vision Windshield Repair, L.L.C.*, 2017 WL 1196438, *5 n.4 (M.D. Fla. March 29, 2017), those that have considered *PPG* conclude that mixed claims for declaratory and other relief are not subject to the *Brillhart* abstention doctrine. Instead, those courts have ruled that the *Colorado River* doctrine applies. *See Hall v. Sargeant*, 2018 WL 6027028, *6 (S.D. Fla. Oct. 2, 2018) (citing *PPG* and stating that, "[u]ntil overruled, decisions of the Fifth Circuit before October 1, 1981, remain binding precedent on this Court"); *Mega Life & Health Ins. Co. v. Tordion*, 399 F. Supp. 2d 1366, (S.D. Fla. 2005) (ruling that because the plaintiff sought both declaratory and coercive relief, "*Colorado River*, rather than *Brillhart* and *Wilton*" governed the issue of abstention); *Andrx Therapeutics, Inc. v. Mallinckrodt Inc.*, 2006 WL 3618450, at *2, n.3 (S.D. Fla. Dec. 11, 2006); *see also Lucas v. Acheson*, 2015 WL 685638, *8 (N.D. Ala. Feb. 18, 2015).[7] Similarly, the Middle District of Florida has ruled

---

[6]     In addition to the Fifth Circuit, the Second, Fourth and Tenth Circuits also apply this bright line rule. *See Village of Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999) (*Brillhart* applies only where plaintiffs seek "purely declaratory relief"); *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006) ("in a 'mixed' complaint scenario, the Brillhart/Wilton standard does not apply"); *U.S. v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002) (*Brillhart* applies "[i]f the plaintiff only requests a declaration of its rights, not coercive relief").

[7]     *But see Arch Ins. Co. v. Ace Ins. Co.*, 2017 WL 3902562, *10 n. 9 (M.D. Ala. June 7, 2017) (report and recommendation) (finding that insurer's claims for subrogation, unjust enrichment, and indemnity were "ancillary" to declaratory judgment claim to determine

that *Colorado River*, and not *Brillhart*, applies in this context. *See Houston Specialty Ins. Co. v. W&J Grp. Enters. Inc.*, 2016 WL 7177516, at *3 (M.D. Fla. Jan. 6, 2016) ("inclusion of coercive remedies indisputably removes this suit from the ambit of a declaratory judgment action"); *State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303, 1308-09 (M.D. Fla. 2014) (following *Mega Life*).[8] Accordingly, *Brillhart* does not apply in this case.

Even under the tests adopted in other Circuit Courts of Appeal, *Brillhart* abstention would be unavailable in this case. In the Seventh and Ninth Circuits, a court may apply *Brillhart* to a "mixed complaint" only if it lacks independent federal jurisdiction over the claims for coercive relief. Here, there is diversity jurisdiction over Plaintiffs' claims for damages and injunctive relief. The Eighth Circuit allows district courts to abstain if the "heart of the matter" is declaratory, but here, the "heart" of Plaintiffs' claim is that Defendants have engaged in unlawful business practices, for which Plaintiffs seek not only declaratory relief but also injunctive relief and damages.

### b.  Even if it Applied, *Brillhart* Abstention is Not Warranted Here

Even if the *Brillhart* doctrine applied here, abstention nonetheless is not warranted in this case under the factors set out by the Eleventh Circuit. *See Ameritas*, 411 F.3d at 1330-31.

---

coverage "such that this action can be considered a declaratory judgment action, the result of which will determine the outcome of the ancillary claims," and that *Brillhart* abstention applied); *West Coast Life Insurance Co. v. Ruth Secaul 2007-1 Insurance Trust*, 2010 WL 11506019, at *1 (S.D. Fla. May 14, 2010) (applying *Brillhart* to a mixed complaint, not considering *PPG* or *Occidental Life*).

[8]     *See also Vizcay*, 2011 WL 5870016, at *5 (applying *Colorado River* doctrine, and ruling abstention was not warranted, to action alleging claims for negligent misrepresentation, fraud, unjust enrichment, and declaratory relief).

