UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ALLSTATE INSURANCE COMPANY,
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY and
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,**

**Plaintiffs,**

**v.**                                                        **Case No:  6:18-cv-2184-Orl-41LRH**

**AUTO GLASS AMERICA, LLC and
CHARLES ISALY,**

**Defendants.**
_____/

**ORDER**

THIS CAUSE is before the Court on Defendants' Motion to Dismiss ("Motion," Doc. 22)

and Plaintiffs' Response (Doc. 29). As set forth below, the Motion will be granted in part and

denied in part.

**I.    BACKGROUND**

Plaintiffs are insurance companies that offer insurance policies for, among other things,

automobiles. (Compl., Doc. 1, at 5). Through these insurance policies, Plaintiffs allege that they

have contractual relationships with their insured customers. (*Id.* at 29). Defendant Auto Glass

America, LLC, and its owner Charles Isaly, are alleged to be in the business of replacing

automobile glass, including replacing damaged windshields. (*Id.* at 5).

"Florida [law] requires that insurance companies, including Plaintiffs, cover repair or

replacement of damaged windshields of their insureds who have comprehensive coverage, [and

i]nsureds are not required to pay a deductible on these claims." [1] *Gov't Emps. Ins. Co. v. Clear Vision Windshield Repair, L.L.C.*, No. 6:16-cv-2077-Orl-28TBS, 2017 U.S. Dist. LEXIS 47353, at \*2 (M.D. Fla. Mar. 29, 2017) (citing Fla. Stat. § 627.7288); (*see also* Doc. 1 at 8). The conflict between these parties results from these windshield replacements. (Doc. 1 at 2).

Plaintiffs claim that Defendants "pressure" Plaintiffs' insured customers into hiring Defendants for windshield replacements.[2] (*Id.*). Defendants then allegedly obtain an assignment of benefits from Plaintiffs' insured customers "without the insureds' knowledge or consent." (*Id.* at 4). Defendants, through the assignment of benefits, allegedly invoice Plaintiffs for the replacements, in accordance with Florida Statute § 627.7288, which provides that insured customers with comprehensive coverage do not have to pay for windshield replacements. (*Id.* at 2). Plaintiffs claim that these invoices are for "excessive and unreasonable amounts." (Doc. 1 at 2). Plaintiffs assert that a typical windshield replacement done by other vendors in Florida cost an average of $350, whereas Defendants' invoices average $900. (*Id.* at 4). Plaintiffs also claim that in some of the replacement situations, windshield replacement was unnecessary because the damaged windshield could have been safely repaired at a lower cost. (*Id.*).

Consequently, Plaintiffs have refused to pay Defendants more than what it believes are "the competitive and prevailing market rates for windshield replacements." (*Id.*). As a result, Defendants have then purportedly "filed over 1,400 lawsuits" against Plaintiffs to recover the

---

[1] Comprehensive coverage is a type of automobile insurance available in Florida, which is optional for consumers to purchase. (Doc. 1 at 8).

[2] Some of the specific high-pressure tactics that Plaintiffs allege Defendants employ include, but are not limited to: advertising free windshield replacements to Plaintiffs' insured customers; offering incentives to Plaintiffs' insured customers for windshield replacements (e.g., cash for old windshields, gift cards); advertising Original Equipment Manufacturer ("OEM") glass when Defendants actually use non-OEM glass; and soliciting Plaintiffs' insured customers in parking lots, places of employment, and at their homes. (Doc. 1 at 14–15).

"overages"—the difference between the invoice amount and Plaintiffs' payment. (*Id.*; *see also* Doc. Nos. 15, 16). At the time of the Complaint, Plaintiffs allege that "[t]he current amount of overages . . . exceeds $200,000." (Doc. 1 at 4). And Plaintiffs claim that they have "incurred litigation costs and fees in 2017 and 2018 alone exceeding $400,000." (*Id.* at 5).

Plaintiffs filed the instant lawsuit, which asserts claims for tortious interference, violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), violations of Florida's Home Solicitation Sales Act ("FHSSA"), violations of the Federal Trade Commission's ("FTC") Rule Concerning Cooling-off Period for Sales Made at Homes or at Certain Other Locations ("FTC Rule"), violations of the Florida Motor Vehicle Repair Act ("FMVRA"), and unjust enrichment. (*See generally* Doc. 1). Plaintiffs seek injunctive and declaratory relief and request actual damages. (*Id.*).

Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 22 at 1). Pursuant to Rule 12(b)(1), Defendants assert what they characterize as a facial attack based on lack of Article III standing and a factual attack based on abstention grounds. (*Id.* at 3). Defendants also move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*Id.* at 2).

## II.     RULE 12(b)(1)

### A.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." "Attacks on subject matter jurisdiction . . . come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). "Facial attacks challenge subject matter

jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When jurisdiction is properly challenged, a plaintiff has the burden of showing jurisdiction exists." *Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367-Orl-19UAM, 2008 U.S. Dist. LEXIS 7066 (M.D. Fla. Jan. 31, 2008).

### B.     Article III Standing Analysis

Article III standing is a threshold inquiry, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), so the Court will address it first. In order to bring a case in federal court, a plaintiff must establish standing under Article III of the United States Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). To establish Constitutional, or Article III, standing, a plaintiff must show: "1) that [it] personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987).

Defendants assert that Plaintiffs have failed to establish Article III standing because: Plaintiffs have not demonstrated that any of their claims fall within coverage of the consumer protection statutes upon which their claims are based; Plaintiffs have not established that they have suffered an injury-in-fact; and Plaintiffs have not shown a causal connection between the purported injury and the complained of conduct.

