**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,**

**Plaintiffs,**

**v.** **Case No: 6:18-cv-2184-Orl-41LRH**

**AUTO GLASS AMERICA, LLC and CHARLES ISALY,**

**Defendants.**

---

# ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION TO COMPEL DOCUMENTS RESPONSIVE TO ALLSTATE INSURANCE COMPANY'S THIRD REQUEST FOR PRODUCTION (Doc. 182)** |
| **FILED:** | **August 28, 2020** |

**THEREON** it is **ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company (collectively "Plaintiffs") filed this action against Defendants Auto Glass America, LLC ("AGA") and Charles

Isaly (collectively, "Defendants") in December 2018. (Doc. 1 ("Complaint")). The Court previously summarized the factual allegations giving rise to this case as follows:

> Plaintiffs claim that Defendants "pressure" Plaintiffs' insured customers into hiring Defendants for windshield replacements. Defendants then allegedly obtain an assignment of benefits from Plaintiffs' insured customers "without the insureds' knowledge or consent." Defendants, through the assignment of benefits, allegedly invoice Plaintiffs for the replacements, in accordance with Florida Statute § 627.7288, which provides that insured customers with comprehensive coverage do not have to pay for windshield replacements. Plaintiffs claim that these invoices are for "excessive and unreasonable amounts." Plaintiffs assert that a typical windshield replacement done by other vendors in Florida cost an average of $350, whereas Defendants' invoices average $900. Plaintiffs also claim that in some of the replacement situations, windshield replacement was unnecessary because the damaged windshield could have been safely repaired at a lower cost.
>
> Consequently, Plaintiffs have refused to pay Defendants more than what it believes are "the competitive and prevailing market rates for windshield replacements." As a result, Defendants have then purportedly "filed over 1,400 lawsuits" against Plaintiffs to recover the "overages"—the difference between the invoice amount and Plaintiffs' payment. At the time of the Complaint, Plaintiffs allege that "[t]he current amount of overages . . . exceeds $200,000." And Plaintiffs claim that they have "incurred litigation costs and fees in 2017 and 2018 alone exceeding $400,000."

(Doc. 45 at 2-3 (internal citations and footnotes omitted)). Based on these allegations, the Plaintiffs assert several claims against the Defendants, including tortious interference, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*., unjust enrichment, and declaratory judgment. (Doc. 1 at 29-48).

The Defendants answered the Complaint (Docs. 50; 51) and AGA asserted five counterclaims against the Plaintiffs (Doc. 59). Two of them seek declaratory relief regarding two global settlements between AGA and the Plaintiffs concerning small claims actions filed in Florida state courts (Counterclaims I-II). (*Id*. at 12-15). Another two counterclaims seek declaratory relief concerning Allstate Fire and Casualty Insurance Company's ("Allstate Fire") handling of one of its insured's (Robert Kirk's) windshield replacement insurance claim (Counterclaims III-IV). (*Id*. at 15-22). And the last is a single counterclaim against Allstate Indemnity Company ("Allstate

Indemnity") alleging that Allstate Indemnity acted in bad faith when it handled the windshield replacement insurance claim of another of its insureds (Frank Egger), in violation of Florida Statute § 624.155 (Counterclaim V). (*Id*. at 2, 22-29).[1]

The case proceeded in the normal course, with discovery opening on February 11, 2019 – the date of the parties' case management conference (Doc. 27 at 2) – and, relevant here, closed on August 28, 2020 (Doc. 124 at 1).[2] Prior to the close of discovery, on April 2, 2020, the Plaintiffs served AGA with their Third Request for Production. (Doc. 182 at 3). AGA served its objections and responses to the written discovery on May 26, 2020. (*Id*.).[3]

On the final day of written discovery, the Plaintiffs filed a motion requesting the Court overrule AGA's objections to requests for production 27, 62, 106, and 107 and compel it to produce documents responsive to those requests. (Doc. 182 ("Motion")). The Plaintiffs also request that AGA be compelled to produce documents they agreed to produce in response to requests for production 5-6, 9, 12-13, 15, 17, 19, 60, and 67-68. (*Id*.). AGA filed a timely response in opposition to the Motion. (Doc. 195).[4] The Motion is fully briefed and ripe for review.

---

[1] AGA is the assignee of both claims for Messrs. Kirk and Egger. (Doc. 59 at ¶¶ 74, 109).

[2] On October 7, 2020, the Court entered a third amended case management and scheduling order extending the discovery deadline until September 30, 2020 (Doc. 208). However, the discovery deadline was extended for the limited purpose of conducting several depositions. (Doc. 175). Thus, the deadline that applies to the present motion is the original August 28, 2020 deadline.

[3] Although AGA responded to the written discovery more than thirty (30) days after it was served, the Plaintiffs do not argue that AGA's response was untimely.