First, there is no particularly strong state interest in hearing the issues raised in the declaratory judgment claim, as evidenced by several federal decisions addressing similar issues which are referenced above. With respect to the second and third factors, the federal declaratory judgment would settle the controversy between the parties, and serve a useful purpose in clarifying the legal relations at issue in one forum at one time and avoiding any further piecemeal litigation. Fourth, the federal declaratory judgment is not being used for "procedural fencing," that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable. Rather, the federal declaratory judgment is included in a lawsuit that has raised legitimate claims based on Defendants' business practices and activities, where diversity jurisdiction has been properly invoked. Fifth, a federal declaratory judgment will not increase friction between federal and state courts because the claims and the issues in the state court cases and the declaratory judgment claim in this action are distinct. Sixth, there is no alternative remedy that would be better than a federal declaratory judgment. Defendants' suggestion that it would be more appropriate for the declaratory judgment issues raised in this case to be resolved in the ongoing small claims actions is not sound, given that the small claims actions involve different parties, issues, and claims.    With respect to factors seven, eight and nine, the state courts are in no better position than this Court to resolve the underlying factual and legal issues that are important to an informed resolution of the case. Although state law will apply to Plaintiffs' claims, this factor is insufficient to warrant abstention.

## IV. PLAINTIFFS' HAVE PROPERLY AND PLAUSIBLY STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Defendants assert in their Motion to Dismiss that none of the ten causes of action asserted by Plaintiffs properly state a claim upon which relief can be granted. Doc. 22 pp. 19-34. However, as discussed below, none of the arguments made by Defendants in support of this assertion have any merit. Rather, each count in the Complaint contains factual allegations that properly and plausibly allege the claims asserted, as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007); and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### A. Count I – Plaintiffs have Plausibly Stated a Claim for Tortious Interference

Defendants claim that their receipt of assignments of benefits from Allstate's insureds insulates them from liability premised on their tortious interference with Allstate's contractual relationships with its insureds, because, as an assignee, AGA is not a "stranger" to those contracts. This assertion is confusing, and wrong. AGA's receipt of assignments of benefits from Allstate's insureds did not make AGA a party to the contractual relationships between Allstate and its insureds, and the terms of those assignments of benefits, as alleged in the Complaint, certainly did not give AGA a beneficial or economic interest in, or control over, those relationships. *Nimbus Technologies, Inc. v. SunnData Products, Inc.*, 484 F. 3d 1305, 1309 (11th Cir. 2007). Under Florida law, an assignment of benefits "does not entail the transfer of any duty to the assignee." *Shaw v. State Farm Fire & Cas. Co.*, 37 So. 3d 329, 332 (Fla. 5th DCA 2010) (en banc), *overruled on other grounds by Nunez v. Geico Gen. Ins. Co.*, 117 So. 3d 388 (Fla. 2013). *See also State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F. 3d 579, 584 (11th Cir. 2013); *Gov't Employees Ins. Co. v. Clear*

*Vision Windshield Repair, L.L.C.*, 2017 WL 1196438, *5 (M.D. Fla. 2017). Thus, AGA's reliance on the "stranger to the agreement" case law is misplaced.

Allstate has properly and plausibly stated all the elements needed for a tortious interference claim against AGA, the elements of which are: (1) the existence of a business relationship, (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship by the defendant, and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994); *Int'l Sales & Service, Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001). In their Complaint, Plaintiffs allege that they currently have and have had contractual relationships, per their automobile policies, with insureds for whom AGA has replaced windshields (Com. ¶¶67, 71, 141); that AGA had knowledge of the terms of those automobile policies (Com. ¶¶6, 77, 96-98, 142); that AGA's actions have intentionally and unjustifiably interfered with Allstate's contractual relationships (Com. ¶¶94-117, 145-146); and that Plaintiffs have suffered damages as a result of AGA's tortious interference. (Com. ¶¶9, 147).

**B.     Counts II-IV and VII-VIII – Plaintiffs have Plausibly Stated Claims for Defendants' Violations of FDUTPA**

Counts II-IV of the Complaint allege that Defendants violated and are continuing to violate FDUTPA due to their deceptive, unfair, and unconscionable conduct and practices.[9] Counts VII and VIII allege *per se* violations of FDUTPA by Defendants due to their

---

[9]     Fla. Stat. §501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

violations of the Florida Home Solicitation Sales Act ("Sales Act"), FTC's Rule Concerning Cooling-off Period for Sales Made at Homes or at Certain Other Locations ("FTC Rule"), and Florida's Motor Vehicle Repair Act ("Repair Act").[10] Defendants have raised several challenges to the FDUTPA claims, each of which will be discussed in turn.