To establish Article III standing, "it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately." *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987). Therefore, the Court proceeds to look at whether Plaintiffs have standing to bring each of the ten Counts they have asserted in the Complaint.[3]

### 1. Counts II, III, IV, VII, and VIII—FDUTPA Claims

Counts II, III, IV, VII, and VIII of Plaintiffs' Complaint are based on alleged violations of FDUTPA. FDUTPA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "FDUTPA authorizes a private cause of action for actual damages by any 'person' who has suffered a loss because of a defendant's violation of the statute." *State Farm Mut. Auto. Ins. Co. v. Feijoo*, No. 1:18-cv-23329-KMM, 2019 U.S. Dist. LEXIS 93343, at *13 (S.D. Fla. June 3, 2019) (quoting Fla. Stat. § 501.211(2)). In 2001, the Florida Legislature amended FDUTPA's standing provision by replacing the word 'consumer' with the word 'person.' *Id.* "There is currently a split in authority regarding whether the 2001 amendment extended FDUTPA to non-consumers," and neither the Florida Supreme Court nor the Eleventh Circuit has resolved the split. *Id.* (collecting cases).

---

[3] However, the Court will not separately address standing as to Count I. Defendants argue that "[t]he entire Complaint should be dismissed pursuant to Rule 12(b)(1)," but Defendants then fail to include any argument or legal authority challenging standing as to Count I of the Complaint (tortious interference) and therefore appear to concede that Plaintiffs have standing on this claim. (Doc. 22 at 10). The Court agrees; Plaintiffs have standing on their tortious interference claim. Similarly, the Court will not separately address standing for Plaintiffs' claim for declaratory judgment in Count IX because that claim is premised on the alleged violations set forth in the other nine counts, and Defendants do not challenge standing on the declaratory judgment claim on any separate basis. Therefore, the Court finds that Plaintiffs also have standing on Count IX and refers the parties to the analysis set forth regarding the other claims.

Defendants assert that "Plaintiffs are not consumers involved in consumer transactions with [Defendants]," and therefore are not covered by the protections of FDUTPA. (Doc. 22 at 5). Plaintiffs claim that the FDUTPA is not so limited. Plaintiffs are correct.

At least three of Florida's District Courts of Appeal[4] have categorically held that "an entity [i]s not required to be a consumer in order to have standing to bring a FDUTPA claim."[5] *Feijoo*, 2019 U.S. Dist. LEXIS 93343, at *14 (quoting *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) (collecting cases)); *see also Envtl. Mfg. Sols., LLC v. Fluid Grp. Ltd.*, No. 6:18-cv-156-Orl-40KRS, 2018 U.S. Dist. LEXIS 131382, at *48–50 (M.D. Fla. May 9, 2018) (holding same). Absent a clear direction from the Florida Supreme Court on an issue, this Court is "bound to follow" decisions of the state's intermediate appellate courts unless there is some persuasive indication that the Florida Supreme Court would decide the issue differently. *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012) (citation omitted). Thus, Defendants' argument that Plaintiffs, as insurers, cannot be protected by FDUTPA fails.

Defendants' arguments also fail regarding injury-in-fact and causal connection for the FDUTPA claims. An injury-in-fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). Additionally, the injury must be "concrete," meaning "it

---

[4] Florida's Fifth District Court of Appeal has not ruled on the issue.

[5] This Court makes no determination at this stage regarding whether Plaintiffs are actually "consumers," as they argue in their Motion, because such a finding is not necessary to establish standing to bring an FDUTPA claim.

must actually exist." *Id.* The Supreme Court in *Spokeo* emphasized that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.

Defendants argue that "the Complaint contains no allegations that any of [Defendants'] true consumer-customers sustained any damages, actual or otherwise, or were harmed by Defendants in any way." (Doc. 22 at 9). Defendants miss the point. FDUTPA does not only protect consumers, as discussed above. Plaintiffs allege that *they* were injured by Defendants' actions in the following ways.[6] Plaintiffs claim that the average invoice for a windshield replacement done by Defendants is approximately $900, whereas the average for other glass vendors in Florida is approximately $350. Plaintiffs refusal to pay the full invoice amount has resulted in "overages" that Defendants are seeking from Plaintiffs, which exceed $200,000. Plaintiffs also state in their Complaint that they have incurred litigation costs and fees resulting from Defendants' lawsuits against Plaintiffs seeking payment of the overages.

While the costs of the instant lawsuit are not a cognizable injury sufficient to establish standing, *Steel Co.*, 523 U.S. at 107–08, the underlying lawsuits ("over 1,400" of them, (Doc. 1 at 4)) and associated expenses "exceeding $400,000," (*id.* at 5), represent an actual concrete and particularized injury-in-fact. *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235-FtM-29MRM, 2018 U.S. Dist. LEXIS 52509, at *9 (M.D. Fla. Mar. 29, 2018) (holding that "exposure to liability in [a] lawsuit constitutes a sufficient injury-in-fact") (citing *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1265 (11th Cir. 2015)). Plaintiffs have sufficiently alleged that they have been "expos[ed]" to liability in the underlying lawsuits. *Id.*

---

[6] Plaintiffs also properly allege that its insured customers were injured.

And notably, even if the underlying lawsuits were not a cognizable injury-in-fact, Plaintiffs suggest that some of the windshield replacements were unnecessary in the first place and that "at least some of the damaged windshields could have been properly and safely repaired at a much lower cost." (Doc. 1 at 4). Thus, Plaintiffs have alleged an injury in the form of overpaying for windshield replacements when they should have only had to pay for lower repair costs.