[4] AGA raises both procedural and substantive arguments in response to the Motion. Procedurally, AGA argues that the Motion should be denied because it does not contain a memorandum of law in violation of Local Rule 3.01(a). (Doc. 195 at 2). While the Plaintiffs do cite a handful of cases in support of certain arguments, the Motion generally lacks a memorandum of law. (*See* Doc. 182). In this instance, however, the Court declines to deny the Motion on this procedural deficiency, particularly since discovery has closed.

## II. Applicable Law

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). To this end, the Federal Rules of Civil Procedure provide that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The proponent of a motion to compel discovery . . . bears the initial burden of proving that the information sought is relevant." *Creative Touch Interiors, Inc. v. Nicholson*, No: 6:14-cv-2043-Orl-40TBS, 2015 WL 5952986, at *2 (M.D. Fla. Oct. 13, 2015).

## III. Discussion

### A. Request for Production 27

The twenty-seventh request for production seeks "photographs and videos of damage to Allstate's insureds' windshields." (Doc. 182 at 3). In response, AGA states that it does not have videos showing damaged windshields. (*Id*. at 3). With respect to photographs, AGA objects to producing those materials because it would be unduly burdensome for its only employee capable of such a task – Jessica Rich – to gather photographs of the more than 3,500 windshields it has replaced for the Plaintiffs' insureds since January 1, 2014. (*Id*. at 3-4). This objection is well-taken.

The Plaintiffs contend that AGA's objection is belied by Brad Isaly's August 24, 2020 deposition testimony; however, the Plaintiffs have not provided a copy of the deposition transcript. (*Id*. at 4). According to the Plaintiffs, Mr. Isaly testified that once a technician completes a job they are required to send the work order and photographs of the windshield to AGA via email with the

work order number in the email's subject line. (*Id*. at 4-5). The Plaintiffs claim that Mr. Isaly further testified that relevant photographs could be located by conducting a search of AGA's email for specific work orders. (*Id*. at 5). Based on this purported testimony, the Plaintiffs argue that no special training would be needed to gather the photographs and, therefore, the tasks could have been completed before the close of discovery through the use of temporary employees or the assistance of defense counsel's administrative staff. (*Id*. at 5).

In response, AGA maintains its objection and, relies on an affidavit from Ms. Rich. (Doc. 195 at 3-6, 15-17). Ms. Rich is employed as an administrative assistant with AGA, and her responsibilities include, among other things, accounting, payroll, accounts receivable and payable, customer and vendor relations, and marketing and advertising. (*Id*. at 14-15). In her affidavit, Ms. Rich acknowledges that while technicians largely comply with the email requirements discussed by Mr. Isaly, they do not always include work order numbers in the subject lines of the email. (*Id*. at 16). As a result, a simple search of AGA's emails by work order number would likely not, as the Plaintiffs suggest, yield all the photographs sought. Further complicating matters, Ms. Rich avers that the subject lines of the emails do not specify if the customer was insured by Allstate or another insurer. (*Id*.). Accordingly, for emails that contain work order numbers in the subject line, Ms. Rich would have to review each individual email (dating back to January 1, 2014) to discover which of those emails relate to a job performed for an Allstate customer. (*Id*.). For emails that do not contain work order numbers in the subject line, Ms. Rich would have to search AGA's tracking software system – eDirect – to find the necessary information to locate the email containing the photographs. (*Id*.). In total, Ms. Rich estimates that it would take her over 230 hours to produce the photographs sought. (*Id*. at 16-17). With respect to hiring temporary help, Ms. Rich avers that it would still take a substantial amount of time to train and monitor the new employee's work. (*Id.*

at 17). Based on this evidence, AGA contends that "any purported need for the[ ] photographs is grossly outweighed by the burden described in Ms. Rich's affidavit." (*Id*. at 5).

The Court recognizes (and AGA does not contest) the relevance of the photographs in this case, *i.e.*, to determine whether AGA was needlessly replacing windshields when they could have been repaired. The Court, however, finds AGA has shown that it would be unduly burdensome to produce the photographs. A party seeking to avoid discovery based on undue burden must present evidence, such as an affidavit, showing that it would be unduly burdensome to comply with the discovery request at issue. *See Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-33EAJ, 2010 WL 11508180, at *4 (M.D. Fla. Apr. 26, 2010) ("Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.") (quoting *Bank of Mongolia v. M&P Global Fin. Servs.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009)). AGA satisfied that burden through Ms. Rich's affidavit, which is uncontroverted and undermines the Plaintiffs' contention that finding and producing the photographs would take relatively little time and effort. This uncontroverted evidence is sufficient to show that AGA would be unduly burdened if it were required to produce the requested photographs, especially at this late stage of the proceedings.[5] Accordingly, AGA's sole objection to request for production 27 is sustained and the Motion will be denied with respect to this request.