### 1. Counts V, VI, IX and X are not FDUTPA claims.

As an initial matter, Defendants incorrectly characterize Counts V, VI, and X (all asserting claims for unjust enrichment based on different grounds) and Count IX (for declaratory judgment under the Declaratory Judgment Act) as FDUTPA claims, asserting that they are "premised on FDUTPA violations." Doc. 22 p. 25. Defendants give no basis for this conclusion, and it is nonsensical. As discussed further below, the unjust enrichment and declaratory judgment claims are based on different elements that do not require a violation of FDUTPA. Where conduct that constitutes a violation of FDUTPA also supports other causes of action, it does not follow that the other causes of action are transformed into "FDUTPA claims."

---

[10] Fla. Stat. §501.203 of FDUTPA states in pertinent part:

(3) "Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2017:

(a) Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. §§41 et seq.

\* \* \*

(c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

## 2. Allstate has properly pled all of its FDUTPA claims with sufficient particularity.

In arguing that Plaintiffs' FDUTPA claims must be pled with particularity under Federal Rule of Civil Procedure 9(b),[11] Defendants obfuscate key distinctions in District Court decisions in the Eleventh Circuit. Although some decisions note a lack of clarity in the courts as to whether a FDUTPA claim must be pled with particularity, *see, e.g., Diamond Resorts Int'l, Inc. v. Aaronson*, 2018 WL 735627, *9 (M.D. Fla. Jan. 26, 2018) ("Courts are split on the question of whether a FDUTPA claim must meet Rule 9(b) pleading requirements"), in actuality courts have imposed the heightened pleading standard of Rule 9(b) *only* when the allegations sound in fraud. *See Harris v. Nordyne, LLC*, 2014 WL 12516076, *4 (S.D. Fla. 2014). Indeed, *all* of the cases cited by Defendants in support of their argument for imposition of a heightened pleading standard under 9(b) were based in fraud.[12] With regard to FDUTPA claims that are *not* based on allegations of fraud, District

---

[11]     Fed.R.Civ.P. 9(b) provides in pertinent part that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

[12]     *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) ("Stires' Amended Complaint alleges fraud in that she claims that she did not receive the cruise that was promised to her. Hence, her FDUTPA claim should be plead with particularity…"); *Casey v. Fla. Coastal Sch. Of Law, Inc.*, 2015 WL 10096084, *10 (M.D. Fla. 2015) (determining that the heightened requirements of Rule 9(b) apply to claims sounding in fraud and that plaintiff's specific FDUTPA claims sounded in fraud); *Llado-Carreno v. Guidant Corp.*, 2011 WL 705403, *5 (S.D. Fla. 2011) (in ruling that the heightened pleading requirements of Rule 9(b) apply, court specifically finds that plaintiff "appears to be alleging that Guidant committed fraud"); *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 WL 4434891, *5 (S.D. Fla. 2011) ("Here, the averments in the complaint describe fraudulent conduct and thus, Rule 9(b) applies."); *Solution Z v. Alma Lasers, Inc.*, 2012 WL 13012765, *3 (S.D. Fla. 2012) ("Solution Z has failed to allege 'with particularity the circumstances constituting fraud.'"); *Cannon v. Metro Ford, Inc.*, 242 F. Supp. 2d 1322, 1332 (S.D. Fla. 2002) ("Paragraph 94 of the Complaint contains allegations of fraud but fails to plead with any particularity the circumstances constituting the purported fraud."); *Vorst v. TBC Retain*

Courts in Florida have uniformly found that the heightened pleading requirements of Rule 9(b) do not apply. *See Diamond Resorts*, 2018 WL 735627, *9; *Orange Lake Country Club, Inc. v. Reed Hein & Assoc., LLC*, 2018 WL 5279135, *7 (M.D. Fla. 2018); *Millenium Labs., Inc. v. Universal Oral Fluid Labs.,* 2012 WL 12905083 (M.D. Fla. 2012).[13]