Clearly, these purported injuries are fairly traceable to the alleged FDUTPA violations. Traceability is a "relatively modest" burden, *Bennett v. Spear*, 520 U.S. 154, 171 (1997), and "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 n. 6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").

The purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). Plaintiffs allege that Defendants' actions violated various provisions of FDUTPA. Plaintiffs then suggest that but for these actions, Plaintiffs' insured customers would either not have needed a windshield replacement—and would have only needed a repair—or would have had their windshield replaced at a lower cost. Additionally, Plaintiffs allege that but for these disputes about costs, Defendants would not have sued Plaintiffs for recovery of underpaid invoices. Thus, Plaintiffs have established the standing element of traceability.

Defendants do not challenge the redressability element of standing, but that element is also met. "[A] favorable decision on the [FDUTPA] claim[s] will redress the injury to the extent

Plaintiff recovers the monies it paid on the basis of [FDUTPA violations]." *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1340 (S.D. Fla. 2016). Plaintiffs have established Article III standing on the FDUTPA claims, so they will not be dismissed on this basis.

### 2. *Counts V, VI, and X—Non-FDUTPA Claims*

As to Counts V, VI, and X, Defendants argue that if Plaintiffs lack standing under FDUTPA, then Plaintiffs also lack standing on the non-FDUTPA claims because those claims "are all premised on purported FDUTPA violations." (Doc. 22 at 10). The Court finds this argument to be an ineffective attempt at getting these claims dismissed. While Counts VII and VIII do allege *per se* violations of FDUTPA as a result of the alleged non-FDUTPA statutory violations, Counts V, VI, and X allege stand-alone claims independent of FDUTPA and are adequately supported by alleged facts and legal authority. Count V is based on alleged violations of FHSSA and the FTC Rule, Count VI is based on alleged violations of FMVRA, and Count X is a common law claim for unjust enrichment. Defendants even admit that these are "stand-alone claims," (Doc. 22 at 10 n.10, 11, 12), but then fail to provide any argument supporting dismissal other than the vague assertion that the claims are premised on FDUTPA violations and therefore should be dismissed if Plaintiffs lack standing on the FDUTPA claims. (Doc. 22 at 10 n.10, 11, 12). Regardless, at a minimum, Plaintiffs have alleged the same injury-in-fact for Counts V, VI, and X as they have for the FDUTPA claims.[7] And, for traceability, Plaintiffs allege that if Defendants had not violated the underlying statutes, then Plaintiffs would not have suffered these injuries. As with the FDUTPA claims, Plaintiffs' injuries would be redressed with a payment of damages for monies

---

[7] Plaintiffs may have also alleged additional injuries associated with the non-FDUTPA claims, such as impacts on its contractual relationships with its insured customers, but the Court does not need to recite a list of all of Plaintiffs' alleged injuries as part of the standing analysis.

lost resulting from the statutory violations. Accordingly, Plaintiffs have established Article III standing on the non-FDUTPA claims.

## III.      RULE 12(b)(6)

### A.    Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### B.    Failure to State a Claim Analysis

"[A]ccept[ing] the factual allegations in the complaint as true and constru[ing] them in a light most favorable to the [Plaintiffs]," *United Techs*, 556 F.3d at 1269, Plaintiffs easily survive

Defendants' 12(b)(6) motion to dismiss on all but two Counts. The Court will analyze each Count in turn.[8]

### 1. Count I—Tortious Interference

The elements of tortious interference are: "(1) the existence of a business relationship [or contract][9] . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ingenuity, Inc. v. Linshell Innovations Ltd.*, No. 6:11-cv-93-Orl-28KRS, 2014 U.S. Dist. LEXIS 40336, at *11 (M.D. Fla. Mar. 25, 2014) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). Plaintiffs have clearly pleaded each of these elements. Plaintiffs allege that they "currently have and have had contractual relationships, per their automobile policies, with insureds." (Doc. 1 at 29).  Plaintiffs also allege, in detail, that Defendants had knowledge of the contractual relationship between Plaintiffs and their insured customers. (*See, e.g.*, *id.* at 3, 17, 20–21, 142). Plaintiffs then specify exactly how they believe Defendants interfered with the relationship,[10] (*id.* at 20–24, 30), and the resulting damage to Plaintiffs, (*id.* at 4–5, 30). Plaintiffs have properly pleaded the elements for a claim of

---

[8] Defendants argue that Counts II through X of the Complaint should be dismissed on Rule 12(b)(6) grounds "for the same reasons Plaintiffs lack Article III standing." (Doc. 22 at 22). As the Court has outlined above, Plaintiffs have established Article III standing on all Counts, so those arguments will not be readdressed here.

[9] "Except for requiring a contract rather than only a business relationship, the cause of action of tortious interference with a contract is essentially the same as tortious interference with a business relationship." *Ingenuity*, 2014 U.S. Dist. LEXIS 40336, at *11 (citing *Pilkington v. United Airlines, Inc.*, 112 F.3d 1532, 1540 (11th Cir. 1997)).

[10] Indeed, these allegations appear in the section of the Complaint aptly titled "[Defendants'] Interference with [Plaintiffs'] Contractual Relationship with its Insureds." (Doc. 1 at 20).

tortious interference, and—accepting Plaintiffs' allegations as true at this stage of the proceedings[11]—Defendants' Rule 12(b)(6) motion to dismiss is due to be denied as to Count I.