---

[5] The relevance of the photographs was clear from the beginning of this case (*see* Doc. 1 at ¶ 6 ("AGA as a matter of policy and practice does not inform Allstate that it is replacing windshields for Allstate's insureds, and AGA always replaces windshields instead of making repairs, no matter how minor the damage")), yet the Plaintiffs waited until April 2, 2020 (more than a year into discovery) to request production of the photographs. AGA objected to the request in May 2020 and, rather than swiftly moving to compel production, the Plaintiffs waited until the final day of written discovery (three months after AGA served its objection) to compel production. Had the Plaintiffs acted with more diligence in serving its request or moving to compel, AGA's objection may have held less weight because the production could have been completed before or shortly after the discovery period closed. Instead, the Plaintiff waited until such point in time that if its request

**B. Request for Production 62**

The sixty-second request for production seeks "invoices and work orders for uninsured customers." (Doc. 182 at 5). AGA objected to this request on the grounds that it seeks irrelevant information and is unduly burdensome. (*Id.*). While the Court finds the information sought is relevant, AGA has again shown that responding to the request would be unduly burdensome.

The Plaintiffs contend that AGA's objection is inconsistent with the evidence of record. (Doc. 182 at 6). Through discovery, the Plaintiffs learned that AGA prepares its work orders and invoices through software called eDirect, and, according to online resources, eDirect identifies uninsured customers as "owners." (*Id.*). Accordingly, the Plaintiffs maintain that AGA should be able to identify all uninsured customers by simply running a report for "owners." (*Id.*). In support, the Plaintiffs point to Dustin Van Zwol's August 28, 2020 deposition testimony, which the Plaintiffs again failed to attach to the Motion. (*Id.*). Mr. Van Zwol, a customer service representative for AGA, purportedly testified that an uninsured customer would be identified as an "owner" in the eDirect system. (*Id.*).

In response, AGA maintains that it would be unduly burdensome to respond to request for production 62. (Doc. 195 at 7-9). Again, AGA relies on Ms. Rich's affidavit. (*Id.*). According to Ms. Rich, the eDirect system classifies jobs as "owner" and "commercial," with "owner" being used when the vehicle being repaired is a personal, as opposed to a business owned (or commercial), vehicle. (*Id.* at 18-19). Therefore, "owners" include both insured and uninsured customers. Further, Ms. Rich states that she is unaware of a search function that would only return

were now granted, it would undisputedly place an undue burden on AGA, particularly when the deadline to file dispositive and *Daubert* motions is fast approaching. (Doc. 208).

uninsured/self-pay customers. (*Id*. at 19). Based on Ms. Rich's affidavit, AGA contends that "it is unable to generate responsive information through the eDirect software and has no other means of producing such information without [being subject to] undue burden." (*Id*. at 9).

Despite the relevance of the information sought, AGA has shown that it would be unduly burdensome to produce information regarding its uninsured customers. Specifically, Ms. Rich's uncontroverted affidavit establishes that AGA does not have a way to easily search for documents related to uninsured/self-pay customers.[6] Instead, it appears Ms. Rich would have to search through each job that AGA performed since January 1, 2014 to identify those jobs performed for uninsured/self-pay customers. As discussed above, such a comprehensive search would place an undue burden on AGA, especially at this late stage of the proceedings. Accordingly, AGA's objection to request for production 62 is sustained and the Motion will be denied in part accordingly

**C. Requests for Production 106-107**

Through requests for production 106 and 107, the Plaintiffs seek "copies of all final judgments, dismissals with prejudice, or the equivalent which form the basis for" AGA's affirmative defenses of *res judicata* and collateral estoppel. (Doc. 182 at 11). AGA objected to these requests because the responsive documents are public records and the Plaintiffs already possess the responsive documents. (*Id*.). The Court is not persuaded by these objections.

[6] Because the Plaintiffs have not attached the deposition transcript for Mr. Van Zwol, the court finds that the Plaintiffs have not presented any evidence that contradicts in any way Ms. Rich's affidavit. And even if the Court were to rely on the Plaintiffs' representations about Mr. Van Zwol's testimony, he simply confirmed that an uninsured/self-pay customer would be noted as an "owner" in the eDirect system. (Doc. 182 at 6). It does not appear that Mr. Van Zwol spoke to the precise issues discussed in Ms. Rich's affidavit – namely how insured vs. uninsured customers are identified in the eDirect system. (Doc. 195 at 18-19). Accordingly, the Court finds Ms. Rich's affidavit to be uncontroverted.