In this case, Plaintiffs have not asserted any fraud-based claims and, thus, the particularity requirements of Rule 9(b) do not apply. But even if Rule 9(b) applied to this case, the Complaint adequately alerts Defendants to the precise misconduct that forms the basis for Plaintiffs' claims. Keeping in mind that "[t]he application of Rule 9(b)…must not abrogate the concept of notice pleading," *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations and citation omitted), Plaintiffs' FDUTPA claims satisfy even the heightened pleading standard. The Complaint describes in detail AGA's deceptive, unfair, and unconscionable conduct and practices, along with its violations of state consumer laws. This includes detailed allegations regarding AGA's knowledge of Allstate's automobile policies (Com. ¶¶43-44, 57-59); its misleading advertising (Com. ¶¶60-65); its improper solicitation of Allstate's insureds (Com. ¶¶66-67, 118-121); its policy to always

---

*Group, Inc.*, 2012 WL 13026643, *2 (S.D. Fla. 2012) (without significant discussion, the court adopts the reasoning in *Llado-Carreno*, 2011 WL 705403); *Najor v. Ginn Companies, LLC*, 2011 WL 13186114, *5 (M.D. Fla. 2011) ("Rule 9(b) applies to FDUTPA claims grounded in fraud; the Court need not decide whether FDUTPA claims in other contexts are subjected to the heightened pleading standard.").

[13]    Indeed, many decisions have found that the requirements of Rule 9(b) do not apply to FDUTPA claims at all, whether or not they sound in fraud. *See, e.g., Harris*, 2014 WL 12516076, *4; *Galstaldi v. Sunvest Communities, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, *15 (S.D. Fla. 2014); *Licul v. Volkswagen Group of America, Inc.*, 2013 WL 6328734, *5 (S.D. Fla. 2013); *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, *2 (S.D. Fla. 2013).

replace windshields even for minor damage (Com. ¶¶36-42); its misrepresentations and omissions made to Allstate's insureds (Com. ¶¶70-82); its coercion of assignments of benefits from Allstate's insureds (Com. ¶¶83-89); its improper submission of invoices to Allstate after windshield replacements have been done for amounts that are arbitrary, excessive, unreasonable, and not in accordance with market rates (Com. ¶¶108-114); and its abusive and vexatious use of the judicial system in Florida's small claims courts to force Allstate to pay those arbitrary, excessive, unreasonable, and non-markets amounts (Com. ¶117). The time frame from which Defendants can derive notice as to when misrepresentations and omissions were made can also be found in the Complaint. Indeed, all Defendants need to do is to look at the date of their assignments of benefits executed by Allstate's insureds. Thus, Plaintiffs' FDUTPA claims are well-supported and have been pled with the particularity required under Rule 9(b).

     **3.     Plaintiffs have properly alleged FDUTPA claims against Isaly.**

With regard to the FDUTPA claims against Isaly, Plaintiffs need only allege that he was a direct participant in the wrongful conduct. *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1075 (Fla. 5th DCA 2009); cited with approval in *North American Clearing, Inc. v. Brokerage Computer Systems, Inc.*, 666 F. Supp. 2d 1299, 1311 (M.D. Fla. 2009). Plaintiffs have satisfied this requirement by alleging that Isaly is the sole member and owner of AGA (Com. ¶17); he controls AGA and formulates and enforces the policies and practices of AGA, including those that are the subject of [the] Complaint (Com. ¶18); he is in regular communication with and/or controls the acts and practices of AGA's managers, salespeople, windshield replacement technicians who perform replacements of windshields, and other

AGA employees (Com. ¶20); he has directed and controlled AGA's filing of thousands of lawsuits against Allstate and other insurers in Florida state courts (Com. ¶28); and he is the mastermind of AGA's scheme to unlawfully obtain payment from Allstate for excessive and unreasonable charges to replace windshields for Allstate's insureds (Com. ¶1-2).

    **4.    Defendants' alleged conduct and practices are not required or specifically permitted by federal or state law.**

Without significant analysis, Defendants have asserted in their Motion to Dismiss that "the acts and practices about which Plaintiffs cry foul are permitted by law, which are provided safe-harbor [protection] under Fla. Stat. §501.212(1)." Doc. 22, p. 26. Defendants point to a few specific actions – (i) not providing estimates to insureds, (ii) using independent contractors to perform windshield replacements, and (iii) soliciting Allstate's insureds without a home solicitation sales permit and failing to provide documentation to the insureds as required by the Sales Act and FTC Rule -- and try to argue that those actions do not violate the Repair Act, Sales Act, and the FTC Rule.

As an initial matter, Defendants' argument ignores the specific and detailed factual allegations in Plaintiffs' Complaint regarding Defendants' scheme. Plaintiffs have alleged several acts and practices by Defendants that, when taken together, constitute an overall course of conduct that is deceptive, unfair, and unconscionable. Further, the Complaint alleges several different ways – beyond those specific actions identified above – in which Defendants have violated the Repair Act, Sales Act, and FTC Rule. Thus, Defendants' suggestion, even if true, that it was required or specifically permitted under the Repair Act, Sales Act, and FTC Rule to do the actions it identifies would not alone support dismissal of all the FDUTPA claims asserted by Plaintiffs.

Moreover, Defendants, in fact, are incorrect as a matter of law that their actions were required or specifically permitted by the referenced statutes:

(1) _Providing work orders to Allstate's insureds that indicate there will be no out-of-pocket charges to the insured_.  Defendants claim that they are not required by the Repair Act to provide estimates to Allstate's insureds, because estimates are required only when the "cost of [the] repair work will exceed $100 to the customer."  Fla. Stat. §559.905(1).  Defendants have interpreted this statutory provision as releasing it from any obligation to provide estimates unless the vehicle owners (Allstate's insureds) themselves pay AGA at least $100.  The fact that the cost of the windshield replacements virtually always exceeds $100 is, according to Defendants, irrelevant because the cost to the insureds is covered by their insurer.

But it cannot be assumed that AGA's costs do not exceed $100 to Allstate's insureds.  Indeed, Allstate's insureds would, in fact, be responsible for payment of AGA's charges, with indemnification from Allstate for amounts that are covered by insurance, but AGA chooses not to collect from Allstate insureds.  Instead, AGA chooses to accept assignments of benefits from the insureds, in lieu of payment, authorizing AGA to bill and obtain payment directly from Allstate.  The full effect of this is a factual issue that precludes dismissal.

(2) _Using independent contractors to perform the windshield replacements for Allstate's insureds_.  Defendants wrongly argue that "[t]here is nothing under federal or state law that forbids sellers of goods and services from delegating performance to a third party."  Doc. 22, p. 27.  To the contrary, the Repair Act specifically prohibits a repair shop, like

AGA, from having "repair work subcontracted without the knowledge or consent of the customer unless the motor vehicle repair shop or employee thereof demonstrates that the customer could not reasonably have been notified." Fla. Stat. §559.920(14).[14]

(3) *Soliciting Allstate's insureds at places other than a fixed business location without a home solicitation sales permit and failing to provide documentation to Allstate's insureds as required by the Sales Act and FTC Rule*. Defendants contend that they are not bound by the requirements of the Sales Act and FTC Rule because AGA does not directly charge Allstate's insureds for its work. This, again, is incorrect. The Sales Act applies to sales "of consumer goods or services with a purchase price in excess of $25." Fla. Stat. §501.201(1). The FTC Rule applies to sales "of consumer goods or services…which [have] a purchase price of $25 or more if the sale is made at the buyer's residence or a purchase price of $130 or more if the sale is made at locations other than the buyer's residence." 16 C.F.R. §429.0(a). Neither of these specifies that the purchase price has to be paid by the person to whom the goods or services are provided, i.e., Allstate's insureds. As alleged in the Complaint, the purchase prices of AGA's windshield replacements, as billed to Allstate, greatly exceed the threshold amounts set forth in the Sales Act and the FTC Rule.

### 5. Allstate had no reasonable way to avoid the unfair actions of AGA.

AGA's Motion to Dismiss notes that Allstate's claim for unfairness under FDUTPA (Count II) is viable only if AGA's unfair conduct "causes consumer injury that consumers

---

[14] It should be noted that this restriction on the use of subcontractors under the Repair Act is applicable to all motor vehicle repairs, regardless of the cost. Although repair estimates are required under Fla. Stat. §559.905(1) only where "the cost of [the] repair work will exceed $100 to the customer," there are no such conditions under Fla. Stat. §559.920(14).

themselves could not have reasonably avoided." Doc. 22, p. 28. Based on this, AGA contends that it is excused from its allegedly unfair conduct and practices because Allstate should have "reasonably avoided" the harm caused by AGA's unfair conduct and practices by denying the claims. *Id.* As the only support for this, AGA cites *Travelers Ind. Co. of Conn. v. Attorney's Title Ins. Fun.*, 194 F. Supp. 1224, 1232 (M.D. Fla. 2016), as standing for the proposition that "insurers have the right to deny claims if their insureds fail to cooperate during the claims process."

But there is no allegation that Allstate's insureds failed to cooperate during the claims process, and to the extent that the insureds failed to comply with policy provisions regarding windshield claims, it is because they were misled or encouraged by AGA's conduct to do so. Further, the Complaint alleges that Allstate did, in fact, refuse to pay the portions of AGA's claims that exceeded reasonable and competitive market rates (Com. ¶¶7, 16). Finally, AGA fails to explain how denial of covered claims in their entirety would have avoided the harm caused by AGA's ongoing unfair conduct and practices, as Allstate still would have incurred damages in having to defend AGA's multitude of lawsuits and, potentially, claims of bad faith.

### 6. The insurance exemption in Fla. Stat. §501.212(4)(a) does not apply.

FDUTPA actions cannot be maintained *against* insurance companies per Florida Statute §501.212(4)(a):

This part does not apply to:

\* \* \*

(4) Any person or activity regulated under laws administered by:

(a) The Office of Insurance Regulation of the Financial Services Commission;

*   *   *

Defendants seek to extend this exemption to FDUTPA claims filed *by* insurance companies, the effect of which would be to insulate all potential defendants from any deceptive, unfair, and unconscionable conduct which causes actual damages to insurers. This is an irrational interpretation of the statutory exemption and is contrary to the law.

Defendants note that the Eleventh Circuit has already addressed this issue in *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center*, 427 F. Appx. 714 (11th Cir. 2011):[15]

> The Defendants…contend that judgment should have been entered in their favor on State Farm's claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). They argue that, pursuant to Fla. Stat. §501.212(4)(a), State Farm may not bring a FDUTPA claim. The Defendants also argue that State Farm failed to prove actual damages.
>
> We reject the Defendants' arguments. The express language of Fla. Stat. §501.212(4)(a) creates a specific exemption from suit under FDUTPA for "[a]ny person or activity regulated under laws administered by…[t]he Office of Insurance Regulation of the Financial Services Commission." Florida courts resolve questions about the applicability of this provision by looking to the activity which is the subject of the lawsuit, and whether that activity is subject to the regulatory authority of the Office of Insurance Regulation. Because the conduct of which State Farm complains in this lawsuit is not a type regulated by the Office of Insurance Regulation, the exemption of Fla. Stat. §501.212(4)(a) does not apply.

(internal citations omitted).

That this is an unpublished decision does not diminish the highly persuasive value of the ruling from the Eleventh Circuit. Also, the vast weight of authority in Florida state and federal courts reject Defendants' position and find that the insurance exemption under

---

[15]    Reversed on other grounds by *State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F. 3d 1311 (11th Cir. 2014).

FDUTPA should not be expanded to preclude claims filed *by* insurance companies. *See State v. Beach Blvd. Automotive, Inc.*, 139 So. 3d 380, 387-88 (Fla. 1st DCA 2014); *State Farm Mut. Ins. Co. v. Comprehensive Physician Services, Inc.*, 2014 WL 7070832, *3 (M.D. Fla. 2014); *State Farm Mut. Auto. Ins. Co. v. Medical Service Center of Fla., Inc.*, 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015).

Defendants do not cite one single case in which any court determined that the insurance exemption should be expanded as Defendants suggest. Indeed, Defendants' interpretation would leave insurers without any remedy against those whose deceptive, unfair, and unconscionable actions cause actual damages. Under the facts of this case, Defendants would have this Court find that AGA and Isaly's deceptive conduct is immune from any legal challenge, because Allstate's insureds have allegedly suffered no damages resulting from AGA's conduct and, though Allstate may have suffered damages, it is unable to pursue FDUTPA claims against Defendants to recover those damages. There is no support for Defendants' attempt to evade accountability for their actions.

In short, AGA and Isaly are not persons regulated under laws administered by the Office of Insurance Regulation, nor are their alleged activities at issue in this case so regulated. As a result, Florida Statute §501.212(4)(a) does not apply to Plaintiffs' FDUTPA claims against AGA and Isaly.

**C.      Count V -- Plaintiffs have Plausibly Stated a Claim against AGA for Unjust Enrichment based on its Violation of the Sales Act and FTC Rule**

Defendants argue in their Motion to Dismiss that the Sales Act and FTC Rule do not apply to them, because AGA does not collect payment for its windshield replacements from Allstate's insureds and, thus, the "purchase price" is not at least $25.00. As discussed above,

this argument is both factually and legally incorrect.  Neither the Sales Act nor the FTC Rule specifies who has to pay the purchase price in order for a sale to be subject to the requirements set forth in the Sales Act and the FTC Rule.  As alleged in the Complaint, the purchase prices of AGA's windshield replacements, as billed to Allstate, greatly exceed the threshold amounts set forth in the Sales Act and the FTC Rule.

The elements of an unjust enrichment claim are: (1) plaintiff conferred a benefit on a defendant who has knowledge of that benefit, (2) defendant accepted and retained the benefit, and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it.  *State Farm Mut. Auto. Ins. Co. v. Kugler,* 2011 WL 4389915 at *12 (S.D. Fla. Sept. 21, 2011).  "If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment."  *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab.*, 739 F. 3d 579, 584 (11th Cir. 2013).  In the Complaint, Plaintiffs have properly alleged these elements, because they have alleged that they conferred a benefit on AGA, in the form of payments on windshield claims, and that AGA accepted and retained those benefits.  Com. ¶190.  Plaintiffs have also included extensive factual allegations regarding AGA's violations of the Sales Act and FTC Rule, which constitute circumstances making it inequitable for AGA to retain Allstate's payments.  Com. ¶¶118-124.

**D.**   **Count VI -- Plaintiffs have Plausibly Stated a Claim against AGA for Unjust Enrichment based on its Violation of the Repair Act**

Defendants assert a similar argument with regard to Count VI, which is based on AGA's alleged violations of the Repair Act.  AGA contends that it could not have violated the Repair Act because the Repair Act only requires a written estimate when "the cost

of…repair work will exceed $100.00 to the customer," and Allstate's insureds do not pay AGA's charges. But, again, it cannot be said that AGA's charges for its work do not exceed $100 to Allstate's insureds, because Allstate's insureds would, in fact, be responsible for payment of AGA's charges, with indemnification from Allstate for amounts that are covered by insurance. In lieu of collecting payment from the insureds, AGA has chosen to accept assignments of benefits authorizing AGA to bill and obtain payment directly from Allstate.

In addition, Allstate's allegations regarding AGA's failure to provide a written estimate to Allstate's insureds is but one part of its claim for unjust enrichment based on AGA's failure to comply with the Repair Act. *See* Com. ¶132 (including, e.g., AGA's pre-marking on its work orders the selection for no estimate, misrepresenting to insureds that windshield replacements are necessary when the windshield damage can be properly repaired, and having the replacement work contracted out without the knowledge or consent of Allstate's insureds). AGA does not contend in its Motion to Dismiss that it has complied with these other provisions of the Repair Act.

Allstate has also properly and plausibly alleged the elements for an unjust enrichment claim against AGA based on AGA's violations of the Repair Act. Plaintiffs allege that they have conferred a benefit on AGA, in the form of payments on windshield claims, and that AGA has accepted and retained those benefits. Com. ¶199. Plaintiffs have also included extensive factual allegations regarding AGA's violations of the Repair Act, which constitute circumstances making it inequitable for AGA to retain Allstate's payments. Com. ¶¶125-138. *See Osteen v. Morris*, 481 So. 2d 1287 (Fla. 5th DCA 1986). Accordingly, Allstate has

properly and plausibly alleged the elements for an unjust enrichment claim against AGA based on AGA's violations of the Repair Act.

**E.** **Count IX – Plaintiffs have Plausibly Stated a Claim against AGA and Isaly for Declaratory Judgment**

Defendants attack Count IX of the Complaint by summarily and without any analysis describing it as seeking an impermissible advisory opinion from this Court. But Defendants ignore the allegations in the Complaint which clearly allege a substantial controversy between the parties and the need for the Court's assistance with resolving that controversy. As stated by the United States Supreme Court in *Golden v. Zwickler*, 394 U.S. 103, 108 (1969):

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

(quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). To establish a case or controversy sufficient to invoke a court's jurisdiction under the Declaratory Judgment Act, a party must, "[a]t an irreducible minimum," show: "(1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision." *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F. 2d 744, 747 (11th Cir. 1991). An advisory opinion, on the other hand, is one that does not "affect the rights of litigants in the case before [the Court] or that merely

opine[s] on what the law would be upon a hypothetical state of facts." *Gagliardi v. TJCFV Land Trust*, 889 F.3d 728, 733 (11th Cir. 2018) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

Here, Plaintiffs have alleged in their Complaint that there is a substantial controversy between Plaintiffs and Defendants regarding AGA and Isaly's business practices and methods of forcing payments that are excessive and unreasonable. A specific and detailed factual predicate has been set forth in the Complaint describing the controversy. Further, Plaintiffs have alleged that AGA's and Isaly's practices and activities at issue are ongoing and will not be resolved absent a declaration by this Court. A declaratory judgment in this case will directly affect the rights of the litigants before the Court and is not based on a hypothetical state of facts. Thus, Allstate has shown in its Complaint the required elements for relief under the Declaratory Judgment Act and that it is not seeking a mere advisory opinion from this Court.

**F.      Count X – Plaintiffs have Plausibly Stated a Claim against AGA and Isaly for Unjust Enrichment based on AGA's Refusal to Repair Windshields**

In Count X of the Complaint, Plaintiffs have set forth a claim for unjust enrichment based on AGA's policy of always replacing damaged windshields rather than repairing the damage, at a much lower cost, when repair is safe and appropriate. Plaintiffs seek to recover the additional amounts it has paid for windshield replacements in which repairs should have been made. This includes amounts that were overpaid to AGA, as well as additional amounts that Allstate paid to others for recalibrating the computer systems of vehicles in which AGA had improperly replaced the windshields rather than doing repairs. Count X is not, as asserted by Defendants, a "catch all count."

In Count X of the Complaint, Allstate has properly alleged the elements for an unjust enrichment claim, *see State Farm Mut. Auto. Ins. Co. v. Kugler,* 2011 WL 4389915 at *12 (S.D. Fla. Sept. 21, 2011), and has further alleged as factual support for the claim AGA's refusal to make any windshield repairs no matter how minor the damage. Com. ¶¶6, 72, 102, 237-242.

## V. <u>CONCLUSION</u>

This Court has subject matter jurisdiction of this action, and Plaintiffs' claims have been alleged in detail, sufficiently providing appropriate notice to Defendants of the claims being asserted. Thus, the claims should be allowed to proceed. For all the reasons discussed above, Plaintiffs respectfully request that the Motion to Dismiss be denied in its entirety.

Respectfully submitted,

*s/ Sally R. Culley*
LORI J. CALDWELL
Florida Bar No. 0268674
E-Mail: lcaldwell@rumberger.com
SALLY R. CULLEY
Florida Bar No. 0095060
E-Mail: sculley@rumberger.com
DOUGLAS B. BROWN
Florida Bar No. 0242527
E-Mail: dbrown@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2019, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following: **Mac S. Phillips** at mphillips@phillipstadros.com and

**Chad Andrew Barr** at chad@chadbarrlaw.com.

*s/ Sally R. Culley*
LORI J. CALDWELL
Florida Bar No. 0268674
E-Mail: lcaldwell@rumberger.com
SALLY R. CULLEY
Florida Bar No. 0095060
E-Mail: sculley@rumberger.com
DOUGLAS B. BROWN
Florida Bar No. 0242527
E-Mail: dbrown@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133
*Attorneys for Plaintiffs*