### 2. *Counts II, III, IV—FDUTPA Claims*

As a threshold matter, this Court declines to impose the heightened pleading standard set forth in Rule 9(b), as Defendants request.[12] Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "The purpose of Rule 9(b) is to 'alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges . . .'" *Klusmeier v. Bell Constructors, Inc.*, 469 F. App'x 718, 720 (11th Cir. 2012) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). Requiring Plaintiffs to plead their FDUTPA claims with particularity would not advance this goal as FDUTPA's elements are already more particularized than those of common law fraud. *Harris v. Nordyne, LLC*, No. 14-CIV-21884-BLOOM/Valle, 2014 U.S. Dist. LEXIS 189248, at *12 (S.D. Fla. Nov. 13, 2014). That is, a complaint which states plausible allegations supporting FDUTPA claims will generally put a defendant on fair notice of the nature of a

---

[11] Defendants' remaining arguments appear to be asking the Court to either construe allegations in the Complaint against Plaintiffs or to consider evidence outside the Complaint, neither of which the Court can do when evaluating a Rule 12(b)(6) motion to dismiss. *See United Techs.*, 556 F.3d at 1269; *St. George*, 285 F.3d at 1337.

[12] District courts in the Eleventh Circuit "are split on the question of whether a FDUTPA claim must meet Rule 9(b) pleading requirements." *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1227 (M.D. Fla. 2017); *see also Hummel v. Tamko Bldg. Prods.*, No. 6:15-cv-910-Orl-40GJK, 2015 U.S. Dist. LEXIS 183773, at *6 (M.D. Fla. Nov. 5, 2015). However, "[c]ertainly, not all FDUTPA claims are required to meet Rule 9(b)'s pleading standard." *Hummel*, 2015 U.S. Dist. LEXIS 183773, at *6. Rather, the FDUTPA cases in which courts have applied Rule 9(b)'s heightened pleading standard all "sound in fraud." *Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-Oc-37TBS, 2012 U.S. Dist. LEXIS 33941, at *9–10 (M.D. Fla. Mar. 13, 2012) (finding "that where the gravamen of the claim sounds in fraud . . . the heightened pleading standard of Rule 9(b) would apply"). The FDUTPA claims here do not sound in fraud, so Rule 9(b)'s heightened pleading standard will not be applied.

plaintiff's claims and the grounds upon which they are based, without the risk of subjecting the defendant to specious claims. *Id.* at *12–13. "Because Rule 9(b) does not apply to FDUTPA claims, its requirements cannot serve as a basis to dismiss Plaintiffs' FDUTPA claim[s]." *Eli Lilly & Co. v. Tyco Integrated Sec., LLC*, No. 13-80371-CIV, 2015 U.S. Dist. LEXIS 191652, at *10 (S.D. Fla. Feb. 9, 2015) (collecting cases).[13]

Applying Rule 12(b)(6)'s standard to the FDUTPA claims (Counts II, III, IV), Plaintiffs have satisfied the pleading standard. *See Iqbal*, 556 U.S. at 678. As previously mentioned, FDUTPA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). An unfair practice has been defined as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (quotation omitted). However, FDUTPA does not apply to "[a]n act or practice required or specifically permitted by federal or state law."[14] *Id.* § 501.212(1). The elements comprising a claim for damages under FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. GM Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)).

---

[13] Defendants appear to request that all of the FDUTPA Counts as to Isaly should be dismissed because he was purportedly not a "direct participant" in the alleged actions. (Doc. 22 at 22). Defendants then pin their argument for dismissal with regards to Isaly on the Rule 9(b) analysis. As the Court has determined that Rule 9(b) does not apply, this argument is disregarded. Further, Plaintiffs have alleged that Isaly is the sole member and owner of Defendant business, and he controls the acts and practices of the business. Plaintiffs go so far as to call Isaly the "mastermind" of the alleged unfair and deceptive practices. (Doc. 1 at 2). This is enough to clear the Rule 12(b)(6) hurdle. *Paul v. Mayo Clinic*, No. 3:15-cv-1244-HES-MCR, 2016 U.S. Dist. LEXIS 194907, at *8 (M.D. Fla. June 14, 2016) (holding that similar allegations were enough even under the heightened Rule 9(b) standard).

[14] But this is not the situation presented by the Complaint, as Defendants attempt to argue.

Plaintiffs have sufficiently alleged each of the required elements. The deceptive and unfair acts alleged by Plaintiffs are detailed in the section of the Complaint titled "[Defendants'] Scheme to Obtain Payment for Non-market Rates." (Doc. 1 at 14). Plaintiffs allege that Defendants have been deceptive and unfair in their advertising and solicitation of Plaintiffs' insured customers by, among others things: advertising free windshield replacements to Plaintiffs' insured customers; offering incentives to Plaintiffs' insured customers for windshield replacements—cash for old windshields, gift cards; advertising OEM glass when Defendants actually use non-OEM glass; and soliciting Plaintiffs' insured customers in parking lots, places of employment, and at their homes. Plaintiffs allege that Defendants have also made misrepresentations and omissions to Plaintiffs' insured customers by: soliciting customers through promises of payment and other incentives that are not actually paid; misrepresenting Plaintiffs' working relationship with Defendants; omitting or failing to disclose important claims information when communicating with Plaintiffs' insured customers regarding their windshield replacements; and failing to disclose the lawsuits that Defendants have filed against Plaintiffs for similar work. Finally, Plaintiffs allege that Defendants then coerce Plaintiffs' insured customers to assign their insurance benefits over to Defendants by having the insured customers sign a form purporting to "simply authorize the work or confirm that the work was completed." (Doc. 1 at 18). This is by no means an exhaustive list of the detailed allegations in the Complaint regarding the FDUTPA claims,[15] but it is more than enough to satisfy the first element for Counts II, III, and IV.

Regarding damages and causation, the Court refers to the standing analysis above, which details the causation and actual damages alleged by Plaintiffs. Plaintiffs have alleged actual

---

[15] The Court directs Defendants to pages fourteen through twenty of the Complaint for further details.

damages in the amount of the alleged overages and the costs of the underlying litigation, and Plaintiffs have alleged that the deceptive and unfair practices by Defendants have caused these damages. It is not much of an inferential leap[16] to come to the conclusion that but for Defendants' alleged actions, Plaintiffs would not be engaged in over 1,000 lawsuits with Defendants.[17] Thus, Plaintiffs have sufficiently pleaded the elements of an FDUTPA claim to survive a Rule 12(b)(6) motion for Counts II, III, and IV.

### 3.    Counts VII and VIII—FDUTPA Per Se Violation Claims

Applying Rule 12(b)(6)'s standard to the *per se* violation FDUTPA claims (Counts VII and VIII), Plaintiffs have sufficiently stated a claim on these Counts. *See Iqbal*, 556 U.S. at 678. Prohibited deceptive and unfair practices under FDUTPA include violations of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." *Id.* § 501.203(3)(c). Some federal courts in Florida have referred to these FDUTPA claims as "*per se* violations" because they are explicitly provided for in the statute. *See, e.g., Williams v. Delray Auto Mall, Inc.*, 916 F. Supp. 2d 1294, 1300 (S.D. Fla.

---

[16] *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

[17] *See Sliwa*, 2018 U.S. Dist. LEXIS 52509, at *9 (holding that "exposure to liability in [a] lawsuit constitutes a sufficient injury-in-fact") (citing *Yellow Pages*, 795 F.3d at 1265). Defendants suggest that Plaintiffs could have avoided this liability "by simply denying the windshield replacement claims." (Doc. 22 at 29). The Court is not convinced by this argument. As Defendants point out, "insurers have the right to deny claims if their insureds fail to cooperate during the claims process." (*Id.* at 28 (citing *Travelers Indem. Co. v. Attorney's Title Ins. Fund*, 194 F. Supp. 3d 1224, 1232 (M.D. Fla. 2016)). But there are no facts to support the suggestion that any of Plaintiffs' insured customers failed to cooperate during the claims process. And even if such facts were introduced, they would be outside the four corners of the Complaint and therefore could not be considered by the Court for the purposes of the Rule 12(b)(6) motion. *St. George*, 285 F.3d at 1337.

2013); *Taviere v. Precision Motor Cars, Inc.*, No. 8:09-cv-467-T-TBM, 2010 U.S. Dist. LEXIS 12493, 2010 WL 557347, at *4 (M.D. Fla. Feb. 12, 2010).

Preliminarily, Defendants argue that Plaintiffs are not consumers and therefore cannot bring the FDUTPA claims that are based on *per se* violations (Counts VII and VIII). As the Court has already determined that Plaintiffs do not have to be consumers to be covered by FDUTPA, *Feijoo*, 2019 U.S. Dist. LEXIS 93343, at *14, the only remaining question is whether or not Plaintiffs can properly assert an action pursuant to the underlying statutes.

Count VII alleges *per se* violations of FDUTPA based on violations of FHSSA and the FTC Rule. FHSSA makes it "unlawful for any person to conduct any home solicitation sale"[18] without first obtaining a permit. Fla. Stat. § 501.022(1)(a). Similarly, the FTC Rule applies to sales "of consumer goods or services . . . which [have] a purchase price of $25 or more if the sale is made at the buyer's residence or a purchase price of $130 or more if the sale is made at locations other than the buyer's residence." 16 C.F.R. § 429.0(a). Plaintiffs alleged that Defendants violated FHSSA and the FTC Rule by soliciting Plaintiffs' insured customers at their homes for windshield replacements. Plaintiffs also allege that for both FHSSA and the FTC Rule, the statutory price points were exceeded. Defendants assert that FHSSA and the FTC Rule do not apply because Plaintiffs' insured customers did not have to pay for the windshield replacements, and therefore the statutory price point threshold was not met.

FHSSA only states that it applies to "sale . . . of consumer goods or services with a purchase price in excess of $25." Fla. Stat. § 501.021(1). It does not state that the end-user of the consumer good has to be the one paying the purchase price. Nor do Defendants provide any legal authority

---

[18] "Home solicitation sale" is defined by FHSSA as "a sale, lease, or rental of consumer goods or services with a purchase price in excess of $25." Fla. Stat. § 501.021(1).

to the contrary. Similarly, the FTC Rule applies to "[a] sale . . . of consumer goods or services" of $25 or more and defines "purchase price" as "[t]he total paid or to be paid for the consumer goods." 16 C.F.R. § 429.0(a), (e). This definition also suggests that it does not matter who ultimately bears the responsibility for payment. Thus, Count VII will not be dismissed on this basis.

The FDUTPA element of actual damages, discussed above, applies in equal force to Count VII. As to causation, it is a reasonable inference that but for Defendants' alleged violations of FHSSA and the FTC Rule, Defendants would not have obtained the business of Plaintiffs' insured customers, and Defendants would not have needed to sue Plaintiffs for the allegedly unpaid overages. Thus, Plaintiffs have sufficiently pleaded the elements of a FDUTPA claim to survive a Rule 12(b)(6) motion for Count VII.

Count VIII alleges *per se* violations of FDUTPA based on violations of FMVRA. FMVRA requires any "motor vehicle repair shop" to provide customers with "a written repair estimate" when "the cost of the repair work will exceed $100 to the customer." Fla. Stat. § 559.905(1). Similar to their arguments above, Defendants argue that they did not violate FMVRA because it was Plaintiffs and not their insured customers who would have to pay for the windshield replacement. Plaintiffs argue that there is an underlying factual question at issue because they could theoretically require their insured customers to be responsible for amounts not covered by insurance, and in that case the cost to the customer would exceed the threshold. Neither party provides any helpful binding legal authority on the issue.

FMVRA applies when "the cost of [the] repair work will exceed $100 *to the customer*." Fla. Stat. § 559.905(1) (emphasis added). The statute defines "customer" as "the person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work." *Id.*

§ 559.903(1). Plaintiffs' argument is well taken. There may be an underlying factual question about whether their insured customers could be on the hook for the cost of the windshield replacement. However, this still would not allow a claim under FMVRA here as the statute only applies to customers. Plaintiffs are not the customers, per the statutory definition. Thus, Plaintiffs are not covered by FMVRA, and Count VIII is due to be dismissed.

### 4. Counts V, VI, and X—Unjust Enrichment

Count V asserts a claim for unjust enrichment based on alleged violations of FHSSA and the FTC Rule. Count VI is a claim for unjust enrichment based on alleged violations of FMVRA. And Count X is based on Defendants allegedly replacing windshields that should have been repaired. The purported bases of the statutory violations are discussed above. A claim for unjust enrichment must demonstrate three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n. 4 (Fla. 2004)).

These elements are easily satisfied for Counts V and X. Plaintiffs allege that they "have conferred a benefit on [Defendants], in the form of payments on windshield claims, and [Defendants] ha[ve] accepted and retained those benefits." (Doc. 1 at 38, 47). For Count V, Plaintiffs allege that this benefit has been unjustly conferred because the payments only resulted from violations of FHSSA and the FTC Rule.[19] For Count X, Plaintiffs allege that the payments were unjustly conferred because the windshields should have been repaired at a lower cost than

---

[19] Each alleged basis for the statutory violations is outlined above and need not be repeated here.

Plaintiffs paid for replacement. Plaintiffs also set forth detailed factual allegations about why they believe it would be inequitable for Defendants to retain those payments. (*See* Doc. 1 at 24–29). Having properly pleaded the elements for a claim of unjust enrichment in both Counts V and X, the Motion with regards to those Counts is due to be denied. However, because the underlying alleged violation of FMVRA is due to be dismissed, as discussed above, Count VI—which is based on alleged FMVRA violations—will also be dismissed.

### 5.   *Count IX—Declaratory Judgment*

Count IX of the Complaint asserts a claim for declaratory relief pursuant to the Declaratory Judgment Act. 28 U.S.C. § 2201. "The federal courts are confined by Article III of the Constitution to adjudicating only actual 'cases' and 'controversies.'" *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "[T]he Declaratory Judgment Act . . . does not broaden federal jurisdiction." *Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1467 (11th Cir. 1987), *abrogated on other grounds by King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991). Indeed, Congress explicitly "limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of" the Article III limitations on federal judicial power. *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (quotation omitted). Accordingly, if a declaratory judgment action fails to meet the Article III case and controversy requirement, it must be dismissed for want of jurisdiction. *See Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). Additionally, parties do not have a right to a declaratory judgment, and district courts have the discretion to abstain from exercising jurisdiction over such a claim. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (per curiam) ("The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on courts rather than an absolute right upon the

litigant.' It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995))).

Defendants argue that Plaintiffs' claim for declaratory judgment should be dismissed because it "is nothing more than a mash-up of all prior counts and is duplicative of the multiple requests for declaratory relief asserted as part of the FDUTPA claims." (Doc. 22 at 32). Additionally, Defendants argue that this claim should be dismissed because the Declaratory Judgment Act does not allow for adjudication of past conduct. Both of these arguments fail.

"Motions to dismiss made under Rule 12(b)(6) only test the validity of the claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid." *Wichael v. Wal-Mart Stores*, E., LP, No. 6:14-cv-579-Orl-40DAB, 2014 WL 5502442, *2 (M.D. Fla. Oct. 30, 2014); *see also* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate . . ."). Count IX will not be dismissed simply because it is a "mash-up" of the other claims. Furthermore, contrary to Defendants' assertion that Plaintiffs are only requesting an adjudication regarding past conduct, Plaintiffs plead that Defendants' alleged conduct "will continue . . . absent a declaration by this Court." (Doc. 1 at 46). Thus, Defendants' request that Count X be dismissed pursuant to Rule 12(b)(6) will be denied.

## IV.   ABSTENTION

As a threshold matter, Defendants assert that their abstention argument is a factual attack under Rule 12(b)(1). Plaintiffs do not dispute Defendants' asserted legal standard for abstention. "Whether . . . abstention should be raised under Rule 12(b)(1) or 12(b)(6) is the subject of some dispute." *Parker v. Judicial Inquiry Comm'n of Ala.*, 212 F. Supp. 3d 1171, 1174 n.1 (M.D. Ala. 2016); *see also In re Daewoo Motor Co., Ltd. Dealership Litig.*, No. MDL-1510, 2005 U.S. Dist. LEXIS 43197, at *20 n.11 (M.D. Fla. Jan. 6, 2005) ("Some courts have indicated that a motion to

dismiss on comity and/or abstention grounds falls within the rubric of a Rule 12(b)(1) motion. Other courts have indicated that a motion to dismiss on abstention grounds does not fit precisely within Rule 12(b)(1)." (citing cases) (citations omitted)). This Court finds it unnecessary to determine exactly where the current abstention argument fits because "it is clear that the rules governing dismissal for subject matter jurisdiction are generally accepted as the guidelines for a motion to dismiss on comity and/or abstention grounds." *In re Daewoo*, 2005 U.S. Dist. LEXIS 43197, at *20 n.11 (noting that "presumption in favor of plaintiff under Rule 12(b)(6) motion is inapplicable on motion to dismiss on grounds of comity which addresses court's subject matter jurisdiction"). Additionally, even under a Rule 12(b)(6) standard, the Court may take judicial notice of pleadings and orders from another action. *Frame v. United States*, No. 3:10-cv-360-J-34JRK, 2010 U.S. Dist. LEXIS 141894, at *11-13 (M.D. Fla. Dec. 30, 2010). Thus, the Court does not proceed with the following analysis precisely under the Rule 12(b)(1) or Rule 12(b)(6) framework but rather weighs the facts without a presumption in favor of Plaintiffs and takes proper judicial notice of the underlying state court lawsuits.

### A.    *Colorado River* Abstention

Defendants make an argument for abstention under two separate doctrines. First, Defendants argue that this Court should abstain from adjudicating this case pursuant to *Colorado River* abstention.[20] *Colo. River Water Conser. Dist. v. United States*, 424 U.S. 800 (1976). Plaintiffs argue that abstention under *Colorado River* is not warranted.

---

[20] Defendants do not appear to ask alternatively for a stay of this case if the Court declines to abstain entirely. However, as the Court finds below that abstention is not warranted for any period of time, it is unnecessary to consider whether a stay would be an appropriate remedy. *See Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004) (discussing the error of a District Court in dismissing an action when it should have simply stayed the action pending the outcome of the state court proceedings).

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* Under the *Colorado River* doctrine, "abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* That is, "[a]bdication of the obligation to decide cases can be justified under this doctrine only in . . . exceptional circumstances." *Id.* Furthermore, "[c]onsiderations supporting the other abstention doctrines are 'weightier' than the considerations supporting *Colorado River* abstention. Therefore, *Colorado River* abstention is permissible in fewer circumstances than are the other abstention doctrines, which themselves carve out only slender exceptions to the robust duty to exercise jurisdiction." *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004) (quoting *Colorado River*, 424 U.S. at 818).

"[T]he *Colorado River* analysis is limited to situations in which federal and state proceedings involve 'substantially the same parties and substantially the same issues.'" *Baker v. Warner/Chappell Music, Inc.*, 759 F. App'x 760, 763 (11th Cir. 2018) (quoting *Ambrosia*, 368 F.3d at 1330). The Eleventh Circuit has deduced seven factors that must be weighed in determining whether *Colorado River* abstention is permissible: "(1) whether the state or federal court has assumed jurisdiction over any property at issue; (2) the relative inconvenience of the federal forum; (3) the likelihood of piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) whether state or federal law will be applied; (6) whether the state court can adequately protect the parties' rights; and (7) the vexatious or reactive nature of either the federal or the state litigation."[21] *Id.* (quotations omitted).

---

[21] The Eleventh Circuit has in some cases also considered an eighth factor under the *Colorado River* doctrine—"whether the concurrent cases involve a federal statute that evinces a policy favoring abstention." *Willson v. Bank of Am., N.A.*, 684 F. App'x 897, 900 (11th Cir. 2017). However, the instant case does not involve any federal statutes other than the Declaratory Judgment Act. Thus, this factor need not be considered in this analysis.

Prior to an analysis of the factors set forth by the Eleventh Circuit, this Court considers whether this case and the underlying state court actions "involve 'substantially the same parties and substantially the same issues.'" *Baker*, 759 F. App'x at 763 (quoting *Ambrosia*, 368 F.3d at 1330). Plaintiffs have made a reasonable argument that both different parties and different issues are present between the federal and state actions. For example, the state actions do not involve all of the Plaintiff parties in this case nor do they involve Isaly as a defendant. The state court actions also each involve only a single windshield replacement claim, whereas the instant action focuses on the underlying alleged conduct of Defendants. Nonetheless, as *Colorado River* does not require the relevant federal and state cases to share "identical parties, issues, and requests for relief," this Court will look to the seven factors presented by the Eleventh Circuit to determine whether abstention under the *Colorado River* doctrine is permissible. *Ambrosia*, 368 F.3d at 1329.

The first factor weighs against abstention, as no property is involved in this case. *Id.* at 1332 ("Because the relevant cases are not proceedings in rem, neither court has jurisdiction over property, and the first *Colorado River* factor does not favor abstention.").

The second factor—relative inconvenience of the federal forum—also weighs against abstention. "This factor should focus primarily on the physical proximity of the federal forum to the evidence and witnesses." *Id.* Here, all of the pending state actions identified by the parties are in various Florida state courts. When "the federal forum and the state forum are equally convenient[,] this factor . . . cuts against abstention." *Jackson-Platts v. GE Cap. Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013).

The third factor—the likelihood of piecemeal litigation—weighs heavily against abstention and is potentially the most persuasive factor here. *Ambrosia*, 368 F.3d at 1332 (noting that "no one factor is necessarily determinative," and that "the weight to be given to any one factor may vary

greatly from case to case" (quoting *Colorado River*, 424 U.S. at 818; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983))); *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004). While the parties disagree on the precise number of small claims cases pending in state courts throughout Florida, the parties agree that they number over 1,000. And there appears to be no end in sight to the continued filing of these cases unless and until the underlying issues between the parties are resolved. This Court is better situated to analyze all of the underlying issues between the parties than state court judges scattered throughout the state, each handling only a handful of the small claims cases. *Consol. Am. Ins. Co. v. Hinton*, 845 F. Supp. 1515, 1520 (M.D. Fla. 1994) (finding that the third factor weighed against abstention when the federal action was "more comprehensive" and involved more parties than the state action).

The fourth factor—the order in which the courts obtained jurisdiction—also weighs slightly against abstention, though it is not determinative. The Supreme Court clarified that this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Ambrosia*, 368 F.3d at 1333 (quoting *Moses*, 460 U.S. at 21). Here, the state court lawsuits were clearly filed first, but it is unclear how much progress has been made in those proceedings. Furthermore, it appears that there is a continuing risk of additional lawsuits being filed in state court if the underlying disputes between the parties are not resolved. When "[n]o significant progress has been made in either action[, this factor] does not weigh in favor of dismissal." *Am. Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 885–86 (11th Cir. 1990). As it is Defendants' burden to demonstrate that the state court cases referenced have progressed to a point that justifies abstention, *Ambrosia*, 368 F.3d at 1333—and

they have failed to do so—this factor weighs against abstention. *Am. Bankers*, 891 F.2d at 885–86.

The fifth factor—whether state or federal law will be applied—does not favor abstention. "[This] factor . . . 'favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve.'" *Baker*, 759 F. App'x at 764 (quoting *Jackson-Platts*, 727 F.3d at 1143). That is not the situation presented here. This Court has handled numerous FDUTPA cases and "is fully competent to adjudicate" the instant case. *Hall v. Sargeant*, No. 9:18-CV-80748-BLOOM/REINHART, 2018 U.S. Dist. LEXIS 171099, at *17 (S.D. Fla. Oct. 1, 2018).[22]

The sixth factor—adequate protection of the parties' rights—is neutral. "The fact that both forums are adequate to protect the parties' rights merely renders this factor neutral on the question of whether the federal action should be dismissed. This factor will only weigh in favor or against dismissal when one of the forums is *inadequate* to protect a party's rights." *Noonan S., Inc. v. Cty. of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988) (emphasis in original). Here, Defendants only state that Florida courts are adequate to protect the parties' interests. This Court agrees, but the federal forum is equally adequate to protect the parties' rights. As both forums are adequate to protect the rights asserted by each of the parties, this factor is neutral. *Id.*

The seventh factor is neutral as well. With this factor, the Court may consider "the vexatious or reactive nature of either the federal or the state litigation." *Lops v. Lops*, 140 F.3d 927, 961 (11th Cir. 1998) (quoting *Moses*, 460 U.S. at 18 n.20). While Defendants suggest that it is "obvious" that the instant action is reactive to Plaintiffs' lack of satisfaction with the state court

---

[22] *Hall* also notes that "the presiding District Judge served on the Florida state bench from 1995 to 2014." 2018 U.S. Dist. LEXIS 171099, at *17 n.7. Similarly, the presiding District Judge in the instant case served as a Florida Circuit Court Judge prior to his appointment to the federal bench.

proceedings, they provide no evidence of this. (Doc. 22 at 15). Even if this statement is true—that Plaintiffs are displeased with the results of the state court proceedings—it does not necessarily follow that the instant case should be barred. *Clay v. AIG Aero. Ins. Servs.*, 61 F. Supp. 3d 1255, 1265 (M.D. Fla. 2014) (finding that a previous unfavorable ruling in state court does not alone render a case reactive or vexatious). As "Plaintiffs have stated what appear on the face of their . . . Complaint to be legitimate claims for relief . . . [t]he Court finds nothing in the record to suggest that Plaintiffs filed this lawsuit for any improper purpose. As such, this factor does not warrant abstention." *Id.*

"After carefully weighing the *Colorado River* factors and extending, as [this Court] must, a heavy bias in favor of exercising jurisdiction," the Court finds it inappropriate to abstain from adjudicating this case on the basis of the *Colorado River* doctrine. *Ambrosia*, 368 F.3d at 1332. Therefore, the Court will not abdicate its "virtually unflagging obligation" to exercise jurisdiction, *Colorado River*, 424 U.S. at 813, 817, and Defendants' request for the Court to abstain on this basis will be denied.

### B.  *Brillhart* Abstention

Next, Defendants argue that this Court should abstain and decline jurisdiction pursuant to the *Brillhart* abstention doctrine. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). Plaintiffs counter by arguing that *Brillhart* abstention does not apply to a mixed action for claims brought pursuant to the Declaratory Judgment Act and other independent claims.

This Court finds that *Brillhart* abstention—which applies to claims brought pursuant to the Declaratory Judgment Act—is in fact inapplicable here. *PPG Industries, Inc. v. Continental Oil*

*Co.*, 478 F.2d 674, 679 (5th Cir. 1973) is dispositive on this issue.[23] The parties have not provided any legal authority to the contrary nor has the Court independently identified such. Therefore, because other Counts in the Complaint that are not brought pursuant to the Declaratory Judgment Act "each state a claim upon which relief can be granted . . . *Brillhart* abstention is not applicable to the mixed claims pled here." *Hall*, 2018 U.S. Dist. LEXIS 171099, at *15. Therefore, Defendants' request for abstention under this doctrine will also be denied.

## V. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that:

1. Defendants' Motion to Dismiss (Doc. 22) is **GRANTED** in part and **DENIED** in part.

2. Counts VI and VIII are **DISMISSED** with prejudice.

3. Defendants' Motion to Dismiss (Doc. 22) is **DENIED** in all other respects.

**DONE** and **ORDERED** in Orlando, Florida on September 30, 2019.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[23] Decisions of the Fifth Circuit entered before October 1, 1981, are binding on the courts of the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).