The Plaintiffs argue that even if they possess some of the responsive documents they should not be left to guess which of those documents AGA intends to rely on in support of its *res judicata* and collateral estoppel defenses. (Doc. 182 at 12-13). The Court agrees. First, it is unclear how AGA can be certain that the Plaintiffs possess all the responsive documents. And, even if they could show the Plaintiffs possess all responsive documents, the Plaintiffs still have no way of determining which of those documents AGA intends to rely on in proving its *res judicata* and collateral estoppel defenses. Accordingly, the Court does not find requests for production 106 and 107 to be duplicative or unreasonably cumulative. *See Cherestal v. Sears Roebuck & Co.*, No. 6:12-cv-1681-Orl-28TBS, 2013 WL 5305671, at *3 (M.D. Fla. Sept. 20, 2013) (overruling similar objections). AGA's objections to those requests are therefore overruled and the Motion will be granted accordingly.

**D. Requests for Production 15, 17, and 19**

Through requests for production 15, 17, and 19, the Plaintiffs seek "letters, e-mails, text messages, and other records of communications" between AGA or its counsel and any employee, independent contractor, agent, or counsel of Mygrant Glass Company, Inc., Pilkington North America, Inc., and PGW Auto Glass. (Doc. 182 at 9-10). AGA objected to these requests on several grounds, including overbreadth. (*Id*. at 10). In response, the Plaintiffs agreed to narrow the requests "to those communications regarding pricing and types of parts used[.]" (*Id*. at 10-11). According to the Plaintiffs, AGA agreed to produce the narrowed communications, but, as of the date of the Motion, it had not done so. (*Id*.). In response, AGA contends that "it produced all of the information in [its] possession, custody, and control reflecting the prices AGA pays these companies for the windshields and related products such as adhesive kits." (Doc. 195 at 10). The Plaintiffs have not sought leave to challenge AGA's representation. The Court therefore accepts

AGA's uncontroverted representation that it has produced all responsive documents, as narrowed by the Plaintiffs, in its possession, custody, and control. The Motion will therefore be denied to the extent it requests AGA to produce responsive documents to requests for production 15, 17, and 19.

**E. Requests for Production 9 and 12-13**

Through requests for production 9, 12, and 13, the Plaintiffs seek "letters, e-mails, text messages, and other records of communications" between AGA or its counsel and any Allstate agent, attorney, or employee. (Doc. 182 at 7-8). AGA objected to these requests on several grounds, including overbreadth. (*Id*. at 7-9). After conferring, AGA agreed to produce "all letters in which AGA objected to the use of Auto Glass Inspection Services, Inc. . . . as an appraiser, as well as letters from Allstate regarding its claims processes" – an agreement the Plaintiffs apparently accepted. (*Id*. at 9). According to the Plaintiffs, AGA has not produced the limited communications. (*Id*.). In response, AGA contends that it produced the agreed-upon communications on September 4, 2020 and, therefore, argues the request to compel is moot. (Doc. 195 at 9). The Plaintiffs have not sought leave to challenge AGA's representation. The Court therefore accepts AGA's uncontroverted representation that it has since produced the agreed-upon communications. As a result, the Motion will be denied to the extent it requests AGA to produce responsive documents to requests for production 9, 12, and 13.

**F. Requests for Production 5-6, 60, and 67-68**

Finally, the Plaintiffs claim that AGA agreed to produce documents responsive to requests for production 5-6, 60, and 67-68, but, as of the date of the Motion, have failed to do so. (Doc. 182 at 13-14). In response, AGA states that it served documents responsive to those requests on September 4, 2020, and, therefore, argues the request to compel is moot. (Doc. 195 at 12). Once again, the Plaintiffs have not sought leave to challenge AGA's representation. The Court therefore

accepts AGA's uncontroverted representation that it has since produced the documents responsive to requests for production 5-6, 60, and 67-68, and will deny the Motion with respect to these requests for production.

### G. Attorney Fees and Costs

Both parties request an award of attorney fees and costs in relation to the Motion. (Docs. 182 at 14; 195 at 12). Based on the Court's ruling, the parties' requests for attorney fees and costs are denied. Fed. R. Civ. P. 37(a)(5)(C) (making an award of fees and costs discretionary where the discovery motion is granted in part and denied in part).

## IV. Conclusion

Accordingly, it is **ORDERED** that:

1. The Motion (Doc. 182) is **GRANTED** to the extent that AGA's objections to requests for production 106 and 107 are **OVERRULED**. **On or before October 30, 2020**, AGA shall serve the Plaintiffs with documents responsive to requests for production 106 and 107. In addition, AGA is reminded of its continuing obligation to supplement its responses to all other requests for production should it uncover additional responsive materials. Fed. R. Civ. P. 26(e).
2. The Motion (Doc. 182) is **DENIED** in all other respects.
3. The parties' requests for attorney fees and costs pursuant to Federal Rule of Civil Procedure 37 are **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on October 16, 2020.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties